Christopher A. Sproul (Bar No. 126398)
Jodene Isaacs (Bar No. 226895)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Tel: (415) 533-3376, (510) 847-3467
Fax: (415) 358-5695
csproul@enviroadvocates.com
jisaacs@enviroadvocates.com

Brian Gaffney (Bar No. 168778)
LAW OFFICES OF BRIAN GAFFNEY APC
446 Old County Road, Suite 100-310
Pacifica, CA 94044
Tel: 650-219-3187
Fax: 650-733-7793
brian@gaffneylegal.com

Additional Attorney listed on next page

Attorneys for Plaintiffs
PACIFICANS FOR A SCENIC COAST;
PACIFICANS FOR HIGHWAY 1 ALTERNATIVES;
CENTER FOR BIOLOGICAL DIVERSITY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFICANS FOR A SCENIC COAST;<br>PACIFICANS FOR HIGHWAY 1 ALTERNATIVES;<br>CENTER FOR BIOLOGICAL DIVERSITY<br><br>    Plaintiffs,<br><br>v.<br><br>FEDERAL HIGHWAY ADMINISTRATION;<br>CALIFORNIA DEPARTMENT OF<br>TRANSPORTATION; MALCOLM<br>DOUGHERTY, in his official capacity as Director of<br>the California Department of Transportation; U.S.<br>FISH AND WILDLIFE SERVICE; NATIONAL<br>PARK SERVICE; U.S. ARMY CORPS OF<br>ENGINEERS; SAN MATEO COUNTY<br>TRANSPORTATION AUTHORITY; and CITY OF<br>PACIFICA, inclusive.<br><br>    Defendants. | **COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF** |

Patricia Weisselberg (Bar No. 253015)
LAW OFFICE OF PATRICIA WEISSELBERG
115 Oakdale Avenue
Mill Valley, CA 94941
Tel.: (415) 388-2303
pweisselberg@wans.net

1.      This action challenges Defendants' violations of the Endangered Species Act (16 U.S.C. § 1536), the Clean Water Act (33 U.S.C §§ 1341 and 1344), section 4(f) of the Federal Transportation Act (23 U.S.C. § 138 and 49 U.S.C. § 303), the National Environmental Policy Act  (42 U.S.C. § 4332), the Administrative Procedure Act  (5 U.S.C. § 706), and the Coastal Zone Management Act ("CZMA")  (16 U.S.C. § 1456) in their approvals of the State Route 1/Calera Parkway/Highway 1 Widening Project ("Project"), a proposed freeway widening project in Pacifica, California.

2.      The Project, proposed by the San Mateo County Transportation Authority and the City of Pacifica, will more than double the width of the existing State Route 1 through the City of Pacifica at a projected cost of over $50 million. Project construction is estimated to last two years. The Project requires permanent removal of buildings and numerous trees; 4,100 feet of retaining walls, some as high as 22 feet; and hillside excavations up to 1,000 feet long involving removal of 3.7 million cubic feet of soil.

3.      The Project will result in adverse impacts to jurisdictional wetlands, endangered and threatened species and their habitat, pedestrian safety, coastal views, traffic circulation, greenhouse gas emissions, and two recorded archaeological sites.

4.      Plaintiffs seek an order by this Court enjoining Defendants from violating the Endangered Species Act, Clean Water Act, section 4(f) of the Federal Transportation Act, the National Environmental Policy Act, the Administrative Procedure Act , and the Coastal Zone Management Act.

## JURISDICTION

5.      This Court has jurisdiction over the claims set forth in this Complaint pursuant to 28 U.S.C. § 1331 (civil action arising under the laws of the United States),  28 U.S.C  § 1361 (action to compel mandatory duty), 28 U.S.C  § 2201 (declaratory relief), and 28 U.S.C  § 2202 (injunctive relief).

6.      This Court has jurisdiction over the Endangered Species Act ("ESA") claims pursuant to 16 U.S.C. § 1540(g)(1) which authorizes citizens to bring suit to enjoin any person that is in violation of the ESA.  Plaintiffs provided notice of intent to file suit under the ESA on March 5, 2015, more than 60 days prior to filing this litigation.

7.      This Court has jurisdicti0n over the Clean Water Act ("CWA") claims pursuant to 33 U.S.C. § 1365(a)(2) which authorizes citizens to bring suit to enjoin any person that is in violation of the CWA. Plaintiffs provided notice of intent to file suit under the CWA on March 5, 2015, more than 60 days prior to filing this litigation.

8.      This Court also has subject matter jurisdiction over the claims herein pursuant to the Administrative Procedures Act ("APA"), specifically 5 U.S.C. § 702, which authorizes any person aggrieved by an agency action under a relevant statute to seek judicial review; and 5 U.S.C. § 706, which authorizes a reviewing court to compel an agency to take an action that has been unlawfully withheld or unreasonably delayed, and to set aside agency actions that are found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Defendants' violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, et seq., Section 4(f) of the Federal Transportation Act, the Endangered Species Act, 16 U.S.C. § 1536, and the Coastal Zone Management Act ("CZMA"), 16 U.S.C. § 1456 are subject to judicial review under the APA.

9.      In addition, this Court has jurisdiction to review Defendant California Department of Transportation's ("Caltrans") actions in this case pursuant to 23 U.S.C. §327(d) and the 2007 Memorandum of Understanding between the Federal Highway Administration and the California Department of Transportation ("MOU"). Under the MOU, the Federal Highway Administration has assigned and Caltrans has assumed exclusive jurisdiction of the Federal courts for any matter relating to the Federal Highway Administration's environmental responsibilities.  This responsibility includes compliance with the ESA, the CWA , section 4(f) of the Federal Transportation Act, and NEPA. Caltrans stands in the shoes of the Federal Highway Administration in these matters and has waived any claim of sovereign immunity. (California Streets & Highways Code § 820.1.)

10.     This Complaint is timely filed within all applicable statutes of limitations.

11.     Plaintiffs have exhausted all administrative remedies prior to filing this litigation.

**VENUE**

12.     Venue is properly vested in this judicial district pursuant to 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and the resources at issue are located in this judicial district. Members of Plaintiffs injured by Defendants actions also reside in this judicial district.

**INTRADISTRICT ASSIGNMENT**

13.     A substantial part of the events and omissions giving rise to the claims in this case occurred in San Mateo County. The Project is located in San Mateo County. Accordingly, assignment to the San Francisco Division of the Court is appropriate pursuant to Civil L.R. 3-2(c) and (d).

**PARTIES**

14.     Plaintiff PACIFICANS FOR A SCENIC COAST ("PSC") is an unincorporated association whose mission is to protect, preserve and restore the scenic coastal environs within the City of Pacifica and beyond. PSC's members live in the City of Pacifica, and visit, recreate, study, and otherwise enjoy the Project area and its natural resources at issue in this Complaint. PSC's members derive scientific, aesthetic, spiritual, recreational, and educational benefits from the Project area and its resources. PSC and its members are concerned about the potentially significant, adverse effects that the Project may have on the local and coastal environment, and about Defendants' failure to comply with the ESA, the CWA, section 4(f) of the Federal Transportation Act, NEPA, the APA, and the CZMA. PSC's members include individuals who objected to the approval of the Project orally and in writing during the Environmental Assessment public comment period and during public hearings before Project approval. PSC provided notice more than 60 days in advance of filing suit of violations of the ESA and CWA. PSC brings this action both on behalf of itself and its adversely affected members. PSC members will continue to maintain an interest in this Project area and its resources in the future.

15.     Plaintiff PACIFICANS FOR HIGHWAY 1 ALTERNATIVES ("PH1A") is an unincorporated association that advocates for alternatives to widening Highway 1 in

Pacifica. It was formed in 2012 to advocate for more environmentally friendly ways to safely move people on Highway 1. PH1A supports the approach recommended by the California Coastal Commission staff which commented that the Environmental Assessment "should fully evaluate a range of alternatives that could meet the purpose and need of the project, including alternatives that would reduce traffic congestion, but would not result in significant adverse impacts on coastal resources." PH1A's members live in the City of Pacifica, and visit, recreate, study, and otherwise enjoy the Project area and its natural resources at issue in this Complaint. PH1A's members derive scientific, aesthetic, spiritual, recreational, and educational benefits from the Project area and its resources. PH1A and its members are concerned about the potentially significant adverse effects that the Project may have on the local and regional environment, and about Defendants' failure to comply with NEPA, the CWA, the ESA, section 4(f) of the Federal Transportation Act, and the CZMA. PH1A's members include individuals who objected to the approval of the Project orally and in writing during the Environmental Assessment public comment period and during public hearings before Project approval. PH1A provided notice more than 60 days in advance of filing suit of violations of the ESA and CWA. PH1A brings this action both on behalf of itself and its adversely affected members. PH1A members will continue to maintain an interest in this Project area and its resources in the future.

16.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("CBD" "Center") is a non-profit organization with more than 42,000 members that live throughout the United States, including in Pacifica, California. The Center's mission is to protect endangered species and wild places through science, policy, education, and environmental law. Center members live and work in or near Pacifica, California, and visit, recreate, study, and otherwise enjoy the Project area and its natural resources at issue in this Complaint. Center members derive professional, scientific, aesthetic, spiritual, recreational, economic, and educational benefits from the Project area and its resources. The Center and its members have participated in the public process related to the Project. CBD provided notice more than 60 days in advance of filing suit of violations of the ESA and

CWA. Center members will continue to maintain an interest in this Project area and its resources in the future.

17.     The above-described interests of the PSC, PH1A, and CBD and their members will suffer concrete, actual and imminent harm as a result of Defendants' actions and failure to act as required by law. Plaintiffs' harm is caused and directly traceable to Defendants' violations of the ESA, the CWA, section 4(f) of the Federal Transportation Act, NEPA the APA, and the CZMA. If ordered by the Court, Defendants have the authority and ability to remedy the harm inflicted by Defendants' violations of law. Thus, Plaintiffs' harm is redressable through the declaratory and injunctive relief requested herein.

18.     Defendant FEDERAL HIGHWAY ADMINISTRATION ("FHWA") is an agency of the United States government within the Department of Transportation. The FHWA supports state and local governments with the design, construction and maintenance of the nation's roadways. The FHWA is, alongside the California Department of Transportation, responsible for insuring compliance with all applicable federal laws with respect to the Project and for approving the Project on behalf of the federal government. FHWA is sued herein for violations of section 4(f) of the Federal Transportation Act, NEPA the APA, and the CZMA.

19.     Defendant the CALIFORNIA DEPARTMENT OF TRANSPORTATION is a public and state agency within the State of California. Caltrans has functioned as the lead agency for the Project since the Project's inception. Caltrans prepared and certified the Environmental Assessment, and approved the Project over Plaintiffs' and other's objections. Under the MOU, Caltrans is responsible for insuring compliance with all applicable federal laws with respect to the Project and for approving the Project on behalf of the state and federal governments. Caltrans is sued herein for violations of the ESA, the CWA, section 4(f) of the Federal Transportation Act, NEPA, the APA, and the CZMA.

20.     Defendant MALCOLM DOUGHERTY is the Director of the California Department of Transportation. As Director, Mr. Dougherty is responsible for construction and operation of roadways comprising the California state highway system,

and for overseeing the California Department of Transportation's compliance with all federal laws. Mr. Dougherty is sued in his official capacity for violations of the ESA, the CWA, section 4(f) of the Federal Transportation Act, NEPA, the APA, and the CZMA.

21. Defendant U.S. ARMY CORPS OF ENGINEERS ("Corps") is an agency of the United States government with authority to grant permits to dredge and fill wetlands and waters of the U.S. pursuant to section 404 of the Clean Water Act. 33 U.S.C. § 1344(a), (d); 33 C.F.R. § 323.6(a). Under the ESA, the Corps is required to consult with the U.S. Fish & Wildlife Service regarding the effect of its federal agency actions. The Corps is sued herein for violations of the ESA and the APA.

22. Defendant U.S. FISH AND WILDLIFE SERVICE ("FWS") is a federal agency within the U.S. Department of the Interior. FWS is responsible for administering and implementing the ESA with respect to freshwater fish species and for wildlife including the California red-legged frog and the San Francisco garter snake. On January 26, 2012, the U.S. Fish & Wildlife Service issued a Biological Opinion ("BiOp") for Caltrans approval of the Project. The U.S. Fish & Wildlife Service is sued herein for violations of the ESA and the APA.

23. Defendant NATIONAL PARK SERVICE ("NPS") is the federal agency vested with promoting and regulating use of National Parks for the purpose of conserving the scenery and wildlife therein and providing enjoyment of the same in such manner as to leave them unimpaired for the enjoyment of future generations. The National Park Service owns and manages the Golden Gate National Recreation Area ("GGRNA") property at Mori Point to the west of the Project, as well as the Shelldance Nursery/Sweeney Ridge property to the east of the Project. National Park Service approval is required for the Project's proposed mitigation measures including use of GGNRA lands and proposed enhancement measures. The National Park Service is sued herein for violations of the ESA.

24. Defendant SAN MATEO COUNTY TRANSPORTATION AUTHORITY ("SMCTA") is a local government agency which is a Project applicant, proponent and sponsor. The SMCTA is sued herein for violations of the CWA and CZMA.

25.     Defendant CITY OF PACIFICA ("City") is a local government agency which is a Project applicant, proponent and sponsor.  The Environmental Assessment identifies the City as a partner on the Project as well as a Responsible Agency. The proposed Project is entirely within the limits of the City of Pacifica. The City is sued herein for violations of the Clean Water Act.

STATUTORY FRAMEWORK

**ENDANGERED SPECIES ACT**

26.     The ESA was enacted to provide a means to conserve threatened and endangered species and to conserve the ecosystems upon which those species depend. 16 U.S.C. § 1531(b).  The FWS has listed the San Francisco garter snake (*Thamnophis sirtalis tetrataenia*) as an endangered species, and the California red-legged frog (*Rana draytonii*) as a threatened species (collectively the "Listed Species").

27.     The ESA requires all federal agencies to "insure that any action authorized, funded, or carried out by such agency ... is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species." 16 U.S.C. § 1536(a)(2);  50 C.F.R. § 402.14(a).  To assist federal agencies in complying with their substantive duty to avoid jeopardizing listed species, ESA section 7(a)(2) establishes an interagency consultation requirement. 16 U.S.C. § 1536(a)(2). "If a project is allowed to proceed without substantial compliance with those procedural requirements, there can be no assurance that a violation of the ESA's substantive provisions will not result. The latter, of course is impermissible." *Thomas v. Peterson*, 753 F.2d 754, 764 (9th Cir. 1985).

28.     The threshold for triggering consultation under the ESA is low; the ESA requires federal agencies to consult with the Secretary of Interior whenever their actions "may affect" a listed species or its critical habitat. 16 U.S.C. § 1536(a)(2).

29.     Agency actions requiring consultation are "broadly defined" by regulation as "encompassing all activities or programs of any kind authorized, funded, or carried out, in whole or in part, by federal agencies in the United States" including granting of easements, rights-of-way, permits, or grants-in-aid.  50 C.F.R. §§ 402.02, 402.03.

30.     To facilitate the consultation process a federal agency proposing an action that "may affect" a listed species must prepare a "biological assessment." 16 U.S.C. §§ 1536(a)(2), (c); 50 C.F.R. §§ 402.02, 402.12, 402.14. The agency preparing the biological assessment must use the best scientific and commercial data available.

16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(d). In the biological assessment, the action agency evaluates the potential effects of the proposed action on all listed species within the action area identified by the appropriate wildlife agency-here FWS- and determines, in the first instance, whether any listed species is likely to be affected by the proposed action. 16 U.S.C. § 1536(c); 50 C.F.R. §§ 402.02, 402.12, 402.14(d).

31.     If the proposed action is likely to adversely affect a listed species, the action agency and FWS must engage in formal consultation. At the conclusion of the formal consultation process, FWS provides the action agency with a biological opinion as to whether the action is likely to jeopardize any listed species. 16 U.S.C. § 1536(b)(3)(A), (4): 50 C.F.R. §§ 402.02, 402.14(g), (h). FWS must use the best scientific and commercial data available in drafting a biological opinion. 16 U.S.C. § 1536(a)(2).

32.     Regardless of the conclusion reached by FWS in a biological opinion, the action agency has an independent duty to meet its substantive section 7 obligation to ensure that its actions do not jeopardize listed species. 16 U.S.C. § 1536(a)(2). An action agency violates its substantive section 7 duty if it relies on an inadequate, incomplete, or flawed biological opinion in carrying out an action.

33.     A consultation is complete when FWS issues a biological opinion. However, both the action agency and FWS have a non-discretionary duty to reinitiate consultation under certain circumstances. 50 C.F.R. § 402.16. Federal  agencies must re-initiate consultation where discretionary Federal involvement or control over the action has been retained or is authorized by law and (a) the amount or extent of taking specified in the incidental take statement is exceeded; or (b) new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered; or (c) the identified action is subsequently modified in a manner

that causes an effect to the listed species or critical habitat that was not considered in the biological opinion.

**ADMINISTRATIVE PROCEDURE ACT**

34.    The APA, 5 U.S.C. § 706, authorizes a reviewing court to decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of a federal agency action. The court must compel agency unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1). The court must also hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2).

**CLEAN WATER ACT**

35.    Congress enacted the Clean Water Act to "restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To accomplish this goal, the CWA prohibits the discharge of any pollutant (including fill material) into navigable waters unless authorized by a permit. 33 U.S.C. §§ 1311, 1344. The CWA and its implementing regulations define "navigable waters" as "waters of the United States." 33 U.S.C. § 1362(7). Waters of the United States include wetlands adjacent to waters of the United States. 33 C.F.R. § 328.3(b). "Pollutants" include dredged spoil, rock, and sand, among other materials. Id. § 1362(6).

36.    Under the Corps' 404 Guidelines, wetlands are identified as "special aquatic sites" that "are generally recognized as significantly influencing or positively contributing to the general overall environmental health or vitality of the entire ecosystem of a region." 40 C.F.R. § 230.3(q-1); see id. § 230.41.

37.    The CWA authorizes the Secretary of the Army to issue section 404 permits, under certain circumstances, "for the discharge of dredged or fill material into the navigable waters at specified disposal sites." Id. § 1344(a). The Secretary of the Army acts through the Chief of Engineers of the Corps. Id. § 1344(d); 33 C.F.R. § 323.6(a).

38.    CWA section 401, 33 U.S.C. § 1341, requires any applicant for a federal license or permit, including a CWA § 404 permit, that will authorize activities which may result in

a discharge to waters of the United States to provide the federal licensing or permitting agency (including the Corps) with a certification from the State in which the discharge originates or will originate that any such discharge will comply with certain applicable provisions of the CWA. These CWA provisions include requirements to ensure that discharges to waters (including discharges of dredged or fill material) do not impede the water quality standards that, inter alia, are designed to protect aquatic species.

**FEDERAL TRANSPORTATION ACT**

39.     Section 4(f) of the Federal Transportation Act prohibits the Federal Highway Administration from approving any project that requires the use of publicly owned parkland, recreation areas, or wildlife and waterfowl refuges of national, state, or local significance unless (1) there is no prudent and feasible alternative to using such land and (2) the project includes all possible planning to minimize harm to the parkland. 49 U.S.C. § 303(c). Use is construed broadly and can be either actual use (physical occupation of the land) or constructive use where a road significantly and adversely affects park land even though the road does not physically use the park.

**NATIONAL ENVIRONMENTAL POLICY ACT**

40.     Congress enacted NEPA to "prevent or eliminate damage to the environment and biosphere." 42 U.S.C. § 4331. NEPA recognizes "the critical importance of restoring and maintaining environmental quality," declares that the federal government has a continuing responsibility to use "all practicable means" to minimize environmental degradation, and directs that "to the fullest extent possible ... the policies, regulations and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this Act." 42 U.S.C. §§ 4331(a), 4332(1). NEPA also recognizes the right of each person to enjoy a healthful environment. 42 U.S.C. § 4331(c).

41.     NEPA requires federal agencies to analyze the environmental impacts of a particular action. NEPA requires an agency to adequately consider, analyze, and disclose the individual and cumulative environmental impacts of the proposed action and alternatives to it. 42 U.S.C. § 4332(2)(c); 23 C.F.R. §§ 771.105, 771.119; 40 C.F.R. §§

1508.9, 1502.16. In addition, NEPA ensures that the public is notified of and allowed to comment on the environmental impacts of a proposed action before the agency finalizes its decision to proceed with the action.

42.     The cornerstone of NEPA is the environmental impact statement ("EIS") that must be prepared for all "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332. An agency must prepare an EIS when an action may have a significant environmental effect or where there is a substantial question raised as to whether an action may have an environmental effect. An EIS must be prepared prior to initiating any major federal action so that the environmental impacts can be considered and disclosed to the public during the decision-making process. 40 C.F.R. §§ 1501.2, 1502.5. NEPA requires that agencies rigorously explore and objectively evaluate all reasonable alternatives to the proposed action. 42 U.S.C. § 4332(2)(C)(iii); 23 C.F.R § 771.105; 40 C.F.R. §§ 1508.9, 1502.14. A proper analysis of alternatives requires appropriate mitigation measures not already included in the proposed action or alternatives. See 40 C.F.R § 1502.14(f).

**COASTAL ZONE MANAGEMENT ACT**

43.     The purpose of the CZMA is to "preserve, protect, develop, and where possible, to restore or enhance, the resources of the Nation's coastal zone for this and succeeding generations." 16 U.S.C. § 1452(1). To accomplish these ends, the CZMA encourages the states to draw up "management plans" for their coastal zones and requires that "[e]ach Federal agency activity within or outside the coastal zone that affects any land or water use or natural resource of the coastal zone shall be carried out in a manner which is consistent to the maximum extent practicable with the enforceable policies of approved State management programs." Id. § 1456(c)(1)(A). A federal agency ensures consistency of its proposed actions with state management programs by submitting a "consistency determination to the relevant State agency." Id. § 1456(c)(1)(C); see also 15 C.F.R. § 930.36. After receipt of the consistency determination, the "State agency shall inform the Federal agency of its concurrence with or objection to the Federal agency's consistency determination." 15 C.F.R. § 930.41

44.     The CZMA specifies that "any applicant for a required Federal license or permit to conduct an activity, in or outside of the coastal zone, affecting any land or water use or natural resource of the coastal zone of that state shall provide in the application to the licensing or permitting agency a certification that the proposed activity complies with the enforceable policies of the state's approved program and that such activity will be conducted in a manner consistent with the program. At the same time, the applicant shall furnish to the state or its designated agency a copy of the certification, with all necessary information and data. Each coastal state shall establish procedures for public notice in the case of all such certifications and, to the extent it deems appropriate, procedures for public hearings in connection therewith. At the earliest practicable time, the state or its designated agency shall notify the Federal agency concerned that the state concurs with or objects to the applicant's certification. If the state or its designated agency fails to furnish the required notification within six months after receipt of its copy of the applicant's certification, the state's concurrence with the certification shall be conclusively presumed. No license or permit shall be granted by the Federal agency until the state or its designated agency has concurred with the applicant's certification or until, by the state's failure to act, the concurrence is conclusively presumed . . . ."

**CALTRANS FEDERAL LAW OBLIGATIONS**

45.     23 U.S.C. § 327 provides that the Secretary of Transportation may assign by memorandum of understanding to any State or State agency, and the State or State agency may assume, all or part of the responsibilities of the Secretary for environmental review, consultation, or other action required under any Federal environmental law pertaining to the review or approval of a specific project. Effective July 1, 2007, via a memorandum of understanding, the FHWA assigned, and Caltrans assumed, responsibilities for the Project's compliance with the ESA, the CWA, NEPA, the APA, the CZMA and all other applicable provisions of federal environmental law pursuant to 23 U.S.C. § 327. California Streets & Highways Code § 820.1 provides that the State of California consents to the jurisdiction of the federal courts with regard to the

compliance, discharge, or enforcement of the responsibilities assumed by Caltrans pursuant to 23 U.S.C. § 327.

## STATEMENT OF FACTS

**The Project Area and its Resources**

46.     Highway 1 through Pacifica offers scenic vistas of the coast, the Pacific Ocean, and the surrounding mountainous terrain. Highway 1 is a dominant feature of this region's scenic beauty.

47.     The Project crosses Calera Creek. Ponds fed by Calera Creek are habitat for endangered frogs and snake. (AR1001-02). Rockaway Creek, Calera Creek, Sanchez Creek, and the Pacific Ocean are direct receiving water bodies for the Project. Most of the area's storm drains discharge into the various creeks. Development in most of the study area" extends to the banks of Calera and Rockaway Creeks, which both discharge into the Pacific Ocean. The Project also affects the Sanchez Creek watershed; Sanchez Creek empties into Horse Stable Pond, where water is pumped to the Pacific Ocean.

48.     The Project will likely adversely affect the California red-legged frog and San Francisco garter snake through harassment, injury, mortality and habitat loss and degradation.

49.      The southern portion of the Project area is directly adjacent to the California Coastal Trail. At the north end of the Project area, Highway 1 passes between the Golden Gate National Recreation Area's Mori Point to the west and Sweeney Ridge to the east.

50.     The City has described the Project area as affecting 5 jurisdictional U.S. waters/wetlands.

51.     According to the FWS, over 75 acres of suitable San Francisco garter snake habitat are within the Project action area. This snake is listed under the ESA as in danger of extinction within the foreseeable future throughout all or a significant portion of its range. There is an abundant snake prey base at the Project site including California red-legged frogs, Pacific chorus frogs, arboreal salamanders, yellow-eyed salamanders and California slender salamanders.  Source populations of San Francisco garter snakes

also occur northwest of the Project area at Laguna Salada, Horse Stable Pond, Sanchez Creek and the Mori Point pond enhancement sites.

52.     The Project area also provides similar acreage of suitable habitat for California red-legged frog. The frog is listed under the ESA as threatened to become an endangered species within the foreseeable future throughout all or a significant portion of its range. Numerous California red-legged frogs have been observed within the drainage channel immediately adjacent to southbound Highway l. The frog is the most abundant amphibian within the immediately adjacent Pacifica Quarry. Frogs have been observed in numerous locations along Calera Creek upstream and downstream of the Project area.

**The Proposed Project**

53.     The Project, proposed by the San Mateo County Transportation Authority and the City of Pacifica, will more than double the width of the existing State Route 1 through the City of Pacifica at a projected cost of over $50 million.

54.     The Project requires permanent removal of buildings and numerous trees; 4,100 feet of retaining walls, some as high as 22 feet; and hillside excavations up to 1,000 feet long, 60 feet deep and 60 feet wide, involving removal and disposal of 3.7 million cubic feet of soil.

55.     Project construction is estimated to last two years. Construction staging will be located on the west side of the Project area, in endangered and threatened species habitat.

56.     The Project will result in adverse impacts to jurisdictional wetlands, endangered and threatened species and their habitat, pedestrian safety, coastal views, traffic circulation, greenhouse gas emissions, and two recorded archaeological sites.

57.     The Project will be constructed entirely within California's coastal zone as that term is defined by the CZMA.

58.     On information and belief, neither FHWA nor Caltrans have submitted a "consistency determination" to the California Coastal Commission or any local government agency with authority to administer a California Coastal Commission

certified local coastal program (collectively hereinafter referred to as the "California Coastal Commission") that the Project is consistent with the California Coastal Management Plan (CMP) duly adopted and approved pursuant to the CZMA.  See 16 U.S.C. § 1456(c)(1)(C); 15 C.F.R. § 930.36. Furthermore, FHWA and Caltrans have never received concurrence from the California Coastal Commission with any such consistency determination.

59.     As approved by FHWA and Caltrans, the Project will not be carried out in a manner which is consistent to the maximum extent practicable with the enforceable policies of California's CMP. The Project is not designed in a manner that is fully consistent with the public access requirements of the CMP/Article 2 of the California Coastal Act. The Project is not consistent with the CMP/California Coastal Act section 30240's mandate to protect against any significant disruption of habitat values of environmentally sensitive habitat areas and to limit uses of such habitat areas to only those activities dependent on such resources. The Project is not consistent with the CMP/California Coastal Act section 30244's mandate to employ reasonable mitigation measures to avoid adverse impacts to archaeological or paleontological resources. The Project is not consistent with CMP/California Coastal Act section 30251's mandate to protect the scenic and visual qualities of coastal resources. The Project is not consistent with CMP/California Coastal Act section 30251's mandate to minimize adverse impacts, such as not substantially altering natural landforms along bluffs and cliffs, minimizing energy consumption and vehicle miles traveled, being consistent with air pollution control district requirements, and protecting special communities and neighborhoods that, because of the unique characteristics, are popular visitor destination points for recreational uses. Accordingly, the FHWA, Caltrans, and Dougherty's decision to issue final approval for the Project is in violation of the substantive requirements of the CZMA, 16 U.S.C. §1456(c)(1)(A).

**Project Approval**

60.     On or about February 12, 2003 the City of Pacifica applied for a Section 404 Clean Water Act permit from the U.S. Army Corps of Engineers for fill of Corps

jurisdictional wetlands for the Project.  The City's 404 permit application was never withdrawn or modified.

61.    The City described its Highway-widening project as affecting five jurisdictional waters/wetlands in the Project area, of which three were to be filled as part of the Project, and another would be deprived of any water.

62.    On March 27, 2003 the Corps initiated informal consultation with the FWS concerning the City's application for a CWA section 404 permit authorizing the addition of compacted soil fill to 0.83 acres of jurisdictional waters of the United States. The Corps requested FWS concurrence that the Project may affect, but is not likely to adversely affect, the Listed Species. On July 22, 2003, the FWS wrote to the Corps that it did not concur that the Project is not like to adversely affect the Listed Species and recommended that the Corps complete formal consultation.

63.    On July 3, 2003, the Corps told the City that a CWA section 404 permit was required for the Project. The Corps never withdrew or modified its conclusion that a 404 permit was required for this Project, but has never issued a CWA section 404 permit for the Project.

64.    On February 10, 2010, Caltrans requested a Corps jurisdictional determination (i.e., a formal Corps determination of the extent and boundaries of waters of the United States) for the Project, and claimed the Project affected 0.87 acres of wetlands, waters and other waters of the United States. Caltrans' proposed delineation report likely under-estimated the amount of waters affected as the surveys were expressly limited to a narrow Caltrans easement area and "did not include" waters of the United States on adjacent private land. The Corps did not provide a jurisdictional determination.

65.    A California Environmental Quality Act ("CEQA") Notice of Preparation was circulated to local, regional, state and federal agencies from February 12, 2010 through March 17, 2010.

66.    An Environmental Scoping Meeting was held on March 3, 2010.  The public scoping comment period was extended until July 22, 2010. The public expressed extensive interest in information regarding other alternatives to the Project as proposed.

67.     The Draft Environmental Assessment ("Draft EA")was made available for public review and comment on August 8, 2011. Due to public opposition and controversy, the comment period on the Draft Environmental Assessment was extended to October 22, 2011. A single public hearing on the Draft Environmental Assessment was held on September 22, 2011 with approximately 100 members of the public in attendance. Members of the public, including members of Plaintiffs objected to the Project and to the adequacy of the Environmental Assessment at the public hearings. Approximately 180 members of the public, including members of Plaintiffs, timely submitted written comments before the Draft Environmental Assessment comment deadline.  The majority of comments were in opposition to the Project.

68.     On November, 1, 2010 the FWS received from Caltrans a Biological Assessment for the Project and a written request to initiate formal ESA section 7 consultation.

69.     On January 26, 2012, Caltrans and FWS completed formal ESA section 7 consultation concerning the effects of the Project on the threatened California red-legged frog and endangered San Francisco garter snake. FWS issued a biological opinion that concluded that the Project is not likely to jeopardize the Listed Species' survival or recovery.

70.     On July 18, 2012, the Project Development Team formally identified the Landscape Median Build Alternative as the preferred alternative. The Final Environmental Assessment (EA") was approved on August 1, 2013. On August 2, 2013, Caltrans signed the Project Report approving the Project. On August 8, 2013, Caltrans released the Final Environmental Assessment, but did not provide any opportunity for public comment on the new information presented in the Final Environmental Assessment or on the adequacy of the Final Environmental Assessment.

71.     On December 10, 2014, the Federal Highway Administration, on behalf of Caltrans, provided the public with notice of final agency action in regards to the Project. 79 Federal Register 73390.

### FIRST CLAIM FOR RELIEF
**Violation of the ESA Section 7(a)(2)- Duty to Consult**
**16 U.S.C. § 1536(a)(2)**
**Against Caltrans, Malcolm Dougherty, FWS, Corps, and NPS**

**Request for Declaratory Relief and Injunction to Compel Caltrans, FWS, Corps and NPS to Consult**

72.    Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein.

73.    Caltrans and Dougherty have violated their ESA section 7(a)(2) procedural obligations and 50 CFR 402.14 by failing to adequately consult with FWS about the impacts of the proposed Project on the Listed Species. Caltrans  and Dougherty failed to provide FWS with accurate descriptions of the Project, the specific area affected, the manner in which the Project may affect the Listed Species, and the best scientific and commercial data available.

74.    Caltrans, Dougherty, NPS, and FWS have also violated their ESA section 7(a)(2) procedural obligations by failing to complete an ESA section 7(a)(2) consultation that included the NPS as an action agency or otherwise included exchange and consideration of pertinent information in NPS's exclusive purview. This is underscored and corroborated by the NPS's request that Caltrans include NPS in the section 7 consultation with the FWS given that actions only performable by NPS are "integral to offsetting incidental take from the project," and also because NPS would need approval from FWS to have actions performed in habitat suitable for the listed species. Indeed, Caltrans' Final Project Report recognizes that NPS approval is required for the Project's proposed mitigation measures including use of GGNRA lands and proposed enhancement measures. Accordingly, Caltrans, Dougherty, NPS and FWS  have failed to comply with ESA section 7 (a)(2) by not including the NPS in a consultation with FWS regarding the Project.

75.    FWS has violated its ESA section 7(a)(2) procedural obligations and 50 CFR § 402.14 by failing to adequately consult with Caltrans, Dougherty, and the NPS concerning the impacts of the proposed Project on the Listed Species. FWS failed to use the best scientific and commercial information available when analyzing the effects and

cumulative effects of the Project; did not properly consider harm and harassment effects to listed species from species isolation related to Project barriers, loss of habit connectivity from the loss of the northern cross-culvert and junction box, the Project's change to the hydrology of species habitat on both sides of the Highway, and the reduced effects to species from a narrower median alternative.

76.    FWS has also violated its ESA section 7(a)(2) procedural obligations by relying on mitigation measures that are not reasonably certain to occur in analyzing whether the Project is not likely to jeopardize the Listed Species' survival or recovery. In reaching its "no jeopardy" conclusion, the BiOp relied on a conservation measure of preservation  of 5.14 acres of City of Pacifica land in a conservation easement and enhancing 5.46 acres of NPS land adjacent to the Project area. This mitigation is not feasible as the 5.14 acre City of Pacifica parcel is already required to be preserved and enhanced; therefore, this same parcel will not increase the amount of habitat secure from threats or preserve the land, as the BiOp erroneously presumes. In addition, the mitigation is not feasible as neither Caltrans, the City of Pacifica nor the NPS/GGNRA has committed to implement or pay for Caltrans' proposed compensatory mitigation.

77.    On March 27, 2003, the Corps initiated informal ESA section 7 consultation with the FWS concerning the City's application for a CWA section 404 permit for the Project. The Corps requested FWS concurrence that the Project is not likely to adversely affect the Listed Species. On July 22, 2003, the FWS wrote to the Corps that it did not concur that the Project is not like to adversely affect the Listed Species and recommended that the Corps complete formal consultation.

78.    The Corps has violated its ESA section 7(a)(2) procedural obligation by failing to formally consult with FWS concerning the impacts of a 404 permit for the Project after FWS specifically refused to provide concurrence of "no adverse impact."

       WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

##

**SECOND CLAIM FOR RELIEF**
**Violation of ESA Section 7(a)(2)- Duty to Ensure Against Jeopardy**
**16 U.S.C. §§ 1536(a)(2)**
**Against Caltrans,Malcolm Dougherty, FWS, and Corps**

**Request for Declaratory Relief and Injunction Enjoining Project**
**Implementation**

79.     Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein.

80.     Caltrans and Dougherty have violated their independent ESA section 7(a)(2) substantive duty to ensure that the Project will not jeopardize the Listed Species' survival or recovery. Caltrans and Dougherty may not rely on the BiOp and its "no jeopardy" conclusion to fulfill their ESA section 7 substantive duty because the BiOp consultation was inadequate and the BiOp is therefore invalid. Further, Caltrans and Dougherty have not taken any other appropriate steps to ensure that the Project will not jeopardize the Listed Species' survival or recovery.

81.     The Corps has not complied with its independent ESA section 7(a)(2) substantive duty to ensure that the Project will not jeopardize the Listed Species' survival or recovery. The Corps has not exerted its permitting and/or enforcement authority under CWA § 404 in a fashion (by preventing the development project from proceeding or by imposing permit conditions that ensure that the Project does not jeopardize the Listed Species' survival or recovery). By deciding to forgo action on the City's application for a 404 permit and forgo formal consultation with the FWS about the impacts of the requested CWA section 404 permit, the Corps has decided not to comply with its ESA § 7(a)(2) substantive duty, The Corps will not have complied with this ESA section 7 substantive duty until it so exercises its permitting/and or enforcement authority under the CWA to ensure that its action is not likely to jeopardize the Listed Species.

        WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.
##

**THIRD CLAIM FOR RELIEF**
**Violation of ESA -Failure to Reinitiate Consultation**
**Against Caltrans, Malcolm Dougherty, and FWS**

**Request for Declaratory Relief and Injunction to Compel Caltrans and FWS**
**to Reinitiate Consultation**

82.    Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein.

83.    Caltrans, Dougherty and FWS have violated and continue to violate the ESA by failing to re-initiate consultation as (1) the Project has been modified in a manner that effects California red-legged frog and San Francisco garter snake in ways that were not considered in the BiOp; and (2) new information reveals effects of the Project that may affect listed species in a manner and to an extent not previously considered, and (3) Caltrans retains discretionary Federal involvement and control over the Project. See 50 C.F.R. § 402.16.

84.    Reinitation of consultation is required because as compared to the January 2012 BiOp, the approved Project will result in (1) increased habitat loss, (2) increased size of the Project, (3) changes to retaining walls designed as mitigation measures, (4) elimination of permanent barriers preventing species from entering biofiltration swales, (5) mitigation required by the BiOp is not feasible, and (6) Caltrans' failure to implement reasonable and prudent measures identified in the BiOp.

85.    Consultation needs to be re-initiated as the January 2012 BiOp did not consider highly pertinent new information and project modifications which render the conclusions of the BiOp invalid. The BiOp did not consider that the Project will result in the loss of additional 1.27 acres of habitat. The BiOp did not consider that the Project includes excavations at three locations labeled Cuts 1, 2 and 3. The BiOp did not consider that the size and location and number of Project retaining walls, which the BiOp considered mitigation measures, have changed in a fashion that will make these retaining walls less effective. The BiOp did not consider that the Project will not include a minimization measure of permanent barriers to prevent the Listed Species entry into Project biofiltration swales. The BiOp did not consider that wildlife exclusion fencing,

which was to remain in place throughout the duration of the Project, will not be in place during Project enhancement activities.

86.     Further, the BiOp relied on a conservation measure of preservation of 5.14 acres of City of Pacifica land in a conservation easement and enhancing 5.46 acres of NPS land adjacent to the Project area. This mitigation is not feasible as the 5.14 acre City of Pacifica parcel is already required to be preserved and enhanced; therefore, this same parcel will not increase the amount of habitat secure from threats or preserve the land, as the BiOp erroneously presumes. In addition, the mitigation is not feasible as neither Caltrans, the City of Pacifica nor the NPS/GGNRA has committed to implement or pay for Caltrans' proposed compensatory mitigation. Consultation needs to be re-initiated as the BiOp did not consider this new information and project modification.

87.     Reinitiation of consultation is required for failure to implement Reasonable and Prudent Measure #2 in the BiOp in that (1) Caltrans proposed compensation measure is not comprised of high quality breeding, foraging, sheltering, migration and/or dispersal habitat; (2) Caltrans has not ensured the effects to the California red-legged frog and San Francisco garter snake are minimized where it excluded from the ESA consultation a narrower median alternative which will effect less species habitat, (3) Caltrans has not complied with all applicable CDFG regulations as California Fish & Game Code section 5050 prohibits take or possession of San Francisco garter snake "at any time" but the Project will take at least one such snake; and (4) Caltrans' mitigation compensation has not been, and cannot be, implemented in accord with the Selected Review Criteria for Section 7 Off-Site Compensation (Appendix A to the BiOp) because neither the City of Pacifica nor NPS have agreed to Caltrans' proposed compensation and Caltrans does not have the ability to  accomplish the proposed compensation on its own.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**FOURTH CLAIM FOR RELIEF**
**Violation of the Clean Water Act**
**33 U.S.C. §§ 1341 and 1344**
**Against Caltrans, Malcom Dougherty, City of Pacifica, and San Mateo County Transportation Authority**

Complaint for Declaratory and Injunctive Relief

**Request for Declaratory Relief and Injunction to Compel Defendants to Comply with CWA**

88.     Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein.

89.     The Project, through construction and operation, will discharge dredged and/or fill material to the waters of the United States which will affect water quality. At a minimum such dredging and filling will occur from construction of footings/piers for the proposed bridge/flyover, from installation of ESA and WEF fencing, from construction of retaining walls, and from deposition of dredged and fill material as a byproduct of construction and operation of the Project without minimum setbacks required by the California Coastal Commission.

90.     Caltrans estimates that approximately 0.87 acres of jurisdictional wetlands, water and other waters of the United States are identified in its delineation report, but, Plaintiffs allege on information and belief that because of changes in Project design the acreage of waters of the United States affected will be larger. The City of Pacifica's 404 permit application described its Highway-widening project as affecting 5 jurisdictional waters/wetlands in the Project area. In addition, the Project will affect the seasonal wetlands (never delineated) on the west side of the Highway north of Reina Del Mar Avenue which are perched on top of the man-made embankment. Here the Project will require removal of 3,600,000 cu. ft. of hillside, with dimensions 60 feet deep, 60 feet wide and 1,000 feet long.

91.     A 404 permit for the Project has never been issued by the Corps. Despite this, the Project has been granted final approval. 79 Fed. Reg. 73390.

92.     Also, Caltrans, Dougherty, the City of Pacifica, and San Mateo County Transportation Authority have failed to seek or provide the Corps with a CWA section 401 certification from the State of California that Project discharges will comply with the applicable provisions of 33 U.S.C. sections 1311, 1312, 1313, 1316, and 1317.

93.     Caltrans, Dougherty, the City of Pacifica, and San Mateo County Transportation Authority have violated and continue to violate sections 401 and 404 of the CWA, 33

U.S.C. §§ 1341 and 1344, by approving the Project without the required 404 permit from the Corps and 401 certification from the State of California.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### FIFTH CLAIM FOR RELIEF
**Violation of the Federal Transportation Act Section 4 (f)**
**49 U.S.C. § 303; 23 U.S.C. §138**
**Against FHWA, Caltrans, and Malcolm Dougherty**

**Request for Declaratory Relief and Injunction to Compel Defendants to Comply With the Federal Transportation Act**

94.     Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein.

95.     Section 4(f) of the Federal Transportation Act prohibits the FHWA from approving any project that requires the use of publicly owned parkland, recreation areas, or wildlife and waterfowl refuges of national, state, or local significance unless (1) there is no prudent and feasible alternative to using such land and (2) the project includes all possible planning to minimize harm to the parkland. 49 U.S.C. § 303(c); 23 U.S.C. § 138; 23 C.F.R. Part 774. The "no feasible and prudent alternative" 4(f) standard allows less discretion for an agency to reject alternatives than under NEPA. An adequate Section 4(f) evaluation must be performed before approval of any use of Section 4(f) property.

96.     FHWA, Caltrans and Dougherty have failed to conduct the above 4(f) analysis related to use of publicly owned National Park Service/GGNRA land which lies immediately adjacent to the west and east of the Project at Mori Point and Sweeney Ridge (Shelldance Nursery).

97.     The Project will use the NPS parklands, both through constructive use from the Project causing significant and adverse impacts to the NPS land, and through actual use including physical division of the land.

98.     In violation of Section 4(f) of the Federal Transportation Act, FHWA, Caltrans and Dougherty have not considered if there is no prudent and feasible alternative to

using the NPS parkland, and have not done all possible planning to minimize harm to the NPS parkland.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SIXTH CLAIM FOR RELIEF
### Violation of NEPA
### 42 U.S.C. § 4321 et seq
### Against FHWA, Caltrans, and Malcolm Dougherty

### Request for Declaratory Relief and Injunction to Compel Defendants to Comply with NEPA

99.   Plaintiff incorporates by reference herein the preceding paragraphs, as if fully set forth.

100.   FHWA, Caltrans and Dougherty violated NEPA in several ways, including but not limited to, preparing an Environmental Assessment/Finding of No Significant Impact ("EA/FONSI") which fail to (1) present an adequate description of the proposed action, (2) adequately describe the existing environment, (3) disclose and evaluate the significant environmental effects, (4) explore and evaluate reasonable alternatives to the Project, and (5) properly evaluate appropriate mitigation measures, and by failing to prepare an Environmental Impact Statement for the proposed Project.

101.   The EA/FONSI fail to accurately and consistently describe how wide the highway-widening will be, fail to describe highway-width at pedestrian and bicyclist crossing points, and reference figures which are purely "conceptual" and "not to be used as official records." The Final EA changes the Project from that reviewed by the public in the Draft EA by having north lanes at a higher elevation, does not include that there will be 4,100 feet of retaining walls, and includes excavations significantly larger than disclosed in the Draft EA. Each of these changes and project description inadequacies may result in potentially significant impacts which the EA has failed to take a hard look at.

102.   The EA/FONSI fail to adequately describe the existing environment, including improperly excluding adjacent wetlands; provide contradictory statements regarding whether threatened frogs migrate east of the Highway; omit information about Native

American jaw, skull, bones and teeth, as well as spearheads, arrowheads, potential necklace, and pottery; and exclude information about existing water lines, sewer lines and storm drains.

103.     The EA/FONSI fail to adequately consider, analyze, and disclose the environmental impacts of the proposed Project. The EA/FONSI fail to adequately analyze construction phase impacts, including traffic impacts from project excavations at Cuts 1, 2 and 3, traffic impacts from heavy equipment access to and from construction staging areas, if adverse health effects from construction exhaust will be significant or insignificant, omit discussion of construction water quality impacts from non-storm water discharges, and do not analyze construction water quality significance irrespective of mitigation.

104.     The EA/FONSI fail to analyze potential pedestrian safety impacts and hazards including the increased crossing time.

105.     The EA/FONSI fail to utilize their own stated threshold of visual significance in evaluating Project impacts by omitting consideration of "the degree to which people are likely to oppose the change." The EA/FONSI fail to disclose if visual changes will be adverse or significant.

106.     The EA/FONSI fail to properly analyze indirect impacts to California red-legged frogs.

107.     The EA/FONSI fail to disclose that the San Francisco garter snake is a "fully protected species" and that any take of this snake is prohibited.

108.     The EA/FONSI fail to disclose whether projected temporary impacts will be significant.

109.     The EA/FONSI fail to determine the significance of Project greenhouse gas emissions. Also, the EA/FONSI fail to describe, calculate or estimate the amount of greenhouse gas  emissions resulting from the proposed Project's two-year construction phase.

110.     Having determined that noise will approach or exceed its Noise Abatement Criteria at four locations, the EA/FONSI fail to discuss mitigation measures for noise

exceeding this criteria. The Habitat Mitigation and Monitoring Plan (Mitigation Measure T&E-1.8) to be developed to manage the land and monitor effects on frogs and snake improperly defers, without performance criteria, (1) what the enhancement will be, (2) the specific performance indicators and success criteria, (3) what the contingency measures will be for mitigations that do not meet performance criteria, and (4) where the funding will come from.

111.    The EA/FONSI fail to properly analyze mitigations for impacts to wetlands and threatened species by discussing the feasibility of avoiding and minimizing Project construction and operational impacts.

112.     The EA/FONSI fail to discuss how potential "enhancement" of habitat adequately compensates for the loss of 10.83 acres of habitat.

113.    The EA/FONSI contain an inadequate discussion of alternatives. The EA/FONSI fail to disclose the earlier proposed "Narrow Median" alternative described only in the Final Project Report, discuss feasibility of this alternative, or explain the reasons and facts supporting its rejection, despite evidence that this alternative could "substantially lessen or avoid environmental impacts," especially impacts to wetlands and endangered species habitat.

114.    Defendants violated NEPA by issuing a Draft EA which was fundamentally and dramatically deficient. In the absence of legally required information and analysis concerning the proposed Project, the public could not evaluate the proposed Project's potential for impacts. Caltrans' Draft EA was so deficient it rendered public comment effectively meaningless, in violation of NEPA's requirements to provide members of the public with sufficient environmental information to permit them to weigh in and to inform agency decision-making.

115.    The proposed Project is a major federal action significantly affecting the quality of the human environment for which Caltrans must prepare an EIS. It is an action requiring an EIS because, among other things: the proposed Project may or will have a significant environmental effect within the meaning of the criteria set forth in 40 C.F.R. § 1508.27, the proposed Project will have more than a minimal impact on lands

protected under Section 4(f) of the Department of Transportation Act, and the Draft EA, EA/FONSI, in conjunction with Caltrans' responses to comments and other information in the record, raise a substantial question as to whether the proposed Project may have a significant effect on the environment.

116.    FHWA, Caltrans and Dougherty approval of the Project without compliance with NEPA is arbitrary and capricious and an abuse of discretion. Pursuant to 5 U.S.C. §§ 702 and 706, FHWA, Caltrans, and Dougherty should be compelled to take action that has been unlawfully withheld or unreasonably delayed, and to set aside their decisions to approve and implement the Project without complying with NEPA.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**SEVENTH CLAIM FOR RELIEF**
**Violation of Administrative Procedure Act**
**5 U.S.C. § 706(1) & (2)**
**Against FHWA, Caltrans, Malcolm Dougherty, and FWS**

**Request for Declaratory Relief and Injunction to Compel FWS**
**to Set Aside the January 2012 Biological Opinion**

117.    Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein.

118.    On January 26, 2012 FWS improperly issued a biological opinion to Caltrans for the Project. ESA section 7(a)(2) requires that FWS use the best scientific and commercial data available when consulting with an action agency, and detail how the agency action will affect listed species and their critical habitat. 16 U.S.C. § 1536(a)(2), (b)(3)(A). In particular, FWS regulations require that FWS evaluate the current status of the listed species or critical habitat, the effects of the action and cumulative effects on the listed species or critical habitat. 50 C.F.R. § 402.14(g)(2)-(3). FWS must then formulate its biological opinion as to whether the action, taken together with cumulative effects, is likely to jeopardize the survival and recovery of the species or result in destruction or adverse modification of critical habitat. 50 C.F.R. §§ 402.12(g)(4), 202.02. Only actions reasonably certain to occur may be considered in determining

whether a project jeopardizes species survival and recovery. 50 C.F.R. § 402.02. As described below, the BiOp failed to comply with these ESA requirements.

119.    First, FWS failed to use the best scientific and commercial information available when analyzing the effects and cumulative effects of the Project; did not properly consider harm and harassment effects to the Listed Species from species isolation related to Project barriers, loss of habit connectivity from the loss of the northern cross-culvert and junction box, the Project's change to the hydrology of species habitat on both sides of the Highway, and the reduced effects to species from a narrower median alternative.

120.    In addition, the BiOp has improperly included in its "Effects of the Action" discussion, and thus as part of the basis for its determination that the Project will not jeopardize the survival and recovery of the Listed Species, federal and City actions that are not reasonably certain to occur. This violates 50 C.F.R. § 402.02. The BiOp relied on a conservation measure of preservation  of 5.14 acres of City of Pacifica land in a conservation easement and enhancing 5.46 acres of NPS land adjacent to the Project area. This mitigation is not feasible as the 5.14 acre City of Pacifica parcel is already required to be preserved and enhanced; therefore, this same parcel will not increase the amount of habitat secure from threats or preserve the land, as the BiOp erroneously presumes. In addition, the mitigation is not reasonably certain to occur and is not feasible as neither Caltrans, the City of Pacifica nor the NPS/GGNRA has committed to implement or pay for Caltrans' proposed compensatory mitigation.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**EIGHTH CLAIM FOR RELIEF**
**Violation of the Administrative Procedure Act**
**5 U.S.C. § 706(1) and (2)**
**Against FHWA, Caltrans, and Malcolm Dougherty**

**Request for Declaratory Relief and Injunction**
**to Compel Defendants to Set Aside Project Approval and to Enjoin Project Implementation**

Complaint for Declaratory and Injunctive Relief

121.    Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein.

122.    Caltrans, Dougherty and FHWA approval of the Project without a CWA section 404 permit is arbitrary and capricious and an abuse of discretion.

123.    Caltrans, Dougherty and FHWA approval of the Project without a valid ESA section 7 consultation is arbitrary and capricious and an abuse of discretion. The ESA section consultation was inadequate because Caltrans, Dougherty and FHWA failed to provide the FWS with accurate descriptions of the Project, the specific area affected, the manner in which the Project may affect the Listed Species, and the best scientific and commercial data available. The consultation was also inadequate because FWS failed to use the best scientific and commercial information available and relied on mitigation measures that were not reasonably certain to occur in analyzing whether the proposed Project would likely jeopardize the Listed Species' survival and recovery.

124.    The consultation was also inadequate because it failed to include the NPS, an action agency for purposes of the Project given NPS' ownership and control of the land upon which part of the Project will occur. The NPS requested that Caltrans include NPS in the consultation with the FWS as inclusion of NPS was "integral to offsetting incidental take from the project," and also as NPS would need approval from FWS to have work performed in habitat suitable for the listed species. Caltrans' Final Project Report recognizes that NPS approval is required for the Project's proposed mitigation measures including use of GGNRA lands and proposed enhancement measures.

125.    Caltrans, Dougherty and FHWA reliance on an invalid BiOp to meet their ESA substantive section 7 duty to avoid jeopardy is arbitrary and capricious and abuse of discretion.  The BiOp "no jeopardy" conclusion is flawed because Caltrans did not provide FWS with accurate descriptions of the Project, the specific area affected, the manner in which the Project may affect listed species; and the best scientific and commercial data available. In addition, the BiOp is flawed because it relied on mitigation measures that are not reasonably certain to occur in analyzing whether the Project is not likely to jeopardize the Listed Species survival and recovery. The BiOp is

also flawed because FWS did not use the best scientific and commercial information available.

126.    FHWA, Caltrans and Dougherty approval of the Project without a valid and complete analysis as required by section 4(f) of the Federal Transportation Act is arbitrary and capricious and an abuse of discretion.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### NINTH CLAIM FOR RELIEF
**Violation of the Administrative Procedure Act**
**5 U.S.C. § 706(1) and (2)- against the Corps**

**Request for Declaratory Relief and Injunction**
**to Compel Corps to Engage in Formal ESA § 7 Consultation and Act on City's 404 Permit Application**

127.    Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein.

128.    In February 2003, the City applied to the Corps for a CWA section 404 permit for the Project. On July 3, 2003 the Corps informed the City that a section 404 permit was required for the Project, but the Corps never issued or denied the requested permit. The Corps' decision to forgo action on the City's application for a 404 permit was arbitrary, capricious, and an abuse of discretion.

129.    On February 10, 2010, Caltrans requested a Corps jurisdictional determination of the extent of waters of the United States within the area to be affected by the Project, and claimed the Project affected 0.87 acres of wetlands, waters and other waters of the United States. The Corps never issued a jurisdictional determination. The Corps' decision to forgo action on the request for a jurisdictional determination was arbitrary, capricious, and an abuse of discretion.

130.    On March 27, 2003 the Corps initiated informal consultation with the FWS concerning the City's application for a CWA section 404 permit for the Project. The Corps requested FWS concurrence that the Project may affect, but is not likely to adversely affect, the Listed Species. On July 22, 2003, the FWS responded to the Corps' March 27, 2003 request for concurrence. The FWS informed the Corps that FWS did not

concur that the Project, including the fill of 0.83 acres of aquatic habitat as proposed, would not adversely impact the Listed Species. FWS recommended the Corps complete formal ESA section 7 consultation. However, the Corps never formally consulted with the FWS. The Corps' decision to forgo formal consultation with FWS concerning the 404 permit for the Project, when FWS specifically refused to concur that the Project would have "no adverse impact," was arbitrary and capricious and an abuse of discretion. Plaintiffs are aggrieved by the above described Corps' actions. Pursuant to 5 U.S.C. §§ 702 and 706, the Corps should be compelled  to take action that has been unlawfully withheld or unreasonably delayed, and to set aside its decisions to forgo formal consultation with FWS concerning a CWA section 404 permit for the Project and to pursue issuance of a CWA section 404 permit for the Project.

## TENTH CLAIM FOR RELIEF
### Violation of the Administrative Procedure Act
### 5 U.S.C. § 706(1) and (2)
### Against FHWA, Caltrans, and Malcolm Dougherty

### Request for Declaratory Relief and Injunction
### to Compel Defendants to Set Aside Approval of Project and to Enjoin
### Project Implementation

131.   Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein.

132.   The Project as approved by FHWA, Caltrans, and Dougherty will involve the discharge of dredged or fill material to waters of the United States as described above. In conjunction with the City, the FHWA, Caltrans, and Dougherty have decided to approve and to proceed with implementation of the Project without acquiring a CWA section 404 permit or acquiring a CWA section 401 certification from the State of California and then submitting such section 401 certification to the Corps in conjunction with a request for a CWA section 404 permit for the discharge of dredged or fill material that is part of the Project.

133.   Plaintiffs are aggrieved by the above described actions by FHWA, Caltrans, and Dougherty. Pursuant to 5 U.S.C. §§ 702 and 706, FHWA, Caltrans, and Dougherty should be compelled to take action that has been unlawfully withheld or unreasonably

delayed, and to set aside their decisions to approve and implement the Project without a CWA section 404 permit or CWA section 401 certification for the Project.

### ELEVENTH CLAIM FOR RELIEF
**Violation of the Coastal Zone Management Act**
**16 U.S.C. § 1456**
**Against FHWA, Caltrans, and Malcolm Dougherty**

**Request for Declaratory Relief and Injunction to Compel**
**Defendants to Comply with CZMA**

134.     Plaintiffs reassert and reallege each of the preceding paragraphs as if set forth herein.

135.     The Project will be constructed entirely within California's coastal zone as that term is defined by the CZMA. As approved by FHWA, Caltrans, and Dougherty the Project will not be carried out in a manner which is consistent to the maximum extent practicable with the enforceable policies of California's approved Coastal Management Program (CMP). Accordingly, the FHWA, Caltrans, and Dougherty's decision to issue final approval for the Project is in violation of the substantive requirements of the CZMA, 16 U.S.C. §1456(c)(1)(A).

136.     FHWA, Caltrans, and Dougherty have a procedural duty under the CZMA to ensure consistency of their proposed action with the CMP by submitting a "consistency determination " to the relevant State agency, which is the California Coastal Commission.  16 U.S.C. § 1456(c)(1)(C);  see also 15 C.F.R. §  930.36. On information and belief, Plaintiffs allege that FHWA, Caltrans, and Dougherty have never submitted such a consistency determination. Furthermore, FHWA, Caltrans, and Dougherty have never received concurrence from the California Coastal Commission with any such consistency determination, and thus lack the CZMA approval necessary to have issued final approval for and to proceed with the Project.  15 C.F.R. §  930.41.

### TWELFTH CLAIM FOR RELIEF
**(Injunctive Relief)**

137.     Plaintiffs incorporate by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

138.    The Project as approved would cause irreparable injury and harm to biological resources, to Plaintiffs, and to the public at large. Its significant environmental impacts have not been adequately evaluated, much less mitigated to a less than significant level, and feasible and reasonable alternatives have not been properly evaluated as required by law and as set forth in this Complaint.

139.    The errors and arbitrary and capricious conduct by Defendants constitute the bases for injunctive relief to prevent this irreparable injury pursuant to Rule 65 of the Federal Rules of Civil Procedure and other applicable law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## REMEDY

140.    Plaintiffs have no plain, speedy, and adequate remedy, in the ordinary course of law, other than the relief sought in this Complaint, because there is no other mechanism for compelling Defendants' compliance with the ESA, CWA, section 4(f) of the Federal Transportation Act, NEPA, the APA and the CZMA as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.    A declaratory judgment establishing that Defendants are in violation of the ESA, CWA, section 4(f) of the Federal Transportation Act, NEPA the APA, and the CZMA as alleged herein.

2.    An interlocutory and permanent injunction preventing Defendants from engaging in activity in furtherance of the Project until Defendants comply with the ESA, CWA, section 4(f) of the Federal Transportation Act, NEPA, the APA, and the CZMA as alleged herein.

3.    An interlocutory and permanent injunction requiring Defendants to reinitiate and complete ESA section 7(a)(2) consultation on the Project.

4.    Set aside Defendants' approval of the EA/FONSI, including certification of the Final Environmental Impact Report/Environmental Assessment and Section 4(f) Evaluation, and all related findings and approvals, and require Defendants to follow federal statutes and regulations, including NEPA and Section 4(f) of the Department of

Transportation Act of 1966, 23 U.S.C. § 138, 49 U.S.C. § 309 in any review of and decision for the Proposed Project;

     5.     An award of attorneys' fees and costs to Plaintiffs.

     6.     Such other and further relief as this Court deems just and proper.

Dated: May 8, 2015

                                    By: /s/ Patricia Weisselberg

                                      Brian Gaffney
                                      Christopher A. Sproul
                                      Patricia Weisselberg
                                      for Plaintiffs