Christopher A. Sproul (Bar No. 126398)
Jodene Isaacs (Bar No. 226895)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Tel: (415) 533-3376, (510) 847-3467
Fax: (415) 358-5695
csproul@enviroadvocates.com
jisaacs@enviroadvocates.com

Brian Gaffney (Bar No. 168778)
LAW OFFICES OF BRIAN GAFFNEY APC
446 Old County Road, Suite 100-310
Pacifica, CA 94044
Tel: (650) 219-3187
Fax: (650) 733-7793
brian@gaffneylegal.com

Patricia Weisselberg (Bar No. 253015)
LAW OFFICE OF PATRICIA WEISSELBERG
115 Oakdale Avenue
Mill Valley, CA 94941
Tel: (415) 388-2303
pweisselberg@wans.net

Attorneys for Plaintiffs
PACIFICANS FOR A SCENIC COAST,
PACIFICANS FOR HIGHWAY 1
ALTERNATIVES, and CENTER FOR
BIOLOGICAL DIVERSITY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFICANS FOR A SCENIC COAST, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL HIGHWAY ADMINISTRATION, et al., <br><br> Defendants | Case No. 3:15-cv-02090-VC <br><br> **STIPULATION AND ~~[PROPOSED]~~ ORDER TO DISMISS DEFENDANTS FEDERAL HIGHWAY ADMINISTRATION AND U.S. ARMY CORPS OF ENGINEERS PURSUANT TO FED. R. CIV. P. 41(a)(2)** |

WHEREAS Claim 1 of the Amended Complaint (ECF No. 21) alleges, *inter alia*, that the United States Army Corps of Engineers ("the Corps") violated its procedural obligation under Section 7 of the Endangered Species Act, 16 U.S.C. § 1536(a)(2), by failing to formally consult with the U.S. Fish and Wildlife Service ("FWS") concerning the impacts of an application submitted by the City of Pacifica to the Corps for a permit under section 404 of the Clean Water Act;

WHEREAS Claim 2 of the Amended Complaint alleges, *inter alia*, that the Corps violated its substantive obligation under Section 7 of the Endangered Species Act, 16 U.S.C. § 1536(a)(2), to ensure that the Project will not jeopardize the survival and recovery of listed species, by forgoing action on the City's application for a 404 permit and forgoing formal consultation with FWS concerning the impacts of the City of Pacifica's permit application under section 404 of the Clean Water Act;

WHEREAS Claim 8 of the Amended Complaint alleges, *inter alia*, that the Corps' failure to act on the City of Pacifica's February 2003 application to the Corps "for a [Clean Water Act ("CWA")] permit for the Project" is arbitrary and capricious in violation of Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), and that the Corps' inaction violates the APA, 5 U.S.C. § 706(2), because "action" has been "unlawfully withheld or unreasonably delayed";

WHEREAS on July 27, 2015, the City of Pacifica withdrew the 2003 Joint Aquatic Resources Permit Application upon which Plaintiffs base the portions of Claims 1, 2, and 8 against the Corps described above;

WHEREAS, claims based upon the City of Pacifica's withdrawn Application are now moot;

WHEREAS Plaintiffs therefore withdraw Claims 1, 2, and 8 to the extent they are based on the Corps' inaction on the City of Pacifica's Application;

WHEREAS Plaintiffs further voluntarily withdraw the remainder of Claim 8 against the Corps; and

WHEREAS there are no other pending allegations against the Corps,

NOW THEREFORE the Parties hereby stipulate as follows:

1.      The Federal Highway Administration (FHWA) contends it is not a proper party to this action under 23 U.S.C. § 327.  For purposes of this Stipulation, Plaintiffs do not dispute that contention.

2.     The United States Army Corps of Engineers ("Corps") contends it is not a proper party to this action for the reasons provided above.  For purposes of this Stipulation, Plaintiffs do not dispute that contention.

3.     In view of the foregoing, Plaintiffs voluntarily dismiss, without prejudice, all of their claims against the FHWA and the Corps, subject to the following terms:

a.     The State Route 1/Calera Parkway/Highway 1 Widening Project is encompassed within the assignment and assumption of duties memorialized in the Memorandum of Understanding ("MOU") between the FHWA and the California Department of Transportation ("Caltrans"), dated June 2007 and renewed September 2012, which MOU is attached hereto as Exhibit A;

b.     Pursuant to the MOU and 23 U.S.C. § 327(a)(2), Caltrans has assumed, subject to the terms and conditions set forth in 23 U.S.C. § 327 and the MOU, all of the U.S. Department of Transportation Secretary's responsibilities for review, consultation, or other such action pertaining to the review or approval of the State Route 1/Calera Parkway/Highway 1 Widening Project under the National Environmental Policy Act and as required under the federal laws enumerated at Part 3.2 of the MOU;

c.     No Party will argue in this proceeding that either the FHWA or the Corps is an indispensable party, or that either the FHWA or the Corps is necessary for the resolution of this matter; and

d.     This Stipulation is not intended to limit the Court's ability to retain jurisdiction over the action or to accord complete relief in this action among the remaining parties.

4.     To the extent that Claims 1, 2, and 8 are based upon or otherwise rely upon the City of Pacifica's 2003 CWA section 404 permit application, Plaintiffs hereby withdraw any such claims for relief against the Corps and also withdraw any remaining claims against the Corps in Claim 8.

Dated September 3, 2015

/s/Patricia Weisselberg
Christopher A. Sproul (Bar No. 126398)
Jodene Isaacs (Bar No. 226895)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Tel: (415) 533-3376, (510) 847-3467
Fax: (415) 358-5695
csproul@enviroadvocates.com
jisaacs@enviroadvocates.com

Brian Gaffney (Bar No. 168778)
LAW OFFICES OF BRIAN GAFFNEY APC
446 Old Country Road, Suite 100-310
Pacifica, CA 94044
Tel: (650) 219-3187
Fax: (650) 733-7793
brian@gaffneylegal.com

Patricia Weisselberg (Bar No. 253015)
LAW OFFICE OF PATRICIA WEISSELBERG
115 Oakdale Avenue
Mill Valley, CA 94941
Tel: (415) 388-2303
pweisselberg@wans.net

*Attorneys for Plaintiffs*
PACIFICANS FOR A SCENIC COAST,
PACIFICANS FOR HIGHWAY 1
ALTERNATIVES, and CENTER FOR
BIOLOGICAL DIVERSITY

JOHN C. CRUDEN
Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

/s/ Sean C. Duffy
SEAN C. DUFFY
Natural Resources Section
Tel: (202) 305-0445; Fax: (202) 305-0506
Email:  sean.c.duffy@usdoj.gov
SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Chief
ALISON C. FINNEGAN, Trial Attorney
Wildlife & Marine Resources Section
Tel: (202) 305-0500; Fax: (202) 305-0275
Email:  alison.c.finnegan@usdoj.gov
LESLIE M. HILL
Environmental Defense Section
Tel: (202) 514-0375; Fax: (202) 514-8865
Email: leslie.hill@usdoj.gov
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044-7611

*Attorneys for the Federal Defendants*

/s/ Derek S. Van Hoften
JEANNE SCHERER
DAVID GOSSAGE
LUCILLE Y. BACA
DEREK S. VAN HOFTEN
STACY LAU

*Attorneys for Defendants*
CALIFORNIA DEPARTMENT OF
TRANSPORTATION and Malcolm Dougherty

# [~~PROPOSED~~] ORDER

Pursuant to stipulation, IT IS HEREBY ORDERED that:

1.      The Federal Highway Administration and the United States Army Corps of Engineers are not indispensable parties and are not necessary for the resolution of this matter.

2.      The Federal Highway Administration and the United States Army Corps of Engineers are dismissed as defendants in this matter.

Dated: September 4, 2015

_____
Hon. Vince Chhabria
United States District Judge

# EXHIBIT A

## MEMORANDUM OF UNDERSTANDING BETWEEN THE FEDERAL HIGHWAY ADMINISTRATION AND THE CALIFORNIA DEPARTMENT OF TRANSPORTATION CONCERNING THE STATE OF CALIFORNIA'S PARTICIPATION IN THE PROJECT DELIVERY PROGRAM PURSUANT TO 23 U.S.C. 327

THIS MEMORANDUM OF UNDERSTANDING (hereinafter "Project Delivery Program MOU"), made and entered into by and between the FEDERAL HIGHWAY ADMINISTRATION (hereinafter "FHWA"), an administration in the UNITED STATES DEPARTMENT OF TRANSPORTATION (hereinafter "USDOT"), and the CALIFORNIA DEPARTMENT OF TRANSPORTATION (hereinafter "Caltrans"), a department of the State of California, hereby provides as follows:

WITNESSETH:

**Whereas,** Section 6005(a) of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (Pub. L. 109-59 [Aug. 10, 2005]) (hereinafter "SAFETEA-LU"), codified as Section 327 of amended Chapter 3 of Title 23, United States Code (23 U.S.C. 327), established a Surface Transportation Project Delivery Pilot Program (hereinafter "Pilot Program") that allowed the Secretary of the United States Department of Transportation (hereinafter "USDOT Secretary"), to assign, and a limited number of States, including California, to assume the USDOT Secretary's responsibilities under the National Environmental Policy Act of 1969 (42 U.S.C. 4321, et seq.) (hereinafter "NEPA"), and all or part of the USDOT Secretary's responsibilities for environmental review, consultation, or other actions required under any Federal environmental law with respect to one or more highway projects within the State; and

**Whereas,** 23 U.S.C. 327(b) required a State to submit an application to the USDOT Secretary in order to participate in the Pilot Program; and

**Whereas,** on February 12, 2007, the FHWA published a final rule in the *Federal Register,* 72 Fed. Reg. 6464 (codified at 23 C.F.R. Part 773), establishing the requirements relating to the information a State is required to provide to the USDOT Secretary in its application to participate in the Pilot Program; and

**Whereas,** on May 21, 2007, Caltrans submitted its application to the FHWA for participation in the Pilot Program; and

**Whereas,** the FHWA solicited the views of other appropriate Federal agencies concerning Caltrans' application as required by 23 U.S.C. 327(b)(5); and

**Whereas,** the USDOT Secretary, acting by and through the FHWA, approved Caltrans' application, finding that Caltrans met all of the requirements of 23 U.S.C. 327 and 23 C.F.R. Part 773; and

**Whereas,** following FHWA's approval of Caltrans' application, on July 1, 2007, FHWA and

Caltrans entered into a Memorandum of Understanding (hereinafter "Original MOU") under which Caltrans assumed and carried out the assigned duties and responsibilities of the USDOT Secretary under NEPA and other Federal environmental laws under the auspices of the Pilot Program; and

**Whereas,** Section 13.1.1 of the Original MOU established an August 10, 2011 termination date, which was six years after the enactment of SAFETEA-LU; and

**Whereas,** Section 2203(c) of the Continuing Appropriations and Surface Transportation Extensions Act of 2011 (Pub. L. 111-322 [Dec. 22, 2010]) extended the Pilot Program's termination date to August 10, 2012, which was seven years after the enactment of SAFETEA-LU; and

**Whereas,** on August 10, 2011, FHWA and Caltrans entered into Amendment 1 to the Original MOU (hereinafter "Amended MOU1"); and

**Whereas,** Section 5.D. of the Amended MOU1 provided that should Congress enact legislation extending the termination date of the Pilot Program, the August 10, 2012 termination date would automatically be replaced with the appropriate termination date of the Pilot Program as specified in Federal law; and

**Whereas,** Section 7 of the Amended MOU1 provided that as soon as practicable following the potential reauthorization of SAFETEA-LU by Congress, the FHWA and Caltrans shall review the Original MOU, the Amended MOU1, and other applicable MOU amendments, to determine if any further changes are required or desirable as a result of changes in legislation; and

**Whereas,** Section 101(e) of the Temporary Surface Transportation Extension Act of 2012 (Pub. L. 112-140 [June 29, 2012]) extended the duration of the Pilot Program until September 30, 2012; and

**Whereas,** on July 6, 2012, President Obama signed into law Pub. L. 112-141, the Moving Ahead for Progress in the 21st Century Act (hereafter, "MAP-21"); and

**Whereas,** MAP 21 becomes effective on October 1, 2012; and

**Whereas,** Section 1313 of MAP-21 amends 23 U.S.C. 327, making the Pilot Program permanent as the Surface Transportation Project Delivery Program (hereinafter, "Project Delivery Program"), allowing the participation therein of any State, and allowing a State to renew its participation in the program; and

**Whereas,** the USDOT Secretary, acting by and through the FHWA, has performed multiple audits of Caltrans' performance under the Pilot Program since 2008 and determined that Caltrans has met the requirements of 23 U.S.C. 327, the terms of the Original MOU, as amended, and remains in good standing; and

**Whereas,** MAP-21 amends 23 U.S.C. 327(g) to require auditing of a State's compliance only

during the first four years of the assignment; and

**Whereas**, MAP-21 amends 23 U.S.C. 327(h) to require, after the fourth year of a State's participation in the program, the USDOT Secretary to monitor that State's compliance with any written agreement under which that State has assumed the responsibilities of the USDOT Secretary under NEPA and other Federal environmental laws; and

**Whereas**, the USDOT Secretary, acting by and through the FHWA, has taken into consideration Caltrans' original application for the program and that agency's program performance since July 1, 2007; and

**Whereas**, MAP-21 amends 23 U.S.C. 327(b)(2) to require the USDOT Secretary to amend the program application regulations; and

**Whereas**, the FHWA and Caltrans understand that a new Project Delivery Program MOU must be executed after the adoption of amended program regulations for the application and approval of assignment responsibilities for surface transportation projects;

**Now, therefore,** the FHWA and Caltrans agree as follows:

## PART 1. PURPOSE OF MEMORANDUM OF UNDERSTANDING

### 1.1    Purpose

1.1.1    This Project Delivery Program MOU approves Caltrans' participation in the Surface Transportation Projected Delivery Program as set forth in 23 U.S.C. 327, and constitutes the written agreement required pursuant to 23 U.S.C. 327(a)(2)(A), (C), and (c) under which the USDOT Secretary may assign, and Caltrans may assume, the responsibilities of the USDOT Secretary for Federal environmental laws with respect to one or more highway projects within the State of California.

1.1.2    The FHWA's decision to execute this Project Delivery Program MOU is based upon the information, representations, and commitments contained in Caltrans' May 21, 2007, application to participate in the Pilot Program, as well as Caltrans' performance in the program since July 1, 2007.  It also is based on the continuing waiver of sovereign immunity, required in 23 U.S.C. Section 327(c)(3)(B), as evidenced in California Street and Highways Code Section 820.1. As such, this Project Delivery Program MOU incorporates the May 21, 2007, application by reference.  However, this Project Delivery Program MOU shall control to the extent there is any conflict between this Project Delivery Program MOU and the May 21, 2007, application.

### 2.1    Terms and Conditions

2.1.1    Except as provided in Section 2.1.2, 2.1.3 and 3.1.2, this Project Delivery Program MOU hereby incorporates by reference the terms and conditions contained in the Original MOU, as amended by the Amended MOU1. However, the provisions of 23 U.S.C. 327, as

amended by MAP-21, shall control to the extent there is any conflict between this Project Delivery Program MOU and the statute.

2.1.2.   Notwithstanding the provisions of Part 11, Sections 11.1 through 11.4, of the Original MOU, for purposes of the Project Delivery Program Caltrans shall be subject to the monitoring requirements of 23 U.S.C. 327(h), as amended by MAP-21.

2.1.3   Section 13.2 of the Original MOU, as amended, shall be modified by:

> A. replacing the date "January 1, 2012" with the date "January 1, 2017" in the two places it appears;
> B. replacing the date "July 1, 2011" with "July 1, 2016";
> C. replacing the date "September 30, 2011" with "September 30, 2016."

## 3.1   Effective Date and Duration

3.1.1.   This Project Delivery Program MOU shall take effect on October 1, 2012, or the date of the last signature below, whichever is later (hereinafter "Effective Date"). This Project Delivery Program MOU shall remain in effect until replaced by a subsequent FHWA-Caltrans MOU entered into under the terms of regulations promulgated by FHWA for implementing the Project Delivery Program pursuant to the provisions of 23 U.S.C. 327(b)(2), as amended by MAP-21. Provided, however, that this Project Delivery Program MOU shall have a term not to exceed eighteen months from the effective date of the final regulations promulgated pursuant to 23 U.S.C. 327(b)(2).

3.1.2   All references in the Original MOU, as amended, to the Pilot Program termination date shall be replaced with "eighteen months from the effective date of the final regulations promulgated pursuant to 23 U.S.C. 327(b)(2)."

## 4.1   Termination at Will

4.1.1.   In addition to the Termination by Operation of Law and Termination for Cause provisions in the Original MOU, as amended, and consistent with 23 U.S.C. 327(j)(2), as amended by MAP-21, Caltrans may terminate its participation in the Project Delivery Program at any time by providing a written notice to FHWA no later than ninety (90) calendar days before the date of termination, subject to applicable terms and conditions as the Secretary, acting by and through the FHWA, may provide.

IN WITNESS THEREOF, the parties hereto have caused this Project Delivery Program MOU to be duly executed in duplicate as of the date of the last signature below. This Project Delivery Program MOU is effective on the Effective Date as specified in section 3.1.1.

**Federal Highway Administration**

Victor M. Mendez
Administrator
Federal Highway Administration

Date: 09/25/2012

**California Department of Transportation**

Date: 9/21/2012

Malcolm Dougherty
Director
California Department of Transportation

Date: 9/4/12

Ronald Beals
Chief Counsel
California Department of Transportation
Signing only as to the continuing waiver of sovereign immunity contained in Section 1.1.2 of this MOU and as to form.

# MEMORANDUM OF UNDERSTANDING BETWEEN THE FEDERAL HIGHWAY ADMINISTATION AND THE CALIFORNIA DEPARTMENT OF TRANSPORTATION CONCERNING THE STATE OF CALIFORNIA'S PARTICIPATION IN THE SURFACE TRANSPORTATION PROJECT DELIVERY PILOT PROGRAM

THIS MEMORANDUM OF UNDERSTANDING (hereinafter "MOU"), made and entered into by and between the FEDERAL HIGHWAY ADMINISTRATION (hereinafter "FHWA"), an administration in the UNITED STATES DEPARTMENT OF TRANSPORTATION (hereinafter "USDOT"), and the CALIFORNIA DEPARTMENT OF TRANSPORTATION (hereinafter "Caltrans"), a department of the State of California, hereby provides as follows:

WITNESSETH:

**Whereas**, Section 6005(a) of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (P.L. 109-59) (hereinafter "SAFETEA-LU"), codified as Section 327 of amended Chapter 3 of Title 23, United States Code (23 U.S.C. 327), establishes a Surface Transportation Project Delivery Pilot Program (hereinafter "Pilot Program") that allows the Secretary of the United States Department of Transportation (hereinafter "USDOT Secretary"), to assign, and a State to assume, the USDOT Secretary's responsibilities under the National Environmental Policy Act of 1969 (42 U.S.C. 4321, et seq.) (hereinafter "NEPA"), and all or part of the USDOT Secretary's responsibilities for environmental review, consultation, or other action required under any Federal environmental law with respect to one or more highway projects within the State; and

**Whereas**, 23 U.S.C. 327(b) requires a State to submit an application to the USDOT Secretary in order to participate in the Pilot Program; and

**Whereas**, on February 12, 2007, the FHWA published a final rule in the *Federal Register*, 72 Fed. Reg. 6464 (to be codified at 23 C.F.R. Part 773), establishing the requirements relating to the information a State is required to provide to the USDOT Secretary in its application to participate in the Pilot Program; and

**Whereas**, on May 21, 2007, Caltrans submitted its application to the FHWA for participation in the Pilot Program; and

**Whereas**, the FHWA has solicited the views of other appropriate Federal agencies concerning Caltrans' application as required by 23 U.S.C. 327(b)(5); and

**Whereas**, the USDOT Secretary, acting by and through the FHWA, has determined that Caltrans' application meets all of the requirements of 23 U.S.C. 327 and 72 Fed. Reg. 6464 (2007) (to be codified at 23 C.F.R. Part 773) with respect to the Federal environmental laws and highway projects identified in this MOU;

**Now, therefore**, the FHWA and Caltrans agree as follows:

## PART 1.  PURPOSE OF MEMORANDUM OF UNDERSTANDING

### 1.1    Purpose

1.1.1    This MOU officially approves Caltrans' application to participate in the Pilot Program and is the written agreement required pursuant to 23 U.S.C. 327(a)(2)(A) and (c) under which the USDOT Secretary may assign, and Caltrans may assume, the responsibilities of the USDOT Secretary for Federal environmental laws with respect to one or more highway projects within the State of California.

1.1.2    The FHWA's decision to execute this MOU is based upon the information, representations, and commitments contained in Caltrans' May 21, 2007 application. As such, this MOU incorporates the May 21, 2007 application.  However, this MOU shall control to the extent there is any conflict between this MOU and the May 21, 2007 application.

1.1.3    This MOU shall be effective on July 1, 2007 or the date of the last signature below, whichever occurs later (hereinafter the "Effective Date").

## PART 2.  [RESERVED]

## PART 3.  ASSIGNMENTS AND ASSUMPTIONS OF RESPONSIBILITY

### 3.1    Assignments and Assumptions of NEPA Responsibilities

3.1.1    Pursuant to 23 U.S.C. 327(a)(2)(A), on the Effective Date, the FHWA assigns, and Caltrans assumes, subject to the terms and conditions set forth in 23 U.S.C. 327 and this MOU, all of the USDOT Secretary's responsibilities under NEPA (42 U.S.C. 4321-43351, 23 CFR Parts 771, 40 CFR 1500-1508), with the exception of the responsibilities concerning certain categorical exclusions which have been assigned to Caltrans under a June 7, 2007 MOU as provided in section 3.1.2.

3.1.2    The FHWA and Caltrans entered into a MOU dated June 7, 2007 that assigned FHWA's responsibilities for determining whether certain projects are categorically excluded from the requirement to prepare environmental assessments or environmental impact statements to Caltrans.  The June 7, 2007 MOU also assigns certain other environmental responsibilities for categorical exclusion projects.  On the Effective Date, all responsibilities concerning categorical exclusion determinations not assigned by FHWA and assumed by Caltrans under the June 7, 2007 MOU are assigned by the FHWA and assumed by Caltrans under this MOU.

**3.2    Assignments and Assumptions of Federal Environmental Laws Other Than NEPA**

3.2.1    Pursuant to 23 U.S.C. 327(a)(2)(B), on the Effective Date, the FHWA assigns and Caltrans hereby assumes, subject to the terms and conditions set forth in 23 U.S.C. 327 and this MOU, all of the USDOT Secretary's responsibilities for environmental review, consultation, or other such action pertaining to the review or approval of a specific project as required under the following federal environmental laws:

A.  Clean Air Act (CAA) (42 U.S.C. 7401-7671(q)), except for conformity determinations required under section 176 of the CAA (42 U.S.C.7506)
B.  Compliance with the noise regulations at 23 CFR Part 772
C.  Section 7 of the Endangered Species Act of 1973, 16 U.S.C. 1531-1544, and Section 1536
D.  Marine Mammal Protection Act, 16 U.S.C. 1361
E.  Anadromous Fish Conservation Act, 16 U.S.C. 757(a)-757(g)
F.  Fish and Wildlife Coordination Act, 16 U.S.C. 661-667(d)
G.  Migratory Bird Treaty Act, 16 U.S.C. 703-712
H.  Magnuson-Stevenson Fishery Conservation and Management Act of 1976, as amended, 16 U.S.C. 1801 et seq.
I.  Section 106 of the National Historic Preservation Act of 1966, as amended, 16 U.S.C. 470(f) et seq.
J.  Archeological Resources Protection Act of 1977, 16 U.S.C. 470(aa)-11
K.  Archeological and Historic Preservation Act, 16 U.S.C. 469-469(c)
L.  Native American Grave Protection and Repatriation Act (NAGPRA), 25 U.S.C. 3001-3013
M.  American Indian Religious Freedom Act, 42 U.S.C. 1996
N.  Farmland Protection Policy Act (FPPA), 7 U.S.C. 4201-4209
O.  Clean Water Act, 33 U.S.C. 1251-1377: Section 404, Section 401, and Section 319
P.  Coastal Barrier Resources Act, 16 U.S.C. 3501-3510
Q.  Coastal Zone Management Act, 16 U.S.C. 1451-1465
R.  Land and Water Conservation Fund Act (LWCF), 16 U.S.C. 4601-4604
S.  Safe Drinking Water Act (SDWA), 42 U.S.C. 300(f)-300(j)(6)
T.  Wild and Scenic Rivers Act, 16 U.S.C. 1271-1287
U.  Emergency Wetlands Resources Act, 16 U.S.C. 3921, 3931
V.  Mitigation of Impacts to Wetlands and Natural Habitat, 23 CFR Part777
W.  TEA-21 Wetlands Mitigation, 23 U.S.C. 103(b)(6)(m), 133(b)(11)
X.  Flood Disaster Protection Act, 42 U.S.C. 4001-4128
Y.  23 U.S.C. 138 and Section 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. 303 and implementing regulations at 23 CFR Part 774
Z.  Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. 9601-9675
AA. Superfund Amendments and Reauthorization Act of 1986 (SARA)

BB. Resource Conservation and Recovery Act (RCRA), 42 U.S.C. 6901-6992(k)
CC. E.O. 11990 - Protection of Wetlands
DD. E.O. 11988 - Floodplain Management
EE. E.O. 12898 - Federal Actions to Address Environmental Justice in
    Minority Populations and Low Income Populations
FF. E.O. 13112 - Invasive Species

3.2.2   Caltrans is responsible for complying with the requirements of any applicable environmental law regardless of its inclusion in sections 3.1.1 and 3.2.1

3.2.3   The USDOT Secretary's responsibilities for government-to-government consultation with Indian tribes as defined in 36 C.F.R. 800.16(m) may not be assumed by Caltrans under this MOU.  FHWA remains responsible for all government-to-government consultation, including initiation of tribal consultation, unless otherwise agreed as described in this section.  A notice from Caltrans to an Indian tribe advising the tribe of a proposed activity is not considered "government-to-government consultation" within the meaning of this MOU.  If FHWA determines based on the consultation process that Caltrans has adequately resolved any project-specific tribal issues or concerns, then the FHWA's role in the environmental process shall be limited to carrying out the government-to-government consultation process.  If a project-related concern or issue is raised in a government-to-government consultation process with an Indian tribe, as defined in 36 CFR 800.16(m), and is related to NEPA or another federal environmental law for which Caltrans has assumed responsibilities under this MOU, and either the Indian tribe or the FHWA determines that the issue or concern will not be satisfactorily resolved by Caltrans, then the FHWA shall reassume all or part of the responsibilities for processing the project.  In this case, the provisions of section 9.1 concerning FHWA initiated reassumptions shall apply.  This MOU is not intended to abrogate, or prevent future entry into, any agreement among Caltrans, the FHWA, and a tribe under which the tribe agrees to permit Caltrans to administer government-to-government consultation activities for the FHWA. However, such agreements are administrative in nature and do not relieve the FHWA of its legal responsibility for government-to-government consultation.

3.2.4   Nothing in this MOU shall be construed to permit Caltrans' assumption of the USDOT Secretary's responsibilities for conformity determinations required under section 176 of the Clean Air Act (42 U.S.C. 7506) or any responsibility under 23 U.S.C. 134 and 135.

3.2.5   On the first page of each environmental assessment (EA), finding of no significant impact (FONSI), environmental impact statement (EIS), record of decision (ROD), and 4(f) evaluation, Caltrans shall insert the following language in a way that is conspicuous to the reader:

"The environmental review, consultation, and any other action required in accordance with applicable Federal laws for this project is being, or has been, carried-out by Caltrans under its assumption of responsibility pursuant to 23 U.S.C. 327."

### 3.3    Highway Projects

3.3.1    The assignments and assumptions of the USDOT Secretary's responsibilities under sections 3.1.1 and 3.2.1, above, shall only apply with respect to the environmental review, consultation, or other action pertaining to the review or approval of the following classes of highway projects located within the State of California:

A.    All Class I, or environmental impact statement (EIS) projects, both on the State Highway System (SHS) and Local Assistance Projects off the SHS, with the exception of the following projects:
  i.     District 1:  Eureka/Arcata Corridor Improvement
  ii.    District 3: Interstate 5/Consumnes River Boulevard Interchange
  iii.   District 3: Placer Parkway Corridor Preservation
  iv.    District 4: Doyle Drive
  v.     District 4: Marin-Sonoma Narrows
  vi.    District 5:  Santa Cruz Auxiliary Lanes Soquel to Morrisey
  vii.   District 7: I-5 Widening – Orange County Line to Route 605
  viii.  District 8: Big Bear Lake Bridge Replacement
  ix.    District 12: Southern Orange County Transportation Infrastructure Improvement Program (SOCTIIP)
  x.     District 12: Orange County Gateway

B.    All Class II, or Categorically Excluded, projects that do not qualify for assignment of responsibilities pursuant to the June 7, 2007 MOU, both on the SHS and Local Assistance projects off the SHS, with the exception of the following project:
  i.     District 4: BART Seismic Retrofit of the Aerials Structures and Stations Along the Fremont, Concord, Richmond, and Daly City Lines

C.    All Class III, or environmental assessment (EA) projects, both on the SHS and Local Assistance projects off the SHS, with the exception of the following projects:
  i.     District 4:  Caldecott Improvement Project on State Route 24
  ii.    District 4: Ala-880 Southbound HOV Lane Extension – Hegenberger to Marina Boulevard
  iii.   District 4: SM-101, Widen and Add Auxiliary Lanes from March Road to Embarcadero
  iv.    District 5:  Highway 1 Congestion Management Study – Santa Cruz HOV Lanes
  v.     District 6:  Fre-99 Island Park 6-lane
  vi.    District 6: Mad-99 Avenue 12 Interchange Reconstruction
  vii.   District 8: Needles Highway Safety Realignment Project
  viii.  District 9: Iny-395 Olancha to Cartago 4 Lane
  ix.    District 10: SJ-99 South Stockton Widen Freeway from 4 to 6 Lanes
  x.     District 10: SJ-99 Manteca 6-Lane
  xi.    District 10: SJ-205 Auxiliary Lanes in Tracy

3.3.2    Specifically excluded from the list in section 3.3.1 of highway projects and classes of highway projects are: (1) any highway projects that are designated under Executive Order 13274; (2) any Federal Lands highway projects unless such projects will be designed and constructed by Caltrans; or (3) any highway projects funded under chapter 53 of title 49, United States Code.  Also, the list of highway projects and classes of highway projects in section 3.3.1 specifically excludes multi-state and international highway projects. The definition of "highway project" is found at 23 CFR 773.103.

## 3.4    Limitations

3.4.1    As provided at 23 U.S.C. 327(e), Caltrans shall be solely responsible and solely liable for carrying out all of the responsibilities it has assumed under this section.

3.4.2    As provided at 23 U.S.C. 327(a)(2)(D), any highway project or responsibility of the USDOT Secretary that is not explicitly assumed by Caltrans under this MOU remains the responsibility of the USDOT Secretary.

## PART 4.  CERTIFICATIONS AND ACCEPTANCE OF JURISDICTION

## 4.1    Certifications

4.1.1    Caltrans hereby makes the following certifications:
   A.    Caltrans has the legal authority to accept all the assumptions of responsibility identified in part 3 of this MOU;
   B.    Caltrans has the legal authority to take all actions necessary to carry out all of the responsibilities it has assumed under part 3 of this MOU;
   C.    Caltrans has the legal authority to execute this MOU;
   D.    The State of California currently has laws and regulations in effect that are comparable to 5 U.S.C. 552, which are located at California Government Code § 6250, et seq.; and
   E.    With respect to the public availability of any document under California Government Code § 6250, et seq., any decision regarding its release or public availability may be legally challenged or reviewed in the courts of the State of California.

## 4.2    State Commitment of Resources

4.2.1    As provided at 23 U.S.C. 327(c)(3)(D), Caltrans will maintain the financial resources necessary to carry out the responsibilities being assumed.  Caltrans believes, and FHWA agrees, that the summary of financial resources contained in Caltrans' application, dated May 18, 2007, (See Appendix A) appears to be adequate for this purpose.  Should the FHWA determine, after consultation with Caltrans, that Caltrans' financial resources are inadequate to carry out the USDOT Secretary's responsibilities, Caltrans will take appropriate action to obtain the additional financial resources needed to carry out these responsibilities.  If Caltrans is unable to obtain the necessary additional

financial resources, Caltrans shall inform FHWA and this MOU will be amended to assign only the responsibilities that are commensurate with Caltrans' financial resources.

4.2.2   Caltrans will maintain adequate organizational and staff capability, including competent and qualified consultants where necessary or desirable, to effectively carry out the responsibilities it has assumed under part 3 of this MOU. This includes, without limitation:

    A.    Using appropriate environmental technical and managerial expertise;
    B.    Devoting adequate staff resources; and
    C.    Demonstrating, in a consistent manner, the capacity to perform Caltrans' assumed responsibilities under this MOU and applicable Federal laws.

Should the FHWA determine, after consultation with Caltrans, that Caltrans' organizational and staff capability is inadequate to carry out the USDOT Secretary's responsibilities, Caltrans will take appropriate action to obtain adequate organizational and staff capability to carry out these responsibilities.  If Caltrans is unable to obtain adequate organizational and staff capability, Caltrans shall inform FHWA and the MOU will be amended to assign only the responsibilities that are commensurate with Caltrans' available organizational and staff capability.  Should Caltrans choose to meet these requirements, in whole or in part, with consultant services, including outside counsel, Caltrans shall maintain on its staff an adequate number of trained and qualified personnel, including counsel, to oversee the consulting work.

4.2.3   When carrying out the requirements of Section 106 of the National Historic Preservation Act, as amended, Caltrans shall comply with 36 C.F.R. 800.2(a)(1). All actions that involve the identification, evaluation, analysis, recording, treatment, monitoring, or disposition of historic properties, or that involve the reporting or documentation of such actions in the form of reports, forms, or other records, shall be carried out by or under the direct supervision of a person or persons who meet the Secretary of Interior's Professional Qualifications Standards (published at 48 FR 44738-44739). Caltrans shall ensure that all documentation required under 36 C.F.R. 800.11 is reviewed and approved by a staff member or consultant who meets the Professional Qualifications Standards.

## 4.3    Federal Court Jurisdiction

4.3.1   As required under 23 U.S.C. 327(c)(3)(B), and pursuant to Section 820.1 of the California Streets and Highways Code, the State of California hereby consents to, and accepts, the exclusive jurisdiction of the Federal courts for any matter arising out of or relating to this MOU, including without limitation, any action for compliance, discharge, and/or enforcement of any of the responsibilities assigned by the FHWA and assumed by Caltrans under part 3 of this MOU to the same extent that the FHWA would be subject to Federal court jurisdiction concerning any such responsibility.  This consent to Federal court jurisdiction shall remain valid after termination of the Pilot Program, or reassumption of the USDOT Secretary's responsibilities by the FHWA, for any decision or approval made by Caltrans pursuant to an assumption of responsibility under part 3 of

this MOU during Caltrans' participation in the Pilot Program. The State of California understands and agrees that this acceptance constitutes a waiver of the State's immunity under the Eleventh Amendment to the U.S. Constitution for the limited purposes of addressing matters arising out of this MOU and carrying out the USDOT Secretary's responsibilities that have been assumed under part 3 of this MOU.

## PART 5.  APPLICABILITY OF FEDERAL LAW

### 5.1     Procedural and Substantive Requirements

5.1.1   As provided at 23 U.S.C. 327(a)(2)(C), in assuming the USDOT Secretary's responsibilities under part 3, Caltrans shall be subject to the same procedural and substantive requirements that apply to the USDOT Secretary in carrying out these responsibilities. Such procedural and substantive requirements include Federal laws, Federal regulations, Executive Orders issued by the President of the United States, USDOT Orders, FHWA Orders, official guidance and policy issued by the USDOT or FHWA, and any applicable Federal court decisions, and interagency agreements such as programmatic agreements, memoranda of understanding, memoranda of agreement, and other similar documents that relate to the environmental review process.

5.1.2   Official USDOT and FHWA formal guidance and policies relating to environmental review matters are posted on the FHWA's website at http://www.fhwa.dot.gov/hep/legreg.htm, contained in the FHWA *Environmental Guidebook* (http://environment.fhwa.dot.gov/guidebook/index.asp), published in the *Federal Register*, or sent to Caltrans electronically or in hard copy.

5.1.3   After the effective date of this MOU, the FHWA will use its best efforts to ensure that any new or revised FHWA policies and guidance that are final and applicable to Caltrans' performance under this MOU are communicated to Caltrans within 10 days of issuance. Delivery may be accomplished by e-mail, mail, or publication in the *Federal Register*. If communicated to Caltrans by e-mail or mail, such material may be sent either to the party specified in this MOU to receive notices, or to the Chief of Caltrans' Division of Environmental Analysis. In the event that a new or revised FHWA policy or guidance is not made available to Caltrans as described in the preceding sentence, and if Caltrans had no actual knowledge of such policy or guidance, then a failure by Caltrans to comply with such Federal policy or guidance will not be a basis for termination under this MOU.

5.1.4   Caltrans will work with all other appropriate Federal agencies concerning the laws, guidance, and policies that such other Federal agencies are responsible for administering.

5.1.5   For interagency agreements that involve signatories in addition to the FHWA and Caltrans, within six months after the effective date of this MOU, the FHWA and Caltrans will contact the relevant third party or parties to determine whether any action should be taken with respect to such agreement. Such actions include:

A.      Consulting with the third party to obtain written consent to the continuation of the interagency agreement in its existing form, but with the substitution through assignment of Caltrans for the FHWA;

B.      Negotiating with the third party to amend the interagency agreement as needed so that the interagency agreement continues but that Caltrans assumes the FHWA's responsibilities; or

C.      If a third party does not agree to the assignment or amendment of the interagency agreement, then to the extent permitted by applicable law and regulation, Caltrans will carry out the assumed environmental review, consultation, or other related activity in accordance with applicable laws and regulations but without the benefit of the provisions of the interagency agreement.

5.1.6   Upon termination of the Pilot Program, the FHWA and Caltrans shall contact the relevant third party to determine whether the interagency agreement should be amended or reinstated as in effect on the effective date of this MOU.

## 5.2      Rulemaking

5.2.1   As provided at 23 U.S.C. 327(f), nothing in this MOU permits Caltrans to assume any rulemaking authority of the USDOT Secretary.  The restriction on rulemaking authority includes the authority to issue regulations as well as the authority to establish policy and guidance, except that Caltrans may establish internal policy and guidance concerning its internal decision-making processes.

## 5.3      Effect of Assumption

5.3.1   For purposes of carrying out the responsibilities assumed under part 3 of this MOU, and subject to the limitations contained in 23 U.S.C. 327 and this MOU, Caltrans shall be deemed to be acting as the FHWA with respect to the environmental review, consultation, and other action required under those responsibilities.

## 5.4      Other Federal Agencies

5.4.1   As provided at 23 U.S.C. 327(a)(2)(E), nothing in this MOU preempts or interferes with any power, jurisdiction, responsibility, or authority of an agency, other than the USDOT (including the FHWA), under applicable law (including regulations).

## PART 6. LITIGATION

## 6.1      Responsibility and Liability

6.1.1   As provided in 23 U.S.C. 327(e), Caltrans shall be solely liable and solely responsible for carrying out all of the USDOT Secretary's responsibilities it has assumed under part 3 of this MOU subject to the limitations of the Eleventh Amendment waiver acknowledged in section 4.3.1 of this MOU.  The FHWA and USDOT shall have no

responsibility or liability for the performance of the responsibilities assumed by Caltrans, including any decision or approval made by Caltrans while participating in the Pilot Program.

## 6.2    Litigation

6.2.1    Caltrans shall defend, at its own expense, all claims brought in connection with the performance or non-performance of any responsibility assumed and discharged under part 3 of this MOU, including claims concerning Caltrans' performance or nonperformance of such responsibilities while participating in the Pilot Program.  In the event of litigation, Caltrans shall provide qualified and competent legal counsel, including outside counsel if necessary.

6.2.2    Caltrans will notify the FHWA's California Division Office and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice (USDOJ), within seven (7) calendar days of Caltrans Legal Division's receipt of service of process of any complaint, concerning its discharge of any responsibility assumed under part 3 of this MOU.  Caltrans' notification to the FHWA and USDOJ shall be made prior to its response to the complaint.  In addition, Caltrans shall notify the FHWA's California Division Office within seven (7) calendar days of receipt of any notice of intent to sue concerning its discharge of any responsibility assumed under part 3 of this MOU.

6.2.3    Caltrans will provide the FHWA's California Division Office and USDOJ copies of any motions, pleadings, briefs, and other such documents filed in any case concerning its discharge of any responsibility assumed under part 3 of this MOU.  Caltrans will provide such copies to the FHWA and USDOJ within seven (7) calendar days of service of receipt of any document or, in the case of any documents filed by or on behalf of Caltrans, within 7 calendar days of the date of filing.

6.2.4    Caltrans will provide notice to the FHWA and USDOJ prior to appealing, or receiving notice of an appeal, any court decision or judgment arising out of the responsibilities Caltrans has assumed under this MOU and provide the FHWA and USDOJ at least seven (7) calendar days to provide comments.

6.2.5    Caltrans will notify the FHWA's California Division Office and USDOJ prior to settling any action, or potential action, and shall provide the FHWA and USDOJ with a reasonable amount of time (at least ten (10) calendar days) to review and comment on the proposed settlement.  Caltrans agrees not to enter into any settlement agreement without prior FHWA and DOJ consent if either the FHWA or USDOJ notify Caltrans that such settlement agreement may affect the interpretation or application of any Federal law or will have broad precedent setting implications.

6.2.6    Caltrans' notification to the USDOJ in sections 6.2.2, 6.2.3, 6.2.4, and 6.2.5 shall be made by overnight mail service to the Assistant Attorney General for the Environment

and Natural Resources Division at 950 Pennsylvania Avenue, NW, Room 2143, Washington, DC, 20530.

**6.3    Conflict Resolution**

6.3.1    In discharging any of the USDOT Secretary's responsibilities under part 3 of this MOU, Caltrans agrees to make all reasonable and good faith efforts to work with affected parties and attempt to resolve any and all conflicts during the environmental review process and prior to the initiation of litigation by any such party.

## PART 7. INVOLVEMENT WITH OTHER AGENCIES

**7.1    Coordination**

7.1.1    Caltrans agrees to seek early and appropriate coordination with all appropriate Federal, State, and local agencies in carrying out any of the responsibilities and highway projects assumed under part 3 of this MOU.

7.1.2    Caltrans agrees to make all reasonable and good faith efforts to identify and resolve conflicts with all appropriate Federal, State, and local agencies during the consultation and review process in carrying out any of the responsibilities assumed under part 3 of this MOU.

**7.2    Processes and Procedures**

7.2.1    Caltrans will ensure that it has appropriate processes and procedures in place that provide for proactive and timely consultation, coordination, and communication with all appropriate Federal agencies in order to carry out any of the responsibilities assumed under part 3 of this MOU, including the submission of all environmental impact statements together with comments and responses to the Environmental Protection Agency as required at 40 C.F.R. 1506.9. These processes and procedures shall be formally documented. Such formal documentation may be in the form of a formal executed interagency agreement or in other such form as appropriate.

## PART 8. INVOLVEMENT WITH FHWA

**8.1    Generally**

8.1.1    Except as specifically provided otherwise in this MOU, the FHWA will not provide any project-level assistance to Caltrans in carrying out any of the responsibilities it has assumed under part 3 of this MOU. Project-level assistance shall include any advice, consultation, or document review with respect to the discharge of such responsibility for a particular highway project. However, project-level assistance does not include process or program level assistance as provided in section 8.1.4, discussions concerning issues addressed in prior projects, interpretations of any applicable law

contained in titles 23 or 49 of the United States Code, interpretations of any FHWA or USDOT regulation, or interpretations of FHWA or USDOT policies or guidance.

8.1.2   The FHWA will not intervene, broker, act as intermediary, or be otherwise involved in any issue involving Caltrans' consultation or coordination with another Federal agency with respect to Caltrans' discharge of any of the responsibilities it has assumed under part 3 of this MOU for any particular highway project. However, the FHWA may attend meetings between Caltrans and other Federal agencies and submit comments to Caltrans and the other Federal agency in the following extraordinary circumstances:

    A.    The FHWA reasonably believes that Caltrans is not in compliance with this MOU;

    B.    The FHWA determines that an issue between Caltrans and the other Federal agency concerns emerging national policy issues under development by the USDOT; or

    C.    Upon request by either Caltrans or the other Federal agency and agreement by the FHWA.

The FHWA will notify both Caltrans and the relevant Federal agency prior to attending any meetings between Caltrans and such other Federal agency.

8.1.3   Other Federal agencies may raise concerns regarding the compliance with this MOU by Caltrans and may communicate these concerns to the FHWA. The FHWA will review the concerns and any information provided to the FHWA by such other Federal agency. If, after reviewing these concerns, the FHWA and such other Federal agency still have concerns regarding Caltrans' compliance, the FHWA will notify Caltrans of the potential compliance issue and will work with both Caltrans and the relevant Federal agency to resolve the issue and, if necessary, take appropriate action to ensure compliance with this MOU.

8.1.4   The FHWA may assist Caltrans in evaluating its environmental program and developing or modifying any of its processes or procedures to carry out the responsibilities it has assumed under part 3 of this MOU, including, but not limited to, those processes and procedures concerning Caltrans' consultation, coordination, and communication with other Federal agencies.

8.1.5   In carrying-out the FHWA's responsibilities under 23 U.S.C. 138 and Section 4(f) of the Department of Transportation Act of 1966 (49 U.S.C. 303 and implementing regulations at 23 CFR Part 774), Caltrans shall coordinate with the FHWA prior to determining that any action constitutes a constructive use of land from a publicly owned park, public recreation area, wildlife refuge, waterfowl refuge, or historic site.

8.1.6  Caltrans' obligations and responsibilities under 23 CFR 1.5 are not altered in any way by executing this MOU.

**8.2     MOU Monitoring and Oversight**

8.2.1    The FHWA will provide necessary and appropriate monitoring and oversight of Caltrans' compliance with this MOU.  The FHWA's monitoring and oversight activities under this MOU will primarily consist of auditing as provided at 23 U.S.C. 327(g) and part 11 of this MOU, and evaluating the performance measures as provided in part 10 of this MOU.  However, the FHWA's monitoring and oversight may also include submitting requests for information to Caltrans and other relevant Federal agencies, verifying Caltrans' financial and personnel resources dedicated to carrying out the responsibilities assumed, and reviewing documents and other information.

8.2.2    At the request of the FHWA, Caltrans will promptly provide the FHWA with any such information, including making relevant employees and consultants available at their work location (including in-person meeting, teleconference, videoconference or other electronic means as may be available), as the FHWA deems necessary in monitoring and overseeing Caltrans' compliance with this MOU.

8.2.3    [RESERVED]

8.2.4    Caltrans shall maintain project files and general administrative files pertaining to its discharge of the responsibilities it has assumed under part 3 of this MOU.  The files shall be reasonably available for inspection by the FHWA at the files' locations upon reasonable notice, which is not less than 5 days.  These files shall include, but are not limited to, all letters and comments received from governmental agencies, the public, and others with respect to Caltrans' discharge of the responsibilities assumed under part 3 of this MOU.

8.2.5    In carrying out the responsibilities assumed under part 3 of this MOU, Caltrans agrees to carry-out regular quality control and quality assurance activities to ensure that the assumed responsibilities are being conducted in accordance with applicable law and this MOU.  At a minimum, Caltrans' quality control and quality assurance activities will include the review and monitoring of its processes relating to project decisions, environmental analysis, project file documentation, checking for errors and omissions, legal sufficiency reviews, and taking appropriate corrective action as needed.  Within three months of the effective date of this MOU, Caltrans shall develop and implement a quality control and quality assurance process that satisfies the requirements of this section.  In developing and implementing the quality control and quality assurance process, Caltrans shall consult with the FHWA California Division Office.  Caltrans agrees to cooperate with the FHWA to incorporate recommendations the FHWA may have with respect to its quality control and quality assurance process.  By three months, after the effective date of this MOU, Caltrans shall have transmitted to the FHWA California Division Office a quality control and quality assurance process for review and comment that satisfies the requirements of this section.

8.2.6   Caltrans shall perform regular self-assessments of its quality control and quality assurance process to determine whether its process is working as intended, to identify any areas needing improvements in the process, and to take any corrective actions necessary to address the areas needing improvement.  At least one month prior to the date of a scheduled FHWA audit, Caltrans shall transmit a summary of its self-assessment to the FHWA California Division Office.  The summary shall include a description of the scope of the self-assessment conducted and the areas reviewed, a description of the process followed in conducting the self-assessment, a list of the areas identified as needing improvement, any corrective actions that have been or will be implemented, a statement from the Chief, Division of Environmental Analysis concerning whether the processes are ensuring that the responsibilities Caltrans has assumed under part 3 of this MOU are being carried-out in accordance with this MOU and all applicable Federal laws and policies, and a summary of Caltrans' progress toward achieving the performance measures as provided in section 10.1.3.  After a period of two years from the effective date of this MOU, Caltrans shall conduct its self-assessments no less than annually.  The summary shall be developed and transmitted to the FHWA California Division Office at least one month prior to the date of the FHWA's scheduled audit and may be used in the audit process to ensure compliance with the quality control and quality assurance process developed pursuant to section 8.2.5, above.

8.2.7   Every three months from the effective date of this MOU, Caltrans will provide a report to the FHWA California Division Office listing any approvals and decisions Caltrans has made with respect to the responsibilities Caltrans has assumed under part 3 of this MOU.  After a period of two years from effective date of this MOU, Caltrans shall submit its approval and decision report to FHWA no less than every six months.

## 8.3   Record Retention

8.3.1   Caltrans will retain all project files and general administrative files, as referenced in section 8.2.4, for a period of at least three (3) years after the termination of their participation in the Pilot Program.

8.3.2   In addition to the period of time specified in section 8.3.1, Caltrans will ensure that the following retention periods are maintained for each specified type of record:

    A.    **Environment Correspondence Files:** Environment correspondence files include correspondence between the FHWA and Caltrans relative to the interpretation, administration, and execution of environmental aspects of the Federal-aid Highway Program.  Environmental correspondence files shall be maintained by Caltrans for a period of three (3) years after the resolution of the particular issue for which the file is created.  After 3 years, Caltrans shall transmit environmental correspondence files to the FHWA to be stored at the Federal Records Center.  When environmental correspondence files are eight (8) years old, the FHWA will transfer the files to the National Archives for permanent storage.

    B.    **Environmental Impact Statements and/or Section 4(f) Statements-FHWA:** Files containing reviews and approval of EIS's and Section 4(f)

statements for which Caltrans, in assuming the FHWA's responsibilities, is the lead agency shall be maintained by Caltrans for a period of eight (8) years after approval of the final statement.  After 8 years, Caltrans shall transmit its EIS and/or section 4(f) files to the FHWA to be stored at the Federal Records Center.  After a period of thirteen (13) years from the date of approval of the final statement, EIS and/or section 4(f) files will be destroyed.

C.   **Environmental Impact Statements - Other Agencies:** Files containing reviews and comments furnished by Caltrans to other Federal agencies following reviews of an EIS for which another Federal agency is the lead agency shall be maintained by Caltrans for a period of five (5) years. After 5 years, Caltrans may destroy these files when no longer needed.

D.   **Fish and Wildlife Coordination:** Files containing correspondence with the fish and wildlife resource agencies early in project development may be destroyed by Caltrans when no longer needed.

E.   **Noise Barriers:** Files containing correspondence, publications, presentations, installation reports for wall barriers, and design of different types of wall barriers by private industry shall be maintained by Caltrans for a period of three (3) years after the end of the Federal fiscal year in which the particular file is closed.

8.3.3   The periods of time stated in section 8.3.2 are contained in the FHWA Records Disposition Manual, FHWA Order M1324.1A.  In case of any conflict in the periods of time in section 8.3.2 and the FHWA Records Disposition Manual, the FHWA Records Disposition Manual shall control.

8.3.4   Nothing contained in the MOU is intended to relieve Caltrans of its recordkeeping responsibilities under 49 CFR 18.42 or other applicable laws or regulations.  Caltrans shall ensure that the project files are available to the public consistent with California Government Code § 6250.

## 8.4   Federal Register

8.4.1   For any documents that are required to be published in the *Federal Register*, such as the Notice of Intent under 23 C.F.R. 771.123(a) and Notice of Final Agency Action under 23 U.S.C. 139(l), Caltrans shall transmit such document to the FHWA's California Division Office and the FHWA will cause such document to be published in the *Federal Register* on behalf of Caltrans and will submit such document to the *Federal Register* within 5 days of receipt of such document from Caltrans.  Caltrans shall, upon request by the FHWA, reimburse the FHWA for the expenses associated with publishing such documents in the *Federal Register*.

## 8.5   Conformity Determinations

8.5.1   Pursuant to 23 U.S.C. 327(a)(2)(B)(i)(I), for EAs and Draft and/or Final EISs for projects in nonattainment or maintenance areas for ozone, carbon monoxide, particulate

matter, and nitrogen dioxide, FHWA's California Division Office will document the project level conformity determination by transmitting a letter to Caltrans to be included in the Final EIS or EA.  FHWA's California Division Office will restrict its review of any such EAs and EISs to only that data, analyses, applicable comments and responses, and other relevant documentation that enables the FHWA to make the project level conformity determination.  For CEs that have not been assumed pursuant to the June 7, 2007 MOU, the project level conformity determination must be made by FHWA and documented prior to approval of the CE classification by Caltrans.

## 8.6   Certification of NEPA Compliance

8.6.1   Prior to the execution of any Federal-aid project agreement for a physical construction contract, a design-build contract, or a contract for final design services, the Director of Caltrans will submit a certification to the FHWA California Division Office specifying that Caltrans has fully carried out all responsibilities assumed under part 3 of this MOU in accordance with this MOU and applicable Federal laws, regulations, and policies.  The Director of Caltrans may delegate the certification required under this section to its District Directors.

## 8.7   Enforcement

8.7.1   Should the FHWA determine that Caltrans is not in compliance with this MOU, then the FHWA shall take appropriate action to ensure Caltrans' compliance, including appropriate remedies provided at 23 C.F.R. 1.36, reassuming any responsibilities that have been assumed as provided in part 9 of this MOU, or terminating Caltrans' participation in the Pilot Program as provided in part 13 of this MOU.

## PART 9. REASSUMPTIONS OF RESPONSIBILITY

## 9.1   FHWA Initiated Reassumptions of Projects

9.1.1   The FHWA may, at any time, reassume all or part of the USDOT Secretary's responsibilities that have been assumed by Caltrans under part 3 of this MOU for any highway project or highway projects upon the FHWA's determination that:

> A.   Caltrans is not in compliance with this MOU or applicable Federal laws or policies and Caltrans has not taken sufficient corrective action to the satisfaction of the FHWA;
>
> B.   The highway project or highway projects involve significant or unique national policy interests for which Caltrans' assumption of the Secretary's responsibilities would be inappropriate; or
>
> C.   Caltrans cannot satisfactorily resolve an issue or concern raised in a government-to-government consultation process, as provided in section 3.2.3.

9.1.2   Upon the FHWA's determination to reassume the USDOT Secretary's responsibilities under section 9.1.1, the FHWA will informally notify Caltrans of the

FHWA's determination. After informally notifying Caltrans of its determination, the FHWA will provide Caltrans written notice of its determination including the reasons for its determination. Upon receipt of this notice, Caltrans may submit any comments or objections to the FHWA within thirty (30) days, unless an extended period of time is agreed to by the FHWA. Upon receipt of Caltrans' comments or objections, the FHWA will make a final determination within thirty (30) days, unless extended by the FHWA for cause, and notify Caltrans of its decision. In making its determination, the FHWA will consider Caltrans' comments or objections, the effect the reassumption will have on the Pilot Program, amount of disruption to the project concerned, the effect on other projects, confusion the reassumption may cause to the public, the potential burden to other Federal agencies, and the overall public interest. Caltrans shall temporarily cease carrying-out all responsibilities within the scope of the written notice until the FHWA makes a final determination.

9.1.3   The FHWA shall reassume the responsibilities Caltrans has assumed for any highway project when the preferred alternative that is identified in the environmental assessment or final environmental impact statement requires funding under chapter 53 of title 49, United States Code, or otherwise is a highway project that is specifically excluded in section 3.3.2. In such case, section 9.1.2 shall not apply.

## 9.2     State Initiated Reassumptions of Projects

9.2.1   Caltrans may, at any time, request the FHWA to reassume all or part of the USDOT Secretary's responsibilities it has assumed under part 3 of this MOU for any existing or future highway project or highway projects.

9.2.2   Upon Caltrans' decision to request the FHWA to reassume the USDOT Secretary's responsibilities under section 9.2.1, Caltrans shall informally notify the FHWA of its desire for the FHWA to reassume its responsibilities. After informally notifying the FHWA of its desire, Caltrans will provide the FHWA written notice of its desire, including the reasons for wanting the FHWA to reassume the responsibilities. Upon receipt of this notice, the FHWA will have thirty (30) days, unless extended by the FHWA for cause, to determine whether it will reassume the responsibilities requested. In making its determination, the FHWA will consider the reasons Caltrans desires the FHWA to reassume the responsibilities, the effect the reassumption will have on the Pilot Program, amount of disruption to the project concerned, the effect on other projects, confusion the reassumption may cause to the public, the potential burden to other Federal agencies, and the overall public interest.

## PART 10. PERFORMANCE MEASURES

### 10.1    General

10.1.1 In order to evaluate the success of the Pilot Program established under

23 U.S.C. 327, both the FHWA and Caltrans have determined that it is desirable to mutually establish a set of performance measures against which Caltrans will be evaluated in administering the responsibilities it has assumed under part 3 of this MOU.

10.1.2  The performance measures will be evaluated during the FHWA audits, which are required under 23 U.S.C. 327(g), and included in the FHWA audit reports.

10.1.3  Caltrans shall collect and maintain all necessary and appropriate data related to the attainment of the performance measures. In collecting this data, Caltrans shall monitor its progress toward meeting the performance measures and include its progress in the self-assessment summary, as provided in section 8.2.6.  The summary shall be made available to the FHWA as provided in section 8.2.6.

## 10.2   Performance Measures

10.2.1 The performance measures applicable to Caltrans in carrying the responsibilities it has assumed under part 3 of this MOU are as follows:

A.   **Compliance with NEPA and other Federal laws and regulations:**
   i.   Maintain documented compliance with procedures and processes set forth in the Memorandum of Understanding (MOU) for the environmental responsibilities assumed under the Pilot Program.
   ii.  Maintain documented compliance with requirements of all Federal laws and regulations being assumed (106, Section 7, etc).

B.   **Attainment of supportable NEPA decisions:**
   i.   Maintain internal quality control and assurance measures and processes, including a record of:
      a.   Legal sufficiency determinations made by counsel;
      b.   Compliance with Caltrans' environmental document content standards and procedures; and
      c.   Documentation of project records for projects done under the Pilot Program

C.   **Monitor relationships with agencies and the general public:**
   i.   Assess change in communication among Caltrans , Federal and State resource agencies, and the public.
   ii.  Maintain effective responsiveness to substantive comments received from the public, agencies and interest groups on NEPA documents.
   iii. Maintain effective NEPA conflict resolution processes whenever appropriate.

D.   **Timely completion of NEPA process:**
   i.   Compare time to completion for environmental document approvals before and after assumption of responsibilities.
   ii.  Compare time to completion for key interagency consultation formerly requiring FHWA participation (e.g., Section 7 biological opinions, Section 106 MOAs) before and after delegation.

# PART 11. AUDITS

## 11.1    General

11.1.1  As required in 23 U.S.C. 327(g), the FHWA will conduct audits of Caltrans' discharge of the responsibilities it has assumed under part 3 of this MOU.  The primary purposes of these audits will be to ensure Caltrans' compliance with this MOU and applicable Federal laws and policies, evaluate Caltrans' progress toward achieving the performance measures identified in part 10, collect information needed to evaluate the success of the Pilot Program, and collect information needed for the USDOT Secretary's annual report to Congress.  Audits will be the primary mechanism used by the FHWA to oversee Caltrans' compliance with this MOU.

11.1.2  Caltrans will make all documents and records available for review to the FHWA in conducting audits and shall provide the FHWA with copies of any such documents and records as may be requested by the FHWA.  Should Caltrans identify any record or document as privileged, the FHWA agrees to request access to that document only if the FHWA determines that the review of such record is necessary to the audit.  In general, all documents and records will be made available to the FHWA at their normal place of repository.  However, Caltrans will work with the FHWA to provide documents through e-mail, CD-ROM, mail, or facsimile to the extent it does not create an undue burden.

11.1.3  Caltrans agrees to cooperate with the FHWA in conducting audits, including providing access to all necessary information, making all employees available to answer questions (including consultants hired for the purpose of carrying out the USDOT Secretary's responsibilities), and providing all requested information (including making employees available) to the FHWA in a timely manner.  Employees will be made available either in-person at their normal place of business or by telephone, at the discretion of FHWA.

11.1.4  Caltrans and the FHWA California Division Office will each designate an audit coordinator who will be responsible for coordinating audit schedules, requests for information, and arranging audit meetings.

11.1.5  The FHWA audits will include, but not be limited to, consideration of Caltrans' technical competency and organizational capacity, adequacy of the financial resources committed by Caltrans to administering the responsibilities assumed, quality control and quality assurance process, attainment of performance measures, compliance with this MOU's requirements, and compliance with applicable Federal laws and policies in administering the responsibilities assumed.

11.1.6  An audit check-list will be prepared by FHWA and made available to Caltrans no less than three months prior to the first scheduled audit.  FHWA agrees that the audit check-list will contain only those items or issues necessary to ensure compliance with this MOU and the Caltrans application as filed with FHWA and to carry-out the intent of

Congress under 23 U.S.C. 327(g). While the FHWA will make all reasonable efforts to provide the audit check list to Caltrans in accordance with this section, the FHWA's authority to conduct an audit is not contingent upon furnishing such audit check list.

## 11.2    Scheduling

11.2.1 As provided at 23 U.S.C. 327(g), the FHWA will conduct semiannual audits during each of the first two (2) years after the effective date of this MOU and an annual audit during each subsequent year thereafter until the termination of the Pilot Program as provided in part 13.

11.2.2 For each semiannual and annual audit, the designated audit coordinators for the FHWA and Caltrans will work to establish general audit schedules at least three months prior to the semiannual or annual anniversary dates of the effective date of this MOU. The general audit schedules shall include the dates the FHWA will conduct the audit. Caltrans' audit coordinator shall make all reasonable efforts to ensure all necessary employees (including consultants) are available to the FHWA during the specified dates on the general audit schedule. After the general audit schedule is established, the audit coordinators shall work to establish specific audit schedules at least two weeks prior to the scheduled audit. The specific audit schedules shall include the dates, times, and place for which the FHWA will talk to Caltrans' employees (including consultants) and review documents and records. Even though specific dates and times are established in the specific audit schedule, Caltrans shall make reasonable efforts to ensure that all identified Caltrans' employees (including consultants) are generally available to the FHWA as needed during the general audit schedule. Caltrans will also ensure that all of its documents and records are made reasonably available to the FHWA as needed during the general audit schedule.

11.2.3 To the maximum extent practicable, the specific audit schedule will identify all employees (including consultants) and documents and other records that Caltrans will make available to the FHWA during the audit. Should the FHWA determine that it needs access to an employee, document or other record that is not identified in the specific audit schedule, Caltrans agrees to make reasonable efforts to produce such employee, document or other record. With respect to employees, Caltrans agrees to work with the FHWA to specifically identify each employee. With respect to documents and other records, Caltrans and FHWA agree to try to be as specific as possible, although a general description of the types of documents will be acceptable.

## 11.3    Other Federal Agency Involvement

11.3.1 The FHWA may invite other Federal agencies as deemed appropriate, including State Historic Preservation Officers (SHPO), to participate in the audit either as a part of the FHWA audit team, as an advisor, as a commenter, or in some other capacity as deemed appropriate by the FHWA. In any case, the FHWA will ensure Caltrans is aware of the role that any such other Federal agency plays in the audit process.

**11.4    Audit Report and Findings**

11.4.1  Upon completing each audit, the FHWA will transmit to Caltrans a draft of the audit report and allow Caltrans a period of thirty (30) days within which to submit written comments to the FHWA.  The FHWA will review the comments and incorporate the comments into the audit report as may be appropriate.  The FHWA will then prepare the draft audit report for public comment.

11.4.2  As required at 23 U.S.C. 327(g)(2), the FHWA will make the draft audit report available for public comment.  In carrying out this requirement, the FHWA will, after receipt and incorporation of Caltrans comments as provided in section 11.4.1, publish the audit report in the *Federal Register* and allow a comment period of thirty (30) days.  The FHWA will then address and respond to the public comments by incorporating the comments and response into the final audit report.  The final audit report will be published in the *Federal Register* sixty (60) days after the comment period closes.

## PART 12. TRAINING

**12.1    Training**

12.1.1  The FHWA will provide Caltrans training, to the extent the FHWA or Caltrans deems necessary, in all appropriate areas with respect to the environmental responsibilities that Caltrans has assumed.  Such training may be provided by either the FHWA or another Federal agency or other parties as may be appropriate.  Caltrans agrees to have all appropriate employees (including consultants hired for the purpose of carrying out the USDOT Secretary's responsibilities) attend such training.

12.1.2  Within ninety (90) days after the effective date  of this MOU, Caltrans and FHWA, in consultation with other Federal agencies as deemed appropriate, will assess Caltrans' need for training and develop a training plan.  The training plan will be updated by Caltrans and FHWA, in consultation with other Federal agencies, annually until the termination of Caltrans' participation in the pilot program under part 13 of this MOU.

## PART 13. TERMINATION

**13.1    Termination by Operation of Law - Federal**

13.1.1  As provided at 23 U.S.C. 327(i)(1), Caltrans' participation in the Pilot Program shall terminate on August 10, 2011, which is six years after the enactment of SAFETEA-LU.  Accordingly, except as provided in section 13.1.4, on August 10, 2011, all responsibilities that have been assumed by Caltrans under part 3 of this MOU shall be reassumed by the FHWA.

13.1.2  No later than August 10, 2010, the FHWA and Caltrans shall begin to develop a plan to transition the responsibilities that Caltrans has assumed back to the FHWA so as to minimize disruption to the project, minimize confusion to the public, minimize

Page 21 of 25

burdens to other affected Federal, State, and local agencies, and ensure, to the maximum extent possible, Caltrans will be able to complete, by August 10, 2011, all anticipated environmental approvals. The transition plan shall take into account the anticipated environmental approvals and the type of environmental action that is anticipated. The transition plan shall be approved by both FHWA and Caltrans no later than March 10, 2011.

13.1.3  The transition plan approved by both the FHWA and Caltrans under section 13.1.2 may provide for the FHWA's reassumption of any or all of the USDOT Secretary's responsibilities that have been assumed by Caltrans under part 3 of this MOU for one or more highway projects. Any such reassumption that has been agreed to by FHWA and Caltrans under a transition plan shall not be subject to the procedures or limitations provided for in part 9 of this MOU and shall be valid as agreed to in the transition plan.

## 13.2    Termination by Operation of Law - State

13.2.1  As provided for in the California Streets and Highways Code Section 820.1, Caltrans' participation in the Pilot Program sunsets on January 1, 2009. Affirmative action by the State Legislature, extending the Eleventh Amendment waiver, will be necessary to avoid the sunset date. If no affirmative legislative action is taken to extend the waiver, then Caltrans' authority to participate in the Pilot Program ends on 1 January 2009 as a matter of law.

13.2.2  The California State Legislature may, at any time, terminate Caltrans' authority, granted under Streets and Highways Code Section 820.1, to participate in the Pilot Program.

13.2.3  No later than July 1, 2008, the FHWA and Caltrans shall begin to develop a plan to transition the responsibilities that Caltrans has assumed back to the FHWA so as to minimize disruption to the project, minimize confusion to the public, minimize burdens to other affected Federal, State, and local agencies, and ensure, to the maximum extent possible, Caltrans will be able to complete, by January 1, 2009, all anticipated environmental approvals. The transition plan shall take into account the anticipated environmental approvals and the type of environmental action that is anticipated. The transition plan shall be approved by both FHWA and Caltrans no later than September 30, 2008.

13.2.4  The transition plan approved by both the FHWA and Caltrans under section 13.2.3 may provide for the FHWA's reassumption of any or all of the USDOT Secretary's responsibilities that have been assumed by Caltrans under part 3 of this MOU for one or more highway projects. Any such reassumption that has been agreed to by FHWA and Caltrans under a transition plan shall not be subject to the procedures or limitations provided for in part 9 of this MOU and shall be valid as agreed to in the transition plan.

**13.3 Termination for Cause**

13.3.1  As provided at 23 U.S.C. 327(i)(2), the FHWA may terminate Caltrans' participation in the Pilot Program if the FHWA determines that Caltrans is not adequately carrying out the responsibilities it has assumed under part 3 of this MOU.  Failure to adequately carry out the responsibilities may include, but not be limited to:

    A.    Persistent neglect of, or noncompliance with, any Federal laws, regulations, and policies;

    B.    Failure to cooperate with the FHWA in conducting an audit or any oversight or monitoring activity;

    C.    Failure to secure or maintain adequate personnel and financial resources to carry out the responsibilities assumed;

    D.    Substantial noncompliance with this MOU; and

    E.    Persistent failure to adequately consult, coordinate, and/or take the concerns of other Federal agencies, as well as SHPOs, into account in carrying out the responsibilities assumed.

13.3.2  Prior to terminating Caltrans' participation in the Pilot Program, the FHWA will send Caltrans a written notification of its intent to terminate Caltrans' participation and specify the reasons for terminating Caltrans' participation.  Upon receipt of the FHWA's notice of intent, Caltrans will have thirty (30) days to respond to the notice of intent and take corrective action.  Upon request by Caltrans, the FHWA may extend Caltrans' response deadline for an appropriate amount of time, but under no circumstance, may the time period be extended by more than ninety (90) days.

13.3.3  After receiving a notice of intent to terminate under section 13.3.2, if Caltrans fails to take corrective action, to the satisfaction of the FHWA, Caltrans' participation in the Pilot Program shall terminate and all responsibilities that have been assumed by Caltrans under part 3 of this MOU shall transfer to the FHWA.

13.3.4  Upon receipt of written notice under section 13.3.2, Caltrans shall temporarily cease carrying-out all responsibilities assumed under part 3 of this MOU until the FHWA makes a final determination.

**13.4 Validity of Caltrans' Decisions**

13.4.1  Any environmental approvals made by Caltrans pursuant to the responsibilities Caltrans has assumed under part 3 of this MOU shall remain valid after Pilot Program termination or reassumption by the FHWA.  Caltrans shall remain solely liable and solely responsible for any environmental approvals it makes pursuant to any of the responsibilities it has assumed while participating in the Pilot Program.

# PART 14. AMENDMENTS

## 14.1    Generally

14.1.1  This MOU may be amended at any time upon mutual agreement by both the FHWA and Caltrans.

## 14.2    Additional Responsibilities and Projects

14.2.1  The FHWA may assign, and Caltrans may assume, environmental responsibilities and highway projects in addition to the responsibilities and highway projects identified in part 3 of this MOU by executing an amendment to this MOU.  However, this MOU may not be amended to add environmental responsibilities and highway projects until after a period of at least one year after the effective date of this MOU.

14.2.2  Should Caltrans decide to request this MOU be amended to add environmental responsibilities and highway projects to the responsibilities and highway projects identified in part 3, then such request shall be treated as an amendment to Caltrans' original application that was submitted to the FHWA pursuant to 23 U.S.C. 327(b) and 23 C.F.R. Part 773.  Accordingly, Caltrans shall give public notice of its intent to request additional responsibilities and highway projects by developing and publishing a supplement to its application and allow a public comment period of at least thirty (30) days in accordance with California's public notice law  prior to submitting the application supplement to the FHWA.  In developing the application supplement, Caltrans shall identify the additional responsibilities and highway projects it wishes to assume and make any appropriate adjustments to the information contained in Caltrans' original application, including the verification of personnel and financial resources.  Upon receipt of Caltrans' supplemental application, the FHWA will consult with, and solicit the views of, other appropriate Federal agencies.

IN WITNESS THEREOF, the parties hereto have caused this MOU to be duly executed in duplicate as of the date of the last signature written below.  This MOU is effective on the Effective Date as specified in section 1.1.3.


Date: 29 JUN 07

J. Richard Capka
Administrator
**Federal Highway Administration**


Date: 6/22/07

Will Kempton
**Director**
**California Department of Transportation**


Date: 6/22/07

Bruce A. Behrens
**Chief Counsel**
**California Department of Transportation** only as to the certifications required under Section 4.1.1 of this MOU and as to form.