UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFICANS FOR A SCENIC COAST, et al.,<br><br>                Plaintiffs,<br><br>        v.<br><br>CALIFORNIA DEPARTMENT OF TRANSPORTATION, et al.,<br><br>                Defendants. | Case No.  15-cv-02090-VC<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO SUPPLEMENT THE RECORD**<br><br>Re: Dkt. Nos. 86, 87 |

### Claims 1, 2, and 3

These are Endangered Species Act claims against Caltrans.  Endangered Species Act claims are not subject to the Administrative Procedure Act's limitations on the scope of the record, because those claims "arise under the ESA citizen suit provision, and not the APA."  *Washington Toxics Coal. v. Envtl. Prot. Agency*, 413 F.3d 1024, 1034 (9th Cir. 2005).  Thus, the Court "may consider evidence outside the administrative record for the limited purposes of reviewing Plaintiffs' ESA claim[s]."  *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497 (9th Cir. 2011).  Both *Washington Toxics* and *Kraayenbrink* seem to remain good law on this point.  *See Ellis v. Housenger*, No. 13-cv-1266-MMC, 2015 WL 3660079, at *3-4 (N.D. Cal. June 12, 2015); *Nw. Coal. for Alternatives to Pesticides v. Envtl. Prot. Agency*, 920 F. Supp. 2d 1168, 1173-74 (W.D. Wash. 2013).

Accordingly, the record for Claims 1-3 will include Exhibits 1-16.  On their face, these exhibits seem at least somewhat relevant to the plaintiffs' Endangered Species Act claims, and Caltrans has not lodged any other evidentiary objection to them.

**Claim 4**

This is an APA claim against Caltrans, based on an alleged violation of NEPA. As the plaintiffs agreed at the hearing, it's a challenge to final agency action under 5 U.S.C. § 706(2). Thus, the Court "must limit its review to the administrative record," unless the plaintiffs bear their burden to establish that an exception to this rule applies. *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014). Such exceptions "are to be narrowly construed." *Id.* at 992-93.

The only exception relevant here concerns whether the extra-record evidence is "necessary to determine whether the agency has considered all relevant factors and has explained its decision." *Id.* at 992. "Reviewing courts may admit evidence under this exception only to help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious"; they "may not look to this evidence as a basis for questioning the agency's scientific analyses or conclusions." *Id.* at 993.

With this in mind, the Court considers the plaintiffs' supplemental evidence:

**Exhibits 1-2:** This is correspondence from 1989 and 1990 about the presence of San Francisco garter snakes in or near the project area. The plaintiffs seek to include it on the ground that it "is relevant to whether the agencies considered all relevant evidence in determining the environmental baseline." But they don't identify any "factors" or issues (as opposed to specific evidence) that Caltrans didn't consider. Exhibits 1 and 2 might (or might not) be better evidence of the extent to which listed species have relied on habitat in or near the project area, but Caltrans clearly considered that issue in considerable detail. These exhibits might be helpful as additional background, but they aren't "necessary to determine whether the agency has considered all relevant factors and has explained its decision." *Locke*, 776 F.3d at 992; *cf. Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1451 (9th Cir. 1996). Thus, Exhibits 1 and 2 will not be part of the record with respect to Claim 4.

**Exhibits 3-12 and 16:** Exhibit 3 is a 1995 California Coastal Commission document ordering the restoration of ponds (which, it notes, were important habitat for the San Francisco

garter snake and red-legged frog) on property adjacent to the project area.  The same document notes that "[t]he City of Pacifica is currently negotiating with the [owners] over the purchase of a portion of the subject property as a possible site for a wastewater treatment project."  Exhibits 4 through 7 concern the City of Pacifica's application for a California Coastal Commission to build that wastewater treatment facility; as part of that process, the City pledged to restore a creek and wetlands and preserve land associated with those wetlands.  Exhibits 8 through 12 are more recent documents concerning this property and the City's obligations towards it.  Exhibit 16 is FWS's 1996 biological opinion concerning the same wastewater treatment plant project.

       The plaintiffs offer these documents to show that one of the proposed mitigation measures was illusory, in that the project proposed preserving land that the City already had an obligation to preserve.  To mitigate the project's destruction of habitat for the red-legged frog and San Francisco garter snake, Caltrans' August 2011 Draft Environmental Impact Report/Environmental Assessment for the project proposed "to preserve a 5.1 acre parcel owned by the City of Pacifica that is west of the Pacifica waste water treatment plant."  AR 184.  But this is the same parcel that, according to Exhibits 3-12 and 16, the City already had some obligation to preserve.

       This raises questions about whether Caltrans "considered all relevant factors" about the project's proposed mitigation plan.  *Locke*, 776 F.3d at 992.  If the project's mitigation plan relied on the assumption that the City's parcel was not already set aside for preservation, the plan may have been built on a false premise.  And Exhibits 3-12 and 16 seem to be the only evidence before the Court addressing whether and how the parcel in question was, in fact, already set aside for preservation – which means those exhibits are "necessary" to determine whether Caltrans considered this potential problem.  *See id.*

       To be sure, Caltrans may have properly considered this problem in the end.  Caltrans cites correspondence in its record acknowledging "that preservation of Pacifica's 5.14 acre parcel, as previously proposed, is not an option," and recommending "enhancement" of that parcel instead.  Caltrans AR 9133.  Indeed, Caltrans' Final Environmental Impact

Report/Environmental Assessment, dated August 2013, proposes "enhance[ing]" the City's parcel where the August 2011 draft recommended "preserv[ing]" it. Caltrans AR 488. But even if this issue is ultimately resolved in Caltrans' favor on the merits, Exhibits 3-12 and 16 are still "necessary to determine whether the agency has considered all relevant factors and has explained its decision." *Locke*, 776 F.3d at 992. Without Exhibits 3-12 and 16, the Court could not assess the City's preexisting obligations toward that parcel, and therefore could not assess whether the project's proposed mitigation measures duplicated those obligations.

Accordingly, with respect to Claim 4, Exhibits 3-12 and 16 will be part of the record.

**Exhibit 13:** The plaintiffs offer these e-mails (apparently sent between the National Park Service, the Parks Conservancy, and members of the public – not Caltrans or FWS) to "to determine whether the agencies used the best scientific information available in their ESA consultation." But, as this phrasing suggests, the plaintiffs are really offering this evidence to challenge the agencies' judgment on issues they considered – not to challenge whether they actually considered those issues at all. These e-mails allegedly show that the agencies relied on "incorrect information" about a range of conservation issues, but whether the agencies' assessment of the evidence was "incorrect" isn't the point: courts "may not look to [extra-record] evidence as a basis for questioning the agency's scientific analyses or conclusions." *Locke*, 776 F.3d at 993. For this reason, Exhibit 13 will not be part of the record for Claim 4.

**Exhibit 14:** This is a 2000 NEPA Environmental Assessment conducted by the City of Pacifica about widening essentially the same stretch of Highway 1. The plaintiffs argue that this document "reaches conclusions" that contradict Caltrans' Environmental Impact Report/Environmental Assessment. As with Exhibit 13, the plaintiffs seem to be offering this evidence not to show that Caltrans failed to consider the relevant issues, but rather to show that Caltrans reached the wrong conclusions after considering those issues. Thus, Exhibit 14 will not be part of the record for Claim 4.

**Exhibit 15:** As relevant to their APA claim based on NEPA, the plaintiffs offer this Caltrans Wildlife Crossings Guidance Manual to show that the project will impose "barriers to

4

migration of Listed Species" and that it "fail[s] to mitigate road crossing impacts." Caltrans counters that the existing record shows that it considered this issue, and indeed the document Caltrans cites says that "[c]onsideration was given to installation of wildlife crossings under the roadway but, due to the steep topography of the site, it was determined that no practical crossing point existed to connect areas of natural habitat." Caltrans AR 985.

But the fact that Caltrans considered this general issue isn't the end of the matter. The Court can supplement the record not merely to determine whether an agency has considered an issue at all, but "to determine whether the agency has considered all relevant factors." *Locke*, 776 F.3d at 992. The document Caltrans cites doesn't explain what factors the agency should have considered in concluding that wildlife crossings were impractical. The Wildlife Crossings Guidance Manual, by contrast, discusses factors that (according to Caltrans itself) Caltrans decisionmakers should consider in deciding whether and how to create wildlife crossings. Without considering the Manual, it's not clear how the Court could evaluate Caltrans' conclusion that wildlife crossings were impractical. Thus, Exhibit 15 will be part of the record for Claim 4.

### Claim 5

This claim advances two different theories under the APA against the Fish and Wildlife Service. In part, the claim alleges that FWS failed to reinitiate consultation under the Endangered Species Act after the project changed in ways that triggered a new duty to consult. In this respect, the claim is an effort to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "[W]hen a court considers a claim that an agency has *failed* to act in violation of a legal obligation, review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." *San Francisco BayKeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002).[1]

---

[1] FWS notes that *BayKeeper* and an earlier case on which it relied, *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560-61 (9th Cir. 2000), concerned situations in which the agency itself sought to supplement the record. FWS argues that the rule applied in *BayKeeper* should be limited to that situation.
    This argument has a certain appeal. In section 706(2) challenges, "the agency must justify its final action by reference to the reasons it considered at the time it acted." *Friends of*

Accordingly, Exhibits 1-13 and 17-20 will be part of the record for this claim. They seem at least somewhat relevant to the question whether FWS was required to reinitiate consultation under the Endangered Species Act (even if, as FWS contends, the answer to that question on the merits will ultimately be "no"), and FWS has made no other evidentiary objection to them.

The other half of Claim 5 is an APA challenge to final agency action under section 706(2). The record on this claim is thus limited under the same rules discussed above in the context of Claim 4. Specifically:

**Exhibits 1 and 2:** The plaintiffs offer these exhibits against FWS for the same reasons that they offer them against Caltrans. Thus, these exhibits will not be part of the record for the plaintiffs' section 706(2) claim against FWS, for the reasons already discussed under Claim 4.

**Exhibits 3-12:** Like Caltrans, FWS appears (during at least some stages of the project) to have assumed that "preserv[ing]" the 5.1-acre parcel owned by the City of Pacifica could be an effective mitigation measure. *See, e.g.*, FWS AR 405. But, as discussed above under Claim 4, Exhibits 3-12 cast doubt on that assumption. FWS concedes that it "did not consider these documents directly or indirectly in the course of its decisionmaking process." And though FWS argues that it "was aware of the City's mitigation obligations near the Project area," the documents it cites seem to show only that it was aware that the City owned the parcel in question, that it was aware of the physical condition of the parcel, and that it was aware that the City had previously engaged in restoration efforts on the parcel – not that FWS was also aware

---

*the Clearwater*, 222 F.3d at 560. In section 706(1) challenges, the absence of agency action means an agency can't be limited to the reasons it considered "at the time it acted," but it might still be appropriate to limit review to reasons that the agency actually "considered."
   On the other hand, *BayKeeper*'s rationale does not seem to depend on the identity of the party seeking to supplement the record. As long as the administrative record is still open, it's unclear why the plaintiffs can't also supplement the record with new evidence relevant to whether agency inaction is arbitrary.
   In any event, *BayKeeper* did not limit its statement of the rule to situations in which the agency itself seeks to supplement the record. It's not impossible that the Ninth Circuit will narrow the rule it articulated in *BayKeeper*. Until it does so, however, this Court will follow that rule in the broad way that *BayKeeper* articulated it.

of an ongoing, preexisting obligation to preserve the parcel. Thus, for the same reasons previously discussed with respect to Caltrans under Claim 4, the Court will consider Exhibits 3-12 in connection with the plaintiffs' section 706(2) claim against FWS.

**Exhibit 13:** The Court will not consider Exhibit 13 in connection with the plaintiffs' section 706(2) claim against FWS, for the same reasons previously discussed with respect to Caltrans under Claim 4.

**Exhibit 17:** This is a 2009 Natural Environment Study and its 2010 addendum. The plaintiffs seek to add them to the record on the ground that they "contain more detail" about the project than FWS's administrative record, and that they show "that the Project would permanently destroy more acres of Listed Species habitat" than reflected in the existing record. But those aren't sufficient reasons to supplement the record. At most, this evidence might be used to show that FWS's conclusions on these issues were wrong – not that the FWS's failed to consider these issues, or that its decisionmaking process with respect to these issues was otherwise arbitrary and capricious. Thus, Exhibit 17 will not be part of the record with respect to the plaintiffs' section 706(2) claim.

**Exhibits 18-19:** Each of these two exhibits is a collection of e-mails about the project. None of the e-mails were sent to FWS, but the plaintiffs want to add the e-mails to FWS's record on the ground that they discuss "important information about Caltrans' proposed conservation measures " that Caltrans failed to disclose to FWS, and that FWS thus failed to consider.

The plaintiffs' arguments for including these exhibits are very vague, and for that reason alone the plaintiffs probably haven't met their burden. Additionally, based on the Court's own review, there doesn't seem to be any indication that these e-mails raise serious potential obstacles to the project's proposed conservation measures that FWS failed to consider. Some of the potential obstacles that the plaintiffs identify – submitting proposed mitigation efforts to an FWS biologist for approval and getting confirmation from FWS that the proposed mitigation measures are acceptable – were under the control of FWS itself, so it doesn't make sense to assert that FWS didn't consider them. And though the e-mails do also discuss whether to ask the City of

7

Pacifica to re-confirm that it would be willing to donate its 5.1-acre parcel for mitigation, there's no indication that this issue raised a significant obstacle to the project's proposed mitigation measures. On the contrary, the e-mails show that the City had already expressed its willingness to donate the parcel in the past, and there's no evidence that the City's position had changed.

For these reasons, Exhibits 18-19 will not be part of the record with respect to the plaintiffs' section 706(2) claim.

**Exhibit 20:** Because the plaintiffs offer this exhibit only "to prove FWS failure to reinitiate consultation" in connection with their section 706(1) claim, and the Court has already ruled that the plaintiffs' section 706(1) claim is not limited to the existing administrative record, there appears to be no need to rule separately on this exhibit. If the Court is mistaken, the parties may file an administrative motion requesting a ruling on this exhibit.

## Claim 7

This is an Administrative Procedure Act claim against Caltrans, based on an alleged violation of the Federal Transportation Act. The Federal Transportation Act forbids the "use" of publicly owned parkland unless "(1) there is no prudent and feasible alternative to using that land; and, and (2) the program or project includes all possible planning to minimize harm to" the parkland. 49 U.S.C. § 303(c). The plaintiffs allege that the project will "use" public parkland by further dividing two National Park Service sites (Mori Point and Sweeney Ridge) on either side of Highway 1, and that the project does not comply with this provision in the Federal Transportation Act. As the plaintiffs agreed at the hearing, this claim is a challenge to final agency action under 5 U.S.C. § 706(2).

Exhibits 1-12 and 16 don't seem relevant to this claim. The e-mails in Exhibit 13 are relevant to the claim, in that they discuss the project's impact on connectivity between Mori Point and Sweeney Ridge, but the plaintiffs haven't shown that those e-mails are "necessary to determine whether the agency has considered all relevant factors and has explained its decision." *Locke*, 776 F.3d at 992. On the contrary, Caltrans' record already contains the National Park Service's own commentary on the project, which addresses this same issue. *See* Caltrans AR

8

1611-15. And though some of the discussion in the 2000 NEPA Environmental Assessment in Exhibit 14 seems relevant to the ways in which widening Highway 1 would affect connectivity between Mori Point and Sweeney Ridge, the plaintiffs haven't explained how that exhibit is "necessary" to determine whether Caltrans has overlooked a significant issue, either.

That leaves Exhibit 15, the Caltrans Wildlife Crossings Guidance Manual. The argument for considering Exhibit 15 with respect to Claim 7 seems to be basically the same as the argument for considering that exhibit with respect to Claim 4: the project will impose "barriers to migration of Listed Species" and "fail[s] to mitigate road crossing impacts." In this way, the plaintiffs' theory seems to go, the project will not only might adversely affect listed species (which implicates NEPA) but also might constructively "use" National Park Service land by dividing Mori Point and Sweeney Ridge (which implicates the Federal Transportation Act). Thus, though Claim 4 and Claim 7 implicate different statutes, Exhibit 15 will be part of the record for Claim 7 for the same reasons that it will be part of the record for Claim 4.

**IT IS SO ORDERED.**

Dated: April 25, 2016

VINCE CHHABRIA
United States District Judge