1  JEANNE SCHERER, Chief Counsel
   DAVID GOSSAGE, Deputy Chief Counsel
2  LUCILLE Y. BACA, Assistant Chief Counsel
   DEREK S. VAN HOFTEN (SBN 226880)
3  STACY J. LAU (SBN 254507)
   111 Grand Avenue, Suite 11-100, Oakland, CA  94612
4  Telephone:  (510) 433-9100, Facsimile:  (510) 433-9167

5  Attorneys for Defendants CALIFORNIA DEPARTMENT
   OF TRANSPORTATION; MALCOLM DOUGHERTY

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  PACIFICANS FOR A SCENIC COAST;            Case No.: 3:15-CV-02090-VC
    PACIFICANS FOR HIGHWAY 1
12  ALTERNATIVES; and CENTER FOR              **DEFENDANTS CALIFORNIA**
    BIOLOGICAL DIVERSITY                      **DEPARTMENT OF**
13                                            **TRANSPORTATION AND**
                       Plaintiffs,            **MALCOLM DOUGHERTY'S**
14                                            **CROSS-MOTION FOR**
          vs.                                 **SUMMARY JUDGMENT AND**
15                                            **OPPOSITION TO**
                                              **PLAINTIFFS' MOTION FOR**
16  CALIFORNIA DEPARTMENT OF                  **SUMMARY JUDGMENT**
    TRANSPORTATION; MALCOLM
17  DOUGHERTY, in his official capacity as Director   Date:   August 18, 2016
    of the California Department of Transportation;   Time:   10:00 a.m.
18  U.S. FISH AND WILDLIFE SERVICE,           Judge:  Honorable Vince Chhabria
                                              Courtroom:  4
19                     Defendants.

20

21

22

23

24

25

26

27

28

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ i

NOTICE OF MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT ..................... i

I. INTRODUCTION ................................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND .......................................................1

III. STANDARD OF REVIEW .......................................................................................3

IV. LEGAL ARGUMENT...............................................................................................3

   A.  Caltrans fully complied with the ESA ....................................................................3

     1.    Caltrans did not fail to use the best scientific data available..........................4

       a.   The project description did not constitute a failure to use the best scientific data........5

       b.   The description of the Project's effects on species did not constitute a failure to use the best scientific data....................................................8

       c.   Caltrans did not withhold information from FWS ......................................8

     2.    Caltrans did not violate its section 7(a)(2) duty to insure against jeopardy .................9

   B.  Caltrans has not violated the ESA for failure to re-initiate consultation ............................9

     1.    There has been no procdural failure to re-initiate consultation because Caltrans has not rendered its final word on the matter ................................................9

     2.    Nothing has triggered a duty to re-initiate consultation ...............................12

   C.  Caltrans' EA and FONSI fully complied with NEPA.......................................................14

     1.    The Project description meets NEPA's requirements ................................15

     2.    Plaintiff's assertions regarding flaws in the baseline are unsupported.......................17

     3.    The impacts analysis is not arbitrary and capricious ...................................18

     4.    The analysis of mitigation was not arbitrary and capricious .........................20

     5.    The EA/FONSI is not arbitrary and capricious ...........................................22

   D.  Caltrans was not required to submit a consistency determination because there is no "federal agency activity" as defined by the CZMA......................................23

i

1

E.   The Project will not "use" any section 4(f) parklands ........................................24

V. CONCLUSION..........................................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

ii

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Akiak Native Community v. U.S. Postal Serv.*
4
213 F.3d 1140 (2000) ................................................................17

5

*Andrus v. Sierra Club*
442 U.S. 347(1979).................................................................15
6

*Bear Lake Watch, Inc. v. F.E.R.C.*
7
324 F.3d 1071 (9th Cir. 2003) ..................................................18

8

*Bering Strait Citizens for Responsible Resource Development v. U.S. Army Corps of Engineers*
9
524 F.3d 938 (9th Cir. 2008) ....................................................15

10

*CBD v. BLM*
698 F. 3d 1101 (9th Cir. 2012) ...............................................7, 9
11

*Celotex Corp. v. Catrett*
12
477 U.S. 317 (1986).................................................................3

13

*Center for Biological Diversity v. U.S. Dept. of Interior*
623 F.3d 633 (9th Cir. 2010) ....................................................17
14

*Cf. Environmental Protection Information Center v. U.S. Forest Serv.*
15
451 F.3d 1005 (9th Cir. 2006) ..................................................21

16

*Citizens to Preserve Overton Park, Inc. v. Volpe*
17
401 U.S. 402 (1971)................................................................3

18

*City of Arcadia v. EPA*
265 F.Supp.2d 1142 (N.D. Cal. 2003) ........................................11
19

*Conner v. Buford*
20
848 F.2d 1441 (9th Cir. 1988....................................................4
21

*Conservation Cong. v. Finley*
22
774 F.3d 611 (9th Cir. 2014) ...........................................12, 13, 14

23

*Cottonwood Env. Law Center v. U.S. Forest Service*
24
789 F. 3d 1075 (9th Cir. 2015) ....................................3, 10, 11, 12

25

*Defenders of Wildlife v. EPA*
420 F.3d 946 (9th Cir. 2005) ....................................................9
26

*Franks v. Ross*
27
313 F.3d 184 (4th Cir. 2002) ....................................................12

28

iii

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

*Greenpeace Action v. Franklin*
    14 F.3d 1324 (9th Cir. 1992) .......................................................... 20, 21, 22

*Half Moon Bay Fishermans' Marketing Ass'n v. Carlucci*
    857 F.2d 505 (9th Cir. 1988) ............................................................... 15

*Kern County Farm Bureau v. Allen*
    450 F.3d 1072 (9th Cir. 2006) .............................................................. 4, 5

*Marsh v. Or. Natural Res. Council*
    490 U.S. 360 (1989) ..................................................................... 14, 15

*Milne v. Hillblom*
    165 F.3d 733 (9th Cir. 1999) ................................................................. 8

*Motor Vehicle Mfrs. Ass'n of U.S. Inc. v. State Farm Mut. Auto. Ins. Co.*
    463 U.S. 29 (1983) .......................................................................... 3

*Native Ecosystems Council v. U.S. Forest Serv.*
    428 F.3d 1233 (9th Cir. 2005) .............................................................. 19

*Natural Desert Ass'n. v. USFS*
    465 F.3d 977 (9th Cir. 2006) ............................................................... 10

*Northwest Indian Cemetery Protective Association v. Peterson*
    795 F.2d 688 (9th Cir. 1986) ............................................................... 15

*Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*
    18 F.3d 1468 (9th Cir. 1994) ................................................................. 3

*Ohio Forestry Assn. v. Sierra Club*
    523 U.S. 726 (1998) ....................................................................... 12

*Robertson v. Methow Valley Citizens Council*
    490 U.S. 332 (1989) ....................................................................... 21

*S. Cal. Edison v. FERC*
    770 F.2d 779 (9th Cir. 1985) ............................................................... 10

*Sierra Club v. Babbitt*
    69 F.Supp.2d 1202 (E.D. Cal. 1999) ........................................................ 16

*Sierra Club v. Marsh*
    816 F.2d 1376 (9th Cir. 1987) ........................................................... 12, 14

*Sierra Club v. USDOT*
    948 F.2d 568 (9th Cir. 1991) .............................................................. 24

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

iv

**Defendants California Department of Transportation and Malcolm Dougherty's Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment – CV 15-02090-VC**

*Southwest Ctr. for Biological Diversity v. Babbitt*
  215 F.3d 58 (D.C. Cir. 2000) ................................................................4

*Te-Moak Tribe of Western Shoshone of Nevada v. U.S. Dept. of Interior*
  608 F.3d 592 (9th Cir. 2010) ...............................................................17

*Turtle Island Restoration Network v. Natl. Marine Fisheries Serv.*
  340 F.3d 969 (9th Cir. 2003) .................................................................3

**Statutes**

5 U.S.C. § 706(2)(A) ............................................................................3, 14

16 U.S.C. § 1536 ......................................................................................2

16 U.S.C. § 1536 (a)(2) .............................................................................9

23 U.S.C. 327 ...........................................................................................2

42 U.S.C. § 4332(c) ................................................................................20

49 U.S.C. § 303(c) ..................................................................................24

**Regulations**

Cal. Code Regs., tit. 14, § 15170 .............................................................2

14 C.C.R. § 15125 .................................................................................18

14 C.C.R. § 15126(a) .............................................................................20

14 C.C.R. § 15126.2 ..............................................................................20

15 C.F.R. § part 930, subpart C ..............................................................22

15 C.F.R. § part 930, subpart D ..............................................................23

15 C.F.R. § part 930, subpart E ..............................................................23

15 C.F.R. § part 930, subpart F ..............................................................23

15 C.F.R. § 930.31(a) .......................................................................23, 24

15 C.F.R. § 930.31(c) .............................................................................23

*CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION*
*111 Grand Avenue, Suite 11-100, Oakland, California 94612*
*Telephone: (510) 433-9100, Facsimile: (510) 433-9167*

v

---

**Defendants California Department of Transportation and Malcolm Dougherty's Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment – CV 15-02090-VC**

15 C.F.R. § 930.36 ................................................................................................23

15 C.F.R. § 930.36 (b)(1) ......................................................................................23

15 C.F.R. § 930.90 ................................................................................................24

15 C.F.R. § 930.91 ................................................................................................23

23 C.F.R. § 772 .....................................................................................................21

23 C.F.R. § 774.17 ................................................................................................24

23 C.F.R. § 774.15 ................................................................................................24

23 C.F.R. § 774.17 ................................................................................................24

40 C.F.R. § 402.16 ................................................................................................11

40 C.F.R. § 1500 ...................................................................................................15

40 C.F.R. § 1501.2(b) ............................................................................................17

40 C.F.R. § 1502.9(c) ............................................................................................15

40 C.F.R. 1502.14(d) .............................................................................................17

40 C.F.R. § 1508.13 ..............................................................................................20

40 C.F.R. § 1508.9 ................................................................................................15

40 C.F.R. § 1508.9(b) .......................................................................................16, 17

40 C.F.R. § 1508.27 ..............................................................................................17

50 C.F.R. § 402.14(a) ..............................................................................................7

**Other Authorities**

*NEPA Law and Litigation* (2015 ed.) § 8:57, p. 584-85 ........................................20

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

**Defendants California Department of Transportation and Malcolm Dougherty's Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment – CV 15-02090-VC**

1  **NOTICE OF MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT**

2  **TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD**:

3      PLEASE TAKE NOTICE that on Thursday, August 18, 2016, at 10:00 a.m., or as soon

4  thereafter as the matter may be heard, in the courtroom of the Honorable Vince Chhabria, located in

5  the United States District Court for the Northern District of California, 450 Golden Gate Avenue,

6  17th Floor, Courtroom 4, San Francisco, California, the California Department of Transportation

7  ("Caltrans") will and hereby does move the Court to issue an order granting summary judgment in its

8  favor and denying Plaintiffs' Motion for Summary Judgment (ECF 99).

9      Caltrans seeks an order of the Court granting summary judgment in its favor on the claims set

10  forth in Plaintiffs' Second Amended Complaint (ECF 72) against Caltrans, and denying the relief

11  sought in Plaintiffs' Motion.  This Cross-Motion is made on the grounds that Caltrans has fully

12  complied with all applicable law with respect to the State Route 1 / Calera Parkway / Highway 1

13  Widening Project, including the Endangered Species Act, the National Environmental Policy Act, the

14  Coastal Zone Management Act and section 4(f) of the Department of Transportation Act.

15      This Cross-Motion is brought under Fed. R. Civ. P. 56 and is based on this Notice of Motion,

16  the attached Memorandum of Points and Authorities, Caltrans' administrative record filed with the

17  Court (ECF 77, 85), all of the pleadings, filings and records in this matter, and all other matters of

18  which the Court may take judicial notice, and on such other and further arguments, documents, and

19  grounds Caltrans advances in this matter.

20

21

22

23

24

25

26

27

28

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

**Defendants California Department of Transportation and Malcolm Dougherty's Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment – CV 15-02090-VC**

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

## I.   Introduction

Plaintiffs launch a kitchen-sink challenge to Caltrans' Calera Parkway Highway 1 Widening Project in Pacifica, advancing dozens of baseless claims under a wide range of federal statutes.  This latest lawsuit comes on the heels of other unsuccessful lawsuits Plaintiffs have filed against this same Project in state court over the past several years.  Plaintiffs strongly oppose the Project, and have worked for years to stop it, but their legal claims have no merit.

In this lawsuit, Plaintiffs mostly present a litany of inaccurate factual allegations untethered to any legal arguments or standards.  They claim violations of the Endangered Species Act for the failure to use the best scientific data, but cite portions of the ESA consultation process that have nothing to do with scientific data at all.  They claim Caltrans failed to re-initiate ESA consultation, even though both U.S. Fish and Wildlife Service and Caltrans contemplate that the decision on that issue will appropriately be made later, since the Project has not received final approvals and permits and is not close to beginning construction, and even though Caltrans cannot proceed with the Project until the City of Pacifica and the San Mateo County Transportation Authority request and issue funds.  They allege NEPA violations by recycling the same unsuccessful CEQA arguments from state court litigation, despite the different legal requirements and standards.  And they allege violations of section 4(f) and the Coastal Zone Management Act, but fail to understand the basic framework of the statutes.

Caltrans has fully complied with all applicable laws with respect to the Project, and this Court should grant Caltrans' motion for summary judgment and deny Plaintiffs' motion.

## II.   Factual and Procedural Background

The San Mateo County Transportation Authority ("TA"), in conjunction with Caltrans and the City of Pacifica, has proposed the State Route 1 / Calera Parkway / Highway 1 Widening Project ("Project") to provide operational improvements and decrease congestion on a 1.3-mile stretch of roadway on State Route 1 within the City of Pacifica.  AR 7.  The Project would widen SR 1 from four lanes to six from 1,500 feet south of Fassler Avenue to 2,300 feet north of Reina Del Mar Avenue, provide a barrier-protected, landscaped median between San Marlo Way and Reina Del

_____

**Defendants California Department of Transportation and Malcolm Dougherty's Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment – CV 15-02090-VC**

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

Mar, make various improvements to the lane configurations of the two intersections within the Project area, and upgrade an existing bicycle / pedestrian path.  AR 443.  The TA, which was created to fund and administer Measure A sales tax, is the Project proponent and funding agency.  AR 7, 445.  Caltrans, as the owner/operator of the Highway System, is the lead agency under the California Environmental Quality Act ("CEQA") and National Environmental Policy Act ("NEPA").  AR 445.

Caltrans is the lead agency for NEPA pursuant to a Memorandum of Understanding ("MOU") with the Federal Highway Administration ("FHWA"), executed pursuant to 23 U.S.C. 327, through which FHWA assigned and Caltrans assumed, subject to the terms and conditions set forth in the MOU and in 23 U.S.C. 327, all of the U.S. Department of Transportation Secretary's responsibilities for environmental review, consultation, or other action pertaining to the review or approval of a specific project as required under specified and enumerated federal environmental laws.  AR 439, 445; ECF 46 at 7-36.  The Project is subject to applicable federal environmental laws because the TA has proposed use of federal funds if they become available, although no federal funds have been issued for the Project yet.  AR 65, 445, 7099-7112.

In February 2007, the TA approved funds to begin the Environmental Document phase of the Project.  AR 8. On August 1, 2013, Caltrans approved the Final Environmental Impact Report / Environmental Assessment ("EA") for the Project, which included the biological opinion issued by U.S. Fish and Wildlife pursuant to Endangered Species Act consultation ("BiOp").  AR 437; 16 U.S.C. § 1536.  The EA is a joint document which considers the significance of Project impacts on the environment separately under CEQA and NEPA.  AR 152, 445; see also Cal. Code Regs., tit. 14, § 15170.  On August 2, 2013, Caltrans signed the Final Project Report, which selected the preferred alternative and granted approval for the Project to move to the next stage of project development.  AR 3-7.

Additional permits and approvals must be obtained before Project construction can begin.  AR 61-66.  The Project cannot proceed to the next stage of development to obtain those permits and approvals until the City and TA take the requisite actions.  AR 62, 101-15, 7099-7116.  This fact is significant because the Endangered Species Act provides that section 7(a)(2) applies only to parts of

2

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

an action in which there is discretionary federal involvement or control. *Cottonwood Env. Law Center v. U.S. Forest Service*, 789 F. 3d 1075, 1086-87 (9th Cir. 2015).

### III.  Standard of Review

A decision on cross-motions for summary judgment is appropriate where the court's review is limited to the administrative record and the case does not present any genuine issues of material fact. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1472 (9th Cir. 1994). Summary judgment is entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plaintiffs admit that judicial review of their claims under the ESA, NEPA, Section 4(f), and the CZMA is governed by the APA. 5 U.S.C. § 706(2)(A). Under the APA, a court may set aside an agency action only if the court determines that the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Turtle Island Restoration Network v. Natl. Marine Fisheries Serv.*, 340 F.3d 969, 973 (9th Cir.2003). Under this standard, the "court is not to substitute its judgment for that of the agency," *Motor Vehicle Mfrs. Ass'n of U.S. Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), and "the ultimate standard of review is a narrow one." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

### IV.  Legal Argument

#### A.  Caltrans fully complied with the ESA.

Plaintiffs' ESA claims fall into two general categories: (1) challenges to actions Caltrans has taken pursuant to the ESA, and (2) contentions that Caltrans was required to take subsequent actions, namely re-initiation of consultation.  With respect to the first category, Plaintiffs' claims consist of little more than inaccurate factual assertions, unconnected to any law; as it is, Caltrans fully complied with the ESA.  With respect to the second category, there has been no procedural failure here because the Project has not been approved for construction, as it is currently unfunded and cannot proceed unless and until the City or TA takes action to move it forward. AR 62, 101-15, 7099-7116. Accordingly, there is no threat of harm, and both FWS and Caltrans recognize that, when the Project

3

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1  proceeds, re-initiation would occur, if necessary, prior to construction.  FWS AR 567-90.

### 1.   Caltrans did not fail to use the best scientific data available.

Plaintiffs claim Caltrans violated the ESA by failing to use the best scientific data available in its biological assessment.  ECF 99 at 3-7.  These claims fail for three main reasons, discussed in turn below.  First and foremost, Plaintiffs focus on aspects of the BA that have nothing to do with "scientific data" at all.  Second, Plaintiffs do not accurately characterize the record.  Third, while Plaintiffs allege various "changes" to the Project, they consist principally of minor design modifications that occurred after submission of the BA, which are a normal, contemplated part of the ESA consultation process.  See, e.g., FWS AR 36:589.  And, to the extent Plaintiffs contend that any such changes require re-initiation of consultation, FWS has explained that "aspects of the project often change as they near design completion," and re-initiation would take place later in the project approval process, closer to the beginning of construction.  FWS AR 36:589-90.

Notably, Plaintiffs fail to identify any applicable standard for this Court to review Caltrans' actions in providing the BA and the data contained therein to FWS.  Indeed, Plaintiffs fail to cite to a single case where a court has evaluated an action agency's biological assessment, much less found its contents to be a violation of the ESA.  ECF 99 at 3-7.  All of the authority Plaintiffs cite considered claims against the <u>consulting</u> agency and whether it used the best scientific data in its biological opinion.  ECF 99 at 3:16-20.  For instance, in *Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1080 (9th Cir. 2006), the court evaluated whether FWS had failed to utilize data from three studies in reaching its listing decision.  *Id.*  The court explained that "best scientific data" requirement "merely prohibits an agency from disregarding available scientific evidence that is in some way better than the evidence it relies on."  *Id.* at 1080-81 (citing *Southwest Ctr. for Biological Diversity v. Babbitt*, 215 F.3d 58, 60 (D.C. Cir. 2000)).  Essentially, the court explained, this standard means that a consulting agency "cannot ignore available biological information."  *Id.* at 1081 (citing *Conner v. Buford*, 848 F.2d 1441, 1454 (9th Cir. 1988).

The Ninth Circuit has recently re-affirmed the well-settled standard that the determination of what constitutes the best scientific data available "belongs to the agency's special expertise, and thus

4

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

when examining such a determination, a reviewing court must generally be at its most deferential." *Conservation Congress v. Finley*, 774 F.3d 611, 620 (9th Cir. 2014) (citations omitted). A court is not permitted to substitute its judgment for the agency's in determining which scientific data to credit, as long as the conclusion is supported by adequate and reliable data. *Id.* Even data that is "imperfect" or "weak" may be relied on, as long as the agency considers all relevant data. *Id.*

Under this standard, Plaintiffs fail to demonstrate any way in which Caltrans did not use the best scientific data. Instead, as discussed below, Plaintiffs merely flyspeck the BA and make various mischaracterizations of it and the record.

### a. The Project description did not constitute a failure to use the best scientific data.

Plaintiffs cite to a number of alleged differences between the BA and the EA, such as the description of the landscaped median and the projected acreage of habitat loss. ECF 99 at 4-19. However, these have nothing to do with scientific data, and Plaintiffs make no effort to demonstrate how Caltrans "disregarded available scientific evidence that is in some way better than the evidence it relies on." *Kern County*, 450 F.3d at 1080. Plaintiffs' argument fails for that reason alone. *Id.*

In any case, the descriptions of the landscaped median in the BA and EA are <u>not</u> inconsistent. The EA shows a cross-section of a portion of the median as including a 16-foot landscaped section, two 4-foot concrete barriers, and two 10-foot inside shoulders, which totals 40 feet, the maximum width of the median within the Project limits. AR 555. That is fully consistent with the BA's description of the Project as including a 16-foot wide landscaped median with concrete barriers and inside shoulders within the designated portion of Highway 1. AR 2794. The EA also explained that the width of the median will vary from the 40-feet shown in Figure 1.6 to as narrow as 12 feet in other parts of the Project. AR 549, 555. Similarly, contrary to Plaintiffs' claims, the BA reflected the fact that the Project may result in 7.08 acres of permanent and 3.50 acres of temporary habitat loss, or 6.61 and 2.95 acres for areas not already developed. AR 2888. The Draft EA also identified the projected habitat loss depending on the build alternative selected, and was part of the panoply of information on which the BiOp was based. AR 184, 363, 981. Similarly, Plaintiffs claim the EA eliminated biofiltration strips and swales, but it did not. ECF 99 at 4:10-13; AR 701-02, 991.

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

Plaintiffs also claim that Caltrans' failure to use its Wildlife Crossings Guidance Manual to assess the topography of the Project area was a failure to use the best scientific data, but both FWS and Caltrans properly determined that no practical crossing point existed to connect areas of natural habitat, and that crossing for the species in this location is not appropriate. AR 985, 1076-77, 2798, 3083-86. The record reflects that the existing highway serves as a complete barrier to wildlife crossing, and that there is no desirable habitat for the species to cross to, so that there is no wildlife crossing conflict. Id. The Manual describes procedures for responding to conflicts where wildlife will be crossing roadways and enhancing wildlife crossings, neither of which is applicable here. ECF 87-10 at 12. Plaintiffs make no effort to demonstrate otherwise. ECF 99 at 4:24-27.

Plaintiffs also claim the BA failed to use the best scientific data because it did not include information about two conservation measures, in that it allegedly failed to disclose that the City parcel was already required to be preserved and enhanced and that the City was already engaged in enhancement activity. ECF 99 at 4:15. But the BiOp explained that Caltrans "proposes to preserve, <u>enhance</u> and manage in perpetuity a 5.14-acre parcel owned by the City of Pacifica," and outlined the enhancement measures as including "creation of depressions to collect water, and woody debris and rocks to provide moist covered areas for both species," to improve the quality of life of habitat and facilitate foraging, sheltering and movement / dispersal…." AR 995-96 (emphasis added).

Plaintiffs argue that an existing deed restriction on the City parcel undermines Caltrans' proposed enhancement measures, but the deed restriction merely precludes development, and in no way precludes or negates the feasibility or efficacy of Caltrans' proposed measures. ECF 99 at 5:1-2; 86-9; 86-5. Plaintiffs claim the City is already engaged in "some enhancement activity," but they cite no evidence of that. ECF 99 at 5:1-2. Instead they cite evidence of a deed restriction (ECF 86-9, 86-5), the City's prior construction of replacement ponds (ECF 87-11), and general habitat enhancement goals for the area (ECF 87-4). ECF 99 at 10:25-27; AR 995-96, 1001. There is no evidence of ongoing enhancement and, even if there were, it does not follow that the additional enhancement measures proposed by Caltrans will not further benefit the species or constitute acceptable compensation measures. Plaintiffs have identified no authority for such a proposition.

1    Plaintiffs also claim that the BA incorrectly stated that NPS had approved the conservation

2    measure to enhance the 5.46 GGNRA parcel.  ECF 99 at 5:8-19.  However, Caltrans in fact made it

3    clear that in fact NPS had <u>not</u> fully approved that measure, but rather had only agreed to it "in

4    concept," and that "details will need to be worked out to reach an agreement on the mitigation plan

5    with NPS."  AR 2888.  This was reflected in the Draft EA as well.  AR 184, 363, 368.  Plaintiffs are

6    therefore flatly incorrect when they state that Caltrans did not inform FWS that NPS had not

7    approved the measure.  ECF 99 at 5:12-13.  Plaintiffs essentially quibble with semantics, when they

8    cite to NPS comments on the Draft EA where NPS asked that "approved in concept" be changed to

9    "agreed in concept."  ECF 99 at 8-12; ECF 87-18 at 3.

10    Finally, even if there were "changes" to the Project description, Plaintiffs' argument is

11    predicated on a misunderstanding of the ESA and the consultation process, which begins even before

12    the BA, but then includes ongoing interaction between the agencies as the Project develops.  AR

13    981-83; 50 C.F.R. § 402.14(a); *CBD v. BLM*, 698 F.3d 1101, 1128 (9th Cir. 2012) (consultation must

14    begin "at the earliest possible time").  There is no separate requirement that a biological assessment

15    itself be updated during the consultation process.  Moreover, as FWS explained, the BiOp was issued

16    when the Project design was 35 percent complete, because the consultation process takes time to

17    complete.  FWS AR 36:589.  Because of that early consultation, "aspects of the project often change

18    as they near design completion."  Id.  Caltrans explained this process as well, noting in the Draft EA

19    that the "conceptual design is sufficiently detailed for Caltrans to determine approval status of the

20    project for the Final EIR/EA," and that "if Caltrans decides to construct all or part of the project,

21    consistent with all projects of this nature, the project will enter the final design phase following the

22    CEQA/NEPA process," during which phase, "as more information becomes available, the design

23    may be modified slightly based on more accurate and up-to-date findings."  AR 148, 1113.

24    FWS further explained that it is at design completion that Caltrans would reinitiate

25    consultation if necessary, and FWS would address any changes.  FWS AR 36:589.  FWS added that

26    "Caltrans has not begun this project, therefore re-initiation could occur anytime prior to the start of

27    construction," that "until they go to construction they are not in violation," and that "Caltrans is good

28

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

7

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

about reinitiation since they begin formal consultation at the 35% [design] stage."  FWS AR 30:564, 567.  With respect to the changes in habitat acreage, Caltrans identified the difference as "very minor" but recognized that they may re-initiate consultation nonetheless in the future at the appropriate time.  AR 10556.  In short, the modifications Plaintiffs identify are part of the normal consultation process, which contemplates accounting for such modifications at appropriate stages of project development, and in no way demonstrate that Caltrans failed to use the best scientific data.

### b.  The description of the Project's effects on species did not constitute a failure to use the best scientific data.

Plaintiffs make a number of unsupported assertions regarding the content of the BA and its effects on species.  ECF 99 at 5:20-6:8.  Plaintiffs have waived these arguments by failing to support them with any citations to the record or applicable law.  *Milne v. Hillblom*, 165 F.3d 733, 736 (9th Cir. 1999).  In any case, the assertions are factually and legally baseless.  For instance, Plaintiffs claim the BA improperly assumed that conservation measures would occur.  In fact, though, it described the measures as "proposed measures" that it would pursue "in cooperation with the GGNRA."  AR 2888.  The BiOp also provides that "if the proposed compensation scheme is not fully implemented, Caltrans shall provide an alternative compensation scheme to be reviewed and approved by the Service/CDFG."  AR 1009.

Plaintiffs then cite to and mischaracterize NPS comments on the Draft EA, in support of their argument that the BA was inadequate.  ECF 99 at 6:9-18.  Yet Plaintiffs do not suggest how a comment on a draft EA could establish that the BA violated the ESA, and they neglect to cite to Caltrans' responses to the comments, which demonstrate that the BiOp contained the relevant information regarding the locations of snake and frog populations that was added to the Final EA in response to the comments. AR 764, 1003, 1075-84 (snakes observed at Sharp Park and nearby wetlands at Mori Point). Plaintiffs claim that the BA did not consider "measures NPS had taken," but they provide no information regarding what those measures allegedly are.  ECF 99 at 6:11-14.

### c.  Caltrans did not withhold information from FWS.

Plaintiffs claim Caltrans failed to disclose to FWS that "preservation of the City parcel was

8

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

not possible," citing to a letter between environmental consultants before the BiOp was issued.  ECF 99 at 6:19-7:7.  However, as discussed above, the record reflects that FWS and Caltrans understood that Caltrans' proposed conservation measure for the 5.14-acre parcel included an array of <u>enhancement</u> measures, not just preservation. AR 995. Plaintiffs also claim Caltrans withheld information about the addition of a retaining wall. ECF 99 at 6:25. However, the e-mail Plaintiffs cite reflects that addition of the retaining wall "would not result in any further impacts."  AR 9136. Lastly, Plaintiffs cite Caltrans meeting notes after issuance of the BiOp which discuss the possible need for amendment.  ECF 99 at 7:4-7. But these notes merely reflect initial consideration of whether and when to pursue amendment of the BiOp.  AR 9197.  As FWS itself explained, amendment of the BiOp, to the extent it is necessary, would be appropriate closer to construction.  FWS AR 30:564.

## 2.   Caltrans did not violate its section 7(a)(2) duty to insure against jeopardy.

Plaintiffs claim Caltrans violated the ESA because it is relying on a flawed BiOp to ensure the Project will not jeopardize frogs and snakes' survival or recovery.  ECF 99 at 9:24-26.  This claim is predicated on a determination that the BiOp issued by FWS is flawed, which Caltrans disputes.  *CBD v. BLM*, 698 F. 3d 1101, 1127-28 (9th Cir. 2012).  In any case, Caltrans has not violated section 7(a)(2) because it has not "authorized, funded or carried out" this Project.  16 U.S.C. § 1536 (a)(2). AR 62, 101-15, 7099-7116. As explained above, the Project is currently unfunded, and has not received final approvals which are pre-requisites to the Project being constructed. Id. Accordingly, Caltrans has insured that this action is not likely to jeopardize the species.

The cases Plaintiffs rely on dealt with projects actually being constructed so that, in contrast to the situation here, the agencies had not insured against jeopardy.  ECF 99 at 9:27-10:5; *CBD v. BLM*, 698 F. 3d 1101 (approved pipeline completed and put into service); *Defenders of Wildlife v. EPA*, 420 F.3d 946 (9th Cir. 2005) (pollution permits issued).

## A.  Caltrans has not violated the ESA for failure to re-initiate consultation.

### 1.   There has been no procedural failure to re-initiate consultation because Caltrans has not rendered its final word on the matter.

Caltrans has not failed to re-initiate consultation because its decision regarding re-initiation is

9

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1  not at "administrative resting place," so there has been no procedural failure.  *Cottonwood, supra,*

2  789 F.3d 1075; *Or. Natural Desert Ass'n. v. USFS*, 465 F.3d 977, 984 (9th Cir. 2006).  Instead, the

3  record demonstrates that the agencies have not rendered their last word on re-initiation, but instead

4  contemplate future administrative decisions regarding re-initiation before final approvals are

5  obtained and before construction can begin.

6        For instance, FWS has explained that because of early consultation, "aspects of the project

7  often change as they near design completion. <u>At that point they reinitiate formal consultation</u> and we

8  address any changes as they relate to federally listed species and critical habitat."  FWS AR 589

9  (emphasis added).  The Service added that "<u>there is no need to reinitiate until they put [the Project]</u>

10  <u>back on their schedule to go to construction</u>."  FWS AR 36:590 (emphasis added).  Also, "prior to

11  going to construction Caltrans may need to amend the BO to reflect the project changes and they are

12  good about doing that," but "<u>until they go to construction they are not in violation</u>."  FWS AR

13  __:590, 567.  Finally, FWS stated that "Caltrans has not begun this project, therefore <u>reinitiation</u>

14  <u>could occur anytime prior to the start of construction</u>."  FWS AR 30:564z.  Significantly, FWS is the

15  agency with jurisdiction over the species and the consultation process, and an agency's interpretation

16  of its own regulations is entitled to substantial deference. *CBD v. Salazar*, 695 F.3d 893, 904-07 (9th

17  Cir. 2012).  Caltrans also contemplated possible re-initiation if and when the Project moves closer to

18  construction.  AR 10550-56.  This squares with the status of the Project design, which is sufficiently

19  detailed for Caltrans to determine approval status of the project for the Final EA, but may be

20  modified during final design phases as more information becomes available. AR 148, 1113.

21        The record thus demonstrates that Caltrans' decision is not at an administrative resting place,

22  and that the scope and substance of Caltrans' and FWS' decisions regarding re-initiation remain

23  unsettled.  Judicial intervention at this stage would plainly interfere with this further administrative

24  action contemplated by both agencies.  *See, e.g., S. Cal. Edison v. FERC*, 770 F.2d 779, 785 (9th Cir.

25  1985) (court intervention at that stage would involve it in an abstract question that has not affected

26  the parties in a concrete way).

27        The Ninth Circuit's recent decision in *Cottonwood* presents a stark contrast to these facts, and

28

10

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

demonstrates that there has been no procedural failure here.  In *Cottonwood*, the Forest Service had actually rendered its last word on the matter when it made an affirmative decision not to re-initiate consultation, years <u>after</u> it had approved and begun implementing the project.  *Cottonwood*, 789 F.3d at 1084.  The Forest Service had adopted and completed its lynx management plan in 2007 and "had refused to reinitiate section 7 consultation after the 2009 revised critical habitat designation."  *Id*. There has been no such refusal or final agency decision here.  For that reason, there has been no "procedural failure" as there had been in *Cottonwood*, at which point "the claim can never get riper." *Id*.  While the court in *Cottonwood* identified the procedural failure as completion of the agency's decision regarding re-initiation, there has been no such completion or decision here.  *Id*.

Also, the Court would benefit from further factual development after the agencies re-initiation or decide not to.  While in *Cottonwood* the factual development necessary to adjudicate the case was complete – the Service had made its final decision regarding whether to re-initiate – here it remains to be determined whether and what the parties will re-initiate consultation for.  *Id*.

At the same time, delayed review would cause no hardship to Plaintiffs here because not only has construction not begun, but it is not imminent and <u>cannot</u> begin until additional review, permitting and funding are complete.  AR 62, 101-15, 7099-7116.  In *Cottonwood*, by contrast, the project had been approved years earlier and was being actively applied.  *Id*.  Here, the Project is currently inactive <u>unless and until</u> the City and TA decide to request and provide funding.  Caltrans has no discretion to move forward with the Project until those steps occur.  Id.; 40 C.F.R. § 402.16; *Cottonwood, supra,* 789 F. 3d at 1086-87 ("discretionary Federal involvement or control over the action" required for re-initiation).

 In addition, Caltrans must make its own additional approvals and obtain permits before it can proceed with construction. AR 61-66.  Plaintiffs and the species will suffer no hardship because there is no threat of harm.  Plaintiffs "cannot point to a single future event or condition that is fairly certain to occur and will adversely affect them."  *City of Arcadia v. EPA*, 265 F.Supp.2d 1142, 1156-57 (N.D. Cal. 2003) (TMDL's did not impose any obligations on Plaintiffs and were subject to revision before any such obligations would be imposed).  In *City of Arcadia*, the TMDLs were to be revisited

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1   at the end of the monitoring period, so it was possible compliance dates or points would be altered.

2   *Id*. at 1158.  For that reason, the court held that judicial intervention would interfere with that further

3   administrative action, and the court would benefit from further factual development of the issues.  *Id*.

4    Other circuits have reached similar holdings.  *See, e.g., Franks v. Ross*, 313 F.3d 184, 195 (4th Cir.

5   2002) (obvious factual contingencies and additional approvals put construction in doubt).

6       A court considers three factors to determine ripeness: (1) whether delayed review would

7   cause hardship to the plaintiffs, (2) whether judicial intervention would inappropriately interfere with

8   further administrative action, and (3) whether the courts would benefit from further factual

9   development of the issues presented.  *Ohio Forestry Assn. v. Sierra Club*, 523 U.S. 726, 733 (1998).

10  Applied here, these factors establish that Plaintiffs' claim against Caltrans is not yet ripe, and

11  demonstrate how this case stands in stark contrast to *Cottonwood*.

**2.      Nothing has triggered a duty to re-initiate consultation.**

13      Even if the time to re-initiate consultation had passed, the alleged changes did not rise to the

14  level necessary to require re-initiation.  It is well-settled that agencies are not required to stop and re-

15  initiate consultation for "every modification of or uncertainty in a complex and lengthy project."

16  *Conservation Cong. v. Finley*, 774 F.3d 611, 618 (9th Cir. 2014) (citing *Sierra Club v. Marsh*, 816

17  F.2d 1376, 1388 (9th Cir. 1987).  Instead, where the information is not new, or the agency had

18  already sufficiently addressed the relevant effects during the consultation process, re-initiation is not

19  required.  *Id.* at 619.  Here, Plaintiffs identify what they characterize as "modifications" or "new

20  information," but they make no effort to explain how they would cause any new effects not

21  previously considered, and in fact the record demonstrates that the information is not new, and that

22  Caltrans and FWS already considered it.  ECF 99 at 10:6-11:10.

23      For instance, Plaintiffs claim that "increased Project excavation" necessitates re-initiation, but

24  they fail to identify how that constitutes new information or a modification.  ECF 99 at 10:21.

25  Plaintiffs do not even cite to the BiOp or any other aspect of the consultation process against which a

26  change could be measured.  Id.  More importantly, though, the EA's discussion of the excavation

27  work identifies impacts to <u>paleontological resources</u> – Plaintiffs cite no evidence of excavation

28

12

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1   effects on species or habitat, much less in ways that require re-initiation.  Id.; AR 469.  Similarly,

2   Plaintiffs claim the Project "eliminated barriers to protect the Listed Species," citing only to a page

3   of the EA discussing water quality and stormwater runoff impacts.  ECF 99 at 10:22; AR 702.  The

4   page has nothing to do with impacts to species or "eliminated barriers" at all.

5        Plaintiffs also claim the Project "changed retaining walls designed as mitigation measures,"

6   but they cite only to a page of the BiOp and a page of the EA which are nearly identical regarding

7   proposed retaining walls.  ECF 99 at 10:21-22; AR 985, 550.  Plaintiffs do not explain what the new

8   information is, or show that it results in new effects not previously considered.  Id.

9        Plaintiffs claim that habitat loss increased after consultation ended, but the Project Report

10  identifies the same habitat loss as the BA did, which projected a range between 6.61 and 7.08 acres

11  of permanent impacts.  ECF 99 at 10:20; AR 2888.  Even if there were a change, Plaintiffs make no

12  effort whatsoever to demonstrate or explain how that change will cause effects to the species or

13  habitat in a manner or to an extent not previously considered.  AR 482, 995; ECF 99 at 10:20.

14  Instead, Plaintiffs simply imply that any modification necessarily requires re-initiation, a position the

15  Ninth Circuit has repeatedly rejected.  *Conservation Cong.*, 774 F.3d at 618. In any case, the analysis

16  in the BiOp was based on the range identified in the BA, which demonstrates that the small

17  difference in acreage would not result in effects not previously considered, and Plaintiffs have

18  articulated nothing to the contrary.  AR 981.

19       Finally, Plaintiffs erroneously contend that Caltrans "discovered during the consultation that

20  its City parcel conservation measure was not possible."  ECF 99 at 10:25-27.  In fact, though,

21  Caltrans proposed detailed habitat enhancement measures for that parcel, and Plaintiffs identify

22  nothing to suggest those measures are not possible. See, e.g., AR 995-96.  Instead, Plaintiffs identify

23  a deed restriction, the City's general habitat enhancement goals, and earlier restoration measures that

24  Caltrans and FWS were aware of.  ECF 99 at 10:25-27; AR 995-96, 1001.

25       Plaintiffs also cite to a January 2012 letter from a consultant regarding the proposed

26  conservation measures.  ECF 99 at 10:23; AR 9133.  However, the letter recommends that the

27  conservation measures include enhancement measures, and notes that the existing conservation

28

13

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

easement on the parcel does not preclude such measures, but rather supports them.  AR 9133-34. The BiOp includes the same information regarding the proposed measures.  AR 995-96.

Ninth Circuit case law demonstrates that re-initiation of consultation was not required here. In *Conservation Congress*, for instance, the court found that the Forest Service was not required to re-initiate consultation because the biological assessment had already sufficiently addressed likely effects of the project's burning and thinning methods on owl habitat.  *Conservation Cong.*, 774 F.3d at 619-20.  By contrast, in *Sierra Club v. Marsh*, the Army Corps was required to re-initiate consultation because it had been unable to obtain replacement habitat deemed "necessary to minimize the project's effects," well after the deadline for obtaining such land.  *Sierra Club v. Marsh*, 816 F.2d at 1388.  The court explained that "the circumstances here go far beyond the problems and doubts associated with any large endeavor," and that "the creation and management of a refuge for birds is the most important of many modifications the FWS considered absolutely necessary to insure that the project was not likely to jeopardize their continued existence." *Id.*

Here, though, no such deadlines have passed, nor is there is any indication Caltrans will be unable to provide the proposed measures.  While Plaintiffs claim that pre-existing deed restrictions preclude Caltrans from providing its proposed enhancement measures, the record does not support that claim.  Plaintiffs' argument would result in virtually every project requiring re-initiation of consultation, contrary to the Ninth Circuit's proviso in *Conservation Congress* that agencies are not required to stop and re-initiate consultation for "every modification of or uncertainty in a complex and lengthy project." *Conservation Cong.*, 774 F.3d at 618.

**B.  Caltrans' EA and FONSI fully complied with NEPA.**

Plaintiffs' challenges to the Final EA are meritless, and fail to meet Plaintiffs' burden to establish that Caltrans' actions were "arbitrary and capricious." 5 U.S.C. § 706(2)(A); *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989). Instead Plaintiffs string together a litany of allegations untethered to any legal standard or analysis.[1] For one, Plaintiffs substitute requirements

---

[1]  Space constraints limit Caltrans' responses to Plaintiffs' scattershot arguments. However, Caltrans contests every allegation, and any brevity of argument should not be viewed as a waiver.

14

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

under the California Environmental Quality Act – not at issue in this action – for those under NEPA. For example, they allege Caltrans did not make significance determinations for each environmental resource, when NEPA calls for evaluation of significance of the Project's effects *as a whole*.[2]

For another, Plaintiffs point out differences between the Draft and Final EA, without showing why any of these differences are relevant. A draft EA is "only a *draft*, i.e., necessarily preliminary," and "agencies must have some flexibility" to modify it to reflect public input. *Half Moon Bay Fishermans' Marketing Ass'n v. Carlucci*, 857 F.2d 505, 508-509 (9th Cir. 1988). Preparation of a supplement to a draft EA for public review is required only when plaintiffs establish "substantial" changes in the project relevant to environmental concerns, or "significant new circumstances or information" bearing on the project or its impacts. 40 C.F.R. § 1502.9(c); *Marsh,* 490 U.S. at 373.[3] Plaintiffs never even attempt to meet this standard.

Here, Caltrans' EA exceeds NEPA requirements for a "concise public document" which "briefly provide[s] sufficient evidence and analysis" for determining whether to prepare an EIS, through discussion of the Project need, alternatives, and environmental impacts. 40 C.F.R. § 1508.9.[4] It completely fulfills NEPA's purpose of providing a meaningful opportunity to weigh Project benefits against environmental effects. *See Marsh,* 490 U.S. at 371. Plaintiffs' claims to the contrary amount, at most, to cherry-picking minor inconsistencies and typographic errors in the Final EA. But, a reviewing court may not "flyspeck" an environmental document, *Northwest Indian Cemetery Protective Association v. Peterson*, 795 F.2d 688, 695 (9th Cir. 1986), and this court should not assign validity to Plaintiffs' unmeritorious claims.

**1. The Project description meets NEPA's requirements.**

The Final EA's description of the proposed Project exceeds the requirement for a "brief"

[2] As stated above, Plaintiffs' CEQA challenge was not successful.
[3] Moreover, Caltrans has exceeded its obligations under NEPA, which does not even require circulation of a draft EA for public comment. *Bering Strait Citizens for Responsible Resource Development v. U.S. Army Corps of Engineers*, 524 F.3d 938, 951-53 (9th Cir. 2008). The NEPA regulations cited above refer to supplementation of a draft *EIS*. 40 CFR § 1502.9.
[4] The Council of Environmental Quality regulations, found at 40 C.F.R. § 1500, *et seq.*, are the authoritative guide to NEPA's interpretation, and are granted "substantial deference" by the courts. *Andrus v. Sierra Club*, 442 U.S. 347, 358 (1979).

15

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1  discussion of this alternative. 40 C.F.R. § 1508.9(b); AR 533-37 (maps), 543, 549-553 (description),

2  AR 547 (design plan), AR 555 (typical cross-section). Plaintiffs fail to support their argument with

3  any applicable authority. The single regulation Plaintiffs cite, 40 C.F.R. section 1501.2(b), is located

4  under the section entitled, "Apply NEPA early in the process"—something that Plaintiffs do not

5  dispute Caltrans has done—and is unrelated to any requirement for a project description in an EA.

6  Moreover, Plaintiffs cite to *Sierra Club v. Babbitt*, 69 F.Supp.2d 1202, 1217-18 (E.D. Cal. 1999),

7  where the draft EA at issue contained "few details of what would actually be done on the Project."

8  But that is not the case here; and regardless, Plaintiffs fail to address the standard for preparing a

9  supplement to a draft EA.

10     **Intersection width.** Plaintiffs actually admit that Caltrans specified the proposed width of

11  the Fassler Avenue and Reina del Mar intersections, by citing the precise intersection widths

12  disclosed in the BiOp (an appendix to the EA), AR 984, and EA diagrams, AR 211, 547. Meanwhile,

13  Plaintiffs' complaint that the diagrams were labeled "conceptual" is irrelevant because there is no

14  requirement that an EA include finalized design plans. As the EA explains, the diagrams are

15  sufficiently detailed for environmental analysis. AR 1113.

16     **Excavation volume.** Plaintiffs again fail to explain how differences between the Draft and

17  Final EA violate NEPA. Even worse, Plaintiffs misleadingly compare apples to oranges discussion of

18  a 170-foot *retaining wall* in the Draft EA with discussion of *excavation* in a completely different

19  section of the Final EA. ECF 99 at 12:20-22. In fact, the corresponding sections of the Draft and

20  Final EA are the same. AR 281, 658.

21     **Lane elevation changes.** Plaintiffs erroneously claim that a proposed alteration in the

22  Project design, to build the parallel northbound and southbound lanes of Highway 1 to different

23  elevations, violates NEPA. Here, the proposed grade separation between parallel lanes would be a

24  "minor variation" and "qualitatively within the spectrum" of the alternative described in the draft,

25  and thus not require supplementation. *Forty Most Asked Questions Concerning CEQ's National*

26  *Environmental Policy Act Regulations*, 46 Fed. Reg. 18,026, 18,035 (1981); AR 565-67. Instead,

27  Plaintiffs make an inapt comparison with a rejected alternative alignment which would have required

28

1    grade separation of *perpendicular* streets, resulting in a new overpass or "underpass." AR 231-33.

2        **Retaining walls.**  The Draft EA discloses retaining walls would be placed along half the

3    length of the roadway widening and along environmentally sensitive areas. AR 151, 210-12. The

4    Final EA provides similar information, with more detail about each retaining wall; but this is not a

5    "substantial" change. AR 443, 549. Additionally, in implying Caltrans did not take a hard look at

6    visual impacts, Plaintiffs completely disregard the EA's visual impacts analysis (AR 644-683) and

7    supporting technical studies (AR 4553-4664).

8        **2.   Plaintiffs' assertions regarding flaws in the baseline are unsupported.**

9        Plaintiffs also make legally and factually unsupported arguments regarding alleged flaws in

10   the baseline. Under NEPA, the "baseline" is the status quo or no action condition against which

11   project impacts are compared. 40 C.F.R. §§ 1508.9(b), 1502.14(d); *Center for Biological Diversity v.*

12   *U.S. Dept. of Interior*, 623 F.3d 633, 642 (9th Cir. 2010). The baseline is sufficient so long as it

13   appropriately reflects the status quo. *See Te-Moak Tribe of Western Shoshone of Nevada v. U.S.*

14   *Dept. of Interior*, 608 F.3d 592, 602 (9th Cir. 2010) (one-paragraph analysis of no action alternative

15   sufficient as it maintained status quo); *Akiak Native Community v. U.S. Postal Serv.*, 213 F.3d 1140,

16   1148 (2000). Here, the EA more than meets NEPA requirements. Specifically, it identifies the status

17   quo no build condition and its impacts relative to the build alternatives. AR 442-443; 447-502; 541-

18   42; 563; 565-66, 568. Plaintiffs ignore the above and again cherry pick items that allegedly show a

19   flawed baseline. None of these demonstrate a NEPA deficiency, as discussed below.[5]

20       **Utilities.** Caltrans studied the entire geographical area where utility relocations would occur.

21   AR 1108; see also 450, 561, 627, 801. Plaintiffs do not explain why the precise location of existing

22   PG&E and water lines is necessary to show the impacts of not building the Project. Instead, they cite

23   to a comment regarding water lines but fail to address Caltrans' response, AR 1107-08; and complain

24   that the Final EA did not provide updated information, but cite only to a blank page in the visual

25   _____

26   [5]  Further, Plaintiff's cite to an irrelevant regulation regarding application of NEPA early in the
     process of a project, 40 C.F.R. § 1501.2(b), and a regulation regarding analysis of project impacts, 40

27   C.F.R. § 1508.27, neither of which mentions "baseline" or the "no action" alternative in an EA.
     Plaintiffs instead appear to rely on the analytical framework for a CEQA EIR, which requires a

28                                                      17

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

impacts analysis. ECF 99 at 14: 7.

**Wetlands and special status species.** Plaintiffs make a series of allegations regarding wetlands and frog sightings that the "baseline" allegedly did not include, but fail to explain why this information is necessary for the no build alternative. This is because Plaintiffs are actually taking issue with Caltrans' Biological Study Area ("BSA") and impacts analysis, which pertain to scientific methodology, and not to the baseline. However, Plaintiffs fail to overcome the substantial deference due to Caltrans in this regard, *Bear Lake Watch, Inc. v. F.E.R.C.*, 324 F.3d 1071, 1076-77 (9th Cir. 2003), and rely on a series of mischaracterizations instead. For example, the EA does include descriptions and analysis of wetlands and the ditch outside the Right of Way, AR 750 n. 1, 1118, 3035, 3039; Plaintiffs also cite part of a sentence stating the BSA was "delimited" using the Caltrans Right of Way boundary, but omit the second portion, "except in areas where the project will extend outside" it. AR 2989.

**California Red-Legged Frogs.** Plaintiffs yet again fail to make any argument regarding Caltrans' no action alternative, and take issue with Caltrans' impacts analysis instead. However, Plaintiffs' series of allegations pointing to minor differences among the Draft and Final EA and BiOp are both irrelevant and incorrect. For example, there is no contradiction between the Final EA's statement that Calera Creek habitat "may" support dispersing CRLF, AR 763, and the BiOp's statement that CRLF "may" occur on either side of SR-1, AR 1002.

**Cultural resources.** Plaintiffs again challenge Caltrans' impacts analysis and not the baseline, relying on: their own attorney's comment to the Draft EA (while ignoring Caltrans' response), AR 1459; an isolated typographical error identifying site 238 rather than site *268*, which is fully analyzed in the EA, AR 685; and a mischaracterization of a letter from the Native American Heritage Commission, which did not "criticize" the Draft EA. AR 1616, AR 1085-87.

**3.   The impacts analysis is not arbitrary and capricious.**

The EA, supported by dozens of technical studies consisting of thousands of pages of additional analysis, and a more than 10,000-page Administrative Record, demonstrates that Caltrans

---

separate "environmental setting" description. 14 C.C.R. § 15125.

18

*CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION*
*111 Grand Avenue, Suite 11-100, Oakland, California 94612*
*Telephone: (510) 433-9100, Facsimile: (510) 433-9167*

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

performed a "thorough environmental analysis" and took a "hard look" at the effects of the Project as required under NEPA. *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1239 (9th Cir. 2005). Plaintiffs fail to meet their burden to prove that this "hard look" was arbitrary and capricious. *Id*. They unaccountably allege the EA "failed" to consider various impacts, while ignoring the EA's explicit analyses of these impacts, and challenge the EA for not making a significance determination as to particular impacts, when this is not required by NEPA.

**Pedestrian safety.** Contrary to Plaintiffs' contentions, the EA evaluates pedestrian safety and finds the Project would result in an overall benefit to pedestrians. AR 453, 551-52, 629, 640, 642, 1485. Caltrans also considered temporary construction effects, AR 785, and explicitly discussed students commuting and crossing at Reina Del Mar, and the Rockaway Beach commercial district west of the Fassler Avenue intersection. AR 629.

**Temporary traffic impacts.** Plaintiffs' arguments are also incorrect in that the EA and underlying technical study explicitly address temporary traffic impacts during construction. AR 562, 785, 801, 1058, 1173, 4343-45.

**California Red-Legged Frogs.** In contrast to Plaintiffs' allegations, the EA and Natural Environment Study include areas where indirect impacts could occur, evaluate indirect impacts to wetlands and riparian habitat, and discuss potential impacts to water quality which may indirectly impact frog and habitat areas. AR 739, 747, 1076, 1117, 1126-29, 2989, 3036-41. Caltrans explicitly considered wetlands outside the Biological Study Area, finding they "would not be altered by the project", and temporary effects on frogs. AR 765; see also AR 750-51, 1118, 3035-41. Lastly, Plaintiffs point to differences between Figures 2.7 and 2.9 of the EA, but ignore that the two maps are intended to depict different things. AR 745, 769.

**San Francisco Garter Snakes.** The EA discloses more than sufficient information about the snake, including its status and prohibition on take. AR 761, 764. Moreover, the EA discloses that Caltrans has begun informal consultation for the snake under the California Endangered Species Act, and the record reflects Caltrans' awareness of the take prohibition and commitment to avoid injury or take of snakes. AR 762, 10553.

19

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

**Plaintiffs conflate NEPA and CEQA requirements regarding determination of significance.** Plaintiffs confuse NEPA with CEQA by arguing that Caltrans did not disclose whether effects on each individual resource would be significant. There is no such requirement under NEPA, which calls for consideration of whether the proposed project *as a whole* significantly affects the quality of the human environment. *Compare* 42 U.S.C. § 4332(c) and 40 C.F.R. § 1508.13 ("Finding of no significant impact" based on reasons why "an action" does not have a significant effect on the human environment) *with* 14 C.C.R. §§ 15126(a), 15126.2; *see also* AR 445. Plaintiffs' arguments that Caltrans did not disclose significance of construction emissions, construction noise, water quality, and visual changes, are irrelevant under NEPA.[6]

**Visual impacts.** Caltrans followed its own methodology for evaluating visual impacts by considering the degree to which people were likely to oppose the change. Plaintiffs misconstrue this likelihood of opposition factor by equating it with public comments on the Project, when in fact the record reflects that this factor means "viewer exposure" and "sensitivity to visual changes." AR 644. Caltrans explicitly analyzed these elements in its EA. *Id*. No authority requires that a visual impacts analysis take public comments into account, and Caltrans' methodology is entitled to deference under NEPA. *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1333 (9th Cir. 1992).

**Greenhouse Gas Emissions During Construction.** Plaintiffs' unsupported claim that Caltrans did not consider temporary greenhouse gas emissions during construction is directly contradicted by analysis and discussion in the EA, which provides a NEPA analysis informed by state standards. AR 726, 810-11, 814, 819.

**4. The analysis of mitigation was not arbitrary and capricious.**

The EA's discussion of mitigation is based on well-reasoned technical studies, and is not "perfunctory" as Plaintiffs allege. Mitigation measures identified in an EA are appropriate if they provide an adequate buffer against negative impacts so that an EIS is not required. Mandelker, *NEPA Law and Litigation* (2015 ed.) § 8:57, p. 584-85. However, NEPA does not require a fully developed

---

[6] Contrary to Plaintiffs' claims, Caltrans did make significance determinations as to each of these Project impacts under CEQA: construction emissions, construction noise, construction water quality, and visual changes are all Less Than Significant.  AR 505, 519-520, 801, 804-805.

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1    mitigation plan, *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989); nor do

2    mitigation measures need to completely compensate for adverse impacts. *Greenpeace Action, supra,*

3    14 F.3d at 1335. Similar to their challenge to Caltrans' impacts analysis, Plaintiffs fail to support

4    their contention that evaluation of the effectiveness of each mitigation measure is required, as

5    opposed to an evaluation of the mitigation as a whole.

6        **Noise impacts.** Plaintiffs again mix two separate regulatory schemes, by conflating noise

7    impacts under 23 C.F.R. § 772, *et seq.*, with NEPA significance. However, a finding of noise impacts

8    under 23 C.F.R. § 772 only necessitates *consideration* of noise abatement, which Caltrans has done.

9    AR 727-28. Moreover, the EA identified multiple reasons why noise would *not* be substantial and

10   thus would not require consideration of additional mitigation. AR 733-34. As to temporary

11   construction noise, the EA provides methods for ensuring effectiveness of avoidance and

12   minimization, such as monitoring, and requiring that equipment conform to standards. AR 790.

13   Lastly, contrary to Plaintiffs' contentions, the Draft EA did disclose that sound walls were not

14   recommended; the final decision in the Final EA was not a "substantial" change. AR 333.

15       **Protected species.** Caltrans comprehensively discussed the effectiveness of avoidance,

16   minimization, and mitigation measures for protected species in its Natural Environment Study, BA,

17   and EA. AR 773-81, 2878-2893, AR 3053-3060. For example, Caltrans explained retaining walls

18   and permanent barriers that prevent species from reaching the roadway would decrease roadway

19   mortality; and enhancements to the GGNRA mitigation site are "expected to support California red-

20   legged frogs" and "will also benefit" the garter snake. AR 2878-79, 3053-54, 3056, 3059, 3066,

21   3070. Moreover, the measures themselves include aspects that ensure their effectiveness, such as

22   construction bid package requirements and monitoring. AR 773-779, 3067; *Cf. Environmental*

23   *Protection Information Center v. U.S. Forest Serv.*, 451 F.3d 1005, 1015-16 (9th Cir. 2006). Caltrans

24   explicitly finds that with implementation of these measures, both Project effects on protected species

25   during construction, and permanent habitat degradation, will be avoided. AR 3056. Plaintiffs take

26   issue with individual measures, but cite no requirement that each of these be evaluated individually

27   for effectiveness. Their arguments are also factually incorrect, *e.g.*, Caltrans fully considered

28

21

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

availability of mitigation credits and techniques to ensure successful seeding. AR 777-78, 1081-82.

Additionally, Plaintiffs claim that the Draft EA did not disclose that a proposed 5.14-acre mitigation parcel was already to be preserved, but fail to allege any NEPA violation or demonstrate that a supplement to the EA is required. Lastly, Plaintiffs' argument comparing the 5.14-acre parcel to loss of 10.83 acres of habitat ignores the additional 5.46-acre GGNRA mitigation site. AR 775-76.

**5. The EA/FONSI is not arbitrary and capricious.**

An agency's decision not to prepare an EIS is evaluated under the narrow arbitrary and capricious standard. *Greenpeace Action,* 14 F.3d at 1331. Here, Caltrans' FONSI was based on thousands of pages of technical studies and analyses providing much more than a rational basis for its conclusion. In arguing that an EIS should have been prepared, Plaintiffs essentially repeat all of the unmeritorious arguments made earlier in their brief and addressed above.

Also, Plaintiffs again make a series of mischaracterizations of the record, such as: calling the FONSI decision page in the EA conclusory, while ignoring the hundreds of pages of analysis and discussion which support that decision; making irrelevant references to *CEQA-specific* significance findings in the EA;[7] and repeating their argument that the EA "entirely avoids consideration" of various impacts and mitigations which the EA did consider. ECF 99 at 21.

Contrary to Plaintiffs' contentions, many people at the scoping meetings, at the September 2011 hearing, and who commented on the Draft EA, are in favor of the Project. See e.g., AR 875-79, 884-86, 889, 900-902, 925-26, 929-31, 1104-05, 1107, 1149-50, 1292-93, 1296-97, 4944-46. Moreover, existence of public opposition alone does not necessarily raise a substantial question about the significance of the Project's size, nature, or effect. *Native Ecosystems Council*, 428 F.3d at 1240. Here, Plaintiffs fail to show the Project is "highly" controversial, fail to identify any specific dispute over the Project's size, nature, or effect, and fail to address Caltrans' responses to other agencies, which include revisions to the EA reflecting their comments.[8] AR 1075-87, 1090-1102.

---

[7] Contrary to the implication in Plaintiffs' argument that the Final EA differed from the Draft EA in this respect, the Final EA also made the same *CEQA*-specific determinations of significance.

[8] Again, the letter from the Native American Heritage Commission was not critical of the Draft EA. AR 1085-86.

---

Instead, Plaintiffs again mischaracterize the record, citing to a single sentence regarding the EA process, and falsely equating it with Caltrans' entire impacts analysis and FONSI determination.

**C.  Caltrans was not required to submit a consistency determination because there is no "federal agency activity" as defined by the CZMA.**

Plaintiffs contend that Caltrans has violated the CZMA because it has failed to submit a consistency determination pursuant to 15 C.F.R. § 930.36, but Caltrans was not required to submit such a consistency determination under that regulation because there is no "federal agency activity," as that term is defined in the regulation, to trigger such a requirement here.  ECF 99 at 22:22-23:5.

The CZMA defines four distinct categories of federal actions, each of which is subject to different requirements: (1) federal agency activities (15 C.F.R. § part 930, subpart C), (2) federal license or permit activities (15 C.F.R. § part 930, subpart D), (3) OCS plans (15 C.F.R. § part 930, subpart E), and (4) federal assistance to state and local governments ((15 C.F.R. § part 930, subpart F).  "Federal agency activities" in subpart C – which contains the consistency determination requirements – are specifically defined as:

> …a range of activities where a Federal agency makes a proposal for action initiating an activity or series of activities when coastal effects are reasonably foreseeable, e.g., a Federal agency's proposal to physically alter coastal resources, a plan that is used to direct future agency actions, a proposed rulemaking that alters uses of the coastal zone. "<u>Federal agency activity" does not include the issuance of a federal license or permit to an applicant or person (see subparts D and E of this part) or the granting of federal assistance to an applicant agency (see subpart F of this part)</u>.

15 C.F.R. § 930.31(a) (emphasis added).  The definition therefore expressly <u>excludes</u> the granting of federal assistance to an applicant agency, which is the sole function FHWA could perform here.  AR 65, 7099-7112.  The regulations also explain that Subpart C is a "<u>residual category</u> for federal actions that are not covered under subparts D, E, or F of this part."  15 C.F.R. § 930.31(c) (emphasis added).

As a state agency that may receive federal funds, Caltrans is subject to subpart F, which does not require submission of a consistency determination at least 90 days before final approval of the federal agency activity.  15 C.F.R. § 930.36 (b)(1).  Instead, subpart F requires submission of a consistency <u>certification</u>, but imposes no time requirement.  15 C.F.R. § 930.91.  All of the authority

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California  94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

23

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1  Plaintiffs rely on is therefore distinct, as they dealt with situations where there was a federal agency

2  activity as defined in 15 C.F.R. § 930.31(a).  ECF 99 at 23:2-12.

3      The MOU does not alter this.  Caltrans' assumption of FHWA's responsibilities necessarily

4  includes only those obligations which FHWA had in the first place.  ECF 46 at 7-36.  Here, because

5  there is no FHWA "federal agency activity" that could trigger 15 C.F.R. § 930.36 (b)(1), FHWA was

6  not required to submit a consistency determination 90 days prior to final approval of the federal

7  agency activity.  The only federal action included in the Project is the potential provision of funds by

8  FHWA, which the CZMA categorizes as a separate activity subject to distinct requirements.  15

9  C.F.R. § 930.90, et seq. (Subpart F).  The MOU does not create obligations – it assigns them if they

10  already exist.  The CZMA duties for this Project thus stand in contrast to those imposed by other

11  federal laws at issue in this lawsuit, such as the ESA, which <u>did</u> impose obligations on FHWA absent

12  the MOU, obligations which FHWA then assigned to Caltrans through the MOU.

13      **D.  The Project will not "use" any section 4(f) parklands.**

14      Section 4(f) of the Department of Transportation Act applies to a transportation project only

15  if it will "use" 4(f) property, as that term is defined by the regulations.  49 U.S.C. § 303(c); 23 C.F.R.

16  § 774.17.  "Use" occurs only when land is permanently incorporated into a transportation facility,

17  there is a temporary occupancy of land that is adverse in terms of the statute's preservation purpose,

18  or in the rare instance that a project "significantly and adversely affects" parkland.  23 C.F.R. §§

19  774.15, 774.17; *Sierra Club v. USDOT*, 948 F.2d 568 (9th Cir. 1991).  If a project will use 4(f)

20  property, the Secretary of Transportation may approve it only if there is no prudent and feasible

21  alternative to using that land, and if the project includes all possible planning to minimize harm to

22  the land resulting from that use.  49 U.S.C. § 303(c).

23      Here, the sole 4(f) property the Project will "use" is an existing pedestrian / bike path that the

24  Project will be upgrading.  AR 945-55.  In full compliance with section 4(f), Caltrans prepared and

25  approved a Programmatic Section 4(f) Net Benefit analysis.  Id.  Plaintiffs do not challenge that

26  analysis here.  Instead, they claim Caltrans violated section 4(f) by ignoring impacts to adjacent NPS

27  parklands at Mori Point and Sweeney Ridge and failing to determine that there is no prudent and

28

24

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1  feasible alternative to using that land.  ECF 99 at 23-24.  Yet the Project does not "use" those

2  parklands at all, a point Plaintiffs ignore altogether.  Instead, Plaintiffs vaguely claim the Project

3  "cuts through" Mori Point and Sweeney Ridge, but the EA states clearly that the "Project will not

4  require right-of-way from either the Mori Point or Sweeney Ridge GGNRA."  AR 619.  While

5  Highway 1 runs between the parklands, the Project will not use any portion of them, as it will not

6  permanently incorporate them into a transportation facility or even temporarily occupy the lansd.

7  NPS recognized that fact as well.  AR 1611.

8       Plaintiffs also allege the Project will "degrade the panoramic views from these parklands,"

9  but cite only to various comments on the EA, ignoring the detailed visual and aesthetics analysis in

10  the EA and responses to comments, the Visual Impacts Assessment prepared for the Project, and the

11  conclusion in the EA that the Project would not substantially affect views or aesthetics. ECF 99 at

12  23:25-26; AR 454-55, 644-83. In any case, Plaintiffs do not even articulate how such impacts could

13  constitute a "use" of parklands so as to trigger 4(f). Similarly, Plaintiffs allege that construction will

14  "degrade habitat," but fail to explain how that constitutes a "use" of 4(f) property. It does not.

15  Accordingly, there was no requirement to determine that there is no prudent and feasible alternative

16  to using that land.

### IV. Conclusion

17       Plaintiffs' Motion for Summary Judgment should be denied and this Court should grant

18  summary judgment in favor of Caltrans.

19  Dated:   June 2, 2016

20                                  */s/ Derek S. van Hoften*
                                JEANNE SCHERER

21                                  LUCILLE Y. BACA
                                DEREK S. VAN HOFTEN

22                                  STACY LAU
                                *Attorneys for State Defendants*

23

24

25

26

27

28

**Defendants California Department of Transportation and Malcolm Dougherty's Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment – CV 15-02090-VC**