JEANNE SCHERER, Chief Counsel
LUCILLE Y. BACA, Assistant Chief Counsel
DEREK S. VAN HOFTEN (SBN 226880)
STACY J. LAU (SBN 254507)
111 Grand Avenue, Suite 11-100, Oakland, CA 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

Attorneys for Defendants CALIFORNIA DEPARTMENT
OF TRANSPORTATION; MALCOLM DOUGHERTY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFICANS FOR A SCENIC COAST; PACIFICANS FOR HIGHWAY 1 ALTERNATIVES; and CENTER FOR BIOLOGICAL DIVERSITY<br><br>Plaintiffs,<br><br>vs.<br><br>CALIFORNIA DEPARTMENT OF TRANSPORTATION; MALCOLM DOUGHERTY, in his official capacity as Director of the California Department of Transportation; U.S. FISH AND WILDLIFE SERVICE,<br><br>Defendants. | Case No.: 3:15-CV-02090-VC<br><br>**DEFENDANTS CALIFORNIA DEPARTMENT OF TRANSPORTATION AND MALCOLM DOUGHERTY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   August 18, 2016<br>Time:   10:00 a.m.<br>Courtroom:  4 |

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

TABLE OF CONTENTS

I.    Introduction .......................................................................................................................1

II.   Legal Argument................................................................................................................1

      A.    The Project has not received all requisite permits and approvals to proceed to
            construction ...........................................................................................................1

      B.    Caltrans did not fail to use the best scientific data available ................................2

      C.    Caltrans has not violated its section 7(a)(2) duty
            to ensure against jeopardy .....................................................................................5

      D.    Caltrans has not violated the ESA for failure
            to re-initiate consultation.......................................................................................6

      E.    Caltrans' EA and FONSI fully complies with NEPA .............................................7

            1.    The Project description meets NEPA's requirements.................................8

            2.    The baseline description meets NEPA's requirements................................9

            3.    The impacts analysis is not arbitrary and capricious .............................10

            4.    The analysis of mitigation was not arbitrary and capricious..................11

            5.    Caltrans' decision not to prepare an EIS was not
                  arbitrary and capricious.........................................................................12

      F.    The Project does not require a consistency determination
            under the CZMA .....................................................................................................13

      G.    The Project will not "use" any section 4(f) parklands...................................14

III.  Conclusion .....................................................................................................................15

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

i

1

TABLE OF AUTHORITIES

2

3

**Cases**

4

*AquAlliance v. U.S. Bureau of Recl.*
  WL 3401390 *19 (E.D. Ca. July 11, 2014) ...................................................................10

5

*Bennett v. Spear*
  520 U.S. 154 (1997)............................................................................................................3

6

7

*California v. Norton*
  311 F.3d 1162 (9th Cir. 2002) ....................................................................................13, 14

8

*CBD v. BLM*
  698 F.3d 1101 (9th Cir. 2012) ......................................................................................5, 6

9

10

*CBD v. Rumsfeld*
  198 F.Supp.2d 1139 (D. Ariz. 2002) ................................................................................6

11

*Defenders of Wildlife v. EPA*
  420 F.3d 946 (9th Cir. 2005) .............................................................................................6

12

13

*EPIC v. U.S. Forest Serv.*
  451 F.3d 1005 (9th Cir. 2006) ........................................................................................12

14

*Found. For N. Am. Wild Sheep v. U.S. Dept. of Agric.*
  681 F.2d 1172 (9th Cir. 1982) ..........................................................................................8

15

16

*Geer v. FHWA*
  975 F.Supp. 47 (D. Mass. 1997)......................................................................................15

17

18

*Greenpeace Action v. Franklin*
  14 F.3d 1324 (9th Cir. 1992) .............................................................................................9

19

20

*Half Moon Bay Fishermans' Marketing Ass'n v. Carlucci*
  857 F.2d 505 (9th Cir. 1988) .............................................................................................9

21

*In Defense of Animals v. U.S. Dept. of the Interior*
  751 F.3d 1054 (9th Cir. 2014) ........................................................................................13

22

23

*Klamath-Siskiyou v. NOAA*
  99 F.Supp.3d 1033 (N.D. Cal. April 3, 2015) ..................................................................3

24

25

*League to Save Lake Tahoe v. TRPA*
  469 F. App'x 621 (9th Cir. 2012)......................................................................................9

26

27

*Marsh v. Oregon Natural Resources Council*
  490 U.S. 360 (1989)............................................................................................................7

28

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100; Facsimile: (510) 433-9167

ii

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

*Milne v. Hillblom*
   165 F.3d 733 (9th Cir. 1999) ..................................................................................5

*Native Ecosystems Council v. USFS*
   428 F.3d 1233 (9th Cir. 2005) ..............................................................................11

*Northwest Indian Cemetery Protective Ass'n v. Peterson*
   795 F.2d 688 (9th Cir. 1986) ................................................................................10

*ONDA v. Tidwell*
   716 F.Supp.2d 982 (D. Ore. 2010) .....................................................................3, 4

*Prairie Band v. FHWA*
   684 F.3d 1002 (10th Cir. 2012) ..............................................................................2

*San Luis & Delta-Mendota Water Auth. v. Jewell*
   747 F.3d 581 (9th Cir. 2014) ..................................................................................5

*Sierra Club v. Babbitt*
   69 F.Supp.2d 1202 (E.D. Ca. 1999) .......................................................................8

*Sierra Club v. Bosworth*
   65 F.Supp.2d 931 (N.D. Cal. 2006) ........................................................................2

*Sierra Nevada Forest Prot. Campaign v. Weingardt*
   376 F.Supp.2d 984 (E.D. Cal. 2005) ......................................................................7

*State of Cal. v. Block*
   690 F.2d 753 (9th Cir. 1982) ...............................................................................7, 8

*Tri-Valley CAREs v. U.S. Dep't of Energy*
   671 F.3d 1113 (9th Cir. 2012) ................................................................................7

**Statutes**

16 U.S.C. § 1456(c)(1)(A) ...............................................................................13, 14

49 U.S.C. § 303(c) ................................................................................................15

**Regulations**

15 C.F.R. § 930.31 ...............................................................................................13

15 C.F.R. § 930.36 ...............................................................................................13

15 C.F.R. § 930.90 ...............................................................................................13

iii

1

23 C.F.R. § 771.129(c) ................................................................................................2

23 C.F.R. § 774.15(a) ................................................................................................14

23 C.F.R. § 774.15(c) ................................................................................................15

23 C.F.R. § 774.15(e)(f) ............................................................................................15

40 C.F.R. § 1502.9 ......................................................................................................8

40 C.F.R. § 1502.9(c) ..................................................................................................7

40 C.F.R. § 1508.18 ..................................................................................................14

40 C.F.R. § 1508.9 ......................................................................................................5

50 C.F.R. § 402.02 ......................................................................................................6

50 C.F.R. § 402.14(d) ..................................................................................................4

**Other Authorities**

*Endangered Species Consultation Handbook*, 4-2 (1998)...........................................5

*Forty Most Asked Questions Concerning CEQ's National Envt'l Policy Act Regs.*, 46 Fed. Reg.
      18,026, 18,035 (1981)..........................................................................................9, 12

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

# I.  Introduction

Plaintiffs continue their kitchen-sink challenge to the Calera Parkway Project, advancing as many claims as they can squeeze into the allotted space. But their claims have no merit, and are contradicted by the law and record. Many are predicated on Plaintiffs' unfounded insistence that the Project has received all requisite permits and approvals to proceed to construction, even though the record demonstrates unequivocally to the contrary, the Project remains unfunded, and Caltrans lacks the discretion to move the Project forward toward construction. This Court should grant Caltrans' motion for summary judgment.

# II.  Legal Argument

## A.  The Project has not received all requisite permits and approvals to proceed to construction.

Many of Plaintiffs' arguments are predicated on their erroneous contention that the Project has received all final approvals and Caltrans is free to proceed to construction. In fact, the record shows numerous additional approvals remain before construction can begin, and Caltrans does not even have the discretion to move forward with the Project until the City and TA take action. AR 62, 101-15, 7099-7116, 10558. The Project Report explained that it constituted project approval for CEQA / NEPA purposes, allowing the Project to proceed to the next phase of project development, and identified multiple permits that remain to be obtained "during final design" and successive stages of approvals that remain before construction can begin. AR 61-66. The EA also explained construction would require additional approvals from other agencies and Caltrans. AR 148, 523.

Plaintiffs mischaracterize the record when they selectively state that Caltrans told the public that Project design was sufficiently detailed "to determine approval status of the project." ECF 1 at 12-14. Plaintiffs ignore the immediately preceding explanation:

> If the project is given <u>environmental approval and funding is appropriated</u>, Caltrans could design and construct all or part of the project. The conceptual design is sufficiently detailed for Caltrans to determine approval status of the project <u>for the Final EIR/EA</u>. If Caltrans decides to construct all or part of the project, consistent with all projects of this nature, the project will enter the final design phase following the CEQA/NEPA process and project approval. During final design phases, as more information becomes available, the design may be modified slightly based on more accurate and up-to-date findings.

AR 1113 (emphasis added). Plaintiffs also mischaracterize the Federal Register Notice. ECF 103 at

1

---

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1:8-12. The notice applies only to actions which were actually taken, such as approval of the EA, and

in no way states or establishes that Caltrans has obtained all approvals necessary for the Project to

proceed to construction. The Notice explains that the actions taken are described in the EA. ECF 52.

The law recognizes that approval of an environmental document does not mean a project has

obtained all permits and approvals necessary to proceed to construction. See, e.g., *Sierra Club v.*

*Bosworth*, 465 F.Supp.2d 931, 939 (N.D. Cal. 2006) (final approval had yet to be made at time

Forest Service completed NEPA review); *Prairie Band v. FHWA*, 684 F.3d 1002, 1009 (10th Cir.

2012) (final approval of plans and specs is separate and decision subsequent to ROD); 23 C.F.R. §

771.129(c) (contemplating approvals after ROD). Plaintiffs' contention that Caltrans has made or

obtained all final approvals for the Project is contrary to the record and unsupported in the law. As

explained below, this defeats a number of Plaintiffs' claims.

**B.   Caltrans did not fail to use the best scientific data available.**

Plaintiffs recite a litany of complaints about the consultation process, but fail to (1) analogize

to any applicable case law or standard, (2) demonstrate that the information constitutes scientific

data, or (3) otherwise demonstrate how Caltrans violated the ESA. ECF 103 at 1:16-5:3. Plaintiffs

also continue to mischaracterize the record. For instance, Plaintiffs claim Caltrans "deliberately

withheld" from FWS that a proposed conservation measure relating to the City parcel would not

occur. ECF 103 at 1:23-25. But Plaintiffs do not establish that Caltrans actually withheld any

information, that the parcel will not in fact be preserved or that it must be <u>Caltrans</u> who preserves it,

that a pre-existing preservation obligation undermines the BiOp's conclusion in any way, or that the

agencies would not amend the BiOp accordingly prior to beginning construction, if necessary.

Plaintiffs cite only a January 19, 2012 letter between environmental consultants, not copied to

any Caltrans staff, stating that the City's 5.14-acre parcel was already slated to be preserved, and

dated just a few days before FWS issued the final BiOp. ECF 103 at 1:23; AR 981, 9133. But

Plaintiffs cite no evidence that Caltrans was aware of that letter prior to the BiOp being issued, and in

fact FWS had transmitted the draft BiOp to Caltrans before that in December 2011. AR 7503. In

short, the record shows Caltrans became aware of the existing obligation around the time the BiOp

was issued, immediately undertook consideration of whether amendment of the BiOp would be

2

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

necessary, and in the meantime has not taken or approved any action that could threaten the species. AR 4877 (2/8/12 PDT mtg), 7494, 7526, 9200, 10556.

Further, Plaintiffs make no effort to demonstrate that an existing preservation obligation means the proposed measure cannot or will not occur. While they contend the measure in the BiOp is "not an option," FWS has explained that the documents Plaintiffs cite show the parcel will be preserved. ECF 101 at 12:27-28. Plaintiffs' argument is essentially that what matters is not that the parcel be preserved, but that it be Caltrans who preserves it, but they offer no authority in support of that argument, and the BiOp reflects that FWS's no-jeopardy conclusion was based on multiple factors and FWS was chiefly concerned with ensuring habitat connectivity in the area, which will occur regardless of what entity preserves the parcel. ECF 101 at 15:12; AR 996, 1005.[1] Plaintiffs fail to demonstrate the BiOp relied primarily on that particular measure, and courts have refused to invalidate opinions when an allegedly defective measure did not constitute the "primary reason" behind a no-jeopardy finding. *Klamath-Siskiyou v. NOAA*, 99 F.Supp.3d 1033,1055 (N.D.Cal. 2015).

The authority Plaintiffs cite actually disproves their claim. For instance, *ONDA v. Tidwell*, 716 F.Supp.2d 982 (D. Ore. 2010) actually held that a challenge to a biological assessment under the ESA is not justiciable because it is not a final agency action within the meaning of the APA. *ONDA*, 716 F.Supp.2d 982, 995. The court explained that a BA does not mark the consummation of an agency's decision-making process and is not an action from which legal consequences flow, because it is followed by a biological opinion. *Id.*, citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Plaintiffs thus rely on authority which precludes their challenge. ECF 103 at 2:2-9. *ONDA* is also distinct because the monitoring and enforcement measures there were not likely to occur. *Id.* at 1004. Here, the record shows that the proposed measure will occur. ECF 101 at 12:27-28. Also, as the BiOp explained, the chief purpose of the conservation measures is to improve the quality of habitat and facilitate foraging, sheltering and movement / dispersal from the Mori Point population to Calera Creek and surrounding Pacific Quarry lands. AR 995-96. The fact the City's parcel is already slated

---

[1] The BiOp even contemplates the possibility that the proposed measure may not be fully implemented, and requires that, in that event, Caltrans provide an alternative compensation scheme to be approved by FWS. AR 1009. Plaintiffs' argument is essentially that the occurrence of an event expressly contemplated and protected against by the BiOp constitutes a violation of the ESA.

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

to be preserved free from development facilitates that process, rather than hinders it.

Plaintiffs further mischaracterize *ONDA* in claiming the court found the Forest Service improperly relied on the opinion because it failed to provide NMFS with all of the data required by 50 C.F.R. § 402.14(d). ECF 103 at 2:5-6. On the contrary, the court found that the Service arbitrarily and capriciously failed to fulfill its section 7(a)(2) duties by issuing grazing authorizations on a BiOp it knew was based on inaccurate information that had arisen after issuance of the BiOp. *ONDA*, 716 F.Supp.2d at 1004. Here, by contrast, the record demonstrates an expectation that the conservation measures will occur and, in any event, Caltrans has not taken or approved any action in reliance on the BiOp that could jeopardize or affect the species because the Project remains unfunded and additional approvals are required before construction could begin. AR 61-66, 101-15; 7099-7116.

Plaintiffs' remaining arguments are also factually incorrect and notably devoid of any supporting authority. For instance, Plaintiffs claim Caltrans failed to inform FWS about previous restoration efforts in connection with the City's wastewater treatment plant, but the BiOp made express reference to them. AR 1001. Plaintiffs repeat their claim that Caltrans "implied NPS had approved the measure," even though the BA and EA stated that GGNRA still needed to approve it, and had only approved it "in concept." AR 184, 488, 523, 2800. Plaintiffs claim Caltrans "hid" NPS' request to be part of the consultation, even though there is no evidence Caltrans hid anything, and the ESA does not require that NPS be part of the consultation. ECF 66 at 1:16-21. Plaintiffs point to no information that Caltrans failed to provide to FWS. Id.

Plaintiffs re-state their baseless claim that the consultation ignored recently constructed enhancement ponds near Mori Point (ECF 103 at 3:15-21), but the BiOp made express reference to those ponds in describing the baseline and Caltrans' proposed compensation measures. AR 995. Plaintiffs insist that the information they point to in the BA necessarily constitutes "scientific data," but they cite no authority in support. ECF 103 at 3:26-4:2. In addition, Plaintiffs fail to address the explanations in Caltrans' MSJ that in fact the BA did not provide inaccurate information. ECF 102 at 5:15-27; ECF 103 at 4:3-11. Plaintiffs also ignore that the BA itself expressly identified that permanent habitat impacts may range to 7.08 acres. AR 2888; ECF 103 at 4:3-11.

Plaintiffs re-state their unsupported claim that Caltrans eliminated barriers around

4

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1   biofiltration swales. ECF 103 at 4:12-18. Plaintiffs claim the fact that the EA does not expressly

2   describe that detail means that the barriers have been eliminated, but they have not been. The EA is

3   not intended to include every detail of every aspect of the Project that is included in supporting

4   technical studies or regulatory permits specific to each resource. 40 C.F.R. § 1508.9. In any case, the

5   EA expressly refers to and includes the BiOp in discussing impacts and compensation. AR 762-73.

6       Plaintiffs' argument regarding the Wildlife Crossing Manual is really a disagreement with the

7   threshold conclusions Caltrans and FWS reached that "no practical crossing point exist[s] to connect

8   areas of natural habitat," but it is not this Court's role to second-guess an agency's determinations.

9   *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602 (9th Cir. 2014); AR 985, 1076-

10  77. The Manual applies to resolve wildlife crossing conflicts when they exist, but the agencies

11  properly determined here that no conflicts exist in the first place. ECF 87-10 at 10, 12; AR 1076-77.

12  Plaintiffs fail to challenge that threshold determination or to identify anything in the Manual that the

13  agencies did not consider or would undermine their conclusions, which is fatal to their claim. ECF

14  103 at 4:19-26; *Milne v. Hillblom*, 165 F.3d 733, 736 (9th Cir. 1999). As it is, the record reflects the

15  agencies actually used identical methods and relied on many of the same resources in determining

16  that no crossing conflict existed in the first place. ECF 87-10 at 42-55, 93; AR 3095-3100.

17      Plaintiffs' ESA argument is simply flyspecking the consultation process for anything they can

18  label as a purported change. While Plaintiffs dispute that it is normal for projects to undergo design

19  changes during the project development process, in fact that is the norm, which FWS's ESA

20  Consultation Handbook recognizes: "the process is flexible and can be adapted at any point to

21  respond to project modifications agreed to by the action agency or the applicant." *Endangered

22  Species Consultation Handbook*, 4-2 (1998); *CBD v. BLM*, 698 F.3d at 1108 (citing Handbook as

23  authority); see also FWS AR 31:567-36:590. Caltrans fully complied with the ESA here.

24  **C.  Caltrans has not violated its section 7(a)(2) duty to ensure against jeopardy.**

25      Caltrans has not violated its 7(a)(2) duty because it has ensured its actions are not likely to

26  jeopardize the existence of the species, in that Caltrans has not authorized or undertaken construction

27  or any other activity that could even affect the species. Plaintiffs' argument is again predicated on

28  their erroneous premise that Caltrans has granted all requisite final approvals. ECF 103 at 5:12-13.

Defendants California Department of Transportation and Malcolm Dougherty's Reply in Support of Motion for
Summary Judgment – CV 15-02090-VC

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California  94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1   As explained above, additional permits and approvals remain before construction could begin.

2       Plaintiffs also mischaracterize the case law. In both *CDB v. BLM* and *Defenders of Wildlife v.*

3   *EPA*, the agencies had fully authorized construction of the activities that threatened to jeopardize the

4   species, and had in fact undertaken them. *CBD v. BLM*, 698 F.3d 1101 (9th Cir. 2012); *Defenders of*

5   *Wildlife v. EPA*, 420 F.3d 946 (9th Cir. 2005). By contrast, Caltrans plainly has not "relied on" the

6   BiOp in that sense, because it has not authorized construction of the Project, and has not taken or

7   authorized any action that could jeopardize the continued existence of the species. An agency action

8   "jeopardizes the continued existence" of a species when it "reasonably would be expected, directly or

9   indirectly, to reduce appreciably the likelihood of both the survival and recovery of a listed species in

10  the wild by reducing the reproduction, numbers or distribution of that species." 50 C.F.R. § 402.02;

11  *CBD v. Rumsfeld*, 198 F.Supp.2d 1139, 1145 (D. Ariz. 2002). In *Rumsfeld*, after finding the BO

12  flawed, the court evaluated whether the Army had arbitrarily and capriciously relied on it. The court

13  held that the Army's ongoing groundwater use, in reliance on the flawed BO, was likely to jeopardize

14  the species. *Id.* at 1157. Even if the BiOp here were flawed, Caltrans has not taken or authorized any

15  action that reasonably would be expected to reduce the likelihood of survival and recovery of the

16  species, because it is unfunded and has not been approved for construction. Moreover, the record

17  reflects a consistent expectation that Caltrans will consider amendment of the BiOp with FWS at the

18  appropriate juncture. AR 7494 (expressing preference for pursuing amendments together, rather than

19  piecemeal), 9765 (schedule targeting amendment after EA); 10556-61; FWS AR 31:567-36:590.

20  **D. Caltrans has not violated the ESA for failure to re-initiate consultation.**

21      Plaintiffs' re-initiation argument is also predicated on their erroneous assertion that the

22  Project has received all requisite final approvals. ECF 103 at 5:17. As explained above, that is not the

23  case, and both agencies plainly contemplate possible reinitiation at the appropriate juncture before

24  construction can begin. Plaintiffs claim that the Project is at an administrative resting place, in spite

25  of the obvious and overwhelming evidence that the Project requires numerous additional approvals

26  and funding before it can proceed to the design phase and construction. ECF 103 at 5:18-19; AR 61-

27  66. Plaintiffs point to the Federal Register Notice but, as explained above, the Notice refers only to

28  actions that were actually taken, such as NEPA; it does not refer to actions which have yet to be

taken, and it does not establish that Caltrans has made the subsequent approvals identified in the Project Report and elsewhere which must take place before construction can begin. Id.

Significantly, Plaintiffs fail to address the detailed discussion and case law in Caltrans' MSJ that demonstrates there has been no procedural failure here because Caltrans has not rendered its last word on the matter of reinitiation, judicial intervention would interfere with further administrative action, and delayed review would cause no hardship to Plaintiffs. ECF 102 at 9:26-12:11. Plaintiffs do not address those arguments. As explained in Caltrans' MSJ, the Project cannot move forward unless and until the City and TA decide to request and provide funding. ECF 102 at 11:17-20.

**E. Caltrans' EA and FONSI fully complied with NEPA.**

Plaintiffs' complaints generally fall into two categories: (1) particular information in the Final EA was not presented in the Draft; and (2) additional details should have been discussed in the EA. As to the first, Plaintiffs have not even attempted to show that new information in the Final EA meets the standard for supplementation and recirculation for further public comment under 40 C.F.R. § 1502.9(c). Plaintiffs reject this NEPA standard as unrelated to their claims, but their allegations regarding the right to public comment are necessarily tied to supplementation, as this is the only means of giving the public an opportunity for further comment on new information. *State of Cal. v. Block,* 690 F.2d 753, 770 (9th Cir. 1982). The section 1502.9 standard prevents agencies from having to circulate every miniscule change for comment, so that agency decisionmaking does not become "intractable." *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 373 (1989).[2]

As to the second complaint, Plaintiffs fail to establish that Caltrans' analysis was arbitrary and capricious. The "purpose of an EA is not to compile an exhaustive examination of each and every tangential event that potentially could impact the [ ] environment" but "simply to create a workable public document" providing evidence and analysis for the agency's finding. *Tri-Valley CAREs v. U.S. Dep't of Energy,* 671 F.3d 1113, 1129 (9th Cir. 2012). Plaintiffs' bare allegations that "crucial" information was omitted from the EA, without proving this information is "essential" to an

---

[2] Additionally, the facts in *Sierra Nevada Forest Prot. Campaign v. Weingardt,* 376 F.Supp.2d 984, 991 (E.D. Cal. 2005) are entirely distinct, because in that case, the agency only provided the public with scoping notes, and did not circulate a draft EA for public comment as Caltrans did here.

7

---

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1   informed decision whether to prepare an EIS, are insufficient to establish a NEPA violation. *Found.*

2   *For N. Am. Wild Sheep v. U.S. Dept. of Agric.*, 681 F.2d 1172, 1178 (9th Cir. 1982).

3   1.   The Project description meets NEPA's requirements.   Both the Draft and Final EA contain a

4   thorough description of all Project components. AR 208-220, 543-562. Unlike in *Sierra Club v.*

5   *Babbitt*, 69 F.Supp.2d 1202, 1214-18 (E.D. Ca. 1999), where the draft described a design-build

6   project and spoke in "generalities," Plaintiffs here fail to establish omission of essential information.

7   **Intersection width.** Whether or not the width of each intersection is required to be included

8   in the EA, both the Draft and Final EA disclose this information. AR 211, 547, 549, 552-53.

9   Moreover, the EA's statement that the highway would be widened to a maximum of approximately

10   132 feet is not inconsistent with the EA diagrams as Plaintiffs allege. The diagrams, depicting four

11   10-foot shoulders, six 12-foot lanes, and a 20-foot landscaped median (including four feet of

12   concrete barriers), add up to 132 feet. AR 211, 547, 552-53. While the Reina Del Mar intersection

13   will be wider than 132 feet, this variation from the approximate 132-foot figure is not a NEPA

14   violation. Lastly, Plaintiffs argue that Caltrans cannot rely on the BiOp to supply information to the

15   public, but ignore that the BiOp is an appendix disclosed to the public along with the EA.

16   **Excavation volume.** Again, Plaintiffs allege various impacts that were not before the public

17   when it commented on the Draft EA, but fail to show that any such impacts are significant new

18   information warranting a supplement to the EA under 40 C.F.R. § 1502.9. ECF 103 at 8:20-27.

19   Instead, Plaintiffs misquote one of Caltrans' statements and mischaracterize it as a concession,

20   without explaining the relevance of what they allege Caltrans is conceding. *Id.* at 8:25-26.

21   **Lane elevation changes.** Plaintiffs do not establish that the statement in the Final EA that the

22   parallel north and south lanes may be built to different elevations, is a "substantial" change in the

23   Project. An agency is not required to repeat the public comment process "when the Proposed Action

24   is merely a slightly modified version of an alternative evaluated in the initial draft EIS." *State of Cal.*

25   *v. Block, supra,* 690 F.2d at 771. A potential grade separation between parallel lanes to improve

26   coastal views is not a "radical" departure from the same Project without the grade separation. *Id.*; AR

27   567. Plaintiffs' attempt to compare this minor potential design modification to a complete vertical

28   separation between perpendicular roadways, resulting in an overpass or underpass, is inapt.

8

1      **Retaining walls.** Nothing Plaintiffs have identified in the Draft EA indicates that the total

2  length of retaining walls would be limited to 2,770 feet as Plaintiffs have alleged. While the Final

3  EA specifies additional lengths of individual retaining walls through the Project area, this is merely

4  additional detail and not a "substantial" change in the Project.

5      2.    <u>The baseline description meets NEPA's requirements</u>. Plaintiffs' arguments regarding the

6  baseline descriptions in the EA lack support. They rely on *Half Moon Bay Fishermans' Marketing*

7  *Ass'n v. Carlucci*, 857 F.2d 505 (9th Cir. 1988), where the agency failed to set forth *any* description

8  of the existing environment, and an unpublished one-page decision which does not describe the

9  baseline it considers or explain why it is inadequate, *League to Save Lake Tahoe v. TRPA*, 469 F.

10  App'x 621 (9th Cir. 2012). As Caltrans argued in its MSJ, discussion of the no-action condition

11  constitutes an adequate baseline description under NEPA. The "Affected Environment" sections

12  throughout the EA also provide full descriptions of the existing environment. *See, e.g.,* AR 627, 684-

13  86, 750, 761-64. Plaintiffs fail to show a NEPA violation, and primarily challenge Caltrans' analysis,

14  which is entitled to deference. *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1333 (9th Cir. 1992).

15      **Utilities.** Plaintiffs identify no law suggesting a baseline description must include minute

16  detail such as the location of every utility line in a Project area. *See, e.g., Forty Most Asked*

17  *Questions Concerning CEQ's National Envt'l Policy Act Regs.*, 46 Fed. Reg. 18,026, 18,035 (1981),

18  36a (EA "should not contain long descriptions or detailed data which the agency may have

19  gathered"). In arguing this information was necessary to consider in Caltrans' impacts analysis,

20  Plaintiffs take issue with Caltrans' methodology, but fail to establish that the decision to study

21  impacts in the context of the entire environmental study limits, AR 1107, rather than conduct a

22  separate environmental analysis of each utility line relocation, was arbitrary and capricious.

23      **Wetlands and special status species.** Contrary to Plaintiffs' allegations, Caltrans did

24  consider wetlands outside of the Right of Way, including wetland mapping on lands west of State

25  Route 1, and wetlands with the potential to be affected by the Project. AR 750 fn. 56, 739-47, 1118,

26  2931-3141, 5649. Caltrans made an explicit determination that potential indirect impacts to wetlands

27  outside the Project area would not be significant. *See, e.g.,* AR 1093, 1097.

28      **Frogs.** There is no inconsistency between statements that frogs are not *known* in Calera Creek

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

---

Defendants California Department of Transportation and Malcolm Dougherty's Reply in Support of Motion for
Summary Judgment – CV 15-02090-VC

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1   east of State Route 1 because such habitat is marginal, and those in the EA and BiOp that frogs *may*

2   nonetheless occur in Calera Creek and lands east of State Route 1 based on observations that

3   "indicate" their presence. AR 763-64, 7002. Plaintiffs challenge Caltrans' analysis, but fail to

4   demonstrate that the determination regarding wildlife dispersal was arbitrary and capricious, and the

5   BiOp explained why no practical crossing point existed to connect areas of natural habitat. AR 985.

6        **Cultural resources.** In response to Caltrans' explanation that archaeological site *268* is in

7   fact identified and analyzed in the EA, Plaintiffs merely point out instances where the isolated

8   typographical error referencing site *238* was reproduced. However, this does not constitute a NEPA

9   violation. *See Northwest Indian Cemetery Protective Ass'n v. Peterson*, 795 F.2d 688, 695 (9th Cir.

10  1986) (court may not "flyspeck" document); *AquAlliance v. U.S. Bureau of Recl.*, 2014 WL 3401390

11  *19 (E.D. Ca. July 11, 2014) (EA could have been improved but NEPA does not require perfection).

12  3.    <u>The impacts analysis is not arbitrary and capricious</u>. Plaintiffs attempt to reduce Caltrans'

13  arguments to a mere reference to the volume of the EA and Administrative Record, but in doing so,

14  they fail to contend with the *substance* of the full EA and numerous technical studies. Plaintiffs also

15  persist in their misguided assumption that CEQA significance determinations apply to a NEPA EA.

16       **Pedestrian safety.** Contrary to Plaintiffs' contentions, the pedestrian impacts analysis

17  includes evaluation of safety at intersections; the Project would upgrade crosswalks to meet current

18  ADA standards, and construct a bulb-out increasing visibility of pedestrians. AR 551, 629, 640.

19  Plaintiffs distort the record when they allege Caltrans would be providing "the minimum time

20  increase to cross the street." ECF 103 at 12:1-2. The EA states there would be "a minimum increase

21  of eight seconds at each intersection" (AR 453); exact traffic timing is determined in accordance with

22  Caltrans guidelines and policy. AR 9128-30, 9251-58. Plaintiffs fail to demonstrate that average

23  crossing time or a comparison of impacts at the intersections is required, and do not explain why a

24  plan for traffic handling and pedestrian safety at a date closer to construction violates NEPA.

25       **Construction traffic.** Plaintiffs make a variety of scattered arguments regarding Caltrans'

26  analysis of construction traffic impacts, including some that were not raised in the opening brief,

27  ECF 103 at 12:7-8, 12:14-16, but do not demonstrate how any of them establish a NEPA violation or

28  render Caltrans' analysis arbitrary and capricious. Caltrans did disclose there will be some traffic

10

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1   slowdown during construction, AR 451-52, 1173-74; the length of temporary backups or delays

2   during construction is not crucial information essential to a decision whether to prepare an EIS.

3         **Frogs.** Plaintiffs contend Caltrans did not evaluate indirect impacts, but analysis of impacts

4   to frog habitat, cited in Caltrans' MSJ, is an evaluation of indirect impacts. AR 1461-62. Plaintiffs

5   admit as much when they cite the effects of water quality impacts on wildlife. ECF 103 at 12:17-18.

6         **San Francisco Garter Snake.** Plaintiffs have identified no violation of state law, or any

7   requirement under NEPA that the state protected status of a species be included in an EA. The EA

8   explicitly provides measures to prevent take of the snake: if a San Francisco garter snake is

9   encountered during construction, all work that could result in direct injury, disturbance, or

10   harassment would immediately cease, and the snake would be allowed to leave of its own accord. AR

11   778-79. Plaintiffs attempt to fault Caltrans for seeking technical assistance in implementing its

12   mitigation from the CDFW after the EA was finalized, but that is not a NEPA violation.

13         **Significance of adverse impacts.** Plaintiffs distort Caltrans' argument by alleging Caltrans

14   claimed a significance determination is irrelevant, when it did no such thing. ECF 102 at 20:1-19;

15   ECF 103 at 13:12-13. Plaintiffs wrongly imply equivalence between adverse impacts and a

16   *significant* impact. *Native Ecosystems v. USFS*, 428 F.3d 1233, 1240 (9th Cir. 2005). It is undisputed

17   Caltrans determined the Project would not have a significant impact on the environment. AR 439.

18         **Visual impacts.** Plaintiffs repeat the arguments from their opening brief, and persist in

19   attempting to substitute Caltrans' methodology for determining visual impacts with their own,

20   without actually responding to Caltrans' opposition. ECF 102 at 20:10-16; AR 644.

21         **Greenhouse gas emissions.** Plaintiffs' argument that Caltrans did not point to its emissions

22   analysis is unclear, in light of the explicit citation in Caltrans' brief. ECF 102 at 20:20.

23   4.    <u>The analysis of mitigation was not arbitrary and capricious.</u> **Noise.** The EA does *not* state

24   noise is significant when it approaches the Abatement Criteria or increases 12 dBA. None of the

25   pages Plaintiffs cite, nor any other part of the record, mentions a finding of NEPA significance in

26   relation to noise (AR 727-28) and Plaintiffs cite no authority for their assumption that meeting

27   abatement criteria establishes significance under NEPA. In fact, the EA explains that future peak-

28   hour levels generally would remain "unchanged from existing levels" or would increase by only one

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1   or two decibels – consistent with *in*significance. AR 733. The EA determines the effectiveness of its

2   avoidance measures, stating they "will reduce the noise effect at adjacent residences." AR 790.

3        **Protected species.** Plaintiffs fail to prove that Caltrans' analysis of species mitigation was

4   arbitrary and capricious. Agencies can ensure effectiveness of mitigation by crafting specific and

5   detailed measures and including monitoring. *EPIC v. U.S. Forest Serv.*, 451 F.3d 1005, 1015-16 (9th

6   Cir. 2006) (*"EPIC"*). Here, avoidance and mitigation for the frog and snake would include daily pre-

7   construction surveys and inspections by an experienced biological monitor, and construction bid

8   package requirements describing proper installation and maintenance of fencing. AR 773-79, 3067.

9   These specific requirements, among others, support the explicit finding that the "mitigation measures

10   listed below, which are included in the project, will avoid or offset impacts to threatened or

11   endangered species." AR 773. Plaintiffs argue Caltrans cannot rely on its own Natural Environment

12   Study and BA to support its conclusions, by making the exceedingly narrow argument that the

13   species mitigation section of the EA did not refer to these documents. However, Plaintiffs ignore that

14   the larger Threatened and Endangered Species section of the EA (which includes the species

15   mitigation section) does reference these documents and explicitly discloses that they contain further

16   discussion of threatened and endangered species. AR 761; *see also* AR 941 (studies can be accessed

17   by public). Lastly, the EA states that the 5.14-acre parcel will be enhanced, not preserved. AR 775.

18   The record contains ample support for the effectiveness of this enhancement. AR 9133-34. The EA

19   also provides contingency plans in case the proposed mitigation cannot be implemented. AR 777-78.

20   5.   <u>Caltrans' decision not to prepare an EIS was not arbitrary and capricious.</u>

21        Plaintiffs fail to prove the FONSI was arbitrary and capricious. In discussing the threshold for

22   EIS preparation, Plaintiffs appear to assume that *any* adverse effect on a resource amounts to a

23   significant effect on the environment. This is not the case. *See EPIC, supra,* 451 F.3d at 1011.

24   Moreover, contrary to Plaintiffs' assertions, the FONSI succinctly explains the reasons the action

25   would not have a significant effect, by stating that this decision is based on the EA. AR 439.[3]

26   Plaintiffs also imply Caltrans pre-determined the EA would lead to a FONSI, but the thorough and

27

28   _____

[3] Plaintiffs erroneously allege a FONSI must show which factors were weighted most heavily. ECF 103 at 16:15-17. In fact, this showing is to be made only when relevant. (Forty Questions, 37a.)

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1   extensive technical studies, solicitation and consideration of public comment, and analysis in the EA

2   demonstrate to the contrary. Plaintiffs again point to the *CEQA Evaluation* in the Draft EA (which is

3   mirrored in the Final EA), to support their claim that impacts would be significant, but cite no

4   support for their allegation that CEQA determinations of significance as to individual resources

5   mandate an EIS under NEPA, especially when, as demonstrated throughout the EA, the Project

6   would not have a significant impact on the environment as a whole. Lastly, while Plaintiffs point to

7   public opposition to the Project, this is insufficient to establish that the Project is highly controversial

8   under NEPA. An action is highly controversial when a "substantial dispute exists as to the size,

9   nature, or effect of the major federal action," and a "substantial dispute exists when evidence…casts

10  serious doubt upon the reasonableness of the agency's conclusions." *In Defense of Animals v. U.S.*

11  *Dept. of the Interior*, 751 F.3d 1054, 1070 (9th Cir. 2014). The conclusions in the EA and FONSI are

12  well-supported and reasonable, and Plaintiffs fail to meet their burden to establish otherwise.

13          **F. The Project does not require a consistency determination under the CZMA.**

14          Plaintiffs ignore that the CZMA expressly defines "federal agency activity" as a residual

15  category that does not include granting of federal assistance. 15 C.F.R. § 930.31; ECF 103 at 17:17-

16  19:14. Where a federal agency provides federal funding for a project in the coastal zone, consistency

17  review is subject to subpart F of the CZMA regulations, which requires a consistency certification,

18  and not subpart C for federal agency activities, which requires a consistency determination at least 90

19  days before final approval. 15 C.F.R. § 930.36, 930.90, et seq. The CZMA first categorizes actions in

20  categories other than federal agency activities; only if an action does not fall within one of those

21  other categories does it then fit within the federal agency activity category. 16 U.S.C. §

22  1456(c)(1)(A); *California v. Norton*, 311 F.3d 1162, 1170 (9th Cir. 2002). The categories are also

23  mutually exclusive – that is, when an action first falls in a category such as federal funding, it cannot

24  also fall within the residual federal agency activity category. *California v. Norton*, 311 F.3d at 1170.

25          In an attempt to avoid the clear language of the CZMA, Plaintiffs note Caltrans has assumed

26  certain FHWA responsibilities under the MOU. ECF 103 at 18:7-8. That is true, but FHWA did not

27  have any CZMA responsibilities to submit a consistency determination pursuant to Subpart C in the

28  first place that Caltrans could assume. Instead, because FHWA is providing federal funds, Subpart F

13

---

**Defendants California Department of Transportation and Malcolm Dougherty's Reply in Support of Motion for Summary Judgment – CV 15-02090-VC**

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1   applies, not Subpart C. 16 U.S.C. § 1456(c)(1)(A); *California v. Norton*, 311 F.3d at 1170.[4] Plaintiffs

2   claim that because Caltrans took other actions on behalf of FHWA, and because FHWA has

3   responsibilities with respect to the Project that it makes the activity subject to Subpart C. ECF 103 at

4   18:19. But they cite no authority for that proposition, and it is contrary to the structure and intent of

5   the CZMA. Moreover, that argument would render Subpart F inapplicable in every instance. When a

6   federal agency provides funds for a state project, it can trigger a duty for the federal agency to

7   comply with NEPA. 40 C.F.R. § 1508.18. But the actions taken pursuant to NEPA as a result do not

8   remove a project from Subpart F and make it subject to Subpart C; if it did, in every instance that a

9   federal agency provided funds, it would wind up subject to Subpart C, which is contrary to the plain

10  language of the statute and regulations.[5]

11      Plaintiffs also rely again on their erroneous contentions regarding all final approvals. ECF

12  103 at 17:19-20. As explained above, numerous additional approvals must be obtained before

13  construction can begin. Thus, even if subpart C could be considered to apply, there would be no

14  violation because not all final approvals for the Project have been made, so there has not been "final

15  approval" that determines when a consistency determination must be submitted. 15 C.F.R. § 930.36.

16  **G. The Project will not "use" any section 4(f) parklands.**

17      Plaintiffs newly assert that the Project will result in "constructive use" of 4(f) properties, but

18  they fail to apply or even cite the regulations defining constructive use, much less identify and

19  analogize to any case law. ECF 103 at 19:15-20:28. The law provides that a "constructive use"

20  occurs only when a project's proximity impacts are "so severe that the protected activities, features,

21  or attributes that qualify the property for protection under Section 4(f) are substantially impaired. 23

22  C.F.R. § 774.15(a) (emph. added). Substantial impairment occurs "only when the protected activities,

23  features, or attributes of the property are substantially diminished." Id. The regulations include

24  _____

25  [4] By contrast, if FHWA were undertaking an activity in a NEPA-assignment context which did not fall within one of the other CZMA categories, it would constitute a federal agency activity and Caltrans could assume FHWA responsibilities pursuant to subpart C. But that is not the case here.

26  [5] The Coastal Commission recognizes this: "The review process used to implement this requirement

27  is called a **consistency determination** for federal agency activities and development projects, and a **consistency certification** for… federal support (*i.e.* funding) to state and local agencies."  See

28  http://www.coastal.ca.gov/fedcd/fedcndx.html; http://www.coastal.ca.gov/fedcd/guidecd.pdf.

14

CALIFORNIA DEPARTMENT OF TRANSPORTATION - LEGAL DIVISION
111 Grand Avenue, Suite 11-100, Oakland, California 94612
Telephone: (510) 433-9100, Facsimile: (510) 433-9167

1   specific examples of when constructive uses occur and do not. 23 C.F.R. § 774.15(e)(f).

2   Plaintiffs address none of this, legally or factually, even though a plaintiff bears the burden of

3   demonstrating a project will involve a constructive use. *Geer v. FHWA*, 975 F.Supp. 47, 72 (D.

4   Mass. 1997). Plaintiffs have failed to carry that burden here. Instead, they simply assert the Project

5   will have adverse impacts and then conclude, without support or argument, that the impacts are "so

6   severe" that they necessarily rise to the heightened level of "substantial impairment." ECF 103 at

7   19:22-26. Plaintiffs simply declare the Project will "degrade views," "potentially" harm wildlife and

8   risk spreading invasive plants, but they make no effort whatsoever to demonstrate substantial

9   impairment. They cite to NPS and CCC comments which do not even assert, much less establish,

10  substantial impairment or anything approximating it. ECF 103 at 19:26-28; AR 1611-15, 1626-30.

11  Plaintiffs repeat their baseless claim that Caltrans failed to consider alternatives or minimize

12  harm for impacts to parkland, and ignore the fact that such analyses are only triggered where the

13  Project will in fact "use" such 4(f) property. ECF 103 at 7-28; 49 U.S.C. § 303(c). While Plaintiffs

14  claim "the Project's adverse impacts on GGNRA parklands triggered CTs duty to address these

15  impacts in formal section 4(f) findings," they cite to no authority in support of that proposition,

16  which in fact is directly contrary to the law, which instead provides that the agency is not required to

17  document each determination that a project would not result in a constructive use. 23 C.F.R. §

18  774.15(c). In any case, the record amply reflects that no constructive use will occur. ECF 102 at

19  25:8-15. Plaintiffs characterize this as "counsel's post hoc rationalization," even though it consists

20  entirely of citations to the record. ECF 103 at 20:11.

21                                      **III. Conclusion**

22  This Court should grant summary judgment in favor of Caltrans.

23  Dated:   July 14, 2016

24                                      */s/ Derek S. van Hoften*
                                        JEANNE SCHERER
25                                      LUCILLE Y. BACA
                                        DEREK S. VAN HOFTEN
26                                      STACY LAU

27
                                        *Attorneys for Defendants California Department*
28                                      *of Transportation and Malcolm Dougherty*