Christopher Sproul (Bar No. 126398)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376, (510) 847-3467
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: jisaacs@enviroadvocates.com

Brian Gaffney (Bar No. 168778)
LAW OFFICES OF BRIAN GAFFNEY APC
446 Old County Road, Suite 100-310
Pacifica, CA 94044
Tel. (650) 219-3187
Email: brian@gaffneylegal.com

Patricia Weisselberg (Bar No. 253015)
LAW OFFICE OF PATRICIA WEISSELBERG
115 Oakdale Avenue
Mill Valley, CA 94941
Tel. (415) 388-2303
Email: pweisselberg@wans.net

Attorneys for Plaintiffs
PACIFICANS FOR A SCENIC COAST;
PACIFICANS FOR HIGHWAY 1 ALTERNATIVES;
CENTER FOR BIOLOGICAL DIVERSITY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

PACIFICANS FOR A SCENIC COAST, *et al*.,

      Plaintiffs,

      v.

CALIFORNIA DEPARTMENT OF
TRANSPORTATION, *et al*.,

      Defendants.

Case No. 3:15-cv-02090-VC

**NOTICE OF MOTION AND MOTION;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND COSTS**

Date: September 21, 2017
Time: 10:00 a.m.
Courtroom: 4 / 17th Floor

1

## **TABLE OF CONTENTS**

2    I.    Plaintiffs Are Entitled to Recover Attorneys' Fees Under the ESA. ........................................1

3          A.    The ESA Governs Plaintiffs' Request for Fees against Caltrans...................................2

4          B.    Plaintiffs Meet the ESA Standard for Fee Entitlement ...................................................2

5                1.    Plaintiffs Achieved Significant Success on the Merits ....................................... 2

6                2.    No Special Circumstances Justify Denial of an Attorney Fee Award ..............3

7    II.   Plaintiffs Are Entitled to a Fully Compensatory Attorneys' Fee Award ..................................4

8          A.    Plaintiffs Are Entitled to Full Recovery of Their Lodestar ...........................................5

9          B.    All Time Spent Litigating Claims 2, 4 and 7 against Caltrans is Recoverable Because
10               These Claims Are Related to the Prevailing Claims........................................................8

11         C.    Time Spent Advancing the Case as a Whole Is Compensable ...................................10

12         D.    The *Kerr* Factors Support a Fully Compensatory Fee Award ....................................11

13         E.    Plaintiffs' Hourly Rates Are Reasonable .......................................................................12

14               1.    Plaintiffs' Claimed Rates Accord with Prevailing San Francisco Rates .........12

15               2.     Counsel Should be Awarded Their 2017 Rates To Compensate for Delay in
                       Payment........................................................................................................................14

16               3.    Plaintiffs' Related Claims Should Be Awarded under the ESA Fee Provision.14

17         F.    Plaintiffs Are Entitled to Recover Reasonable Costs of Litigation ............................15

18   III.  CONCLUSION.................................................................................................................................15

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Cases**

*A.D. v. State Highway Patrol*,
    2013 U.S. Dist. LEXIS 169275 (N.D. Cal. 2013) ....................................................7

*Alliance for the Wild Rockies v. Kruger*,
    2014 U.S. Dist. LEXIS 2825 (D. Mont. Jan. 3, 2014) .......................................7, 9

*Bennett v. Spear,*
    1998 U.S. Dist. LEXIS 16087 (D. Or. May 20, 1998) ...........................................3

*Bouman v. Block*,
    940 F.2d 1222 (9th Cir. 1991) .............................................................................14

*Blackwell v. Foley*,
    724 F. Supp. 2d 1068 (N.D. Cal. 2010) ...............................................................13

*Bldg. Indus. Legal Def. Found. v. Norton*,
    259 F. Supp. 2d 1081 (S.D. Cal. 2003).................................................................15

*Cabrales v. County of Los Angeles*,
    935 F.2d 1050 (9th Cir. 1991) ...............................................................................8

*Camacho v. Bridgeport Financial, Inc.*,
    523 F.3d 973 (9th Cir. 2008) ..........................................................................7, 13

*City of Burlington v. Dague*,
    505 U.S. 557 (1992)........................................................................................10, 11

*City of Riverside v. Rivera*,
    477 U.S. 561 (1986)................................................................................................7

*Dague v. City of Burlington*,
    935 F.2d 1343 (2d Cir. 1991)...............................................................................10

*Davis v. City and County of San Francisco*,
    976 F.2d 1536 (9th Cir. 1992) .............................................................................14

*Defenders of Wildlife v. EPA*,
    700 F. Supp. 1028 (D. Minn. 1988).....................................................................10

1  *Environmental Protection Information Center, Inc., v. Pacific Lumber Company,*

2      229 F. Supp. 2d 993 (N.D. Cal. 2002) ..................................................................11

3  *Federation of Fly Fishers v. Daly,*

4      200 F. Supp. 2d 1181 (N.D. Cal. 2002) ...............................................................12

5  *Fischer v. SJB-P.D. Inc.,*

6      214 F.3d 1115 (9th Cir. 2000) ...............................................................................5

7  *Gates v. Deukmejian,*

8      987 F.2d 1392 (9th Cir. 1992) .............................................................................13

9  *Golden Gate Audubon Soc., Inc. v. U.S. Army Corps of Engineers,*

10      732 F. Supp. 1014 (N.D. Cal. 1989) ................................................................6, 7

11  *Habitat Educ. Ctr., Inc. v. Bosworth,*

12      2006 U.S. Dist. LEXIS 21922 (E.D. Wis. Mar. 28, 2006) .................................7, 9

13  *Hensley v. Eckerhart,*

14      461 U.S. 424 (1983)...........................................................1, 4, 5, 8, 9, 10

15  *Hiken v. DOD,*

16      836 F.3d 1037 (9th Cir. 2016) .............................................................................13

17  *In re Cathode Ray Tube (CRT) Antitrust Litig.,*

18      No. 07-5944, 2016 U.S. Dist. LEXIS 102408 (N.D. Cal. Aug. 3, 2016) ...............14

19  *In re Immune Responses Secs. Litigation,*

20      497 F. Supp. 2d 1166 (S.D. Cal. 2007)................................................................15

21  *Kerr v. Screen Guild Extras, Inc.,*

22      526 F.2d 67 (9th Cir. 1975) .................................................................................11

23  *Marbled Murrelet v. Babbitt,*

24      182 F.3d 1091 (9th Cir. 1999) ...............................................................................4

25  *Marbled Murrelet v. Pacific Lumber Co.,*

26      163 F.R.D. 308 (N.D. Cal 1995)......................................................................12, 15

27  *Morales v. City of San Rafael,*

28      96 F.3d 359 (9th Cir. 1996) .................................................................................11

*Missouri v. Jenkins,*

      491 U.S. 274 (1989)..................................................................................14

*Moreno v. City of Sacramento,*

      534 F.3d 1106 (9th Cir. 2008) ..................................................................5

*National Wildlife Federation v. Hanson,*

      859 F.2d 313 (4th Cir. 1988) .....................................................................1

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.,*

      524 F.3d 917 (9th Cir. 2008) .....................................................................3

*Native Fish Soc'y v. Nat'l Marine Fisheries Serv.,*

      2014 U.S. Dist. LEXIS 175280 (D. Or. Dec. 19, 2014) ...........................12

*Oberfelder v. Bertoli,*

      67 F. App'x 408 (9th Cir. 2003)...............................................................14

*Oberfelder v. City of Petaluma,*

      No. 98-1470, 2002 U.S. Dist. LEXIS 8635 (N.D. Cal. Jan. 29, 2002)....................14

*Oregon Nat. Desert Ass'n v. Vilsack,*

      2013 WL 3348428 (D. Or. July 2, 2013)..................................................14

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.* ("*OCE*")

      No. 14-01130, 2017 U.S. Dist. LEXIS 29130 (N.D. Cal. Mar. 1, 2017)................13

*Our Children's Earth Found. v. U.S. Envtl. Prot. Agency,*

      No. 13-02857, 2016 U.S. Dist. LEXIS 40626 (N.D. Cal. Mar. 25, 2016).............11

*Pacificans For A Scenic Coast v. California Department of Transportation,*

      2016 U.S. Dist. LEXIS 55672 (N.D. Cal. April 25, 2016) .........................4

*Pacificans for a Scenic Coast v. California Dep't of Transportation,*

      204 F. Supp. 3d 1075 (N.D. Cal. 2016) ...................................................2

*Pande v. Chevron Texaco Corp.,*

      No. 04-05107, 2008 U.S. Dist. LEXIS 87584 (N.D. Cal. Apr. 1, 2008).............13

*Pennsylvania v. Delaware Valley Citizens' Council,*

      478 U.S. 546 (1986)..................................................................................4

*Prisa Legal News v. Schwarzenneger*,

    608 F.3d 446, 455 (9th Cir. 2010) ..................................................................13

*Resurrection Bay Conservation Alliance v. City of Seward*,

    640 F.3d 1087 (9th Cir. 2011); ...................................................................2, 3

*Ruckelshaus v. Sierra Club*,

    463 U.S. 680 (1983) .......................................................................................2

*Sierra Club v. Chevron U.S.A., Inc.*,

    834 F.2d 1517 (9th Cir. 1987) .......................................................................1

*Sierra Club v. EPA*,

    625 F. Supp. 2d 863 (N.D. Cal. 2007) ..........................................................6

*Sorenson v. Mink*,

    239 F.3d 1140 (9th Cir. 2001) ................................................................4, 10

*Southwest Ctr. for Biological Diversity v. Bartel*,

    2007 U.S. Dist. LEXIS 64232 (S.D. Cal. Aug. 30, 2007) ..............................7

*St. John's Organic Farm v. Gem County Mosquito Abatement Dist.*,

    574 F.3d 1054 (9th Cir. 2009) ..........................................................1, 2, 3, 4

*Stonebrae, L.P. v. Toll Bros.*,

    No. 08-0221, 2011 U.S. Dist. LEXIS 39832 (N.D. Cal. Apr. 7, 2011) .................................13

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,

    2012 U.S. Dist. LEXIS 42287 (E.D. Cal. Mar. 26, 2012) ...............................2, 3, 12

*Stetson v. Grissom*,

    821 F.3d 1157 (9th Cir. 2016) .....................................................................11

*Thorne v. El Segundo*,

    802 F.2d 1131 (9th Cir. 1986) .......................................................................8

*Tribe v. Nat'l Marine Fisheries Serv.*,

    2017 WL 512807 (N.D. Cal. Feb. 8, 2017) ....................................................3

*Tribe v. United States Bureau of Reclamation*,

    No. 16-6863, 2017 WL 512845 (N.D. Cal. Feb. 8, 2017) ................................3

*Webb v. County Bd. of Educ.*,

    471 U.S. 234 (1985).................................................................................................6

*Webb v. Sloan*,

    330 F.3d 1158 (9th Cir. 2003) .......................................................................... 8

**Statutes**

16 U.S.C. § 1540(g)(4) .........................................................................................2, 15

1  **NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**

2       PLEASE TAKE NOTICE that on September 21, 2017 at 10:00 a.m. Plaintiffs will move in

3  Courtroom 4, 17th Floor of the United States District Court, Northern District of California, 450 Golden

4  Gate Ave, San Francisco, California for an award of attorneys' fees and costs incurred against

5  Defendant California Department of Transportation ("Caltrans"). This motion is based on the

6  Memorandum of Points & Authorities, supporting declarations and exhibits, and the proposed order

7  filed herewith. Plaintiffs have separately settled their request from Defendant U.S. Fish and Wildlife

8  Service ("FWS") for attorneys' fees and costs incurred pursuing their claims against that agency and thus

9  are not seeking fees against the FWS in this motion.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2    Through the application of considerable expertise and skill, Plaintiffs obtained a ruling that both

3 Caltrans and the FWS violated the Endangered Species Act ("ESA") in their ESA section 7 consultation

4 for the Calera Creek / Highway 1 Project in Pacifica ("Project"). The summary judgment ruling in this

5 matter has effectively halted the Project until such time as Caltrans and FWS perform a new ESA

6 section 7 consultation that will appropriately analyze the net adverse Project impacts on California red-

7 legged frog and San Francisco garter snake ("the Listed Species"). Plaintiffs have obtained the requisite

8 success to be awarded attorneys' fees and costs against Caltrans under the ESA's fee shifting provision.

9    Plaintiffs are also entitled to recover their time litigating their National Environmental Policy

10 Act ("NEPA"), Department of Transportation Act ("DOTA") and substantive ESA claims against

11 Caltrans, even though they did not prevail on these claims, because all claims arose from a common

12 core of facts and because all claims pursued a similar remedy: requiring legally adequate analysis of the

13 Project's environmental impacts. *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983). Courts must generally

14 award attorneys' fees to prevailing environmental citizen suit plaintiffs "to encourage the achievement

15 of statutory goals" as fee shifting is typically required for public interest groups to secure representation.

16 *St. John's Organic Farm v. Gem County Mosquito Abatement Dist.*, 574 F.3d 1054, 1061 (9th Cir.

17 2009). As one court pointed out:

18      [I]t is important to distinguish between traditional civil cases and environmental litigation . . . .
        The legislative history of the fee shifting provisions indicates that they were enacted to
19      encourage litigation to ensure proper administrative implementation of the environmental
        statutes . . . . [I]t is appropriate for courts to award fees to partially prevailing parties where the
20      action served to promote the purposes of the Act. Unlike plaintiffs in traditional civil actions,
        plaintiffs in environmental suits do not seek to vindicate personal rights and they obtain no
21      financial benefit if they win.
22

23 *National Wildlife Federation v. Hanson,* 859 F.2d 313, 316-17 (4th Cir. 1988); *see also Sierra Club v.*

24 *Chevron U.S.A., Inc.*, 834 F.2d 1517, 1525 (9th Cir. 1987) (acknowledging that citizens in

25 environmental suits obtain no financial benefit from winning but instead vindicate public interests).

26    As detailed below, Plaintiffs achieved significant success and are entitled to a fully

27 compensatory fee award of their reasonable hours at prevailing San Francisco market rates and costs.

28 **I.    Plaintiffs Are Entitled to Recover Attorneys' Fees Under the ESA.**

**A.  The ESA Governs Plaintiffs' Request for Fees against Caltrans.**

Plaintiffs prevailed on their ESA citizen suit claims (Claims 1 and 3) that Caltrans, standing in the shoes of the Federal Highway Administration, violated the ESA. *See* Summary Judgment Order at 3-4, 9-14, 29 ("Dkt. 114"), *published at Pacificans for a Scenic Coast v. California Dep't of Transportation*, 204 F. Supp. 3d 1075 (N.D. Cal. 2016). The ESA's citizen suit provision governs Plaintiffs' request for attorneys fees against Caltrans for these claims. 16 U.S.C. § 1540(g)(4).

**B.  Plaintiffs Meet the ESA Standard for Fee Entitlement.**

Under the ESA, a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). Fee awards are "appropriate" where plaintiffs are prevailing or substantially prevailing parties, *i.e.*, have achieved "some degree of success on the merits" and there are no "special circumstances" rendering a fee award unjust. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.* ("*SYRCL*"), No. 06-2845, 2012 U.S. Dist. LEXIS 42287, at *9 (E.D. Cal. Mar. 26, 2012), *aff'd* 2014 U.S. App. LEXIS 12450 (9th Cir. July 1, 2014). Here, Plaintiffs were substantially prevailing parties and no "special circumstances" make a fee award unjust.

**1. Plaintiffs Achieved Significant Success on the Merits.**

"The threshold for sufficient relief to confer prevailing party status is not high. 'If the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind.'" *St. John's*, 574 F.3d at 1059; *see also Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1091 (9th Cir. 2011); *SYRCL*, 2012 U.S. Dist. LEXIS 42287, at *9. This Court granted Plaintiffs summary judgment that Caltrans violated its ESA section 7(a)(2) procedural obligations by failing to adequately consult with FWS about the Project's impacts on the Listed Species (Claim 1) and by failing to reinitiate ESA section 7 consultation with the FWS (Claim 3). The Court found that false information in Caltrans' Biological Assessment ("BA") concerning an adjoining City of Pacifica mitigation parcel caused FWS to issue a flawed Biological Opinion, which Caltrans then based its approval of the Project on, in violation of the ESA. Dkt. 114 at 9-14, 20-21 ("Caltrans has only itself to blame for the fact it

1   must reinitiate consultation and obtain a new Biological Opinion before approving the project again").

2   Notably, this Court's decision has been cited by other courts in finding that both the action agency and

3   the consulting agency have an ESA duty to reinitiate consultation. *Tribe v. Nat'l Marine Fisheries Serv.*,

4   No. 16-4294, 2017 WL 512807, at *6 (N.D. Cal. Feb. 8, 2017); *see also Tribe v. United States Bureau*

5   *of Reclamation*, No. 16-6863, 2017 WL 512845, at *6 (N.D. Cal. Feb. 8, 2017).

6           While Plaintiffs do not seek an award against FWS, in regards to significant success on the

7   merits, this Court also granted Plaintiffs summary judgment on Claim 5. The FWS's Biological Opinion

8   ("BiOp") violated the ESA's procedural requirements, and therefore the APA. The BiOp relied on

9   Caltrans' proposal to implement a mitigation project on a National Park Service ("NPS") administered

10  5.46 acre parcel in the Golden Gate National Recreation Area ("GGNRA") adjoining the Project - even

11  though this mitigation was only conceptual, with details needing to be worked out before binding

12  agreement/commitment for project mitigation could be entered into between Caltrans and the NPS. The

13  Court found the BiOp thus violated the ESA because a "Biological Opinion may not rely on proposed

14  mitigation measures 'absent specific and binding plans' for those mitigation measures. *Nat'l Wildlife*

15  *Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 936 (9th Cir. 2008). This requires 'a clear, definite

16  commitment of resources' toward those mitigation measures. *Id.*" Dkt. 114 at 15.

17          By prevailing on these significant ESA issues, Plaintiffs achieved the requisite degree of merits

18  success. *See SYRCL*, 2012 U.S. Dist. LEXIS 42287, at *10-*11; *Bennett v. Spear*, 1998 U.S. Dist.

19  LEXIS 16087, at *4 (D. Or. May 20, 1998).

20          **2. No Special Circumstances Justify Denial of an Attorney Fee Award.**

21          In environmental cases, the "court's discretion to deny a fee award to a prevailing plaintiff is

22  narrow, and a denial of fees on the basis of 'special circumstances' is 'extremely rare.'" *Resurrection*

23  *Bay*, 640 F.3d at 1092 (citations omitted). Fee awards to prevailing environmental citizen suit plaintiffs

24  should be "the rule rather than the exception." *St. John's*, 574 F.3d at 1062. Here, Plaintiffs diligently

25  briefed this complex matter, and achieved substantial relief through the declaratory judgment that

26

27

28

Caltrans and FWS failed to meet their ESA section 7 duties. An award of Plaintiffs' fees is thus

mandatory under *St. John's* and *Resurrection Bay*.[1]

## II.     Plaintiffs Are Entitled to A Fully Compensatory Attorneys' Fee Award.

Plaintiffs' Claims 1 through 4 and Claim 7 all pursued a similar remedy: requiring legally

adequate analysis of the Project's environmental harms. The Court's summary judgment order provided

this remedy as it has effectively precluded Caltrans from proceeding with the Project until it completes

an adequate ESA section 7 consultation with FWS on the Project's impacts on the Listed Species.

Achieving the lawsuit's central objective constitutes the "excellent results" that warrants recovery of a

fully compensatory fee for all hours reasonably expended on these interrelated claims. *See Hensley*, 461

U.S. at 434, 440 ("substantial relief" equivalent to "excellent results"); *see also Sorenson v. Mink*, 239

F.3d 1140, 1147 (9th Cir. 2001) ("excellent result" occurred when the lawsuit represented "sustained

legal effort to bring about a common good.").[2]

---

[1]  Previous rulings requiring a "substantial contribution" to the ESA's goals are no longer good law. The only requirement - beyond prevailing party status - for ESA fee eligibility is the absence of "special circumstances" making a fee award unjust. *Marbled Murrelet v. Babbitt*, 182 F.3d 1091, 1094-1096 (9th Cir. 1999) (previous Ninth Circuit rule - that "substantial contribution" to ESA goals needed for entitlement to ESA attorneys fees - overruled by *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546 (1986) that Clean Air Act ("CAA") fee shifting provision must be interpreted in same way as Civil Rights Acts, which imposes no showing of "substantial contribution" to statutory goals for fee entitlement, and finding that the ESA fee provision must be interpreted similarly to CAA fee provision); *St. John's*, 574 F.3d 1054, 1063 (9th Cir. 2009) (ESA and CAA are "broad public interest statutes that authorize citizen suits to enforce their substantive provisions" with attorney fee provisions that are "in all relevant ways identical," and to be interpreted in accord with *Delaware Valley* standard - such that denial of attorneys fees to prevailing plaintiffs is only permissible under "special circumstances").

Even if Plaintiffs had to show substantial contribution to ESA goals to obtain fees, summary judgment that Caltrans and FWS failed to meet their ESA section 7 duties in producing the flawed BA and BiOp constitutes such a contribution. Because of this litigation, a valid ESA consultation - which accurately assesses Project harms and mitigations - must occur before this Project can proceed. Also, this case provides a roadmap to guide Caltrans and FWS in any subsequent ESA consultation for this Project on how a revised BiOp would need to analyze the Project's mitigation measures. This ruling thus furthers the central purpose of ESA section 7: ensuring full consideration of impacts to species before a federal action agency implements a proposed project. The important legal precedent established in this case is a further substantial contribution to the ESA's goals. *See* n.3, *infra*.

[2] The ruling secured by Plaintiffs is also precedential and significant in clarifying important points of ESA law, including (1) rejecting Caltrans' arguments that the Court lacked jurisdiction to address the BA's flaws because they were not part of reviewable final agency action (Dkt. 114 at 9), (2) reiterating that vague mitigation plans without specific binding commitments may not be relied upon in a biological opinion (Dkt. 114 at 16), (3) denying Caltrans' Motion to Dismiss argument that its failure to comply with ESA section 7 was not ripe for review, and (4) rejecting that judicial review of ESA claims is limited to an administrative record. (Dkt. 98, *published at* 2016 U.S. Dist. LEXIS 55672, at *2).

---

**A.  Plaintiffs Are Entitled to Full Recovery of Their Lodestar.**

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Sorenson*, 239 F.3d at 1145 (*citing Hensley*, 461 U.S. at 433). There is a "strong presumption" that this approach will result in a reasonable fee award, so the lodestar should only be adjusted in "rare and exceptional cases." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000). This is not the case as, *inter alia*, Plaintiffs efficiently staffed the case to minimize duplication and when possible delegated tasks to junior attorneys billing at lower rates.[3] Sproul Decl. ¶¶ 20-22.

When considering the number of hours reasonably expended in the litigation:

It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). "If opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut." *Id.* at 1116.

As the Ninth Circuit has recognized, litigants such as Plaintiffs here have every incentive to keep down the costs of litigation. *Id.* at 1112. Achieving success on the merits required a substantial investment of Plaintiffs' time. Plaintiffs' Declarations review the major litigation tasks performed in the case including drafting the pleadings, gathering and reviewing the factual record, attending to mandatory case management matters and efforts to streamline the case, litigating the major motions, and attempting to minimize litigation and pursue settlement. Sproul Decl. ¶¶ 14-18; Gaffney Decl. ¶ 13: Weisselberg Decl. ¶ 9.

---

[3] Sproul and Gaffney directed this case. Together with Weisselberg, who is very experienced in ESA law, these three attorneys performed the majority of the work on the case. Four junior attorneys and one paralegal performed work on discrete tasks, but their combined hours are a small fraction of the hours devoted to this case. *See* Sproul Decl.¶¶ 20-21,108-109, Ex. 37; Gaffney Decl. ¶¶ 8-9, Ex. 1.

The initial case development work involved gathering and analyzing factual information on the potential claims and remedies in the case, investigating issues regarding standing, conducting legal research and developing the legal theories of the case, reaching consensus with clients and co-counsel on litigation goals and strategy, drafting and serving notice letters and drafting Plaintiffs' complaint. Sproul Decl. ¶ 14; Gaffney Decl. ¶ 13.A. Time necessarily spent researching the factual record, developing legal theories and claims pre-filing, and drafting notice letters and pleadings is recoverable. *Webb v. County Bd. of Educ.*, 471 U.S. 234, 243 (1985); *Sierra Club v. EPA*, 625 F. Supp. 2d 863, 871 (N.D. Cal. 2007); *Golden Gate Audubon Soc., Inc. v. U.S. Army Corps of Engineers*, 732 F. Supp. 1014, 1018 (N.D. Cal. 1989) (pre-litigation telephone calls and meetings recoverable).

Significant time was required of Plaintiffs to review and analyze the BA, the BiOp, Caltrans' 10,500-page administrative record, and over 2,200 pages of FWS's record. Sproul Decl. ¶ 14; Gaffney Decl. ¶ 13.C. Though substantial, Defendants' administrative records were incomplete in important respects. Much information relevant to the legal adequacy of Caltrans' ESA section 7 consultation was not included in Defendants' administrative records, requiring Plaintiffs to spend many hours obtaining and reviewing almost 60 documents from the NPS through Freedom of Information Act ("FOIA") requests, and numerous documents from the City of Pacifica and the California Coastal Commission as a result of California Public Records Act ("PRA") requests. *Id.*

As a result of Plaintiffs' efforts, both Caltrans and FWS supplemented their records in a limited way. Dkt. 84, 85. Plaintiffs were still required to bring a successful motion ("AR Motion") (1) to supplement Defendants' record with numerous documents Plaintiffs had obtained through their FOIA and PRA efforts, and (2) to establish that Plaintiffs' ESA claims were not limited to an administrative record. Dkt. 86-88, 96, 98. These additional documents included City of Pacifica and California Coastal Commission documents concerning the City's pre-existing obligation to preserve a 5.14 acre parcel that Caltrans proposed to preserve as compensatory mitigation for its Project.

Drafting Plaintiffs' summary judgment briefs (Dkt. 99, 103, 104, 105) and opposing Defendants' two opposing cross Summary Judgment Motions ("Cross MSJs") (Dkt. 101, 102) also required extensive hours to address multiple factual and legal issues. The time spent on the AR Motion and the Cross MSJs was greatly increased by the Defendants' tenacious and detailed opposition.

Experienced environmental litigators have opined that the number of hours claimed in this case are reasonable, particularly given the complex statutory arguments under multiple statutes, the size of the administrative records and the need to supplement these records. Duggan Decl. ¶ 9; Lozeau Decl. ¶ 21; Packard ¶ 12; Cooper ¶ 17. Sharon E. Duggan, who has litigated three cases over the past few years in the Northern District related to proposed highway widening projects, opines that in her experience Caltrans demonstrates a "steadfast unwillingness to resolve issues or consider alternatives to litigation" and utilizes "dogged defense tactics, which require attorneys such as Plaintiffs' counsel in this case, to leave no stone unturned and to be more vigilant in the prosecution of the action." Duggan Decl. ¶¶ 5, 9. "The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986).

After efforts to settle the fee dispute with Caltrans failed, Plaintiffs have spent considerable time drafting the instant Fee Motion. Sproul Decl. ¶¶ 15(8), 24, 111, Ex. 36, 37; Gaffney Decl. ¶ 13.F. A fee motion is necessarily a complex and time-consuming endeavor as "plaintiffs have the burden of supporting the rates sought and time spent, and [are] required to review pertinent legal authority, obtain declarations, gather and present time records, research current hourly rates for Bay Area attorneys, and prepare the motion papers." *A.D. v. State Highway Patrol*, No. 07-5483, 2013 U.S. Dist. LEXIS 169275, at *23-*24 (N.D. Cal. 2013). Plaintiffs are fully entitled to recover for their "fees on fees" sought here. *See, e.g.*, *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008); *Highway Patrol*, 2013 U.S. Dist. LEXIS 169275, at *23-*24 (awarding $120,970 in fees on fees); *Golden Gate*, 732 F. Supp. at 1022 (300 hours of fees on fees work reasonable given that briefs raised difficult issues concerning entitlement and appropriate fees amount); *see also* Sproul Decl. ¶¶ 111-12, Ex. 37.

Litigating this factually complex case, which at the time of Judgment generated a case docket of 115 entries, while countering steadfast opposition from Caltrans, and achieving substantial relief on the merits fully justifies an award of all of Plaintiffs' attorneys' fees. *See Alliance for the Wild Rockies v. Kruger*, No. 12-150, 2014 U.S. Dist. LEXIS 2825, at *13 (D. Mont. Jan. 3, 2014) ("the amount of time spent by Plaintiffs' counsel was reasonable, particularly in light of the fees awarded in other environmental litigations. These cases are time-consuming and the process is arduous."); *Southwest Ctr. for Biological Diversity v. Bartel*, 2007 U.S. Dist. LEXIS 64232, at *26 (S.D. Cal. Aug. 30, 2007)

(complex issues and decisional document, size of administrative record, Defendants' active opposition, and challenging legal issues justified substantial expenditure of time); *Habitat Educ. Ctr., Inc. v. Bosworth*, No. 03-1023, 2006 U.S. Dist. LEXIS 21922, at *11 (E.D. Wis. Mar. 28, 2006) (noting case involved time-consuming analysis of complex decisional documents and extensive records).

### B. All Time Spent Litigating Claims 2, 4 and 7 against Caltrans is Recoverable Because These Claims Are Related to the Prevailing Claims.

Under *Hensley v. Eckhart*, Plaintiffs may recover for losing claims that are interrelated to winning claims. 461 U.S. 424, 434-35 (1983). "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id*. at 440. This is because "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id*.; *see also Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991) ("Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war. Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning.").

Accordingly, Plaintiffs are entitled to recover all time spent litigating Claims 2, 4 and 7 even though they did not prevail on these claims because the claims are interrelated under *Hensley* to the claims they prevailed upon. Under *Hensley*, interrelated claims are those arising from a "common core of facts" or that are "based on related legal theories." *Hensley* at 435. Losing claims are *only* unrelated to winning claims under *Hensley* when the "relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." *Thorne v. El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986). Notably, there is no "requirement of commonality of both facts and law before concluding that unsuccessful and successful claims are related." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003).

Here, Claims 2, 4, and 7 arose out of the same essential course of conduct as Claims 1 and 3: Caltrans' approval of the Highway 1 Project without complete and accurate evaluation of the Project's environmental impacts and whether harms to the Listed Species would be appropriately mitigated.

These claims all pursued a similar remedy: requiring legally adequate analysis of the Project's environmental impacts. These claims all were designed to advance a common objective: to provide the protections allowed by law for the Listed Species by not allowing the Project to proceed without further environmental analysis. *See* Buse Decl. ¶ 4; Gordon Decl. ¶ 4; Loeb Decl. ¶ 4 (discussing Plaintiffs' primary case objective).

Claim 2 is related to the winning Claims 1, 3 and 5 as it contended that Caltrans breached its ESA section 7(a)(2) *substantive* duty by approving the Project without ensuring that the Project will not jeopardize the Listed Species' survival or recovery. Claim 2 thus just applied a related legal theory to the same fact pattern at issue in Claims 1, 3 and Claim 5 with the same objective of requiring the Project to comply with the relevant environmental laws. *Id*.

Claim 4, under NEPA, was also related to Plaintiffs' prevailing procedural ESA theories. In Claim 1, Plaintiffs argued Caltrans violated the ESA by failing to provide accurate descriptions of the action to be considered, the specific area affected, and the manner in which the action may affect species. These legal theories are closely related to the NEPA claims that Caltrans' project description, environmental baseline and analysis of impacts were flawed. Further, in regards to Claim 3, Plaintiffs sought further environmental review in the form of reinitiation of consultation because new information had been revealed. This ESA theory is related to the NEPA legal theory in Claim 4 that because the Environmental Assessment information was inadequate (including in relation to the Listed Species), Caltrans was required to conduct further environmental review.

Claim 7 is related to Claims 1 and 3 as it contended, *inter alia*, that Caltrans' failure to adequately consider the Project's impacts on the Listed Species utilizing the GGNRA as part of their local habitat violated DOTA obligations to adequately consider highway project impacts on parklands, and to implement all possible planning to minimize harm. Thus, Claim 7 advanced another legal theory for requiring more analysis of Project impacts on the Listed Species and legally binding mitigation commitments to preserve and enhance the Listed Species habitat.

Even where some of Plaintiffs' claims involve different standards, if, as here, all of the claims arose from the same project and sought the same relief, the claims are related. "The common core of facts in this case is Defendants' approval of … [a single] project, and the legal claims brought forth

under the APA, NEPA, NFMA, and the ESA are within the same legal framework commonly applied to environmental litigation," hence claims are related under the *Hensley* standard. *Kruger*, 2014 U.S. Dist. LEXIS 2825, at *11; *see also Bosworth*, 2006 U.S. Dist. LEXIS 21922, at *34 (claims arising under NEPA and ESA sharing common core of facts and related legal theories regarding unlawful approvals of timber sales interrelated under *Hensley*); *Defenders of Wildlife v. EPA*, 700 F. Supp. 1028, 1031 (D. Minn. 1988) ("factual, procedural, and legal underpinnings" of ESA claim and APA claim challenging underlying agency decision were "closely related" under *Hensley*), *underlying merits opinion aff'd in part, rev'd in part*, 882 F.2d 1294 (8th Cir. 1989); *Sorenson*, 239 F.3d at 1147 (all claims focusing on "improving Oregon's disability determination system" related within meaning of *Hensley*); *Dague v. City of Burlington*, 935 F.2d 1343, 1359 (2d Cir. 1991) (claims under CWA and RCRA shared common core of facts and related legal theories because they sought to remedy impacts of the same municipal landfill facility), *rev'd in part on other grounds*, 505 U.S. 557 (1992).

Because Claims 2, 4, and 7 are related to Claims 1 and 3 and 5, under *Hensley* this Court then evaluates the significance of the overall relief obtained to the hours reasonably expended in determining the appropriate award for work on all these claims. Clearly, the result here was significant: the Court found that Caltrans and FWS both violated the ESA, that further environmental review in the form of reinitiation of ESA consultation is required before the Project can proceed, and that false information in the BA led Caltrans to approve the Project based on a flawed Biological Opinion in violation of the ESA. Dkt. 114 at 9-14, 20-21. Only 198.54 hours of counsel's time was spent on the NEPA issue and 49.81 hours on the DOTA claim. Gaffney Decl. ¶48, Ex. 1; Sproul Decl. ¶¶ 111, 112, Ex. 37. Further, Plaintiffs spent only a token amount of time on Claim 2, its substantive ESA claim. Weisselberg Decl. ¶ 10. These hours were reasonable in comparison to the total 1088 hours counsel spent on the merits of this matter against Caltrans.

### C.  Time Spent Advancing the Case as a Whole Is Compensable.

Plaintiffs have carefully reviewed their time records and divided their time by claim to the extent reasonable to do so. Sproul Decl. ¶¶ 24-27, Ex. 36; Gaffney Decl. ¶¶ 11, 14, Ex. 2; Weisselberg Decl. ¶¶ 31-33, Ex. A; Langille Decl. ¶5, Ex. 2; Costa Decl. ¶8, Ex. 1; Whipps Decl. ¶4, Ex. 2, Edberg Decl. ¶4, Ex. 2. Specifically, Plaintiffs have categorized their time spent as either spent on ESA Claims 1 & 3

against Caltrans; general litigation against Caltrans; NEPA, DOTA or CZMA claims; and fee motion

practice and settlement.[4] Sproul Decl. ¶¶ 24-27, 111-12, Ex. 37; Gaffney Decl. ¶¶ 14, 21-25, Ex. 1.

However, a substantial portion of counsels' time, 255.96 hours attributable to Caltrans, was necessarily

incurred to advance the litigation as a whole and would have been incurred no matter how many claims

Plaintiffs brought. Column K to Ex. 1 to Gaffney Decl.; Gaffney Decl. ¶¶11, 24; Sproul Decl. ¶ 27, Ex.

37. Such time cannot be meaningfully segregated by claim, and all of it should be awarded, including

because much of the general litigation time was required for the prevailing ESA claims. Such time

includes: drafting and serving the complaint and summons, meeting with opposing counsel as required

by FRCP 26(f) regarding case management matters, preparing joint case management statements,

attending case management conferences, reviewing the administrative records, drafting and sending

FOIA and PRA requests and reviewing responses to these requests for supplemental evidence, drafting

the AR Motion and arguing the AR motion in court, and numerous paralegal tasks. *Id.*

### D.  The *Kerr* Factors Support A Fully Compensatory Fee Award.

In determining a reasonable fee, the Court should also consider the factors articulated in *Kerr v.*

*Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds, City of*

*Burlington v. Dague*, 505 U.S. 557 (1992). These factors include: (1) the time and labor required, (2) the

novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service

properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) time

limitations imposed by the client or the circumstances, (6) the results obtained, (7) the experience,

reputation, and ability of the attorneys, (8) the 'undesirability' of the case, and (9) awards in similar

cases. *Environmental Protection Information Center, Inc., v. Pacific Lumber Company*, 229 F. Supp. 2d

993, 1006 (N.D. Cal. 2002) (fees under ESA); *Our Children's Earth Found. v. U.S. Envtl. Prot. Agency*,

No. 13-02857, 2016 U.S. Dist. LEXIS 40626, at *16-*17 (N.D. Cal. Mar. 25, 2016) (fees under Clean

Water Act and ESA); *see also Morales v. City of San Rafael*, 96 F.3d 359, 363-64 & n.9 (9th Cir. 1996);

---

[4] Plaintiffs are not seeking compensation for time spent on their unrelated CZMA claim, the voluntarily dismissed Clean Water Act claim, nor for time spent against named defendants who were dismissed. *See* Columns E & F of Exh. 1 to Gaffney Decl.; Gaffney Decl. ¶23; Weisselberg Decl. ¶ 34; Sproul Decl. ¶ 27, Exh. 37. Also, as stated above Plaintiffs are not seeking time for litigation against Defendant FWS or fee settlement with FWS. *Id.*

1    *Stetson v. Grissom*, 821 F.3d 1157, 1166-67 (9th Cir. 2016).

2          Here, these factors support the reasonableness of Plaintiffs' lodestar and requested fees. Counsel

3    are experienced environmental attorneys who demonstrated considerable skill in presenting complex

4    issues of fact and law in briefing the merits of specialized environmental claims, augmenting the record

5    with dispositive evidence, and surviving Defendants' motions to dismiss. Duggan Decl. ¶¶ 7-8, 15;

6    Lozeau Decl. ¶¶ 18-20; Packard Decl. ¶¶ 11, 16; Cooper  Decl. ¶¶ 12, 16; Sproul Decl. ¶¶ 4-13; Gaffney

7    Decl. ¶ 6; Weisselberg ¶¶ 4-7, 9.  While the time invested by counsel was reasonable, the time was

8    substantial. Gaffney Decl. ¶¶ 11, 13; Sproul Decl. ¶¶ 14-22; Duggan Decl.¶ 9; Lozeau ¶ 21; Packard

9    Decl. ¶ 12; Cooper Decl. ¶ 17. The substantial investment in attorney time spent litigating this case

10   limited the availability of Plaintiffs' attorneys to work on other cases, and in some instances, required

11   them to forgo other cases. Sproul Decl. ¶ 29; Gaffney Decl. ¶ 27. Further, this case had short time limits

12   to prepare the notice letter and to file suit; once Caltrans filed its Federal Register notice of final agency

13   action counsel were required to file suit within 150 days and citizen suit notice letters had to be sent to

14   Defendants 60 days in advance of that deadline. Gaffney Decl. ¶ 13A.

15          In addition, at the outset, counsel took this case with some hesitation, recognizing that due to its

16   factual and legal complexity and the likely resistance to settlement that the Plaintiffs could reasonably

17   expect to encounter, that the case would require long hours over many years without compensation from

18   the clients--who could only afford legal representation on a modified contingency basis. Sproul Decl. ¶

19   29; Gaffney Decl. ¶ 35; Weisselberg Decl. ¶ 9.

20          Finally, the amount of fees sought here is reasonable when compared to the fee awards granted

21   in other cases successfully challenging ESA section 7 consultation or other agency ESA

22   implementation. *SYRCL*, 2012 U.S. Dist. LEXIS 42287, at *20 ($1,875,951.20); *Federation of Fly*

23   *Fishers v. Daly*, 200 F. Supp. 2d 1181, 1193 (N.D. Cal. 2002) (awarding 863.85 hours of work);

24   *Marbled Murrelet v. Pacific Lumber Co*., 163 F.R.D. 308 (N.D. Cal 1995) ($1,110,344.29); *see also*

25   *Native Fish Soc'y v. Nat'l Marine Fisheries Serv.*, No. 12-0041, 2014 U.S. Dist. LEXIS 175280 (D. Or.

26   Dec. 19, 2014) (awarding approximately 84% of Plaintiff's $813,965 fee request).

27          **E.  Plaintiffs' Hourly Rates Are Reasonable.**

28                **1. Plaintiffs' Claimed Rates Accord with Prevailing San Francisco Rates.**

1    Under the ESA, counsel are entitled to the hourly rates "prevailing in the community for similar

2    work performed by attorneys of comparable skill, experience, and reputation." *Camacho*, 523 F.3d at

3    979. The relevant community in this case is the San Francisco Bay area, given that this is where the

4    Court sits. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Plaintiffs have supported in detail

5    that their rates accord with prevailing San Francisco legal market rates for attorneys with comparable

6    skill and experience working on comparable legal tasks. Sproul Decl. ¶¶ 30-110; Gaffney Decl. ¶¶27-32;

7    Weisselberg Decl. ¶¶ 11-29; Langille Decl. ¶ 4; Costa Decl. ¶¶ 5-7; Whipps Decl. ¶ 3; Edberg Decl. ¶ 3.

8    In accord with case law supporting such a methodology, Plaintiffs have generally set their rates

9    equivalent to the average rates awarded by this Court in a broad array of complex civil litigation. *E.g.*,

10   Sproul Decl. ¶¶ 30-110. Developing such averages necessarily involves considering cases not arising

11   under environmental law, as there have been few fee awards in environmental cases in this jurisdiction.

12   *Id.* ¶ 30; *see, e.g., Prisa Legal News v. Schwarzenneger*, 608 F.3d 446, 455 (9th Cir. 2010) ("Although

13   the state officials urge us to look only to the rates charged by other attorneys involved in prison

14   litigation, the proper scope of comparison is not so limited, but rather extends to all attorneys in the

15   relevant community engaged in equally complex Federal litigation, no matter the subject matter");

16   *Stonebrae, L.P. v. Toll Bros.*, No. 08-0221, 2011 U.S. Dist. LEXIS 39832, at *9-*13 (N.D. Cal. Apr. 7,

17   2011).[5]

18   _____

19   [5] Judge Orrick rejected this methodology in *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*
     ("*OCE*"), holding that some of the counsel could only justify their hourly rates with data concerning

20   awards in environmental or Freedom of Information Act ("FOIA") cases. No. 14-01130, 2017 U.S. Dist.
     LEXIS 29130, at *28-*31 (N.D. Cal. Mar. 1, 2017). This holding contradicts controlling Ninth Circuit

21   precedent in *Prisa*. This holding further turned on an erroneous interpretation of the Ninth Circuit case
     Judge Orrick relied upon, *Hiken v. DOD*, 836 F.3d 1037, (9th Cir. 2016). *Hiken* supports rather than

22   contradicts the *Prisa* holding that in establishing attorney rates, courts are not to narrow the range of
     market data and case holdings to those issued in particular subject matters. While, as Judge Orrick noted

23   in *OCE*, *Hiken* indicates that the courts should evaluate the rates for "similar work," *Hiken* in no way
     indicated that "similar work" means only that involving the same substantive law. *Hiken* was a FOIA

24   case, but both the data relied on by the plaintiff and the district court below was not limited to FOIA
     work. *See* 836 F.3d at 1044-1046 (noting district court reliance on *Blackwell v. Foley*, 724 F. Supp. 2d

25   1068 (N.D. Cal. 2010) (Americans for Disability Act claims) and *Pande v. ChevronTexaco Corp.*, No.
     04-05107, 2008 U.S. Dist. LEXIS 87584, (N.D. Cal. Apr. 1, 2008) (employment law claims). While

26   *Hiken* criticized the district court, *Hiken* did not fault this aspect of the lower court's analysis. However,
     even if this Court were to follow *OCE*, that decision on balance would support Plaintiffs' rates sought

27   here. Judge Orrick indicated in *OCE* that he would award Plaintiffs' counsel the same rates awarded by
     other courts and further implicitly acknowledged that rates go up annually. The $800/hr 2017 rate

28   sought by lead counsel here is a modest 3.2% increase over the $775 per hour 2016 rate awarded him by
     several California Superior Court decisions. Sproul Decl. ¶¶ 70-72.

Experienced Bay Area practitioners knowledgeable about prevailing market rates have opined that Plaintiffs' requested rates are within the range of prevailing market rates for attorneys with comparable expertise and skill. Cooper Decl. ¶¶ 13-16; Lozeau Decl. ¶¶ 14-19; Duggan Decl. ¶¶10-15; Packard ¶¶13-17. Plaintiffs further support their rates with a declaration prepared in 2015 for another case by well-known attorney fee expert Richard Pearl, legal periodical information, and previous court awards. Gaffney ¶¶ 30-32; Sproul Decl. ¶¶ 30, 93-94, Ex. 32, 33. Thus, Plaintiffs' time should be awarded fees at their claimed rates.

### 2. Counsel Should Be Awarded Their 2017 Rates To Compensate for Delay in Payment.

Attorney fee awards in public interest litigation should be appropriately adjusted to reflect the delay between when work is performed and when payment is received because "compensation received several years after the services were rendered…is not equivalent to the same dollar amount received reasonably promptly as legal services are performed, as would normally be the case with private billings." *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989). "In granting fee awards, the Ninth Circuit uses current billing rates to compensate for the delay in receiving payment." *Oberfelder v. City of Petaluma*, No. 98-1470, 2002 U.S. Dist. LEXIS 8635, at *13 (N.D. Cal. Jan. 29, 2002) (citing *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1548 (9th Cir. 1992); *Bouman v. Block*, 940 F.2d 1222, 1235 (9th Cir. 1991)), *aff'd sub nom. Oberfelder v. Bertoli*, 67 F. App'x 408 (9th Cir. 2003), *cert. denied*, 540 U.S. 1109 (2004); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2016 U.S. Dist. LEXIS 102408, at *73-*75 (N.D. Cal. Aug. 3, 2016). Accordingly, Plaintiffs' fee recovery should be determined utilizing their attorneys' 2017 rates. *See* Sproul Decl. ¶¶ 69, 95-110.

### 3. Plaintiffs' Related Claims Should Be Awarded under the ESA Fee Provision.

Plaintiffs brought claims under the ESA, NEPA and DOTA. In cases presenting only NEPA or DOTA claims, the Equal Access to Justice Act ("EAJA") would govern the award of attorneys fees. However here, where plaintiffs prevailed on ESA claims, EAJA's fee provisions are subordinated to the ESA fee provisions. *Oregon Nat. Desert Ass'n v. Vilsack*, No. 07-01871, 2013 WL 3348428, at *2 (D. Or. July 2, 2013) ("Because the ESA's citizen suit provision provides an express authorization for attorney fees in ESA cases, the court looks first to the ESA and then to EAJA in evaluating plaintiffs' fee request….As such, EAJA's fee provisions are subordinated to those of the ESA and only if a fee is

not authorized under the ESA does the court determine whether the fee would be authorized pursuant to EAJA."); *Bldg. Indus. Legal Def. Found. v. Norton*, 259 F. Supp. 2d 1081, 1086 (S.D. Cal. 2003) ("the ESA fees provision takes precedence over the Equal Access to Justice Act provision that provides for the award of fees under the APA."); Sproul Decl., Ex. 40 & 41.

### D.  Plaintiffs Are Entitled to Recover Reasonable Costs of Litigation.

Plaintiffs are entitled to recover reasonable costs under the ESA. *See* 16 U.S.C. § 1540(g)(4); *Marbled Murrelet*, 163 F.R.D. at 328. Plaintiffs incurred $2,942.72 in costs, but only seek half of these costs (*i.e.*, $1,471.36) against Caltrans. These costs include court filing fees, court courtesy copies, postage and other document delivery charges, attorney travel, and electronic legal research. Sproul Decl. ¶¶ 113, Ex. 38, 39. These costs are typical out-of-pocket expenses normally charged to a paying client, were necessarily incurred, and are recoverable in full. *See In re Immune Responses Secs. Litigation*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007).

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court award $721,619.54 in attorneys' fees and $1,471.36 in costs against Caltrans.[6] The fees requested against Caltrans reflect work necessarily incurred in successfully pursuing Claims 1 and 3 against Caltrans, work on interrelated claims against Caltrans, case management matters relating solely to Caltrans, an equal division between Caltrans and FWS of case time necessarily incurred on the case as a whole, and work on the instant fee motion. Sproul Decl. ¶¶ 24-27, 111-12, Ex. 37; Gaffney Decl., Ex. 1.

Respectfully submitted,

Dated: May 24, 2017

Christopher a. Sproul

Christopher Sproul, Attorney for Plaintiff

---

[6] Plaintiffs will incur additional fees and costs in completing this fee motion, reviewing Caltrans' opposition, and replying to this opposition. Plaintiffs will seek these additional fees and costs in their reply briefing.