Christopher Sproul (Bar No. 126398)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376, (510) 847-3467
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: jisaacs@enviroadvocates.com

Brian Gaffney (Bar No. 168778)
LAW OFFICES OF BRIAN GAFFNEY APC
446 Old County Road, Suite 100-310
Pacifica, CA 94044
Tel. (650) 219-3187
Email: brian@gaffneylegal.com

Patricia Weisselberg (Bar No. 253015)
LAW OFFICE OF PATRICIA WEISSELBERG
115 Oakdale Avenue
Mill Valley, CA 94941
Tel. (415) 388-2303
Email: pweisselberg@wans.net

Attorneys for Plaintiffs
PACIFICANS FOR A SCENIC COAST;
PACIFICANS FOR HIGHWAY 1 ALTERNATIVES;
CENTER FOR BIOLOGICAL DIVERSITY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

PACIFICANS FOR A SCENIC COAST, et al.,

Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF
TRANSPORTATION, *et al.*,

Defendants.

Case No. 3:15-cv-02090-VC

DECLARATION OF CHRISTOPHER
SPROUL IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND
COSTS

Hearing date: September 21, 2017
Time:  10:00 a.m.
Location: Courtroom 4, 17th Floor

I, Christopher Sproul, hereby declare under penalty of law that the following facts are true and correct:

1.     I am an attorney licensed to practice law in the State of California. I am the senior lawyer in Environmental Advocates, a public interest law firm, and counsel for Plaintiffs Pacificans for a Scenic Coast, Pacificans for Highway 1 Alternatives, and Center for Biological Diversity. I make this declaration based upon my personal knowledge, unless otherwise stated, and I am competent to testify to the matters set forth herein. I make this Declaration in support of Plaintiffs' Motion for Attorneys' Fees and Costs.

2.     In accord with Local Rule 54-5, Plaintiffs' counsel met and conferred with Defendants' counsel to attempt to resolve all disputed issues relating to attorney's fees and costs before filing Plaintiffs' Motion for Attorneys' Fees and Costs. Plaintiffs' counsel provided Defendants' counsel with a written settlement demand on October 11, 2016 explaining why Plaintiffs were entitled to fees and the amount sought from each Defendant. That demand was accompanied by detailed records of Plaintiffs' costs as well as time incurred in the case as of that date by each attorney and paralegal,  counsel's exercise of billing discretion, and each attorneys' hourly rates. Plaintiffs' counsel followed that settlement demand with an explanation of each counsel's years of experience. The parties exchanged further correspondence on several occasions in an attempt to negotiate a resolution of Plaintiffs' attorneys fees and costs. Plaintiffs reached a settlement concerning their fees and costs recovery with the U.S. Fish and Wildlife Service ("FWS"), which the Court has approved, and thus are not seeking any further fees and cost recovery from FWS. However, Plaintiffs have been unable to reach a settlement concerning fees and cost recovery from the California Department of Transportation ("Caltrans"). Accordingly, Plaintiffs are filing their Motion for Attorneys' Fees and Costs to recover fees and costs from Caltrans.

3.     In Section I of this Declaration, I set forth my experience and background as an attorney. In Section II, I summarize the substantial history of this litigation and highlight the major litigation tasks performed by Plaintiffs' counsel, including drafting the pleadings, gathering and reviewing the substantial factual record, litigating the major motions, and attempting to minimize litigation and pursue settlement. This section also provides a summary of each attorney's specific contributions to the case. In Sections III-VI, I explain how I and my colleagues have set the hourly rates for each attorney who has

worked on this case based on the experience and qualifications of each attorney and my review of relevant information on prevailing market rates for attorneys of like skill and experience in the San Francisco Bay Area. In Section VII, I summarize the attorneys' fee lodestars for Plaintiffs' attorneys calculated using San Francisco-based rates. In section VIII, I provide supporting information for Plaintiffs' recovery of costs. In Section IX, I discuss miscellaneous matters.

**I.      Christopher Sproul Biographical Information**

4.      I earned my Juris Doctorate from the University of California, Berkeley (Boalt Hall) in June 1986 and a Master of Arts degree in political science from the University of California, Santa Barbara in August 1982.

5.      I have been a member of the California Bar since December 1986. I have also been a member of the bar of the United States District Court for the Northern District of California since 2002 and I am a member of several other federal bars, including the bars for the U.S. Court of Appeals for the Ninth Circuit, the U.S. District Court for the Eastern District of California, the U.S. District Court for the Central District of California, and the U.S. District Court for the District of Hawaii.

6.      I have directed or co-directed Environmental Advocates for nearly 15 years. I have exclusively represented non-profit environmental organizations and individuals seeking to advance environmental protection through judicial litigation and administrative advocacy under the major environmental laws, including the Endangered Species Act ("ESA"), Clean Water Act ("CWA"), Clean Air Act ("CAA"), Resource Conservation and Recovery Act ("RCRA"), National Environmental Policy Act ("NEPA"), the Coastal Zone Management Act ("CZMA"), the California Environmental Quality Act ("CEQA") and other state and federal laws, including the Freedom of Information Act ("FOIA") and the California Public Records Act ("PRA"). I have also brought actions against federal agencies under the Administrative Procedure Act ("APA") challenging agency actions or inaction. Numerous of these actions have resulted in court orders or judicial consent decrees imposing far-reaching injunctive relief for environmental remediation and remedies addressing agency responsibilities under the environmental laws.

7.      During my time as a partner at Environmental Advocates, I have represented environmental organization clients in several ESA, CWA, RCRA, CAA, NEPA, CZMA and/or APA citizen suits

against various federal agencies, state agencies, businesses, and municipalities. I currently am lead counsel or co-lead counsel in seven cases in active litigation and five additional cases involving consent decree compliance monitoring. I have also provided advice to several environmental organization clients concerning the potential for several other citizen suit enforcement actions for violations of various environmental laws. I have also presented public hearing testimony and drafted written comments to government agencies concerning various environmental regulatory decisions.

The cases I have brought and continue to bring on behalf of my clients are typically "impact litigation," *i.e.*, cases designed to have significant effect on environmental law and policy and significantly advance environmental protection. This is reflected in the cases where I have served as lead counsel or as co-lead counsel resulting in over 60 decisions published in the Federal Reporter, Federal Supplement, LEXIS, and/or Westlaw. That many of these cases have established important precedent in environmental law or under FOIA is further reflected in the numerous subsequent citations by other decisions to the cases where I served as counsel. A bibliography of these cases is set forth as Exhibit 45 to this declaration. Many of these cases have involved issues or concerns of widespread public interest and that have accordingly attracted extensive media coverage in newspapers, radio, television, and/or environmental periodicals or blogs and social media commentary.

8.     Prior to joining Environmental Advocates, I served as an Assistant Regional Counsel for the United States Environmental Protection Agency ("EPA") from 1987 until 2002. At EPA, my primary concentration was representing EPA in judicial and administrative enforcement actions brought under the environmental statutes administered by EPA. My accomplishments include several judicial and administrative settlements and judgments resulting in extensive injunctive relief and civil penalty awards.

9.     During my 15-year tenure at EPA, I represented EPA in numerous judicial and administrative enforcement actions. The majority of these actions were brought under the CWA, but I also worked on EPA enforcement actions brought under RCRA, the CAA, the Safe Drinking Water Act, and the Marine Protection Research and Sanctuaries Act (MPRSA).

10.     While at EPA, I also worked on several permitting matters, including litigation challenges to EPA NPDES permit decisions; assisted in EPA reviews of state environmental programs; counseled

EPA staff in responding to FOIA responses; participated in work groups tasked with drafting EPA regulations and proposed amendments to the CWA; and provided client counseling to numerous EPA regulatory officials concerning compliance with the CWA, the ESA, the CZMA, the MPRSA, and the APA.

11.    From 1997 to 1998, through an intergovernmental personnel agreement between EPA and the State of Hawaii, I worked for the Hawaii Attorney General as a staff attorney. In this role, I represented the Hawaii Department of Health in several water pollution enforcement actions under the Hawaii equivalent of the federal CWA, provided advice to the Department of Health concerning many regulatory matters, and provided advice to the Hawaii State Legislature concerning environmental legislation related to water pollution.

12.    From 2004 to 2010, I was an Adjunct Professor at Golden Gate University School of Law in San Francisco where I taught a course on environmental litigation. I also served as a law clerk to U.S. District Court Judge William J. Rea, in the U.S. District Court for the Central District of California in 1986 and 1987.

13.    Over the course of my years practicing law in California, I have filed several motions for attorneys' fees and costs as well as mediation briefs in fee negotiation matters. Prior to this motion, my two most recent fee motions were filed in *Our Children's Earth Foundation, et al. v. National Marine Fisheries Service*, Case No. 14-cv-01130 WHO (N.D. Cal. May 11, 2016) (Dkt. 82) ("*OCE v. NMFS*") and *Our Children's Earth Foundation v. EPA*, Case No. 13-cv-02857 JSW (N.D. Cal. Feb. 26, 2015) (Dkt. 59) ("*OCE v. EPA*"). (Judge Orrick and Judge White have both issued orders resolving these fee motions. *See OCE v. NMFS*, No. 14-01130, 2017 U.S. Dist. LEXIS 29130, at *28-*31 (N.D. Cal. Mar. 1, 2017); *OCE v. EPA*, No. 13-02857, 2016 U.S. Dist. LEXIS 40626 (N.D. Cal. Mar. 25, 2016)). In the course of drafting these motions and mediation briefs, I have necessarily acquired expertise and extensive data concerning the prevailing hourly rates for attorneys in the San Francisco Bay Area legal market.

**II.    The Time Spent by Plaintiffs on this Matter Was Reasonable.**

   **A.  Litigating This Case Required Many Hours of Effort.**

14.     Plaintiffs' counsel have to date devoted 1,914.03 hours to litigating this matter. As discussed further below, Plaintiffs' counsel have reduced their billable hours to reflect billing judgment and recovery from FWS and are only seeking to recover from Caltrans for 1,088.09 billable hours. *See* Ex. 37. This case has been heavily contested, thus necessitating extensive litigation efforts by me and my co-counsel. Before filing the cases, Plaintiffs' counsel spent many hours necessarily analyzing the facts and law to develop the claims against Caltrans and FWS, and to draft the extensive citizen suit notice letter and the complaint. After the case was filed, Plaintiffs had to spend many additional hours reviewing the voluminous administrative records lodged by Caltrans and FWS (Dkt. 76 and 77; Jan. 15, 2016) which together amounted to approximately 13,000 pages. Plaintiffs further had to compare these administrative records to the extensive compilation of documents that the Plaintiffs had acquired from these agencies as well as other agencies via FOIA and the PRA. Acquiring these documents via FOIA and the PRA to begin with was another time-consuming, but fruitful task. In the course of this review, Plaintiffs discovered several key omissions of documents that became valuable evidence supporting Plaintiffs' claims. After a very lengthy and time-consuming meet and confer process with Caltrans and FWS, Plaintiffs convinced Caltrans and FWS to supplement their records in a limited way (FWS supplemental administrative record lodged on March 4, 2016, Dkt. 84; Caltrans supplemental administrative records lodged on March 24, 2016, Dkt. 85). As discussed further below, Plaintiffs successfully persuaded the Court to direct Caltrans and FWS to supplement their administrative records further with important documents discovered by Plaintiffs through their diligent FOIA and PRA efforts. Order Granting in Part and Denying in Part Motion to Supplement the Record (Dkt. 98, April 25, 2016).

15.     The case has also required Plaintiffs' counsel to spend a great deal of time on briefing and arguing the following motions:

(1)     Caltrans' Motion To Dismiss (Dkt. 45, Aug. 27, 2015) which included an extensive request for judicial notice and eight exhibits. Plaintiffs filed oppositions/responses both to Caltrans' motion and request for judicial notice. Plaintiffs prepared their own cross request for judicial notice (Dkt. 48-53, Sept. 10, 2015). Plaintiffs attended and argued the hearing on this Motion To Dismiss on November 19, 2015 (Dkt. 65). The Court granted this motion in part and denied this motion in part. Specifically, the Court denied Caltrans' request for dismissal of Plaintiffs' Third Claim that Caltrans and

FWS failed to reinitiate ESA section 7 consultation with the FWS despite events triggering such duty. The Court further denied Caltrans request for dismissal of Plaintiffs' entire Tenth Claim, which alleged that Caltrans had violated the CZMA. The Court allowed the portion of the Tenth Claim to proceed alleging that Caltrans had failed to secure a consistency determination from the California Coastal Commission as required by the CZMA. The Court only dismissed, as not ripe, the portion of the Tenth Claim alleging that Caltrans would implement the Highway 1 Project in a manner inconsistent with the California Coastal Management Plan as required by the CZMA. The Court dismissed Plaintiffs' contentions in their First and Second Claims that Caltrans violated the ESA by failing to provide adequate descriptions of the Highway 1 Project and by engaging in inadequate ESA section 7 consultation with the FWS, agreeing that Plaintiffs' complaint pled insufficient facts concerning these allegations. However, the Court granted Plaintiffs leave to amend their complaint, which Plaintiffs did. Plaintiffs eventually prevailed on their amended claim of inadequate Caltrans ESA section 7 consultation. The Court further dismissed Plaintiffs' Seventh Claim asserting APA violations against Caltrans, but again with leave to amend to clarify that Plaintiffs were only asserting that Caltrans' conduct allegedly contrary to the Department of Transportation Act ("DOTA")'s dictates was actionable under the APA, not Caltrans' actions allegedly contrary to the ESA's dictates (given that the latter are only actionable under the ESA's citizen suit provisions). The Court dismissed Plaintiffs' contention that Caltrans violated the ESA by failing to involve the National Park Service ("NPS") in the ESA section 7 consultation over the Highway 1 Project with the FWS. Finally, the Court noted that Plaintiffs did not object to dismissal of their Sixth and Ninth Claims against Caltrans and thus dismissed these claims.

(2) The Federal Defendants' Motion To Dismiss (Dkt. 54, 55; Sept. 11, 2015). Plaintiffs filed a response and entered into a related stipulation with NPS (Dkt. 59, Oct. 2, 2015). The Federal Defendants' motion sought to dismiss Plaintiffs' claim against FWS and NPS alleging these agencies violated the ESA by failing to properly consult under ESA section 7 and Plaintiffs' additional claim alleging that FWS violated the ESA by failing to adequately analyze the Highway 1 Project's impacts on listed species. In response, Plaintiffs agreed that these claims against FWS should be dismissed because Plaintiffs' allegations that FWS had failed to perform its ESA section 7 consultation duties were instead properly pled as APA violations (which Plaintiffs had done in what was originally their Claim 6 and

later became their Claim 5). After the hearing on the motion and prior to the Court issuing its order, NPS stipulated that it had not approved or authorized Caltrans to implement mitigation measures on NPS's Golden Gate National Recreation Area ("GGNRA") land nor taken any action that required the agency to consult with the FWS. Given this fact stipulation, which assisted Plaintiffs in establishing its Claim 5 that the FWS's Biological Opinion for the Highway 1 Project was arbitrary and capricious in relying on the Caltrans mitigation project on GGNRA land, Plaintiffs voluntarily dismissed their claim against the NPS.

(3)     Plaintiffs' Motion to Supplement the Administrative Records and Motion for Order Finding Endangered Species Act and APA § 706(1) Claims Not Limited to the Administrative Record. (Dkt. 86-88, March 25, 2016). Plaintiffs filed 22 exhibits accompanying this motion, which counsel developed based on their extensive review of numerous documents obtained from various agencies via FOIA and PRA requests and their cross comparison of these documents with the administrative records submitted by Caltrans and FWS. Plaintiffs subsequently reviewed two lengthy opposition briefs separately filed by Caltrans and FWS and prepared reply briefing (April 15, 2016, Dkt. 96). Plaintiffs attended and argued the hearing on this motion on April 21, 2016 (Dkt. 97). In this motion, Plaintiffs sought an order directing Caltrans and FWS to supplement their administrative records with twenty documents that would be variously admissible for several of Plaintiffs' claims. Plaintiffs further sought an order clarifying that Plaintiffs could introduce evidence outside of the administrative records for their ESA citizen suit claims. The Court ordered Caltrans to add 16 of the documents to its administrative record and ordered FWS to add 17 of the documents to its administrative record. Though the Court did not agree with all of Plaintiffs' contentions concerning which claims each of these 20 documents would be admissible for, it did agree with most of these contentions. Finally, the Court agreed with Plaintiffs that their ESA claims against Caltrans were not limited to the administrative record.

(4)     Caltrans' Motion to Shorten Time for Hearing on Plaintiffs' Motion to Supplement the Administrative Record (Dkt. 90, 91; April 1, 2016). Plaintiffs filed a response to this motion on April 3, 2016 (Dkt. 92);

(5)     Plaintiffs' Motion for Summary Judgment (Dkt. 99, May 5, 2016). Plaintiffs' Motion for Summary Judgment included three declarations and extensive references to the voluminous

administrative records. Plaintiffs attended and argued the parties' cross-motions for summary judgment, including the FWS and Caltrans summary judgment motions referred to below, on August 18, 2016 (Dkt. 112);

(6)     FWS's Cross Motion for Summary Judgment (Dkt. 101, June 2, 2016). Plaintiffs reviewed FWS's lengthy motion and accompanying exhibits and filed an opposition brief/reply brief in support of Plaintiffs' competing Motion for Summary Judgment on June 23, 2016 as well as several new declarations and exhibits (Dkt. 104-108). Plaintiffs further necessarily reviewed FWS's Notice of Supplemental Authority concerning issues raised by the cross-motions for summary judgment (Dkt. 113, Aug. 23, 2016);

(7)     Caltrans' Cross Motion for Summary Judgment (Dkt. 102, June 2, 2016). Plaintiffs reviewed Caltrans' lengthy motion and accompanying exhibits and on June 23, 2016 filed an opposition brief/reply brief in support of Plaintiffs' competing Motion for Summary Judgment with detailed citation to the voluminous administrative records, and a request for judicial notice of additional pertinent documents (Dkt. 103, 105-108); and

(8)     Plaintiffs' Motion for Attorneys Fees and Costs Against Caltrans. In addition to drafting Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Attorneys Fees, this motion required extensive review of voluminous records for proper exercise of billing judgment as well as careful review of the case docket, pleadings, and orders to develop the factual and legal arguments. In addition, the fee motion required overseeing declarations by each of the attorneys, the three plaintiff organizations, and two outside counsel familiar with local rates and the reputation of Plaintiffs' counsel.

16.     Plaintiffs' counsel have also had to spend considerable time on case management matters, including:

(1)     meet and confer discussions with Caltrans and FWS concerning the parties' Joint Case Management Conference Statement and drafting this statement along with opposing counsel (Dec. 1, 2015, Dkt. 69);

(2)     client discussions concerning ADR options, filing the requisite ADR Certification (Nov. 2, 2015, Dkt. 62), filing the requisite Notice of Need for ADR Phone Conference (Dkt. 35, 36; July 22,

2015), and participating in the mandatory ADR Phone Conferences with U.S. District Court staff member Howard Herman on November 2, and November 30, 2015;

(3)     attending the telephonic further case management conference on April 5, 2016 (Dkt. 93);

(4)     responding to the Court's request to accommodate a site visit to the proposed highway development project at issue (including responding to Caltrans' objections to the proposed Court site visit) (*see* Order regarding the Court's Proposed Visit to the Project Site, Dkt. 111, Aug. 17, 2016); and

(5)     working out several stipulations and orders for various case management matters with Caltrans and FWS--to extend the time for Caltrans' responsive pleading (Dkt. 25, July 8, 2015), to continue the case management conference (Dkt. 40, July 28, 2015), to further extend the case management conference (Dkt. 57, Sept. 17, 2015), to extend FWS's time to respond to the allegations in Claims 3 and 6 (Dkt. 67; Nov. 24, 2015), to file the second amended complaint (Dkt. 72, Dec. 18, 2015), to further amend the case schedule/summary judgment schedule (Dkt. 80, Feb. 2, 2016), and to extend the deadline for Plaintiffs' Motion for Attorneys Fees to allow time for settlement negotiations (Dkt. 116, Sept. 9, 2016). Plaintiffs also negotiated four stipulations with the Dismissed Defendants (Dkts. 29, 42, 46, and 63), but as noted, Plaintiffs are not billing for this time or any other time spent working on claims related to these Dismissed Defendants.

17.   Plaintiffs' counsel have also spent considerable hours attempting to settle this case, both on its merits before judgment, and their attorneys fees and costs contentions post judgment. Plaintiffs' counsel have drafted numerous communications and settlement proposals to Caltrans concerning the merits issues and the matter of attorneys fees and costs. Settlement with Caltrans has not proved possible, and the parties' settlement discussions have led me to conclude that Caltrans will vigorously contest this motion for attorneys fees and costs, necessarily increasing the time which I and my co-counsel have devoted to this motion.

18.   Plaintiffs' central objective in bringing this citizen suit was to require the agencies with ultimate decision-making responsibility for the Highway 1 Project to not proceed with the Project without adequate environmental review and analysis. Plaintiffs hoped that such further environmental review and analysis would provide protection for the San Francisco garter snake and the California red-legged frog. At the start of this lawsuit, there was some uncertainty as to which federal and state agencies had

1  decision-making responsibility for the Highway 1 Project. Subsequent discussions and stipulations with

2  Caltrans, FWS and the Dismissed Defendants confirmed that Caltrans was the agency with authority for

3  approval at this point of the Highway 1 Project with FWS having a role in providing ESA section 7

4  consultation guidance and insurance against ESA liability to Caltrans. In Plaintiffs' view, the Court's

5  Order on Summary Judgment (Dkt. 114, Sept. 2, 2016) ("SJ Order") achieved Plaintiffs' central

6  objective. The Court found that Caltrans' Biological Assessment erred in proposing that the Highway 1

7  Project's impacts on ESA listed species would be compensated for by Caltrans' preservation and

8  enhancement of the 5.14 acre parcel owned by the City of Pacifica without disclosing that the City was

9  already obligated by other legal requirements to preserve and enhance this parcel. The Court noted that

10  both Caltrans and the FWS in its Biological Opinion analyzed the net impact of the Highway 1 Project

11  based on the false assumption that the Caltrans preservation and enhancement of the City of Pacifica

12  parcel would be a new benefit not otherwise achieved. The Court found this led Caltrans to approve the

13  Highway 1 Project for ESA purposes based on a key false assumption, in violation of the ESA. SJ Order

14  at 9-14. The Court accordingly granted Plaintiffs summary judgment on their First and Third Claims

15  against Caltrans, holding that Caltrans had breached procedural ESA duties to perform an adequate ESA

16  section 7 consultation with FWS and to reinitiate consultation with FWS. The Court further noted that

17  the FWS Biological Opinion was in part based on this erroneous information concerning preservation of

18  the City of Pacifica parcel. The Court found it unnecessary to determine whether FWS violated

19  procedural requirements of the ESA (and therefore the APA) by relying on this erroneous information in

20  the Biological Opinion, noting that FWS could perhaps rely on an action agency's representations about

21  the parameters of a project at least when FWS was not on notice that these representations were false

22  (and further found it unnecessary to determine whether FWS had been on such notice). However, the

23  Court nonetheless ruled for the Plaintiffs and found the Biological Opinion arbitrary and capricious

24  because it improperly relied on mitigation measures that lacked specific and binding plans for their

25  implementation. The Biological Opinion relied on Caltrans' proposal to implement a mitigation project

26  on an NPS-administered 5.46 acre parcel of GGRNA land adjacent to the Highway 1 Project even

27  though this mitigation project was admittedly only conceptual, with details needing to be worked out

28  before binding agreement/commitment for the mitigation project could be entered into between Caltrans

and NPS. The Court found the Biological Opinion thus violated the ESA (and thus the APA) because "A Biological Opinion may not rely on proposed mitigation measures 'absent specific and binding plans' for those mitigation measures. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 936 (9th Cir. 2008). This requires 'a clear, definite commitment of resources' toward those mitigation measures. *Id.*" SJ Order at 15.

### B. Counsel's Litigation Roles

19.    I have served as the co-lead counsel in this case along with Brian Gaffney. I took the lead in developing and litigating Plaintiffs' CZMA and DOTA claims (Claims 6 and 7) against Caltrans as well as working with Patricia Weisselberg to develop and litigate Plaintiffs' procedural ESA section 7 claims against Caltrans (Claims 1 and 3) and Plaintiffs' APA/ESA claim against FWS (Claim 5). Brian Gaffney took the lead in developing and litigating Plaintiffs' NEPA claim (Claim 4), in client contact, in overseeing paralegal Dawn Edberg, in preparing the ESA notice letters, and in acquiring documents through FOIA and PRA requests to supplement Defendants' administrative records. Under direction from me and Brian Gaffney, Patricia Weisselberg did the majority of the work in developing and litigating Plaintiffs' procedural ESA section 7 claims against Caltrans (Claims 1 and 3), substantive section 7 claim against Caltrans (Claim 2) and Plaintiffs' APA/ESA claim against FWS (Claim 5), and in reviewing documents for Plaintiffs' motion to supplement the administrative records.

20.    Brian Gaffney and I shared primary responsibility for overall litigation strategy, development of our interrelated factual and legal contentions, amending the complaint, responsibility for the final content of briefs, correspondence and conferring with opposing counsel over Federal Rule of Civil Procedure 26/case management matters and potential settlement, drafting settlement proposals, and guiding or supervising the other attorneys who assisted with discrete legal and fact research. Patricia Weisselberg also assisted in these matters with respect to Plaintiffs' procedural ESA section 7 claims against Caltrans (Claims 1 and 3) and Plaintiffs' APA/ESA claim against FWS (Claim 5), and in reviewing documents for Plaintiffs' motion to supplement the administrative records. Celeste Langille, Mike Costa, Nicholas Whipps, and Page Perry also assisted with discrete tasks. Celeste Langille performed fact and law research into the preservation and restoration requirements for the City of Pacifica and GGNRA parcels that Caltrans claimed as mitigation for the Highway 1 project. Mike Costa

performed legal research on a discrete task related to development of Plaintiffs' recovery of attorney fees against Caltrans. Nicholas Whipps performed legal research on issues pertinent to Caltrans' Motion to Dismiss and Plaintiffs' DOTA claim against Caltrans. Page Perry, provided several hours researching Plaintiffs' CZMA claim and certain paralegal tasks. In exercising billing judgment, Plaintiffs are not requesting compensation for Ms. Perry's CZMA time, only her time on certain paralegal tasks.

21.   It was cost-effective and necessary to have Ms. Langille, Mr. Costa, and Mr. Whipps perform these discrete legal research tasks. One, these attorneys bill at lower hourly rates than Mr. Gaffney or me. Two, Mr. Gaffney, Ms. Weisselberg and I were occupied with other tasks and needed assistance with these segregable and discreet legal research tasks to keep on track in this case. Additional details regarding the work performed by each of these attorneys can be found in their time records submitted with their respective declarations in support of Plaintiffs' motion.

22.   My co-counsel and I have sought to limit the number of hours spent and number of people involved in preparing this case to the extent possible to minimize the costs of litigation, while still being effective. While I always seek to do so in keeping with what I believe to be the ethical obligations of counsel to clients and the judicial process, I had special motivation to do so in this case. As noted, my co-counsel and I are working largely on contingency in this matter. This gave me additional financial motivation to reduce the risks to my firm and my co-counsel by striving to keep the time invested in this case to that I have judged to be prudently necessary.

### C.  My Billing and Exercise of Billing Discretion

23.   Attached as Exhibit 36 is a true and correct copy of time records that I personally and contemporaneously have kept using computerized billing software documenting the hours I have worked on this case for which I am seeking to recover an attorney's fee award. As reflected in Exhibit 36, I have thoroughly reviewed my time records and divided my time into various categories, each of which I have assigned to a different column in Exhibit 36: Billing judgment dismissed claims, etc./time cut (Column E); CZMA (Claim 6) (Column F); Adjusted time (time after billing discretion & CZMA cut (Column G); General litigation--Caltrans only (Column H); Caltrans ESA (Claims 1 & 3) only (Column I); ESA/APA indivisible (Claims 1, 3 & 5) (Column J); General litigation--50/50 split (Column K); NEPA (Claim 4) (Column L); DOTA (Claim 7) (Column M); Fees CalTrans only (Column

N); and Fees CT/FWS 50/50 Split (Column O); Fees FWS only (Column P); and General litigation--FWS only (Column Q).

24.   Column E shows the time that I spent on tasks, other than my time spent on Plaintiffs' CZMA time, that I have decided in the exercise of billing judgment to not bill for. Column F shows the time I spent on Plaintiffs' CZMA claim (Claim 6)—31.41 hours. Column H shows the time that I spent on general litigation matters relating exclusively to Caltrans, such as communications with Caltrans' counsel about Federal Rule of Civil Procedure 26(f) matters or bilateral communications between Plaintiffs and Caltrans concerning settlement--26.95 hours. Column I shows the time that I spent on tasks exclusively related to Plaintiffs' prevailing ESA claim against Caltrans (Claims 1 and 3), such as summary judgment briefing on these claims--15.15 hours. Column J shows the time that I spent on tasks equally applicable to Claims 1, 3 and 5 as these tasks generally advanced argument that ESA section 7 consultation had been inadequate--14.8 hours. Column K shows the time that I spent on general litigation matters that cannot meaningfully be divided by claim/that advanced the case generally, such as participating in Federal Rule of Civil Procedure 26(f)/case scheduling communications with counsel for both Caltrans and FWS--73.32 hours. Column L shows the time that I spent on tasks exclusively related to Plaintiffs' NEPA claim against Caltrans (Claim 4), such as summary judgment briefing on these claims—6.02 hours. Column M shows the time that I spent on Plaintiffs' Department of Transportation Act ("DOTA") claim (Claim 7)—36.01 hours. Column N shows the time I spent both attempting to negotiate a settlement of Plaintiffs' fees and costs recovery from Caltrans only and the time I spent preparing Plaintiffs' Motion for Attorneys Fees, this Declaration, and supporting exhibits seeking fees and cost recovery from Caltrans only—19.11 hours. Column O shows the time I spent attempting to negotiate a settlement of Plaintiffs' fees and costs recovery with the Defendants that cannot be meaningfully separated between the two Defendants as it involved jointly pursuing fees and cost recovery against both—81.14 hours. Column P shows the time I spent attempting to negotiate a settlement of Plaintiffs' fees and cost recovery from FWS only—9.29 hours. Column Q shows the time that I spent on general litigation matters relating exclusively to FWS, such as communications with FWS's counsel about Federal Rule of Civil Procedure 26(f) matters or bilateral communications between Plaintiffs and FWS concerning settlement—10.79 hours.

25.     As reflected in Exhibit 36, I am seeking to recover from Caltrans for time I spent on the procedural ESA section 7 claims against Caltrans upon which Plaintiffs prevailed, Claims 1 and 3. In addition, I am seeking to recover for time spent on two of the related/interrelated claims against Caltrans upon which Plaintiffs did not prevail—the NEPA claim (Claim 4) and DOTA claim (Claim 7). My co-counsel Mr. Gaffney is similarly seeking to recover for work on these claims. Patricia Weisselberg is also seeking to recover for time on Plaintiffs' substantive ESA section 7 claim (Claim 2). As discussed in Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Attorneys Fees, Plaintiffs' contend that these claims are interrelated with their prevailing claims within the meaning of *Hensley v. Eckerhart*, 461 U.S. 424 (1983), entitling Plaintiffs to recover for their time on these claims even though they did not prevail on these claims.

26.     As noted, I and my co-counsel have worked a total of 1,914.03 hours on this matter, but Plaintiffs' counsel have, in exercise of billing judgment as reflected in Exhibit 37 and explained further below, written off 161.85 hours, a substantial 8.5% reduction of all time spent. Accordingly, as described above, my records in Exhibit 36 reflect billing judgment reductions from the total hours I have spent on this case: combined between Column E and F, I have reduced the 334.05 total hours I worked on this case by  42.6 hours, to an adjusted sum of 291.45 hours (a 12.7% reduction). I reduced the amount of time for certain entries and eliminated many entries altogether. Column G in Exhibit 36 shows how many of my hours remain after my billing judgment cuts.

27.     As reflected in Exhibit 37, I and my co-counsel have further eliminated from this fee motion all time spent claims against FWS that can be meaningfully segregated from the time they spent advancing the litigation generally and their claims against Caltrans. This includes all my time in my Columns P (Fees FWS only) and Q (General Litigation FWS only) and half the time in Column K (General litigation 50/50 split). In addition, in the exercise of billing discretion, we have eliminated from this fee motion all time spent pursuing claims against the U.S. Army Corps of Engineers, the San Mateo County Transportation Authority, and the City of Pacifica (collectively "the Dismissed Defendants"). (Note: I have not dismissed all the time I spent on the claim against NPS because that work yielded an outcome useful to prosecution of Plaintiffs' claims. As noted in paragraph 15, *supra*, NPS entered into a stipulation that helped establish important facts about the lack of any NPS authorization to Caltrans for

the latter to perform a mitigation project on GGNRA land.). In exercising this billing judgment, I and my co-counsel eliminated any time spent on a task related solely to one of any of the Dismissed Defendants, such as negotiating over a stipulation to dismiss that Defendant. We further reduced the time we billed for drafting documents that included allegations or other matters related to any of these Dismissed Defendants. For example, attorneys reduced the total amount of time billed on drafting the Complaint to reflect time spent drafting the portions of the Complaint related to the Dismissed Defendants. In addition, I and my co-counsel have cut all our time on Plaintiffs' CZMA claim (Claim 6) (as noted, my time on is this claim is depicted in Column F of Ex. 36). While Plaintiffs' counsel may be entitled under *Hensley v. Eckerhart*, 461 U.S. 424 (1983) to recover time for this interrelated yet unsuccessful CZMA claim, Plaintiffs are electing to not seek recovery for this time. *See* Ex. 37. For example, Plaintiffs are not seeking any time for drafting the CZMA portions of the Complaint or the CZMA portions of summary judgment briefing.

To summarize: I am seeking to recover from Caltrans the following time itemized in Exhibit 36: all Column H time (General Litigation Caltrans only), all Column I time (Caltrans ESA Claims 1 & 3 only), ½ of Column J time (indivisible ESA & APA Claims 1, 3, & 5), ½ of Column K time (General litigation split between Caltrans and FWS), all Column L time (NEPA only), all of Column M time (DOTA), all of Column N time (fees against Caltrans only), and ½ of Column O time (fee time split between Caltrans and FWS). I am not seeking to recover from Caltrans the time itemized in Columns E, F, P or Q of Exhibit 36.

28.    I have attached as Exhibit 42 true and correct copies of Page Perry's time records depicting both the time that she worked on Plaintiffs' CZMA claim and the time she worked on the few paralegal tasks for which Plaintiffs are seeking recovery. A junior attorney, Christopher Hudak, provided many hours of assistance with the hourly rates evidence presented in this declaration, but in exercising billing judgment Plaintiffs are not requesting compensation for this time.

29.    I and my co-counsel are representing Plaintiffs largely on contingency. The Plaintiffs, all nonprofit environmental organizations, have only been able to pay Mr. Gaffney, Ms. Weisselberg, and myself small retainer sums to work on the case that represent less than 3% of the market rate attorneys fees generated by counsel in our work on this case. Plaintiffs have not compensated Ms. Langille, Mr.

Whipps, Ms. Perry and Mr. Costa at all for their time on this matter. Devoting the hours necessary to represent the Plaintiffs in this matter has required me and other Plaintiffs' counsel to forgo other cases where compensation may have been more quickly recovered. At the outset, Environmental Advocates took this case with some hesitation, recognizing that due to its factual and legal complexity and Defendants' likely resistance to settle after receiving Plaintiffs' ESA notice letters, and given that the case would likely require long hours over a prolonged period with minimal compensation from the clients.

## II.    Christopher Sproul Hourly Rate for Attorney Work

30.    As noted, I have extensive experience litigating attorney fee recovery motions. Over my 15 years of practicing public interest environmental law on behalf of private clients, I have further garnered extensive experience negotiating attorney fee recoveries. In the course of this work experience, I have performed many hours of research into prevailing attorney rates in the San Francisco legal market and the case law concerning attorney fee awards, including extensive review of attorney fee awards by the U.S. District Court for the Northern District of California, the opinions expressed by other attorney fee experts in declarations submitted in San Francisco area courts, legal periodical articles concerning attorney rates, and discussions with other San Francisco area counsel concerning the rates they charge. Based on this experience and research, I consider myself an expert in prevailing attorney rates in the San Francisco legal market. *Stonebrae, L.P. v. Toll Bros.*, No. 08-0221, 2011 U.S. Dist. LEXIS 39832, at *9-*13 (N.D. Cal. Apr. 7, 2011) (recognizing attorney rates setting as an area of expertise).

In setting my hourly rates and offering opinions to my co-counsel concerning the appropriateness of their hourly rates, I have relied on my review of market data and fee awards in cases involving a wide variety of complex civil litigation in the U.S. District Court for the Northern District of California. The complex civil litigation cases that I examined (which are described in paragraphs 37-58 below) encompassed claims brought regarding the following issues or statutes: FOIA, California's anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, class action regarding Organic Products Act of 2003, the Consumers Legal Remedies Act, the California Commercial Code provision regarding express warranties; class action regarding failure of defendant to report Negative Amortization mortgage interest paid to it by Class Members on the IRS Forms 1098; class actions regarding wage-and-hour violations;

1    class action regarding Americans with Disabilities Act and California's Unruh Civil Rights Act; class

2    action regarding the Exchange Act and Securities Act; class action regarding California's Unfair

3    Competition Law; class actions regarding antitrust violations; class action regarding the Securities Act

4    of 1933; class action regarding California's Unfair Competition Law, California's Consumer Legal

5    Remedies Act, Florida's Deceptive and Unfair Trade Practices Act; class action regarding consumer

6    issues, class action regarding employment issues; class action regarding digital privacy; and class action

7    regarding California Financial Elder Abuse statute. These areas of law are well-known in the profession

8    to constitute complex civil litigation.

9        31.   As noted above, I practice complex public interest environmental civil litigation and also advise

10   clients concerning public interest environmental advocacy matters. However, if I were to only look to

11   attorney fee decisions in environmental law cases, I would have very little case outcome data to base my

12   rate setting decision on. As far as I am aware after extensive research, there was only a single decided

13   case awarding attorneys fees in an environmental law case in the Northern District of California in 2015:

14   Judge White's decision in *OCE v. EPA,* No. 13-02857, 2016 U.S. Dist. LEXIS 40626 (N.D. Cal. Mar.

15   25, 2016). I have followed this approach of looking broadly at recent complex civil litigation decisions

16   because I view it as consistent with the case decisions referred to in paragraphs 37-58 and Ninth Circuit

17   Court of Appeals guidance in *Prisa Legal News v. Schwarzenneger*, 608 F.3d 446, 455 (9th Cir. 2010).

18   *See also Stonebrae, L.P. v. Toll Bros*., No. 08-0221, 2011 U.S. Dist. LEXIS 39832, at *9-*13 (N.D. Cal.

19   Apr. 7, 2011). These decisions, implicitly reflecting the practical reality of only having limited data for

20   particular subsets of civil litigation, typically rely on overall market data for complex civil litigation

21   rather than, for example, narrowly focusing only on anti-SLAPP cases to determine what is an

22   appropriate rate to award in an anti-SLAPP case.

23       32.   In the past, Environmental Advocates relied primarily on the U.S. Department of Justice's Laffey

24   Matrix to set hourly rates, adjusted upward to reflect the increased cost of living in the San Francisco

25   Bay area and generally higher rates of compensation compared to the Washington D.C. market. I used

26   this methodology to calculate the fiscal year 2013-14 rate of $655 per hour that I was awarded by the

27   Court in *OCE v.  EPA,* 2016 U.S. Dist. LEXIS 40626. However, recent case law suggests that the Laffey

28   Matrix is not an appropriate methodology for setting rates in the Northern District. *Prison Legal News v.*

*Schwarzenegger*, 608 F.3d 446, 454–455 (9th Cir. 2010); *Public.Resource.org v. IRS*, No. 13-02789, 2015 U.S. Dist. LEXIS 175943, at \*19-\*20 (N.D. Cal. Nov. 20, 2015); *Forkum v. Co-Operative Adjustment Bureau, Inc*., No. 13-0811, 2014 WL 3101784 (N.D. Cal. July 3, 2014). The Department of Justice also took this position in briefing filed in response to my fee motion in *OCE v. EPA*. Attached as Exhibit 35 is a true and correct copy of the relevant pages of the DOJ brief in issue which was served to me via the Court's ECF system (on April 28, 2015, Dkt. 68).

33.    In addition, Environmental Advocates has reviewed market data to check whether Laffey Matrix based rates were consistent with San Francisco Bay Area market data as reflected in case law and other sources of prevailing San Francisco Bay Area market legal rates. Based on this review, it is clear that the Laffey Matrix based methodology results in rates that are substantially below the San Francisco legal market. Accordingly, Environmental Advocates no longer sets its rates based on the Laffey Matrix. Instead, I and my co-counsel base our rates on actual market data.

34.    To calculate my 2015 rate, I reviewed the extensive case law data available for prevailing 2015 market rates. I determined that a rate of $750 per hour was equivalent to or even below average Northern District of California hourly rate awards in 2015 in complex civil litigation for an attorney with experience comparable to mine. As discussed further below, I adjusted this rate upward to reflect my additional year of experience and the additional overall increase in prevailing market rates to calculate my 2016 rate of $775 per hour.

35.    I have been practicing law for nearly thirty-one years. To determine a 2015 rate for me, I and my junior associate Christopher Hudak surveyed numerous Northern District of California cases that awarded fees in complex civil litigation cases to attorneys with between twenty-one to twenty-nine years of experience in 2015. These cases are described in paragraphs 37 through 58.

36.    To calculate my 2015 and 2016 rates, Mr. Hudak and I derived an average annual percentage increase in the rates charged by senior attorneys in the San Francisco Bay Area legal market (attorneys with more than 20 years of experience, such as myself) and then applied this average annual percentage change in the rates charged by senior attorneys to my 2015 rate. To do this exercise, we surveyed the cases used in setting my 2015 rate, and others from 2014, for any cases that reported rate changes for a given attorney with more than 20 years of experience between recent consecutive years (for example,

awarded a given attorney a rate in 2013 and then an adjusted rate in 2014, *etc*., thus providing data on the percentage increase in compensation for that attorney reflecting the combined effect of an additional year of experience and a year's worth of inflation in the legal market). We then averaged all the individual percentage changes to determine an average rate change per year in the Bay Area for attorneys with over 20 years experience. I then applied the average percentage change to my 2015 rate to determine my 2016 rate.

37.    In *In Re. High-Tech Emp. Antitrust Litig.,* No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118052, (N.D. Cal. Sept. 2, 2015) ("*High-Tech*") the court found all of the attorneys' 2015 billing rates to be reasonable. *High-Tech* at *33. The Declaration of Eric L. Cramer ("Cramer Decl.") describes the billing rates of the attorneys from the law firm, Berger & Montague, P.C., who worked on the case. Attached hereto as Ex. 1 is a true and correct copy of selected relevant pages of the Cramer Decl. The rates in the Cramer Decl. are described as the attorneys' current billing rates. Ex. 1 ¶ 13. The Cramer Decl. was filed on May 7, 2015, thus I presume that the rates described are the attorneys' 2015 rates. The Cramer Decl. provides a chart of the years of experience of the attorneys and their respective hourly rates. Ex. 1 ¶ 13. The Cramer Decl. states that managing shareholder Eric L. Cramer had twenty-two years experience and that his current billing rate was $900 per hour. Ex. 1 ¶ 13. The Cramer Decl. states that former shareholder Charles Goodwin had twenty-three years experience and that his current billing rate was $590 per hour. Ex. 1 ¶ 13. The Cramer Decl. states that senior counsel Ellen Noteware had twenty-two years experience and that her current billing rate was $580 per hour. Ex. 1 ¶ 13.

38.    In *High-Tech*, Exhibit 11 to the Declaration of Kelly M. Dermody ("Dermody Decl. Exhibit") provides the billing rates of the attorneys from the law firm Lieff Cabraser Heimann & Bernstein, LLP, who also worked on the case. Attached hereto as Ex. 2 is a true and correct copy of selected relevant pages of the Dermody Decl. Exhibit. The Declaration of Kelly M. Dermody ("Dermody Decl."), paragraph 21, states that the rates in the Dermody Decl. Exhibit are "my firm's current billing rates." Attached hereto as Ex. 3 is a true and correct copy of selected relevant pages of the Dermody Decl. The Dermody Decl. was filed on May 8, 2015, thus I presume that the rates described are the attorneys' 2015 rates. Since the years of experience of these attorneys was not readily available from

the declarations, I and my staff determined each attorney's graduation year by reviewing their biographies on their firm's website or in some cases professional online profiles, and then cross-checking with the attorney's profile on the California State Bar website. The Dermody Decl. Exhibit states that Kelly Dermody's billing rate was $800 per hour. Ex. 2. Ms. Dermody graduated from law school in 1993 and thus had twenty-two years experience in 2015. The Dermody Decl. Exhibit states that Joseph Saveri's rate was $800 per hour.[1] Ex. 2. Joseph Saveri was admitted to the bar in 1987, and he thus had 28 years experience in 2015.

39.   In *Moore v. PetSmart,* No. 12-03577, 2015 U.S. Dist. LEXIS 102804 (N.D. Cal. August 4, 2015) ("*Moore*") the court found that the attorneys' billing rates were within the range approved in the Northern District and were found to be reasonable. *Moore* at *38. The Declaration of Raul Perez ("Perez Decl.") sets forth the year that attorneys who worked on the case from the law firm Capstone Law APC were admitted to the California Bar and their 2015 hourly rates. Perez Decl. ¶ 11. Attached hereto as Ex. 4 is a true and correct copy of selected relevant pages of the Perez Decl. The Perez Decl. states that the 2015 rate for 1994 Bar admittee Raul Perez was $695 per hour. Ex. 4 ¶ 11. Mr. Perez had twenty-one years experience in 2015.

40.   In *Gutierrez v. Wells Fargo Bank*, *N.A*., No. 07-05923, 2015 U.S. Dist. LEXIS 67298 (N.D. Cal. May 21, 2015) ("*Gutierrez*"), the court found the attorneys' claimed billing rates to be "comparable to those in our geographic region for the skill and experience involved" and awarded the requested rates. *Gutierrez* at *14. The Declaration of Richard M. Heimann ("Heimann Decl.") describes the representation of Lieff, Cabraser, Heimann & Bernstein, LLP and contains the graduation dates of the attorneys working on the case. Attached hereto as Ex. 5 is a true and correct copy of selected relevant pages of the Heimann Decl. The Heimann Decl. states that Michael W. Sobol graduated from law school in 1989 and began practicing law in 1989. Ex. 5 ¶ 40. Mr. Sobol had twenty-six years experience in 2015. Exhibit G to the Declaration of Roger N. Heller contains current billing rates for the attorneys who worked on the case. Attached hereto as Ex. 6 is a true and correct copy of selected relevant pages of

---

[1] Although Ex. 2 provides information for Joseph Saveri, he left Lieff Cabreser to start his own firm in 2012. However, the court identified extensive issues with his fee request from his new firm. Out of an abundance of caution, his high 2015 rate ($995 per hour) is not included here, since there is ambiguity in the opinion as to whether the court approved Mr. Saveri's higher 2015 rate.

1   the Heller Decl. combined with selected relevant pages of Exhibits A, F and G to the Heller Decl.

2   ("Heller Decl.").[2] The Heller Decl. was filed on February 17, 2015, thus I presume that the rates

3   described are the attorneys' 2015 rates. Exhibit G to the Heller Decl. states that Mr. Sobol's rate is $850

4   per hour. Ex. 6.

5       41.   In *Gutierrez*, the Declaration of Richard D. McCune ("McCune Decl.") describes the billing

6   rates of the attorneys from the law firm McCuneWright LLP who also worked on the case. Attached

7   hereto as Ex. 7 is a true and correct copy of selected relevant pages of the McCune Decl. The McCune

8   Decl. states that Richard D. McCune graduated from law school in 1987. Ex. 7 ¶ 55. In 2015, Mr.

9   McCune had twenty-eight years experience. The McCune Decl. states that Richard D. McCune's rate

10  was $650/hr. Ex. 7 ¶ 58. Mr. McCune had not raised this rate since September 2009 (thus indication that

11  that rate was actually below currently prevailing market rates). *See* Ex. 7 ¶ 58. The McCune Decl. states

12  that David C. Wright graduated from law school in 1994. Ex. 7 ¶ 59. In 2015, Mr. Wright had twenty-

13  one years experience. The McCune Decl. states that Mr. Wright's rate was $650 per hour. Ex. 7 ¶ 61.

14  Mr. Wright had not raised this rate since September 2009 (thus again indication that that rate was

15  actually below currently prevailing market rates). *See* Ex. 7 ¶ 61.

16      42.   In *Camberis v. Ocwen Loan Servicing LLC,* Cal. No. 14-cv-02970-EMC, 2015 U.S. Dist. LEXIS

17  163826 (N.D. Cal. Dec. 7, 2015) ("*Camberis*"), the court reviewed class counsel's fees and costs and

18  found them to be "fair" under the lodestar approach. *Camberis* at *9. The Declaration of David J.

19  Vendler ("Vendler Decl.") describes the representation of Morris Polich & Purdy LLP and contains the

20  rates of the attorneys working on the case. Attached hereto as Ex. 8 is a true and correct copy of selected

21  relevant pages of the Vendler Decl. The Vendler Decl. states that the rate for Mr. Vendler is $950 per

22  hour. Ex. 8 ¶ 22. According to Mr. Vendler's profile on his firm's website, Mr. Vendler graduated from

23  law school in 1988, was admitted to the Massachusetts Bar in 1988, and was admitted to the California

24  Bar in 1990. Thus, Mr. Vendler had twenty-seven years experience in 2015.

25      43.   In *Public.Resource.Org v. U.S. Internal Revenue Serv*. No. 13-cv-02789-WHO, 2015 U.S. Dist.

26

27  ───────────────
    [2] I have excluded Barry Himmelstein from my survey analysis because he left the firm in 2011, and thus

28  there is ambiguity as to whether his stated rate of $700 per hour is a 2015 rate. *See* Ex. 5 ¶ 42 and Ex. 6,
    "Exhibit G".

LEXIS 175943 (N.D. Cal. Nov. 20, 2015) ("*Public.Resource*"), the court found the claimed hourly rates to be "reasonable." *Public.Resource* at *20. The opinion states the 2015 requested rates for Thomas Burke was $620 per hour. *Id.* at *18. The Declaration of Thomas R. Burke ("Burke Decl.) describes the representation of Davis Wright Tremaine LLP and contains the graduation years for Thomas R. Burke. Attached hereto as Ex. 9 is a true and correct copy of selected relevant pages of the Declaration of Thomas R. Burke. The Burke Decl. states that Mr. Burke graduated in 1989. Ex. 9 ¶ 3. Mr. Burke therefore had 26 years experience in 2015.

44.    In *Wynn v. Chanos*, No. 14-04329, 2015 U.S. Dist. LEXIS 80062 (N.D. Cal. June 19, 2015) ("*Wynn*") the court found that the requested rates were "reasonable for the Bay Area." *Wynn* at *6. The opinion states that the requested rate for Douglas Winthrop was $920 per hour. *Id*. at *5-6.

According to Mr. Winthrop's profile on his firm's website, Mr. Winthrop graduated from law school in 1991. Thus, Mr. Winthrop had twenty-four years experience in 2015.

45.    In *Deaver v. Compass Bank*, No. 13-00222, 2015 U.S. Dist. LEXIS 166484 (N.D. Cal Dec. 11, 2015) ("*Deaver*"), the court deemed that counsel's rates were "reasonable." *Deaver* at *38.  The chart on page *37 of the opinion states that the claimed rates for partners Roger R. Carter and Scott B. Cooper are both $700 per hour. According to Roger R. Carter's profile on his firm's website, he graduated from law school in 1987. Thus, Mr. Carter had twenty-eight years experience in 2015. According to Scott B. Cooper's profile on his firm's website, he graduated from law school in 1993. Thus, Mr. Cooper had 21 years experience in 2015.

46.    In *In re Ecotality Inc. Sec. Litig*., No. 13-03791, 2015 U.S. Dist. LEXIS 114804, (N.D. Cal. Aug. 28, 2015), the court performed a lodestar cross check to determine the fairness of the fee award, without criticizing the rates, in effect deeming the rates reasonable. Exhibit A to the Declaration of Christopher P. Seefer provides a list of the rates of attorneys involved in the case from the firm Robbins Geller Rudman & Dowd LLP. Attached hereto as Ex. 10 is a true and correct copy of selected relevant pages of the Declaration of Christopher P. Seefer and accompanying Exhibits (collectively "Seefer Decl."). The Seefer Decl. states that the rate of Darren Robbins was $880 per hour. Ex. 10, "Exhibit A". Ex. C to the Seefer Decl. provides the firm resume, which states that Darren Robbins graduated in 1993. Ex. 10, "Exhibit C." Darren Robbins therefore had twenty-two years experience in 2015. The Seefer Decl. states

that the rate of Jeffrey Light was $800 per hour. Ex. 10, "Exhibit A".  Ex. C to the Seefer Decl. states that Jeffrey Light graduated in 1991. Ex. 10, "Exhibit C." Jeffrey Light therefore had twenty-four years experience in 2015.

47.    In *Wilner v. Manpower, Inc.*, No. 11-02846, 2015 U.S. Dist. LEXIS 80697 (N.D. Cal. June 20, 2015) ("*Wilner*"), the court held that the "briefs and declarations submitted in connection with the motion for final approval and motion for fees adequately support the anticipated … total lodestar." *Wilner* at *22.  The Declaration of Laura Ho ("Ho Decl.") and associated exhibits details the involvement of Goldstein, Borgen, Dardarian & Ho. Attached hereto as Ex. 11 is a true and correct copy of selected relevant pages of the Declaration of Laura Ho and associated exhibits (collectively, "Ho Decl."). The Ho Decl. "Exhibit 2" states that Laura Ho graduated in 1994 and her rate was $725 per hour. Ex. 11, "Exhibit 2." Laura Ho thus had 21 years experience in 2015.

48.    In *Wilner*, the Declaration of Kirk D. Hanson and associated exhibits details the involvement of Jackson Hanson LLP. Attached hereto as Ex. 12 is a true and correct copy of selected relevant pages of the Declaration of Kirk D. Hanson and associated exhibits (collectively, "Hanson Decl."). The Hanson Decl. states that Mr. Hanson's rate was $700 per hour. According to Mr. Hanson's now-solo practice website, he graduated in 1993. Ex. 12, ¶ 19. Mr. Hanson thus had 22 years experience in 2015.[3]

49.    In *Il Fornaio (America) Corp. v. Lazzari Fuel Co.*, No. 13-05197, 2015 U.S. Dist. LEXIS 66145, (N.D. Cal. May 20, 2015) ("*Il Fornaio*"), the court determined reasonable rates for the work done by three attorneys. *Il Fornaio* at *17. The Court determined that $675 per hour was an appropriate fee per hour for Elizabeth Cheryl Pritzker. *Id.* According to her firm's website, she has "twenty five years experience." The California State Bar website states she was admitted in 1990. Thus, she had 25 years experience in 2015. The Court also determined that the appropriate rate for Robert George Retana was $650 per hour. *Il Fornaio* at *17. At 23. A true and correct copy of selected relevant pages of the Declaration of Robert Retana is attached hereto as Ex. 13 ("Retana Decl."). The Retana Decl. states that Mr. Retana graduated in 1990. Ex. 13, "Exhibit 1", at 23 (original pagination). Mr. Retana therefore had

---

[3] The rate for Hanson's then-law partner Jackson was not included here, as Jackson's experience level could not be readily verified from the declarations or internet research.

25 years experience in 2015.[4]

50.    In *In re Tracfone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1009 (N.D. Cal. 2015) ("*Tracfone*"), the Court found that it was "satisfied that class counsels' lodestar figure [was] justified in light of the complexity and duration of this litigation." The Declaration of Michael Sobol and associated exhibits detail the work performed by Lieff, Cabraser, Heimann & Bernstein, LLP. Attached hereto as Ex. 14 is a true and correct copy of selected relevant pages of the Declaration of Michael Sobol and its associated exhibits (collectively, "Sobol Decl."). The Sobol Decl. states that Mark Sobol graduated in 1989, and he therefore had 26 years experience in 2015. Ex. 14, ¶ 2. The Sobol Decl. also states that the rate for Mark Sobol was $850 per hour. Ex. 14, "Exhibit A."

51.    In *Lilly v. Jamba Juice, Co.*, No. 13-02998, 2015 U.S. Dist. LEXIS 58451 (N.D. Cal. May 1, 2015) ("*Lilly*"), the Declaration of Rosemary M. Rivas and associated exhibits (collectively "Rivas Decl.") details work performed by Finkelstein Thompson LLP. Attached hereto as Ex. 15 is a true and correct copy of selected relevant pages of the Rivas Decl. The Rivas Decl. states Mila F. Bartos had a rate of $700 per hour. Ex. 15, ¶ 31. Ex. 15, "Exhibit 1" states that Ms. Bartos graduated in 1993, and thus had 22 years experience in 2015. Ex. 15, "Exhibit 1" at 22.

52.    In *Brown v. Hain Celestial Group*, No. 11-03082, 2016 U.S. Dist. LEXIS 20118 (N.D. Cal. Feb. 18, 2016) ("*Brown*"), Judge Beeler awarded fees in a class action case, noting that the "billing rates are within normal and customary ranges for timekeepers with similar qualifications and experience in the San Francisco market" and that "[t]he rates counsel used are appropriate given the deferred and contingent nature of counsel's compensation." *Brown* at 23. The Declaration of Mark Todzo ("Todzo Decl.") details work performed by the Lexington Law Group. Attached hereto as Exhibit 16 is a true and correct copy of selected relevant pages of the Todzo Decl. The Todzo declaration states Mark Todzo graduated in 1993, has a rate of $750 per hour, and has 22 years experience (in 2015).  Ex. 16, ¶ 37. The Todzo declaration states Eric S. Sommers graduated in 1988, and has a rate of $770 per hour. Ex. 16, ¶ 39. Mr. Sommers therefore had 27 years experience in 2015.

53.    In *Cancilla v. EcoLab, Inc.,* No. 12-03001, 2016 U.S. Dist. LEXIS 818 (N.D. Cal. Jan. 5, 2016)

---

[4] The graduation year for Jonathan K. Levine was not readily available from the firm's website or the declaration and therefore was not included here.

("*Cancilla*"), the Court confirmed the reasonableness of a fee award through a lodestar cross check, and noted that "fee request is also adequately supported by the documentation plaintiff has submitted." *Cancilla* at 11. The Declaration of James M. Finberg  ("Finberg Decl.") details the work of the Altshuler Berzon firm on the case. Attached hereto as Exhibit 17 is a true and correct copy of selected relevant pages of the Finberg Decl. The Finberg Decl. states that the graduation year of Eva Cervantez was 1992 (thus she had 23 years of experience in 2015) and her rate was $795 per hour. Ex. 17, ¶ 16.

54.    In *Civil Rights Educ. and Enf't Ctr. v. Ashford Hosp. Trust, Inc.*, No. 15 -00216, 2016 U.S. Dist. LEXIS 37256 (N.D. Cal. March 22, 2016) ("*CREEC*"), Judge Ryu awarded the fees requested by a small public interest firm, finding that "the hourly rates requested are in line with the market rates charged by attorneys and paralegals of similar experience, skill, and expertise practicing in the Northern District of California." Judge Ryu awarded Tim Fox, a 1991 law school graduate and thus an attorney with 25 years experience in 2016, $750 per hour. *CREEC* at *16-17.

55.    In *Destefano v. Zynga Inc.*, No. 12-04007, 2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11. 2016) ("*Destefano*"), the court found in awarding fees that "[t]he rates are in line with those prevailing in the community, as courts in this District have approved similar or higher billing rates for attorneys and paralegals." *Destefano* at *64. The Court also found that "the requested attorneys' rates, and rates of associated staff, are reasonable." *Id.* at 66. The Declaration of Jeffrey M. Norton ("Norton Decl.") details work performed by Newman Ferrara LLP. Attached hereto as Ex. 31 is a true and correct copy of selected relevant pages of the Norton Decl. The Norton Decl. states the rate for Jonathan H. Newman is $850 per hour. Ex. 31 ¶ 7. The New York State Unified Court System attorney search states that Mr. Newmann was admitted in 1986. Thus, he had 29 years experience in 2015. The Declaration of Nicole Lavallee and associated exhibits (collectively "Lavallee Decl.") details work performed by Berman Devlarerio. Attached hereto as Exhibit 18 is a true and correct copy of selected relevant pages of the Lavallee Decl. The Lavallee Decl. states that Ms. Lavallee graduated in 1991 and thus had 24 years of experience in 2015. Ex. 18, "Exhibit 1," at 31. The Lavallee Decl. states that Ms. Lavallee's rate was $830 per hour. Ex. 18, "Exhibit 2."

56.    In *Perkins v. LinkedIn Corp.*, No. 13-04303, 2016 U.S. Dist. LEXIS 18649 (N.D. Cal. Feb. 16, 2016) ("*Perkins*"), the court noted that "[t]his Court, within the last year, and other courts, have

approved Class Counsel's customary rates used in calculating the lodestar here." *Perkins* at *52. The court also performed a lodestar crosscheck, *i.e.*, compared the award to that which would be calculated by multiplying reasonable hours times reasonable rates. *Id.* at 52-57. The Declaration of Nicholas Diamond and associated exhibits (collectivity "Diamand Decl.") details work performed by Lieff, Cabraser, Heimann & Bernstein, LLP on the case. Attached hereto as Ex. 19 is a true and correct copy of selected relevant pages of the Diamand Decl. The Diamand Decl. states that Michael Sobol's rate was $850 per hour. Ex. 19, "Exhibit A." The Diamand Decl. states that Michael Sobol graduated in 1989. Ex. 19 ¶ 6. Thus, Mr. Sobol had 26 years experience in 2015.

57.    In *Winans v. Emeritus Corp.*, No. 13-03962, 2016 U.S. Dist. LEXIS 3212 (N.D. Cal. Jan. 11, 2016) ("*Winans*"), the court found that "the billing rates used by class counsel to calculate the lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation." In *Winans*, the Declaration of Guy Wallace and associated exhibits (collectivity "Wallace Decl.") details work performed by Schneider Wallace Cottrell Konecky Wotkyns, LLP on the case. Attached hereto as Ex. 20 is a true and correct copy of selected relevant pages of the Wallace Decl. The Wallace Decl. states that Mr. Wallace's rate was $750 per hour and that he graduated in 1993. Ex. 20, ¶ 26; Ex. 20, ¶ 3. Therefore Wallace had 22 years experience in 2015. The Wallace Decl. states that Mr. Wallace's rate was $750 per hour and that he graduated in 1993. Ex. 20, ¶ 26; Ex. 20, ¶ 3. Therefore Mr. Wallace had 22 years experience in 2015.

58.    In *Winans*, the Declaration of Robert Arns and associated exhibits (collectivity "Arns Decl.") details work performed by the Arns Law Firm on the case. Attached hereto as Ex. 21 is a true and correct copy of selected relevant pages of the Arns Decl. The Arns Decl. States that Steven Weinmann's rate was $550 per hour and that he graduated in 1989 and thus had 26 years experience in 2015. Ex. 21, ¶ 15; Ex. 21, "Exhibit 7."

59.    The average of the thirty-one hourly rates listed in paragraphs 37-58 is $750.96 per hour. I have rounded this to $750 per hour and set my 2015 rate at $750 per hour. It should be noted that this methodology tends to skew the average rate lower then is appropriate for an attorney of my experience, since my experience level is at the very top end of the 21-29 years experience range used in this survey. In fact, the average experience level of the attorneys in this survey is 24 years. When the age range of

the hourly rates listed herein is adjusted to be more closely aligned to my age range, with attorneys with 29-26 years experience, the average is higher, at $767.27 per hour.

60.    As noted in paragraph 36 above, to calculate my 2016 rates, I derived an average annual percentage increase in the rates charged by senior attorneys in the San Francisco Bay Area legal market (attorneys with more than 20 years of experience, such as myself) and then applied this average annual percentage change in the rates charged by senior attorneys to my 2015 rate. To do this exercise, Mr. Hudak and I surveyed the cases used in setting my 2015 rate, and others from 2014, for any cases that reported rate changes for a given attorney with more than 20 years of experience between recent consecutive years (for example, awarded a given attorney a rate in 2013 and then an adjusted rate in 2014, *etc*., thus providing data on the percentage increase in compensation for that attorney reflecting the combined effect of an additional year of experience and a year's worth of inflation in the legal market). We then averaged all the individual percentage changes to determine an average rate change per year in the Bay Area for attorneys with over 20 years experience. I then applied the average percentage change to my 2015 rate to determine my 2016 rate. The cases and attorney compensation data in these cases are described in paragraphs 61 through 67 below.

61.    In *Cancilla v. EcoLab, Inc.,* No. 12-03001, 2016 U.S. Dist. LEXIS 818 (N.D. Cal. Jan. 5, 2016) ("*Cancilla*"), the Finberg Decl. states that Eva Cervantez's 2013 rate was $750 per hour, that her 2014 rate was $775 per hour, and that her 2015 rate was $795 per hour. Ex. 17, ¶¶ 16, 19. The rate change between 2013 and 2014 for Ms. Cervantez was $25, or 3.33%. The rate change between 2014 and 2015 for Ms. Cervantez was $20, or 2.58%. In *Cancilla*, the Finberg Decl. also states that attorney Jim Finberg graduated from law school in 1983. Ex. 17, ¶ 16. In 2015 he therefore had 32 years experience. The Finberg Decl. states that Mr. Finberg's 2010 commercial rate was $785 per hour, his 2011 commercial rate was $825 per hour, his 2012 commercial rate was $850 per hour, his 2013 commercial rate was $875 per hour, his 2014 commercial rate was $895 per hour, and that his 2015 commercial rate was also $895 per hour. Ex. 17, ¶ 20. Mr. Finberg's annual rate changes are as follows: 2010-2011, $40, or 5.1%; 2011-2012, $25, or 3.03%; 2012-2013, $25, or 2.94%; 2013-2014, $20, or 2.29%; and 2014-2015, $0, or 0%.

62.    In *Gutierrez v. Wells Fargo Bank, N.A*., No. 07-05923, 2015 U.S. Dist. LEXIS 67298 (N.D. Cal.

May 21, 2015) ("*Gutierrez*"), Exhibit A to the Declaration of Roger N. Heller contains the timesheets

for the attorneys who worked on the case, spanning from 2009-2015, and which includes the date of the

specific entries and corresponding rate per hour. Ex. 6. Exhibit A to the Heller Decl. states that the rate

charged for attorney Michael Sobol's 2009 entries was $700 per hour. Ex. 6, Ex. A, at 13. The rate

charged for Mr. Sobol's 2010 entries was $725 per hour. Ex. 6, Ex. A, at 16. The rate charged for Mr.

Sobol's 2011 entries was $750 per hour. Ex. 6, Ex. A, at 138. The rate charged for Mr. Sobol's 2012

entries was $775 per hour. Ex. 6, Ex. A, at 157. The rate charged for Mr. Sobol's 2013 entries was $800

per hour. Ex. 6, Ex. A, at 166. The rate charged for Mr. Sobol's 2014 entries was $825 per hour. Ex. 6,

Ex. A, at 191. Mr. Sobol's 2015 awarded rate was $850 per hour. Ex. 6, Ex. G. Mr. Sobol's annual rate

changes are as follows: 2009-2010, $25, or 3.57%; 2010-2011, $25, or 3.45%; 2011-2012, $25, or

3.33%; 2012-2013, $25, or 3.23%; 2013-2014, $25, or 3.13%; 2014-2015, $25, or 3.03%.

63.     In *Gutierrez*, the McCune Decl. states that attorney David C. Wright raised his rate from $550 to

$650 per hour in September, 2009, which stayed the same through 2015. Ex. 7 ¶ 61. Mr. Wright's

annual rate changes are as follows: Sept. 2008-2009, $100, or 18.18%; Sept. 2009-2010, $0, or 0%;

Sept. 2010-2011, $0, or 0%, Sept. 2011-2012, $0, or 0%; Sept. 2012-2013, $0, or 0%; Sept. 2013-2014,

$0, or 0%; and Sept. 2014-2015, $0, or 0%. The McCune Decl. also states that attorney Richard D.

McCune also raised his rate from $550 to $650 per hour in September, 2009, which stayed the same

through 2015. Ex. 7 ¶ 58. Mr. McCune's annual rate changes are as follows: Sept. 2008-2009, $100, or

18.18%; Sept. 2009-2010, $0, or 0%; Sept. 2010-2011, $0, or 0%, Sept. 2011-2012, $0, or 0%; Sept.

2012-2013, $0, or 0%; Sept. 2013-2014, $0, or 0%; and Sept. 2014-2015, $0, or 0%.

64.     In *Public.Resource.Org v. U.S. Internal Revenue Serv.*, No. 13-02789, 2015 U.S. Dist. LEXIS

175943 (N.D. Cal. Nov. 20, 2015) ("*Public.Resource*"), the opinion states that the 2013 rate for Thomas

Burke was $585 per hour, the 2014 rate was $620 per hour, and that the 2015 rate was also $620 per

hour. Mr. Burke's annual rate changes are as follows: 2013-2014, $35, or 5.98%; 2014-2015, $0, or 0%.

65.     In *Wynn v. Chanos*, No. 14-04329, 2015 U.S. Dist. LEXIS 80062 (N.D. Cal. June 19, 2015)

("*Wynn*") the opinion states rate changes for attorneys Kenneth Hausman and Douglas Winthrop.

The profile of Mr. Hausman on his firm Arnold and Porter LLP's website states that he graduated

from law school in 1973, and thus had 42 years experience in 2015. The *Wynn* opinion states that Mr.

Hausman's "initial" rate was $1035 per hour, which was in 2014 when the case was filed. *Wynn* at *6. The opinion states that Mr. Hauman's 2015 rate was $1085 per hour. Mr. Burke's annual rate change between 2014 and 2015 was thus $50, or 4.83%. The profile of Mr. Winthrop on his firm Arnold and Porter LLP's website states that he graduated from law school in 1991, and thus had 24 years experience in 2015. The *Wynn* opinion states that Mr. Winthrops "initial" rate was $875 per hour, which was in 2014 when the case was filed. *Wynn* at *6. The opinion states that Mr. Hauman's 2015 rate was $920 per hour. Mr. Winthrop's annual rate change between 2014 and 2015 was thus $45, or 5.14%.

66.    In *IPVX Holdings Inc. v. Voxernet LLC*, No. 13-01708, 2014 U.S. Dist. LEXIS 158037, at *21-25 (N.D. Cal. Nov. 6, 2014), the court implicitly found the requested attorneys rates reasonable. The Declaration of Hector J. Ribera ("Ribera Decl."), states that the rates for the attorneys who worked on the case. Attached hereto as Ex. 22 is a true and correct copy of selected relevant pages of the Ribera Decl. The Ribera Decl. states that the rate for attorney J. David Hadden in both 2012 and 2013 was $755 per hour. Ex. 22 ¶ 10.a. In 2014 Mr. Hadden's rate rose to $810 per hour. *Id.* Mr. Hadden's annual rate changes are as follows: 2012-2013, $0, or 0%; 2013-2014, $55, or 7.28%.

67.    In *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1171 (N.D. Cal. 2015), the court found the requested rates to be reasonable. The Declaration of Roger L. Cook ("Cook Decl.) describes the representation of Kilpatrick, Townsend, & Stockton LLP and the attorneys who worked on the case. Attached hereto as Ex. 23 is a true and correct copy of selected relevant pages of the Declaration of Roger L. Cook. The Cook Decl. states that Mr. Cook graduated in 1963. Ex. 23 ¶ 39. Mr. Cook therefore had 52 years experience in 2015. The Cook Decl. states that the rate Mr. Cook charged in late 2012 was $775 per hour. Ex. 23, ¶ 28. The Cook Decl. states that the rate Mr. Cook charged in 2013 was $800 per hour. Ex. 23, ¶ 30. The Cook Decl. states that the rate Mr. Cook charged in 2014 was $830 per hour. Ex. 23, ¶ 31. Mr. Cooks's annual rate changes are as follows: 2012-2013, $25, or 3.23%; 2013-2014, $30, or 3.75%.

68.    The average of the annual rate changes for attorneys in paragraphs 61 through 67 is 3.2%.

69.    To determine my 2016 rate, I added 3.2%, or $24, to my 2015 rate of $750 per hour, which results in $774 per hour. I have rounded $774 to $775 and have set my 2016 rate as $775 per hour. To determine my 2017 rate, I added 3.2%, or $24.80, to my 2016 rate of $775 per hour, which results in

$799.80. I have rounded this figure to $800 per hour as my 2017 rate. Furthermore, in my opinion, the 2017 rate claimed by Brian Gaffney in this matter is also well within reasonable San Francisco market rates for an attorney with his experience and skill and is consistent with the case decisions and rate-setting methodology I have discussed above.

70.     I have been awarded $775 per hour as a 2016 rate in seven consent judgments issued by the California Superior Court for the County of San Francisco and a consent judgment issued by the California Superior Court for the County of Orange in cases brought pursuant to California Health & Safety Code §§ 25249.5, *et seq.* California Health and Safety Code § 25249.7(f)(4)(B) requires California Superior Courts to find that the award of attorneys fees sought in such consent judgments "is reasonable under California law." In accord with this requirement, I submitted detailed declarations supporting my claimed 2016 hourly rate of $775 per hour in conjunction with the motions to enter these consent judgments. True and correct copies of relevant pages of these declarations are attached as Exhibit 43 to this declaration. The California Superior Courts for the County of San Francisco and County of Orange effectively approved my hourly rate in issuing the consent judgments, which provided for attorney fee recoveries calculated using this hourly rate. True and correct copies of relevant pages of these judgments are attached as Exhibit 44 to this declaration.

71.     As discussed in Footnote 5 of Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("MPA"), Judge Orrick in *OCE v. NMFS*, criticized my reliance on a broad array of attorney fee awards in complex civil litigation in the Northern District of California. He apparently concluded that counsel could only justify their hourly rates with data concerning awards in environmental or Freedom of Information Act ("FOIA") cases. He declined to award the rates that I sought in *OCE v. NMFS* because he concluded I had not presented sufficient data concerning awards in such cases. 2017 U.S. Dist. LEXIS 29130, at *28-*31. In the absence of such data, he held that my rate should be set equivalent to that specifically awarded to me by other courts for the equivalent time period: "Plaintiffs shall recalculate their lodestar based on hourly rates that are consistent with the rates they requested in prior FOIA or environmental cases for the same time periods." *Id*. at *30. This translated into effectively awarding me $655 per hour as a 2015 rate, the 2015 rate I was awarded by Judge White in *OCE v. EPA* (the only court decision I have received setting 2015

rates for me). At the time I filed our fee motion in *OCE v. NMFS*, no court had awarded me 2016 rates yet and thus the filings I submitted to Judge Orrick contained no data concerning court awarded 2016 rates for me. However, after I filed our fee motion in *OCE v. NMFS* but before Judge Orrick's March 1, 2017 ruling (and now since, too), the California Superior Court for the County of San Francisco awarded me my requested $775 per hour 2016 rate as noted in paragraph 70. Judge Orrick perhaps would have found $775 per hour to be an acceptable 2016 rate for me had he been aware of these additional court awards. In the absence of such information, Judge Orrick proposed an alternative methodology for determining a 2016 rate for me: "For time in 2016--as to which plaintiffs may have not had an hourly rate approved by another court--plaintiffs are entitled to a 10% increase over their 2015 approved-rates" absent any further justification for a higher rate. A 10% increase over the $665 per hour 2015 rate awarded me in *OCE v. NMFS* would equal $720.50 per hour, thus Judge Orrick's holding in *OCE v. NMFS* entitled me to at least $720.50 per hour as a 2016 rate.

72.     In my opinion, the holding in *OCE v. NMFS* does not undermine the reasonableness of $800 per hour as a 2017 rate for me. One, even if the holding is viewed as reasonably establishing a rate of $720.50 per hour as a 2016 rate for me, the holding also indicated that a 10% per year increase was an acceptable upward adjustment in my rates. A 10% upward adjustment of this $720.50 per hour rate would translate into a rate of $792.55, only slightly below the $800 per hour rate that I am claiming for 2017. Two, as noted, the holding places great weight on what other courts have awarded me. Though Judge Orrick was unaware of it, several court decisions approving consent judgments had already awarded me $775 per hour at the time of his decision and additional court decisions since have confirmed this rate. If $775 per hour is a reasonable 2016 rate for me, then $800 per hour is a reasonable 2017 rate for me under the reasoning of *OCE v. NMFS*, which effectively acknowledges that attorney rates tend to go up fairly substantially from year to year as it sanctioned a 10% increase for my 2016 rate over my 2015 rate. Three, as discussed in footnote 5 of the MPA, Judge Orrick's reasoning that only cases decided under the specific type of law should be taking into account in setting rates contradicts controlling Ninth Circuit precedent which instead supports the approach I have taken--surveying generally recent Northern District of California fee award decisions and averaging the rates awarded to attorneys with experience comparable to mine.

### III.     Hourly Rate for Paralegal Work

73.     I and my co-counsel have set the paralegal rates charged for all Plaintiffs' paralegal work on this case in 2016 as follows: $265 per hour for any paralegal work done by any staff with more than 10 years of legal experience, and $232 per hour for any staff with more than five years but less than 10 years of legal experience.

74.     To set these 2016 rates, I first determined 2015 hourly paralegal rates by surveying the Northern District of California cases in paragraphs 37 through 58 that awarded fees for 2015 rates in complex civil litigation cases. To the best of my knowledge, unless otherwise noted I have included all of the paralegals/support staff who were awarded fees in these cases and that were reasonably determinable. These cases are described in paragraphs 75 through 90. Using this data, I calculated that appropriate paralegal rates in 2015 would have been: $255 per hour for any paralegal work done by any staff with more than 10 years of legal experience, and $225 per hour for any staff with more than five years but less than 10 years of legal experience. I then adjusted these 2015 rates upward by 3.2% to derive appropriate 2016 paralegal rates.

75.     In *Brown v. Hain Celestial Group*, No. 11-03082, 2016 U.S. Dist. LEXIS 20118 (N.D. Cal. Feb. 18, 2016) ("*Brown*"), the court held that "the billing rates are within normal and customary ranges for timekeepers with similar qualifications and experience in the San Francisco market." *Brown* at 23. The Declaration of Mark Todzo ("Todzo Decl.") provides a chart with the rates of attorneys and paralegals. Ex. 16, ¶ 29.  The Todzo Decl. states that paralegal Jill Karjian's rate was $250 per hour, paralegal John Banister's rate was $235 per hour, paralegal Casey Fisher's rate was $225 per hour, paralegal Sandy Yelnick's rate was $225 per hour, and paralegal Leslie Valpey's rate was $235 per hour. *Id.*

76.     In *Civil Rights Educ. and Enf't Ctr. v. Ashford Hosp. Trust, Inc.*, No. 15-00216, 2016 U.S. Dist. LEXIS 37256 (N.D. Cal. March 22, 2016) ("*CREEC*"), the court found that "the hourly rates requested are in line with the market rates charged by attorneys and paralegals of similar experience, skill, and expertise practicing in the Northern District of California." *CREEC* at *16-17. The Court awarded paralegal Marissa McGarry a rate of $250 per hour. *Id.* at *17. The Court also awarded an unnamed paralegal a rate of $225, and an unnamed program assistant a rate of $200 per hour, which the Declaration of Julie Wilensky ("Wilensky Decl.") names as Elizabeth Keenley and Lauren Haefliger,

respectively. Wilenksky Decl. ¶¶ 52.d, 54. Attached hereto at Exhibit 26 is a true and correct copy of selected relevant pages of the Wilensky Decl.

77. In *Destefano v. Zynga Inc.*, No. 12-04007, 2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11. 2016) ("*Destefano*"), the court found in awarding fees that "[t]he rates are in line with those prevailing in the community, as courts in this District have approved similar or higher billing rates for attorneys and paralegals." *Destefano* at *64. The Court also found that "the requested attorneys' rates, and rates of associated staff, are reasonable." *Id.* at 66. The Lavallee Decl. states that the rate for senior paralegal Kathy Becker was $320 per hour. Ex. 18, "Exhibit 2."

78. In *In re Tracfone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1009 (N.D. Cal. 2015) ("*Tracfone*"), the Court found that it was "satisfied that class counsels' lodestar figure [was] justified in light of the complexity and duration of this litigation." Exhibit A to the Declaration of Michael Sobol ("Sobol Decl.") contains the rates charged by Lieff, Cabraser, Heimann & Bernstein, LLP support staff. Ex. 14, "Exhibit A". The Sobol Decl. states that paralegal Christian Chan's rate was $315 per hour, paralegal Jennifer Rudnick's rate was $325 per hour, Litigation Support Margie Calangian's rate was $340, Litigation Support Erwin Ocampo's rate was $340 per hour, and Litigation Support Anthony Grant's rate was $340 per hour. *Id.*

79. In *Lilly v. Jamba Juice, Co.*, No. 13-02998, 2015 U.S. Dist. LEXIS 58451 (N.D. Cal. May 1, 2015) ("*Lilly*"), the Declaration of Rosemary M. Rivas and associated exhibits (collectively "Rivas Decl.") details rates by Finkelstein Thompson LLP support staff. Ex. 15. The Rivas Decl. states that the rates for paralegals Amul Kalia, Bita Assad, and Kristy Kumar were each $220 per hour. Ex. 15 ¶ 31. In *Lilly*, the Declaration of Marc L. Godino ("Godino Decl.") states the rates for paralegals who worked on the case from the firm Glancy Binkow & Goldberg LLP. Attached hereto as Ex. 27 is a true and correct copy of selected relevant pages of the Godino Decl. The Godino Decl. states that the rate for the paralegals who worked on the case was $295 per hour.[5] Ex. 27 ¶ 32.

80. In *Perkins v. LinkedIn Corp.*, No. 13-04303, 2016 U.S. Dist. LEXIS 18649 (N.D. Cal. Feb. 16, 2016) ("*Perkins*"), the court noted that "[t]his Court, within the last year, and other courts, have

---

[5] Since the Godino Decl. does not specify who the paralegals were, I assumed only a single data point for paralegal rates for this declaration.

approved Class Counsel's customary rates used in calculating the lodestar here." *Perkins* at *52. The court also performed a lodestar crosscheck, *i.e.*, compared the award to that which would be calculated by multiplying reasonable hours times reasonable rates. *Id.* at 52-57. "Exhibit A" of the Declaration of Nicholas Diamand and associated exhibits (collectively, "Diamand Decl.") provide the rates of support staff of the firm Lieff, Cabraser, Heimann & Bernstein, LLP. Ex. 19, "Exhibit A." The Diamand Decl. states that the rate for paralegal Miriam Gordon was $270 per hour. *Id.* The Declaration of Larry C. Russ and associated exhibits ("Russ Decl.") describes the rates of support staff from the firm Russ August & Kabat, PC who also worked on the case. Attached hereto as Ex. 28 is a true and correct copy of selected relevant pages of the Russ Decl. The Russ Decl. states that the rate for paralegal Erika Arambula was $184.11 per hour, and the rate for paralegal Richard M Ricciardi was $75 per hour. Ex. 28, "Exhibit A." The Russ Decl. also states that rate for Legal Assistants Mireya Ballesteros, Katherine DePangher, Lupe Diaz, KeiAna Sanderlin, and Tiffany Vogt was $45 per hour. *Id.*

81. In *Wilner v. Manpower, Inc.*, No. 11-02846, 2015 U.S. Dist. LEXIS 80697 (June 20, 2015) ("*Wilner*"), the court held that the "briefs and declarations submitted in connection with the motion for final approval and motion for fees adequately support the anticipated … total lodestar." *Wilner* at *22. The Declaration of Laura Ho ("Ho Decl.") and associated exhibits contains the rates of paralegals from Goldstein, Borgen, Dardarian & Ho who worked on the case. Ex. 11, "Exhibit 2." The Ho Decl. states the rates for the following paralegals: Scott G. Grimes, $275 and $250 per hour; Jacqueline V. Thompson, $250 per hour; Damon Valdez, $225 per hour; Wendy E. Whitt, $225 per hour; Charlotte Manapat-Nguyen, $195 per hour; Stuart Kirkpatrick, $175 per hour. The Declaration of Kirk D. Hanson, ("Hanson Decl.") contains the rates of the paralegal from Jackson Hanson LLP, who worked on the case. Ex. 12. The Hanson Decl. states that the rate for paralegal Gabriela Gonzalez was $175 per hour. Ex. 12 ¶ 17.

82. In *Winans v. Emeritus Corp.*, No. 13-03962, 2016 U.S. Dist. LEXIS 3212 (N.D. Cal. Jan. 11, 2016) ("*Winans*"), the court found that "the billing rates used by class counsel to calculate the lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation." In *Winans*, the Declaration of Christopher J. Healey ("Healey Decl.") contains the rates of the firm Dentons US LLP who worked on the case. Attached hereto as Ex. 29 is a true and

1   correct copy of selected relevant pages of the Healey Decl. The Healey Decl. states that the rate for

2   senior paralegal Saeid Ahmadian was $280 per hour, paralegal Kathleen Flick was $225 per hour, and

3   case assistant Tracy Myrick was $150 per hour.  Ex. 29 ¶ 42. In *Winans*, the Declaration of W. Timothy

4   Needham ("Needham Decl.") contains the rate for paralegal work performed by Janssen Malloy LLP on

5   the case. Attached hereto as Ex. 30 is a true and correct copy of selected relevant pages of the Needham

6   Decl. The Needham Decl. states that the rate for paralegal Karen Ellis was $175 per hour. Ex. 30 ¶ 11

7   and "Exhibit A."

8       83.    In *In Re. High-Tech Emp. Antitrust Litig.,* No. 11-02509, 2015 U.S. Dist. LEXIS 118052, (N.D.

9   Cal. Sept. 2, 2015) ("*High-Tech*") the court found all of the paralegals' 2015 billing rates to be

10  reasonable. *High-Tech* at *33. The Declaration of Eric L. Cramer ("Cramer Decl.") describes the billing

11  rates of the paralegals from the law firm, Berger & Montague, P.C., who worked on the case. The

12  Cramer Decl. provides a chart of the years of experience of the attorneys and paralegals and their

13  respective hourly rates. Ex. 1 ¶ 13. The Cramer Decl. states that paralegal Elizabeth York had a current

14  billing rate of 310 per hour. *Id.* The Cramer Decl. states that former paralegal Mileiddys Kim had a

15  current billing rate of $240 per hour. *Id*.

16      84.    In *High-Tech*, Exhibit 11 to the Declaration of Kelly M. Dermody ("Dermody Decl. Exhibit")

17  provides the billing rates of the attorneys and paralegals from the law firm Lieff Cabraser Heimann &

18  Bernstein, LLP., who worked on the case. Ex. 2. The Dermody Decl. Exhibit states the names and rates

19  for the following "Paralegals/Clerks"[6]: Richard Anthony at $325/hr, Nikki Belushko at $325 per hour,

20  Todd Carnam at $325 per hour, Christian Chan at $315 per hour, Terence Desouza at $305 per hour,

21  Michael Elias at $280 per hour, Jessica Giordano at $305 per hour, Chandra Hipple at $315 per hour,

22  Alexa Jones at $305 per hour, Mariana Jones at $305 per hour, Ariel Leitner-Zieff at $305 per hour,

23  Daniel Liu at $280 per hour, Nicolas Menard at $325 per hour, Ian Merrifield at $280 per hour, Drew

24  Monroe at $280 per hour, Teresa Rostkowski at $285 per hour, Alan Ruiz at $280 per hour, Steven Shin

25  at $315 per hour, Yun Swenson at $325 per hour, Sera Tajima at $280 per hour,  Rachel Terrell-Perica at

26  $280 per hour, Brian Troxel at $325 per hour, Leslie Wu at $305 per hour, and Julie Zhu at $315 per

27

28  [6] Since a separate heading exists for "Law Clerks" I have assumed that the category of
    "Paralegals/Clerks" does not include any law clerks. *See* Ex. 2.

1    hour. Ex. 2. The Dermody Decl. Exhibit states the names and rates for the following "Litigation

2    Support/Research" staff: Willow Ashlynn at $340/hr, Kirti Dugar at $430 per hour, Anthony Grant at

3    $340 per hour, Major Mugrage, at $340 per hour, Renee Mukherji at $290 per hour, Erwin Ocampo at

4    $340 per hour, and Cyrus Yamat at $340 per hour. Ex. 2.

5        85.    In *High-Tech*, the Declaration of Daniel C. Girard in Support of Motion for Award of Attorneys'

6    Fees ("Girard Decl.") provides the billing rates of the paralegals from the law firm Girard Gibbs LLP.,

7    who worked on the case. Attached hereto as Ex. 24 is a true and correct copy of selected relevant pages

8    of the Girard Decl. The Girard Decl. states that the rate for paralegals Mari Takemoto-Chock and

9    Navneet Mattu was $190 per hour. Ex. 24 ¶ 45.

10       86.    In *Moore v. PetSmart,* No. 12-03577, 2015 U.S. Dist. LEXIS 102804 (N.D. Cal. August 4, 2015)

11   ("*Moore*") the court found that the billing rates were within the range approved in the Northern District

12   and were found to be reasonable. *Moore* at *38. The Declaration of Graham S.P. Hollis ("Hollis Decl.")

13   describes the billing rates of the attorneys and paralegals from the law firm GrahamHollis A.P.C., who

14   worked on the case. Attached hereto as Ex. 25 is a true and correct copy of selected relevant pages of the

15   Hollis Decl. The Hollis Decl. states the rates for the following support staff: senior paralegal Jeremy B.

16   Freedman at $225 per hour, second senior paralegal (unnamed) at $225 per hour, and a paralegal

17   (unnamed) at $215 per hour. Ex. 25 ¶ 45.

18       87.    In *Gutierrez v. Wells Fargo Bank*, *N.A*., No. 07-05923, 2015 U.S. Dist. LEXIS 67298 (N.D. Cal.

19   May 21, 2015) ("*Gutierrez*"), the court awarded the requested rates for paralegals and support staff.

20   *Gutierrez* at *14. The Declaration of Roger N. Heller contains current billing rates for following the

21   Lieff Cabraser Heimann & Bernstein, LLP paralegals and support staff who worked on the case: Kirti

22   Dugar at $430 per hour (paralegal and Director of Litigation Support Group), Jennifer Rudnick at $325

23   per hour (senior paralegal), Jack Sanford at $225 per hour (paralegal), Scott Alameda at $260 per hour

24   (litigation support), Arra Khararjian at $270 per hour (litigation support), Major Mugrage at $320 per

25   hour (litigation support), Anthony Grant at $340 per hour (litigation support), and Sat Kriya Khalsa at

26   $285 per hour (litigation support). Ex. 6, "Exhibit G".

27       88.    In *Gutierrez*, the McCune Decl. describes the billing rate of the paralegal from the law firm

28   McCuneWright LLP, who worked on the case. The McCune Decl. states that paralegal Ann M. Smith's

current rate was $225 per hour. Ex. 7. ¶ 69.

89.   In *Camberis v. Ocwen Loan Servicing LLC,* No. 14-02970, 2015 U.S. Dist. LEXIS 163826 (N.D. Cal. Dec. 7, 2015) ("*Camberis*"), the court reviewed class counsel's fees and costs and found them to be "fair" under the lodestar approach. *Camberis* at *9. The Declaration of David J. Vendler describes the representation of Morris Polich & Purdy LLP and contains the rate claimed for the unnamed paralegal who worked on the case, which was $190 per hour. Ex. 8 ¶ 22.

90.   In *Wynn v. Chanos*, No. 14-04329, 2015 U.S. Dist. LEXIS 80062 (N.D. Cal. June 19, 2015) ("*Wynn*") the court awarded legal assistants Gresham and Roberts both a rate of $170 per hour.

91.   The average of the eighty-eight hourly rates listed in paragraphs 75 through 90 is $257.32 per hour. Rounding to the nearest dollar, I calculated an hourly rate for 2015 paralegal work of $255 per hour for an attorney of my experience.

92.   To determine my 2016 rate for paralegal work, I added 3.2%, the rate determined in paragraph 68 to be the annual change in attorneys fees for attorneys over 20 years experience. Thus, adding 3.2% of $255, or $8.22, results in $263.16 per hour. Rounding to the nearest $5 increment, I set my 2016 rate for paralegal work at $265 per hour. I set my 2017 paralegal rate by increasing my 2016 paralegal rate by an additional 3.2%, which equals $273.48, which I rounded to $275 per hour.

## IV.    Other Information For Ratesetting

93.   The reasonableness of my attorney rates is further corroborated by two older but respected sources of information on the reasonableness of attorneys fees rates. The January 5, 2015 edition of the National Law Journal ("NLJ") states that attorneys rates have continued to rise over the last 4 years. Attached hereto as Ex. 33 is a true and correct copy of selected relevant pages of this NLJ article. This article's observations that attorney rates continue to rise annually is echoed by many other similar legal journal and legal blog articles that I have read and provide support for annually increasing attorney rates.

94.   The Supplemental Declaration of Richard M. Pearl ("Pearl Decl.") prepared for *Citizens Committee To Complete The Refuge, Inc. v. City of Newark*, Case No. RG10530015, (CA Superior Ct. County of Alameda) provides additional supporting information. The Pearl Decl. is dated January 20, 2015 and surveys California attorneys fees case law through December 2014. Attached hereto as Ex. 32

is a true and correct copy of selected relevant pages of the Pearl Decl. Mr. Pearl is the principal of his own law firm, the Law Offices of Richard M. Pearl, in Berkeley, California. He specializes in issues related to court-awarded attorneys' fees, including the representation of parties in fee litigation and appeals, serving as an expert witness, and serving as a mediator and arbitrator in disputes concerning attorneys fees and related issues. Ex. 32 ¶ 1. Notably, the Northern District of California has expressly recognized that "Mr. Pearl specializes in matters relating to court-awarded attorneys' fees and has served as an expert witness, mediator, and arbitrator in fee disputes and related matters. He has also written extensively on court-awarded attorneys' fees. Mr. Pearl is 'frequently called upon to opine about the reasonableness of attorneys' fees.'" *Kranson v. Fed. Express Corp*., 2013 U.S. Dist. LEXIS 173499 (N.D. Cal. Dec. 11, 2013) (citations omitted). Although the cases analyzed in the Pearl Decl. are from 2010-2014, the rates for attorneys with over 20 years experience are similar or even higher than my calculated 2015 rates or the rate I have set in 2016. This confirms the reasonability of my rates, especially since market rates have risen since 2014.

## V.      Rates for and Annual Rate Change for Attorneys Under 21 Years of Experience

95.     I and Mr. Hudak also derived an average annual percentage increase in the rates charged by attorneys with less than 21 years experience in the San Francisco Bay Area legal market for use by my co-counsel. They in turn have applied this average annual percentage change to their rates in their own declarations. To do this exercise, Mr. Hudak and I surveyed the cases used in setting my 2015 rate, and others from 2014, for any cases that reported rate changes for a given attorney with less than 21 years of experience between recent consecutive years (for example, awarded a given attorney a rate in 2013 and then an adjusted rate in 2014, *etc*., thus providing data on the percentage increase in compensation for that attorney reflecting the combined effect of an additional year of experience and a year's worth of inflation in the legal market). We then averaged all the individual percentage changes to determine an average rate change per year in the Bay Area for attorneys with less than 21 years experience. The cases and attorney compensation data in these cases are described in 96 through 109 below.

96.     In *Wynn v. Chanos*, No. 14-04329, 2015 U.S. Dist. LEXIS 80062 (N.D. Cal. June 19, 2015) ("*Wynn*") the opinion states rate changes for attorneys Julian Waldo and Marco Martemucci.

The Declaration of Julian Y. Waldo ("Waldo Decl.") states that Mr. Waldo graduated from law school

in 2010, and thus had 5 years experience in 2015. Waldo Decl. ¶ 2. Attached hereto as Ex. 34 is a true and correct copy of selected relevant pages of the Waldo Decl. The *Wynn* opinion states that Mr. Waldo's "initial" rate was $570 per hour, which was in 2014 when the case was filed. *Wynn* at *6. The opinion states that Mr. Waldo's 2015 rate was $640 per hour. *Id.* Mr. Waldo's annual rate change between 2014 and 2015 was thus $70, or 12.28%. According to the attorney profile of Marco Martemucci at his new firm Gerard Fox Law, Mr. Martemucci graduated from law school in 2008, and thus had 7 years experience in 2015. The *Wynn* opinion states that Mr. Martemucci's "initial" rate was $645 per hour, which was in 2014 when the case was filed. *Wynn* at *6. The opinion states that Mr. Martemucci's 2015 rate was $710 per hour. *Id.* Mr. Martemucci's annual rate change between 2014 and 2015 was thus $65, or 10.08%.

97.    In *Public.Resource.Org v. U.S. Internal Revenue Serv.*, No. 13-02789, 2015 U.S. Dist. LEXIS 175943 (N.D. Cal. Nov. 20, 2015) ("*Public.Resource*"), the Declaration of Thomas R. Burke ("Burke Decl.) states that attorney Dan Laidman graduated in 2010. Ex. 9 ¶ 6. Mr. Laidman therefore had 5 years experience in 2015. The opinion states that the 2013 rate for Mr. Laidman was $330 per hour, the 2014 rate was $355 per hour, and that the 2015 rate was $395 per hour. Mr. Laidman's annual rate changes are as follows: 2013-2014, $25, or 7.58%; 2014-2015, $40, or 11.27%. The Burke Decl. also states that attorney Ronald G. London graduated in 1995. Ex. 9 ¶ 6. Mr. London therefore had 20 years experience in 2015. The opinion states that the 2013 rate for Mr. London was $515 per hour, the 2014 rate was $540 per hour, and that the 2015 rate was $565 per hour. Mr. London's annual rate changes are as follows: 2013-2014, $25, or 4.85%; 2014-2015, $25, or 4.63%.

98.    In *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1171 (N.D. Cal. 2015), the Declaration of Roger L. Cook ("Cook Decl.) describes the representation of Kilpatrick, Townsend, & Stockton LLP and the attorneys who worked on the case. Ex. 23. The Cook Decl. states that Roger Tadlock graduated in 2005. Ex. 23 ¶ 41. Mr. Tadlock therefore had 10 years experience in 2015. The Cook Decl. states that the rate Mr. Tadlock charged in late 2012 was $450 per hour. Ex. 23, ¶ 28. The Cook Decl. states that the rate Mr. Tadlock charged in 2013 was $500 per hour. Ex. 23, ¶ 30. The Cook Decl. states that the rate Mr. Tadlock charged in 2014 was $520 per hour. Ex. 23, ¶ 31. Mr. Tadlock's annual rate changes are as follows: 2012-2013, $50, or 11.11%; 2013-2014, $20, or 4%. The Cook Decl.

also states that Joshua Lee graduated from law school in 2010. Ex. 23 ¶ 44. Mr. Lee therefore had 5 years experience in 2015. The Cook Decl. states that the rate Mr. Lee charged in late 2012 was $305 per hour. Ex. 23, ¶ 28. The Cook Decl. states that the rate Mr. Lee charged in 2013 was $345 per hour. Ex. 23, ¶ 30. Mr. Lee's annual rate change between 2012-2013 is thus $40, or 13.12%. The Cook Decl. further states that Sara Giardina graduated from law school in 2011. Ex. 23 ¶ 43. Ms. Giardina therefore had 4 years experience in 2015. The Cook Decl. states that the rate Ms. Giardina charged in late 2012 was $285 per hour. Ex. 23, ¶ 28. The Cook Decl. states that the rate Ms. Giardina charged in 2013 was $315 per hour. Ex. 23, ¶ 30. The Cook Decl. states that the rate Ms. Giardina charged in 2014 was $350 per hour. Ex. 23, ¶ 31. Ms. Giardina's annual rate changes are as follows: 2012-2013, $30, or 10.53%; 2013-2014, $35, or 11.11%. In addition, the Cook Decl. states that Kevin Obrian graduated in 2011. Ex. 23 ¶ 50. Mr. O'Brian therefore had 4 years experience in 2015. The Cook Decl. states that the rate Mr. O'Brian charged in 2013 was $315 per hour. Ex. 23, ¶ 30. The Cook Decl. states that the rate Mr. O'Brian charged in 2014 was $325 per hour. Ex. 23, ¶ 31. Mr. O'Brian's annual rate change between 2013-2014 was $10, or 3.17%.

99.    In *Gutierrez v. Wells Fargo Bank, N.A*., No. 07-05923, 2015 U.S. Dist. LEXIS 67298 (N.D. Cal. May 21, 2015) ("*Gutierrez*"), the Declaration of Richard M. Heimann ("Heimann Decl.") describes the representation of Lieff, Cabraser, Heimann & Bernstein, LLP and contains the graduation dates of the attorneys working on the case. Ex. 5. The Heimann Decl. states that Roger N. Heller graduated from law school in 2001 and thus had 14 years experience in 2015. Ex. 5 ¶ 41. Exhibit A to the Declaration of Roger N. Heller contains the timesheets for the attorneys who worked on the case, spanning from 2009-2015, and which includes the date of the specific entries and corresponding rate. Ex. 6. Exhibit A to the Heller Decl. states that the rate charged for attorney Roger Heller's 2010 entries was $450 per hour. Ex. 6, Ex. A, at 16. The rate charged for Mr. Heller's 2011 entries was $475 per hour. Ex. 6, Ex. A, at 138. The rate charged for Mr. Heller's 2012 entries was $500 per hour. Ex. 6, Ex. A, at 158. The rate charged for Mr. Heller's 2013 entries was $525 per hour. Ex. 6, Ex. A, at 166. The rate charged for Mr. Heller's 2014 entries was $600 per hour. Ex. 6, Ex. A, at 191. Mr. Heller's 2015 awarded rate was $625 per hour. Ex. 6, Ex. G. Mr. Heller's annual rate changes are as follows: 2010-2011, $25, or 5.56%; 2011-2012, $25, or 5.26%; 2012-2013, $25, or 5%; 2013-2014, $75, or 14.29%; 2014-2015, $25, or 4.17%.

100.  In *Gutierrez*, the Heimann Decl. states that Jordon Elias graduated from law school in 2003 and thus had 12 years experience in 2015. Ex. 5 ¶ 44. Exhibit A to the Heller Decl. states that the rate charged for Mr. Elias' 2009 entries was $410 per hour. Ex. 6, Ex. A, at 19. The rate charged for Mr. Elias' 2010 entries was $430 per hour. Ex. 6, Ex. A, at 28. The rate charged for Mr. Elias' 2011 entries was $475 per hour. Ex. 6, Ex. A, at 138. The rate charged for Mr. Elias' 2012 entries was $490 per hour. Ex. 6, Ex. A, at 35. The rate charged for Mr. Elias' 2013 entries was also $490 per hour. Ex. 6, Ex. A, at 181. Mr. Elias' annual rate changes are as follows: 2009-2010, $25, or 6.1%; 2010-2011, $45, 10.47%; 2011-2012, $15, or 3.16%; 2012-2013, $0, or 0%.

101.  In *Gutierrez*, the Heimann Decl. states that Mikaela B. Palmerton graduated from law school in 2008 and thus had 7 years experience in 2015. Ex. 5 ¶ 43. Exhibit A to the Heller Decl. states that the rate charged for Ms. Palmerton's 2009 entries was $300 per hour. Ex. 6, Ex. A, at 13. The rate charged for Mr. Elias' 2010 entries was $325 per hour. Ex. 6, Ex. A, at 20. Ms. Palmerton's annual rate change between 2009-2010 is thus $25, or 8.33%.

102.  In *Gutierrez*, the Heimann Decl. states that Marc Pilotin graduated from law school in 2009 and thus had 6 years experience in 2015. Ex. 5 ¶ 48. Exhibit A to the Heller Decl. states that the rate charged for Mr. Pilotin's 2013 entries was $395 per hour. Ex. 6, Ex. A, at 172. The rate charged for Mr. Pilotin's 2014 entries was $415 per hour. Ex. 6, Ex. A, at 191. Mr. Pilotin's annual rate change between 2013-2014 is thus $20, or 5.06%.

103.  In *Gutierrez*, the Heimann Decl. states that Martin Quinones graduated from law school in 2013 and thus had 2 years experience in 2015. Ex. 5 ¶ 49. Exhibit A to the Heller Decl. states that the rate charged for Mr. Quinones' 2013 entries was $320 per hour. Ex. 6, Ex. A, at 189. The rate charged for Mr. Quinones' 2014 entries was $325 per hour. Ex. 6, Ex. A, at 194. Mr. Quinones' annual rate change between 2013-2014 is thus $5, or 1.56%.

104.  In *Gutierrez*, the Heimann Decl. states that Alison Stocking graduated from law school in 2006 and thus had 9 years experience in 2015. Ex. 5 ¶ 46. Exhibit A to the Heller Decl. states that the rate charged for Ms. Stocking's 2010 entries was $370 per hour. Ex. 6, Ex. A, at 123. The rate charged for Ms. Stocking's 2011 entries was $415 per hour. Ex. 6, Ex. A, at 137. Ms. Stocking's annual rate change between 2010-2011 was thus $45, or 12.16%.

105.  In *Gutierrez*, the Heimann Decl. states that Nicole Diane Sugnet (formerly Nicole D. Reynolds) graduated from law school in 2006 and thus had 9 years experience in 2015. Ex. 5 ¶ 47. Exhibit A to the Heller Decl. states that the rate charged for Ms. Sugnet's 2012 entries was $375 per hour. Ex. 6, Ex. A, at 158. The rate charged for Ms. Sugnet's s 2013 entries was $415 per hour. Ex. 6, Ex. A, at 166. Ms. Sugnet's annual rate change between 2012-2013 was thus $40, or 10.67%.

106.  In *Gutierrez*, the McCune Decl. states that attorney Jae K. Kim raised his rate from $350 to $425 per hour in September, 2009, which stayed the same through 2014. Ex. 7 ¶ 64. According to the firm McCuneWright LLP's website, Mr. Kim graduated from law school in 2004 and thus had 11 years experience in 2015. Mr. Kim's annual rate changes are as follows: Sept. 2008-2009, $75, or 21.43%; Sept. 2009-2010, $0, or 0%; Sept. 2010-2011, $0, or 0%, Sept. 2011-2012, $0, or 0%; Sept. 2012-2013, $0, or 0%; Sept. 2013-2014, $0, or 0%.

107.  In *IPVX Holdings Inc. v. Voxernet LLC*, No. 13-01708, 2014 U.S. Dist. LEXIS 158037, at *21-25 (N.D. Cal. Nov. 6, 2014) ("*IPVX*"), the court implicitly found the requested attorneys rates reasonable. The Declaration of Hector J. Ribera ("Ribera Decl."), states that the rates for the attorneys who worked on the case. Ex. 22. The Ribera Decl. states that the rate for attorney Hector Ribera in both 2012 and 2013 was $595 per hour. Ex. 22 ¶ 10.b. In 2014 Mr. Ribera's rate rose to $650 per hour. *Id.* Mr. Ribera's annual rate changes are as follows: 2012-2013, $0, or 0%; 2013-2014, $55, or 9.24%. According to the firm Fenwick & West LLP's attorney profile of Mr. Ribera, he graduated from law school in 2002, and therefore had 13 years experience in 2015.

108.  In *IPVX*, the Ribera Decl. states that the rate for attorney Michael Saunders in 2012 was $375 per hour, $425 per hour in 2013, and $505 per hour in 2014. Ex. 22 ¶ 10.c. Mr. Saunder's annual rate changes are as follows: 2012-2013, $50, or 13.33%; 2013-2014, $80, or 18.82%. According to the firm Fenwick & West LLP's attorney profile of Mr. Saunders, he graduated from law school in 2009, and therefore had 6 years experience in 2015.

109.  In *IPVX*, the Ribera Decl. states that the rate for attorney Kunyu Ching in 2013 was $295 per hour and $325 per hour in 2014. Ex. 22 ¶ 10.d. Ms. Ching's annual rate change between 2013-2014 was therefore $30, or 10.17%. According to the firm Fenwick & West LLP's attorney profile of Ms. Ching, she graduated from law school in 2013, and therefore had 2 years experience in 2015.

110.  The average of the annual rate changes for attorneys in 96 through 109 is 7.26%. Based on this information, it is my opinion that the hourly rates claimed by my colleagues with less than 21 years experience who have worked on this case, Patricia Weisselberg, Mike Costa, Celeste Langille, and Page Perry, and Nicholas Whipps are well within the prevailing market rates for the San Francisco legal market.

## VII.    Plaintiffs' Lodestar

111.  As mentioned above, the attached Exhibit 37 summarizes the claimed attorney lodestars for work performed by myself, Brian Gaffney, Patricia Weisselberg, Celeste Langille, Michael Costa, Page Perry, Nick Whipps and paralegal Dawn Edberg in this case up through May 18, 2017 (additional attorney work required to complete briefing on this Motion for Attorneys Fees, including Plaintiffs' reply briefing, will be documented in subsequent declarations submitted on reply). My own time records are attached to this declaration as Exhibit 36; each individual attorney's time records are exhibits to their individual declarations.

112.  As set forth in Exhibit 37, the combined total number of hours claimed for purposes of this fee motion by attorneys who worked on this case through May 18, 2017 is 1,088.09 hours and the total lodestar is $721,619.54. As indicated in Exhibit 37, Plaintiffs' counsel have divided their time by claim and tasks in the same manner I described in paragraph 24-27. In so dividing up their time, Plaintiffs' counsel have calculated the attorneys fee sum due from Caltrans separate and apart from attorneys fees attributable to pursuing claims against FWS. Exhibit 37 sums the time Plaintiffs spent on attorney fee and cost recovery exclusively from Caltrans in column N, the time Plaintiffs spent on attorney fee and cost recovery exclusively from FWS in column P, and the time Plaintiffs spent on attorney fee and cost recovery they cannot be meaningfully segregated between Caltrans and FWS in column O. Plaintiffs split the time and column O 50/50 between Caltrans and FWS. Thus, the time Plaintiffs spent seeking fee recovery from Caltrans is the sum of columns N plus half of column O. As also noted in Exhibit 37, some attorneys spent time performing tasks that would be reasonably charged at a paralegal rate. Therefore, I and my co-counsel have applied a different billing rate to this paralegal time. The result is two sets of hours: "attorney time," which includes only those hours for which the attorneys were performing legal services appropriate for an attorney, and "paralegal time," which includes those hours

1    for which the attorneys were performing paralegal tasks. As described in Exhibit 37, I and my co-

2    counsel have multiplied the total "attorney time" by the attorney's hourly rate and the total "paralegal

3    rate" by the reduced rate for paralegals to arrive at the total lodestar for each attorney. As described in

4    Sections III-VI above, these lodestars are based on prevailing market rates for attorneys in the San

5    Francisco Bay area.

6    **VIII.   Plaintiffs' Costs**

7        113.   Through May 18, 2017, the Plaintiffs have incurred well over $3,000  in expenses in bringing

8    this action that are of the type ordinarily and necessarily incurred in litigation and typically billed of

9    clients by their counsel: the Court's filing fee to initiate this case, electronic legal research using LEXIS-

10   NEXIS, the costs of paper courtesy copies for the Court, postage or other delivery charges to send

11   documents to the Court or the Defendants, and travel expenses to attend court hearings. In exercise of

12   billing judgment, Plaintiffs cut any expenses associated with tasks necessitated in pursuing the

13   Dismissed Defendants, such as Court courtesy copies of filings associated with dismissal of these

14   defendants. After these billing judgment reductions, plaintiffs had $2,492.72 in case costs incurred

15   through May 18, 2017 (additional costs required to complete briefing on this Motion for Attorneys Fees,

16   including Plaintiffs' reply briefing, will be documented in subsequent declarations submitted on reply).

17   Plaintiffs are seeking to recover half of these costs from Caltrans, i.e., $1471.36. I have attached as

18   Exhibit 38 a spreadsheet which itemizes these costs. Receipts for claimed expenses are attached as

19   Exhibit 39.

20   **IX.   Other Miscellaneous Matters**

21       114.   Attached hereto as Exhibit 40 is a true and correct copy of a memorandum prepared by the U.S.

22   Department of Justice's Office of Legal Counsel that I downloaded from the Department of Justice's

23   website in 2011.

24       115.   Attached hereto as Exhibit 41 is a true and correct copy of a brief filed by the U.S. Department

25   of Justice in the *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv*., No. 06-2845, 2012 U.S.

26   Dist. LEXIS 42287, at *8 (E.D. Cal. Mar. 26, 2012), *aff'd* 2014 U.S. App. LEXIS 12450 (9th Cir. July 1,

27   2014). I served as lead Plaintiffs' counsel in that case and received a copy of this brief via the Eastern

28   District of California's ECF system.

Executed in San Francisco, California on May 24, 2017.

Christopher Sproul, Attorney for Plaintiffs